**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. _____-Civ (Judge's Last Name/Magistrates Last Name)**

ONEMATA CORPORATION

       Plaintiff,

v.

ASHFAQ RAHMAN and
SABIRA AREFIN

       Defendants.

---

**VERIFIED COMPLAINT**

---

Plaintiff Onemata Corporation, by and through counsel Riley Cirulnick of Rice Pugatch Robinson Storfer & Cohen PLLC, hereby files its Complaint against Defendants Ashfaq Rahman and Sabira Arefin and states and alleges the following:

## I.  PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Onemata Corporation ("Onemata") is a Colorado corporation whose principal place of business is 2420 West 26th Ave., Suite 500-D, Denver, Colorado 80211.

2. Ashfaq Rahman is a Washington state resident whose address is believed to be 5684 173rd Avenue, SE., Bellevue, Washington 98006.

3. Sabira Arefin is a Florida state resident whose address is believed to be 10870 Haydn Drive, Boca Raton, Florida 33498.

4. This case involves Plaintiff's claims arising out of a Stock Purchase Agreement dated December 18, 2019 by and between Defendants and Enscicon Acquisition, LLC ("Enscicon Acquisition"), the predecessor in interest to Onemata. Pursuant to the Stock

Purchase Agreement, all legal proceedings which arise from the Stock Purchase Agreement are to be venued in the United States District Court for the Southern District of Florida.

5. The Court has subject matter jurisdiction over these claims under U.S.C. § 1332 because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6. Jurisdiction and venue are proper because the Defendants have agreed to submit all legal proceedings arising out of the Stock Purchase Agreement to the United States District Court for the Southern District of Florida. Therefore, having agreed to personal jurisdiction before this Court pursuant to 28 U.S.C. § 1391, venue is proper pursuant to §1391(b)(3).

## II.   GENERAL ALLEGATIONS

7. Prior to its acquisition by Enscicon Acquisition (the predecessor to Plaintiff Onemata), LocalBlox, Inc. ("LocalBlox") was a custom data company primarily engaged in the business of acquiring, recomposing and selling a variety of data to its customers.

8. On December 18, 2019, Enscicon Acquisition entered into a Stock Purchase Agreement with Ashfaq Rahman and Sabira Arefin to acquire all of the common stock of LocalBlox owned by these individuals, which represented approximately 95% of the total ownership of LocalBlox.

9. Pursuant to the terms of the Stock Purchase Agreement, Enscicon Acquisition paid $2,000,000 in cash and agreed to have its affiliates execute a total of four promissory notes consisting of two promissory notes each, in the original principal balance of $457,959.50, one payable to each of the Defendants; and two promissory notes each in the original principal balance of $1,039,454 payable to each of the Defendants. In addition, as part of the consideration for the transaction, LocalBlox executed a promissory note in favor of

Defendant Arefin in the amount of $664,963.86 reflecting a shareholder loan extended by Arefin to LocalBlox prior to the sale of the stock. As further consideration for the purchase, Enscicon Acquisition granted to the Defendants units of membership interest in Enscicon Acquisition representing a 34% ownership in Enscicon Acquisition. Based on the merger of Enscicon Acquisition into Plaintiff, the Enscicon Acquisition units were converted into common stock of Plaintiff (such ownership interests are referred to herein as the "Equity Interest").

10. On September 30, 2020 Enscicon Acquisition merged into Plaintiff Onemata, with Onemata being the surviving entity. All legal rights and all right title and interest in any legal claims or proceedings were transferred from Enscicon Acquisition to Onemata.

11. Pursuant to the Stock Purchase Agreement, Defendant Rahman was required to execute and deliver the Employment Agreement attached to the Stock Purchase Agreement as Exhibit D, and Defendant Arefin was required to have executed and delivered the Consulting Agreement attached to the Stock Purchase Agreement as Exhibit E, pursuant to which each of them agreed to provide ongoing services to LocalBlox following the acquisition of the stock by Enscicon Acquisition. These agreements were executed by the parties, effective December 23, 2019.

12. Pursuant to the terms and conditions of the Stock Purchase Agreement, the Defendants made numerous representations and warranties regarding LocalBlox, its condition, its business activities, and covenants regarding its ongoing operation of the business. Enscicon Acquisition relied on the accuracy and completeness of these representations, warranties, and covenants.

13. Following the acquisition of LocalBlox, Enscicon Acquisition, and later its successor in interest Onemata, determined that many of the representations, warranties and covenants given by the Defendants were false and/or incomplete. Many of the covenants of the Defendants were flagrantly disregarded. In addition, the Defendants made misrepresentations to representatives of Enscicon Acquisition and Onemata concerning these matters and actively made efforts to conceal numerous problems following the closing of the Stock Purchase Agreement.

14. Although the investigation is ongoing, Enscicon Acquisition has determined that the Defendants made misrepresentations, breached warranties and covenants, and actively concealed matters involving five categories:

    a. First, LocalBlox was subject to numerous contracts and ongoing payment obligations that were not disclosed prior to closing.

    b. Second, LocalBlox was engaged in the unauthorized and unlawful usage of its customers' computer servers.

    c. Third, the Defendants did not operate LocalBlox in the ordinary course of business in the period leading up to closing, but instead expended company funds on inappropriate matters including a large distribution to Defendant Arefin.

    d. Fourth, there were misrepresentations and irregularities in the financial statements that were not disclosed to Enscicon Acquisition.

    e. Fifth, the Defendants misrepresented the ownership interest of one minority owner Mark Grether.

### III.   FIRST CLAIM FOR RELIEF
#### Fraudulent Concealment

#### A. Undisclosed Contracts and Payment Obligations

15. All of the previous allegations are incorporated as if fully set forth herein.

16. During the negotiation and execution of the Stock Purchase Agreement the Defendants concealed material and important issues from Enscicon Acquisition. The concealment of these issues was in direct violation of certain representations and warranties contained in the Stock Purchase Agreement. In the Stock Purchase Agreement, the Defendants made the following representations and warranties:

   a. **Section 3.5:** that no representation or warranty by the Defendants or schedule or documents provided will contain any untrue statement of fact or omit a material fact required to be stated.

   b. **Section 4.6:** that the books and financial records of LocalBlox are complete and correct and have been maintained in accordance with sound business practices.

   c. **Section 4.7:** that the financial statements Defendants provided "fairly present the financial condition and operations of" LocalBlox and were prepared in accordance with GAAP.

   d. **Section 4.9:** that all liabilities of LocalBlox, except for those disclosed on the balance sheet or incurred in the ordinary course of business, were listed on Section 4.9 of the Disclosure Schedule attached to the Stock Purchase Agreement.  The Disclosure Schedule stated there were "None" such liabilities.

   e. **Section 4.10:** that there was not any "Material Adverse Change" (a change adversely affecting the financial condition and operations and results of the operation of LocalBlox) between November 30, 2019 and the closing.

f.  **Section 4.15:** that there were no undisclosed contracts involving products or services in excess of $10,000.00 in total, otherwise involving $25,000.00 or more in consideration total, concerning confidentiality or noncompetition, or for which a default would result in a Material Adverse Change.

g.  **Section 4.28:** that LocalBlox had no liability for any fees or commissions to any broker based on the sale of stock under the Stock Purchase Agreement.

h.  **Section 4.29:** that there was no other fact or circumstance known to the Defendants and affecting the business that would reasonably be expected to result in a Material Adverse Change, and no omission of any fact necessary to make any statement not misleading.

i.  **The ACTON Agreement**

17. In direct violation of these explicit representations and warranties the Defendants concealed from Enscicon Acquisition and its representatives the fact that LocalBlox had entered into a settlement agreement with ACTON International, Ltd. ("ACTON") dated December 2, 2019, just weeks prior to the signing and closing of the Stock Purchase Agreement. This settlement agreement was not disclosed to Enscicon Acquisition and was not identified in the Stock Purchase Agreement.

18. The Defendants did advise Enscicon Acquisition that LocalBlox had a "business relationship" with ACTON but did not disclose that in fact, it was a settlement of a disputed amount. LocalBlox had agreed, prior to the closing of the Stock Purchase Agreement, to pay more than $100,000 to settle this dispute without the knowledge of Enscicon Acquisition, prior to the closing under the Stock Purchase Agreement. Even after the closing under the Stock Purchase Agreement the Defendants failed to produce any

documentation or underlying agreements regarding this dispute. Enscicon Acquisition subsequent investigation revealed that, following the closing of the Stock Purchase Agreement, ACTON was owed $80,000 in remaining settlement payments and was also required to pay its agent, Datastream, an additional $22,750. In addition, in order to get ACTON to release the lien it had recorded against LocalBlox, which was also not disclosed by the Defendants, William Smith of Enscicon Acquisition was required to execute a personal guarantee for the debt.

19. The Defendants' representations and warranties set forth in Sections 3.5, 4.6, 4.7, 4.9, 4.10, 4.15, 4.28, and 4.29 were false and concealed the ACTON settlement agreement and the obligation to Datastream.

20. The false representations and warranties concealing the ACTON and Datastream obligation were material misrepresentations made intentionally by the Defendants knowing that these matters should have been disclosed. The Defendants knew the concealment of this material fact would induce Enscicon Acquisition to rely on the representations and warranties and the concealment of these matters. Enscicon Acquisition did in fact detrimentally rely on the representations and warranties and the concealment effected by the Defendants as to these matters.

21. Enscicon Acquisition's reliance on these representations and warranties was reasonable and the concealment of these matters has caused Enscicon Acquisition, and now Onemata as a successor in interest, damages in an amount to be proven at trial.

**ii.  The Forbes and Managed Chaos Broker Relationship**

22. The representations and warranties set forth above also proved to be false and concealed a business agreement between LocalBlox and Managed Chaos Holdings, LLC ("Managed

Chaos"). The Defendants concealed from Enscicon Acquisition and its agents the fact that LocalBlox had entered into a letter agreement with The Forbes M+A Group ("Forbes") dated May 2, 2019 and a related Agent Agreement with Managed Chaos dated May 3, 2019. Both of these agreements related to services and promoting the sale of the LocalBlox company to a buyer and were not entered into in the ordinary course of LocalBlox business.

23. Under the Agent Agreement, LocalBlox was required to pay Managed Chaos a monthly fee of $1,500.  Moreover, under the letter agreement, LocalBlox was required to pay Forbes monthly fees of $2,500 per month, plus a transaction fee of $200,000 or more.

24. The Defendants failed to disclose these agreements and concealed them from Enscicon Acquisition. Further, the concealment of these material issues constitutes violations of the representations and warranties contained in Sections 3.5, 4.6, 4.7, 4.9, 4.15, 4.28, and 4.29 of the Stock Purchase Agreement.

25. The false representations and warranties concealing the Forbes and Managed Chaos obligations were material misrepresentations made intentionally by the Defendants knowing that these matters should have been disclosed. The Defendants knew the concealment of this material fact would induce Enscicon Acquisition to rely on the representations and warranties and the concealment of these matters. Enscicon Acquisition did in fact detrimentally rely on the representations and warranties and the concealment effected by the Defendants as to these matters.

26. Enscicon Acquisition's reliance on these representations and warranties was reasonable and the concealment of these matters has caused Enscicon Acquisition, and now Onemata as a successor in interest, damages in an amount to be proven at trial.

### iii. **Other Liabilities**

27. After the Stock Purchase Agreement closed, it was revealed that LocalBlox owed considerable amounts for professional services. These debts include $15,000 due to Embark Consulting which was not disclosed in the Stock Purchase Agreement. It is believed that there will be other liabilities which were concealed by the Defendants which will be required to be paid by Onemata as successor in interest to Enscicon Acquisition.

28. The Defendants' failure to disclose these obligations or include them in LocalBlox's financial statements is a breach of the representations and warranties in Sections 4.7, 4.9, 4.15, 4.28, and 4.29 of the Stock Purchase Agreement.

29. The false representations and warranties concealing the Embark Consulting obligation was a material misrepresentation made intentionally by the Defendants knowing that it should have been disclosed. The Defendants knew the concealment of this material fact would induce Enscicon Acquisition to rely on the representations and warranties and the concealment of these matters. Enscicon Acquisition did in fact detrimentally rely on the representations and warranties and the concealment effected by the Defendants as to these matters.

30. Enscicon Acquisition's reliance on these representations and warranties and in the concealment of these matters has caused Enscicon Acquisition, and now Onemata as a successor in interest, damages in an amount to be proven at trial.

## B. **Customer Server Usage**

31. The Stock Purchase Agreement includes representations and warranties by the Defendants as follows:

a. **Section 4.6:** that the books and records of LocalBlox provided to Enscicon Acquisition were truthful, representing "bona fide transactions", and maintained in accordance with "sound business practices."

b. **Section 4.7:** that the financial statements "fairly present the financial condition and results of operations" of LocalBlox.

c. **Section 4.9:** that there were no undisclosed liabilities.

d. **Section 4.11:** that LocalBlox had title or at least a leasehold interest in all assets "used by it or necessary to operate the business" of LocalBlox.

e. **Section 4.13.6:** that all computer systems used in the business were owned or appropriately licensed by LocalBlox.

f. **Section 4.18:** that LocalBlox has been in compliance with all applicable laws in the conduct of its business (similarly, the covenant in Section 6.2(h) required Defendants to comply with all laws leading up to the closing date).

g. **Section 4.29**: that there were no other untrue statements or misleading omissions.

32. Onemata has discovered that, prior to and following the date of closing under the Stock Purchase Agreement, LocalBlox has been accessing the servers of its customers and utilizing those servers for processing data for LocalBlox's own business purposes, all at the customers' expense but without their knowledge or permission.

33. After the closing of the Stock Purchase Agreement, when this issue was discovered, Defendant Rahman was instructed to immediately make arrangements with Amazon Web Services through LocalBlox itself to handle all of LocalBlox's data processing. Defendant Rahman failed to act diligently and expeditiously in moving the data processing to the Amazon servers and misrepresented the progress of the changeover. Given the

concealment by the Defendant Rahman of this issue following the stock purchase, it has been difficult to uncover all of the unauthorized server usage.

34. Because LocalBlox was previously not paying for a key element of its business expenses, this concealment skews the financial statements which were disclosed to Enscicon Acquisition. LocalBlox's financial data should have revealed not only the improper usage of customer database servers but also the estimated expenses the company would incur when paying for such services.

35. The Defendants' actions in concealing this issue have not only damaged LocalBlox's reputation and customer relationships but they may expose LocalBlox and Onemata to liability from LocalBlox's customers.

36. The concealment and misrepresentations by the Defendants violate the representations and warranties set forth above. Under Section 4.6, the activities of the company are questionable as "bona fide transactions" and it cannot be deemed a sound business practice to misappropriate customer property in this manner. By failing to address this major expense, the financial statements were very misleading and therefore Section 4.7 was violated. Section 4.9 was violated by this concealment because of the undisclosed liabilities. In contradiction to Sections 4.11 and 4.13.6 LocalBlox had no interest in or right to use the servers. In breach of the warranty under Section 4.18 and the covenant in Section 6.2(h), this unauthorized misuse of the servers is certainly not lawful.  Finally, the failure to disclose the facts related to the servers is, at best, misleading under Section 4.29.

37.  The false representations and warranties concealing the usage of the customers' servers were material misrepresentations made intentionally by the Defendants knowing that these matters should have been disclosed. The Defendants knew the concealment of this material

fact would induce Enscicon Acquisition to rely on the representations and warranties and the concealment of these matters. Enscicon Acquisition did in fact detrimentally rely on the representations and warranties and the concealment effected by the Defendants as to these matters.

38. Enscicon Acquisition's reliance on these representations and warranties and in the concealment of these matters has caused Enscicon Acquisition, and now Onemata as a successor in interest, damages in an amount to be proven at trial.

**C. Pre-Closing Payments and Actions**

39. Pursuant to the Stock Purchase Agreement, the Defendants represented as follows:

   a. **Section 4.9:**  except as stated on the Disclosure Schedule (which indicated there were "None"), there were no liabilities of LocalBlox arising after the date of November 30, 2019 (the date of the financial statements) except those arising from the ordinary course of business.

   b. **Section 4.10:**  that there was no Material Adverse Change (or to Defendants' knowledge, any occurrence that would reasonably be expected to result in a Material Adverse Change), following November 30, 2019.

   c. **Section 4.29:**  that there were no other untrue statements or misleading omissions.

40. Further, Defendants covenanted as follows, for the period following execution of the Stock Purchase Agreement:

   a. **Section 6.2(a):**  that Defendants would conduct the LocalBlox business only in the ordinary course of business.

   b. **Section 6.2(f):**  that Defendants would maintain the company's assets, rights, and properties.

c. **Section 6.2(k):** that Defendants would not change any salaries, wages, or other pay (including bonuses) of LocalBlox's employees.

d. **Section 6.5:** that Defendants would give prompt written notice to Enscicon Acquisition of any material adverse development causing a breach of Defendants' representations and warranties.

41. The foregoing representations and covenants all relate to the fact that the Defendants promised that LocalBlox would be operated in the ordinary course of business and not suffer any material adverse change from November 30, 2019 to the date of closing.

42. Enscicon Acquisition relied on these representations and covenants and the information provided, primarily the financial statements dated November 30, 2019 and the fact that they would act accurately reflect the condition of the company at closing.

43. Contrary to the representations and covenants, the Defendants concealed pre-closing payments and actions which were not made in the ordinary course of LocalBlox business. The improper pre-closing payments and actions of the been identified to date are as follows:

a. A unilateral distribution in the amount of $230,000 during the month of December, just prior to the closing, to Defendant Arefin.

b. $25,000.00 paid to F&G Life Insurance Company.

c. $12,777.00 paid to Golam Osmani.

d. $12,000.00 paid to Tamaha Consulting.

e. $15,000.00 paid to Gregory Loomar.

f. $5,000.00 paid to Siegel Law Group.

44. These matters constitute violations of Sections 4.9, 4.10, 4.29, 6.2(a), 6.2(f), 6.2(k), and 6.5 of the Stock Purchase Agreement.

45. As a result of these extensive unauthorized payments, when Enscicon Acquisition acquired the stock of LocalBlox it had less than half the cash that Enscicon Acquisition expected to have pursuant to the financial statements.

46. The false representations and warranties concealing these pre-closing payments were made intentionally by the Defendants knowing that these matters should have been disclosed. The Defendants knew the concealment of these material facts would induce Enscicon Acquisition to rely on the representations and warranties and the concealment of these matters. Enscicon Acquisition did in fact detrimentally rely on the representations and warranties and the concealment effected by the Defendants as to these matters.

47. Enscicon Acquisition's reliance on these representations and warranties and in the concealment of these matters has caused Enscicon Acquisition, and now Onemata as a successor in interest, damages in an amount to be proven at trial.

## IV.   SECOND CLAIM FOR RELIEF
### Fraudulent Misrepresentation

**A.  Financial Statement Misrepresentations**

48. All of the previous allegations are incorporated as if fully set forth herein.

49. The Stock Purchase Agreement provides the following representations and warranties made by the Defendants:

   a. **Section 3.5:** that no representation or warranty by the Defendants or schedule or documents provided will contain any untrue statement of fact or omit a material fact required to be stated.

b. **Section 4.6:** that the books and financial records of LocalBlox are complete and correct and have been maintained in accordance with sound business practices.

c. **Section 4.7:** that the financial statements Defendants provided "fairly present the financial condition and operations of" LocalBlox and were prepared in accordance with GAAP.

d. **Section 4.8:** that all accounts receivable of LocalBlox reflected in its books and records were current and will be collected in accordance with their terms.

e. **Sections 4.9:** there were no other undisclosed liabilities of LocalBlox.

f. **Section 4.29:** there were no omissions that make any statement misleading or other facts reasonably expected to result in a Material Adverse Change.

50. After the acquisition Enscicon Acquisition, now Onemata, has determined that there are a number of irregularities and outright misrepresentations in the LocalBlox financial statements and in its books and records that were made available for review prior to the closing the Stock Purchase Agreement.

51. The financial statements misrepresent many of the items of long-term revenue as short-term revenue, failing to comply with accrual accounting requirements under Generally Accepted Accounting Principles. Further, the financial statements misrepresented that some of the revenues of LocalBlox included amounts that were payable to the Defendants' separate entities or to the Defendants individually, and which were not, and should not have been, represented as revenues of LocalBlox. The financial statements also claimed many amounts as receivables that the Plaintiff has discovered are entirely uncollectible, including amounts purportedly payable from Device IQ and Interphase totaling $78,000.

52. The liabilities and expenses set forth in the financial statements provided by the Defendants fail to include many liabilities and contractual obligations as set forth above including the ACTON settlement agreement, the Forbes and Managed Chaos agreements, and the inappropriate customer server usage liabilities.

53. These matters constitute violations of Sections 3.5, 4.6, 4.7, 4.8, 4.9, and 4.29 of the Stock Purchase Agreement.

54. The fraudulent misrepresentations by the Defendants with respect to the financial statements set forth above were material and made intentionally and willfully by the Defendants knowing they were false.

55. The fraudulent misrepresentations made by the Defendants as set forth above were material to Enscicon Acquisition's decision to enter into the Stock Purchase Agreement.

56. The fraudulent misrepresentations set forth above were intended by the Defendants that they be relied upon and for Enscicon Acquisition to act on them.  Enscicon Acquisition did in fact act on these misrepresentations.

57. These misrepresentations and the Plaintiff's reasonable reliance has caused Plaintiff damages in an amount to be proven at trial.

**B. <u>Mark Grether Ownership</u>**

58. In the Stock Purchase Agreement, the Defendants represented and warranted as follows:

a. **Section 4.4:**  that the equity interests of LocalBlox consisted of 10,253,808 shares of common stock, owned as set forth in Section 4.4 of the Disclosure Schedule, and there were no outstanding or authorized options, warrants, purchase rights, or other rights to acquire equity.

b. **Section 4.6:** that the books and records of LocalBlox provided to Enscicon Acquisition were complete and correct.

59. In the Disclosure Schedule and capitalization table provided to Enscicon Acquisition on October 28, 2019, the Defendants represented that Mark Grether owns 50,000 shares in LocalBlox. Following the closing, Enscicon Acquisition learned that Mr. Grether claimed to own 100,000 shares in LocalBlox. Mr. Grether now demands compensation for the sale of his shares (which Plaintiff has sought to acquire), in a much greater amount  than Plaintiff reasonably expected based on the purported ownership of 50,000 shares, meaning Plaintiff will now incur significant additional expenses in gaining full ownership of LocalBlox.

60. The Defendants' misrepresentations regarding Mr. Grether's ownership constitutes a violation of the representations and warranties in Sections 4.4 and 4.6 of the Stock Purchase Agreement.

61. The fraudulent misrepresentations by the Defendants with respect to Mr. Grether's ownership set forth above were material and made intentionally and willfully by the Defendants knowing they were false.

62. The fraudulent misrepresentations made by the Defendants as set forth above were material to Enscicon Acquisition's decision to enter into the Stock Purchase Agreement.

63.  The fraudulent misrepresentations set forth above were intended by the Defendants that they be relied upon and for Enscicon Acquisition to act on them. Enscicon Acquisition did in fact act on these misrepresentations.

64. These misrepresentations and Enscicon Acquisition's reasonable reliance has caused Plaintiff damages in an amount to be proven at trial.

## V.   THIRD CLAIM FOR RELIEF
### Fraudulent Inducement – Rescission of Employment Agreement

65. All of the previous allegations are incorporated as if fully set forth herein.

66. As part of the Stock Purchase Agreement, Defendant Rahman entered into an Employment Agreement with LocalBlox dated December 23, 2019. Rahman agreed to be an employee of LocalBlox pursuant to the terms of this agreement.

67. The Employment Agreement, and its consideration, was part of the stock purchase transaction and is inextricably linked with that transaction. Sections 7.2(i), 8.2.1(g) and 8.2.2(b) of the Stock Purchase Agreement explicitly link the agreements and state that the Employment Agreement was a condition and requirement for execution of the Stock Purchase Agreement.

68. As set forth above, the Defendants' conduct in negotiating and executing the Stock Purchase Agreement was attended by circumstances of fraudulent concealment and fraudulent misrepresentations.

69. The fraudulent concealment and fraudulent misrepresentations were material, false and known to be false by the Defendants and were intentionally made in order to induce Enscicon Acquisition into entering into the Stock Purchase Agreement and Defendant Rahman's Employment Agreement. Enscicon Acquisition justifiably relied on the concealments and misrepresentations to its detriment in entering into the Employment Agreement.

70. The Defendants' actions constitute fraudulent inducement under Florida law.

71. Based upon the Defendant's fraudulent inducement in entering into the Employment Agreement, the Plaintiff elects to repudiate and rescind the Employment Agreement.

## VI.   FOURTH CLAIM FOR RELIEF
### Fraudulent Inducement – Rescission of Consulting Agreement

72. All of the previous allegations are incorporated as if fully set forth herein.

73. As part of the Stock Purchase Agreement, Defendant Arefin entered into a Consulting Agreement with LocalBlox dated December 23, 2019. Arefin agreed to be a consultant of LocalBlox pursuant to the terms of this agreement.

74. The Consulting Agreement, and its consideration, was part of the stock purchase transaction and is inextricably linked with that transaction. Sections 7.2(i), 8.2.1(g) and 8.2.2(b) of the Stock Purchase Agreement explicitly link the agreements and state that the Consulting Agreement was a condition and requirement for execution of the Stock Purchase Agreement.

75. As set forth above, the Defendants' conduct in negotiating and executing the Stock Purchase Agreement was attended by circumstances of fraudulent concealment and fraudulent misrepresentations.

76. The fraudulent concealment and fraudulent misrepresentations were material, false and known to be false by the Defendants and were intentionally made in order to induce Enscicon Acquisition into entering into the Stock Purchase Agreement and Defendant Arefin's Consulting Agreement. Enscicon Acquisition justifiably relied on the concealments and misrepresentations to its detriment in entering into the Consulting Agreement.

77. The Defendants' actions constitute fraudulent inducement under Florida law.

78. Based upon the Defendant's fraudulent inducement in entering into the Consulting Agreement, the Plaintiff elects to repudiate and rescind the Consulting Agreement.

## VII.   FIFTH CLAIM FOR RELIEF
### Breach of Contract - Stock Purchase Agreement

79. All of the previous allegations are incorporated as if fully set forth herein

80. Plaintiff has fully performed all of its obligations under the Stock Purchase Agreement.

81. As set forth above, through the Defendants' misrepresentations, concealments, and breaches of the representations, warranties and covenants of the Stock Purchase Agreement they have breached the Stock Purchase Agreement.

82. As a direct result of the Defendants' breach of the Stock Purchase Agreement, the Plaintiff has incurred damages in an amount to be proven at trial.

## VIII.   SIXTH CLAIM FOR RELIEF
### Promissory Estoppel

83. All of the previous allegations are incorporated as if fully set forth herein.

84. During the negotiation and execution of the Stock Purchase Agreement the Defendants made numerous representations, promises, warranties, and covenants as set forth above.

85. The Defendants have concealed and misrepresented material and key facts and issues, both, before and after execution of the Stock Purchase Agreement and Employment Agreement.

86. The Defendants reasonably expected their promises to induce the Plaintiff to enter into the agreements set forth above and in fact did induce the Plaintiff to enter into the agreements.

87. The Defendants violated their promises and representations set forth in the Stock Purchase Agreement.

88. Plaintiff is estopped to deny these promises and representations.

89. Defendants' violation of their promises and representations have caused damages to the Plaintiff in an amount to be proven at trial.

## IX.   SEVENTH CLAIM FOR RELIEF
### Unjust Enrichment

90. All of the previous allegations are incorporated as if fully set forth herein.

91. Defendants have been unjustly enriched by their tortious and fraudulent, conduct as set forth above.

92. Plaintiff has conferred benefits on the Defendants who had knowledge thereof.

93. The Defendants accepted and retained the benefits conferred upon them.

94. The circumstances are such that it would be inequitable for them to retain the benefits without paying the value thereof.

95. Defendants' unjust enrichment includes all monies paid to them under the Stock Purchase Agreement, to be paid to Defendants under the Stock Purchase Agreement, and under the Employment Agreement and Consulting Agreement, and the Equity Interest granted to the Defendants under the Stock Purchase Agreement.

96. Defendants have been unjustly enriched at the Plaintiff's expense and equity requires that all monies and the Equity Interest received by the Defendants be returned to the Plaintiff.

**WHEREFORE** Plaintiff prays this Honorable Court will enter judgment in its favor and against the Defendants on the claims set forth above; to award compensatory damages, and attorney's fees and costs, as allowed by Florida law; and for such other and further relief as shall be deemed appropriate.

Respectfully submitted this 2nd of October, 2020.

**RICE PUGATCH ROBINSON STORFER & COHEN PLLC**

*/s/ Riley W. Cirulnick*
Riley W. Cirulnick
Florida Bar No. 0333270

101 NE 3rd Ave., Suite 1800
Fort Lauderdale, FL 33301
Telephone:  (954) 331-4082
Facsimile: (954) 462-4300
Email: rcirulnick@rprslaw.com

*Attorneys for Plaintiff*

**Verification**

STATE OF _Colorado_  )
                     )
COUNTY OF _Summit_   )

I, William Smith, verify that the foregoing is true and correct to the best of my knowledge and belief.

_____
William Smith for Onemata Corporation

Acknowledged, subscribed, and sworn to before me this ___1___ day of _October_ 2020.

_6·8·22_
My commission expires

_____
Notary Public

JURGITA QUIROS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20184021948
MY COMMISSION EXPIRES 06/08/2022