## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:20-cv-62002-WPD

ONEMATA CORPORATION,

       Plaintiff,

vs.

ASHFAQ RAHMAN, and
SABIRA AREFIN

       Defendants

vs.

WILLIAM SMITH AND ENSCICON
ACQUISITIONS II LLC

       Third-Party Defendants.

_____/

### ASHFAQ RAHMAN'S ANSWER AND AFFIRMATIVE DEFENSES
### TO THE AMENDED COMPLAINT, COUNTERCLAIMS AND
### THIRD PARTY IMPLEADER CLAIMS

Defendant Ashfaq Rahman ("Rahman") answers the Amended Complaint [D.E. 27], asserts affirmative defenses to the Amended Complaint, asserts counterclaims against Onemata Corporation ("Onemata"), and asserts third party impleader claims against William Smith ("Smith") and Enscion Acquisitions II LLC ("Enscion II") , and states as follows:

### ANSWER

### Parties, Jurisdiction, and Venue

1.      Rahman lacks sufficient knowledge and information to form a belief about the truth of whether Onemata is a Colorado corporation and whether its principal place of business is 2420 West 26th Ave., Suite 500-D, Denver, Colorado 80211. Therefore, Rahman denies the allegations in full. Rahman denies all remaining allegations in full.

RAHMAN'S ANSWER, AFFIRMATIVE                    Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

2.      Rahman denies the allegation in full.

3.      Rahman admits this allegation for jurisdiction purposes only.

4.      Rahman admits he entered a Stock Purchase Agreement with Enscicon Acquisition, LLC ("Enscicon") on December 18, 2019 (the "Stock Purchase Agreement") and that Onemata brought claims under the Stock Purchase Agreement. Rahman also admits the Stock Purchase Agreement provides that, "each of the Parties submits to the jurisdiction of the United States District Court for the Southern District of Florida, in any Proceeding arising out of or relating to this Agreement." Rahman lacks sufficient knowledge and information to form a belief about the truth of whether Enscicon is the predecessor in interest to Onemata, and, therefore, denies the allegation in full. Rahman denies all remaining allegations in full.

5.      Rahman admits he a citizen of another state than Onemata and admits that Co-Defendant, Sabira Arefin ("Arefin") is a citizen of another state than Onemata. Rahman lacks sufficient knowledge and information to form a belief about the truth of whether the amount in controversy regarding Onemata's claims exceed $75,000 exclusive of interest and costs, and, therefore, denies the allegation in full. Rahman denies all remaining allegations in full.

6.      Rahman admits jurisdiction and venue are proper. Denies all remaining allegations in full.

## General Allegations

7.      Rahman admits LocalBlox, Inc. ("LocalBlox") is a big data technology company. Rahman denies all remaining allegations in full.

8.      Rahman admits these allegations.

RAHMAN'S ANSWER, AFFIRMATIVE                          Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

9.     Rahman admits Enscicon was required to pay him and Arefin, jointly, two million dollars in cash at closing in consideration for the Stock Purchase Agreement. Rahman also admits Enscicon was required execute a promissory note in his favor in the amount of $457,959.50, a promissory in his favor in the amount of $1,039,454, a promissory note in favor of Arefin in the amount of $457,959.50, a promissory in his favor in Arefin in the amount of $1,039,454, and promissory note in favor of Arefin in the amount of $664,963.86 in consideration for the Stock Purchase Agreement. Rahman additionally admits Enscicon was required to provide Rahman and Arefin 34% ownership interest in Enscicon in consideration for the Stock Purchase Agreement. Rahman further admits his shares in Enscicon were converted to shares of Onemata common stock. Rahman lacks sufficient knowledge and information to form a belief about the truth about merger between Enscicon and Onemata, and, therefore, Rahman denies these allegations in full. Rahman denies Enscicon's affiliates were required to execute one or more promissory notes under the Stock Purchase Agreement. Rahman denies all remaining allegations in full.

10.     Rahman lacks sufficient knowledge and information to form a belief about the truth of whether Enscicon merged into Onemata and whether all legal rights, title, and interest in any legal claims or proceedings were transferred from Enscicon Acquisition to Onemata. Therefore, Rahman denies the allegation in full. Rahman denies all remaining allegations in full.

11.     Rahman admits Section 7.2(i) of the Stock Purchase Agreement provides that, "Each Key employee shall have executed and delivered an employment agreement in the form attached hereto as Exhibit D or a consulting agreement in the form attached hereto as Exhibit E…." Rahman admits Section 2.1 of the Executive Employment Agreement (the "Employment Agreement") provides that, "The Employer hereby employs the Employee, and the Employee

MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246

RAHMAN'S ANSWER, AFFIRMATIVE                          Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

hereby accepts employment by the Employments, upon the terms and conditions set forth in this Agreement." Rahman also admits Section 2.1 of the Consulting Agreement (the "Consulting Agreement") provides that, "The Company hereby employs the Consultant, and the Consultant hereby accepts employment by the Company, upon the terms and conditions set forth in this Agreement." Rahman further admits he executed the Employment Agreement and that Arefin executed the Consulting Agreement. All remaining allegations are denied in full.

12.     Rahman admits the Stock Purchase Agreement contains certain representations and warranties. Rahman denies Enscicon relied on the accuracy and completeness of these representations and warranties. Rahman denies all remaining allegations in full.

13.     Rahman denies all allegations in full.

14.     Rahman lacks sufficient knowledge and information to form a belief about the truth of whether Onemata's and/or Enscicon's investigation is ongoing, and, therefore, denies the allegation in full. Rahman denies making any misrepresentations; denies breaching any warranties or covenants; and denies actively (and passively) concealing any alleged misrepresentation, warranty breach, and covenant breach relating to the SPA. Rahman denies all remaining allegations in full.

a.     Rahman denies making any misrepresentation; denies breaching any warranty; denies breaching any covenant; and denies actively (and passively) concealing any alleged misrepresentation, warranty breach, and covenant breach regarding purported undisclosed LocalBlox contracts and ongoing payment obligations relating to the SPA. Rahman denies all remaining allegations in full.

RAHMAN'S ANSWER, AFFIRMATIVE                    Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

b.      Rahman denies making any misrepresentation; denies breaching any warranty; denies breaching any covenant; and denies actively (and passively) concealing any alleged misrepresentation, warranty breach, and covenant breach regarding LocalBlox's purported engagement in unauthorized and unlawful usage of customer computer servers. Rahman denies all remaining allegations in full.

c.      Rahman denies making any misrepresentation; denies breaching any warranty; denies breaching any covenant; and denies actively (and passively) concealing any alleged misrepresentation, warranty breach, and covenant breach regarding purportedly expending company funds on inappropriate matters including a large distribution to Arefin. Rahman denies all remaining allegations in full.

d.      Rahman denies making any misrepresentation; denies breaching any warranty; denies breaching any covenant; and denies actively (and passively) concealing any alleged misrepresentation, warranty breach, and covenant breach regarding purported undisclosed misrepresentations and irregularities in the financial statements. Rahman denies all remaining allegations in full.

e.      Rahman denies making any misrepresentation; denies breaching any warranty; denies breaching any covenant; and denies actively (and passively) concealing any alleged misrepresentation, warranty breach, and covenant breach regarding the ownership interest of minority shareholder Mark Grether. Rahman denies all remaining allegations in full.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

Case No.: 20-cv-62002-WPD

## 1st Claim for Relief
## Fraudulent Concealment

**A.      Undisclosed Contracts and Payment Obligations**

15.      Rahman incorporates and realleges allegations 1 through 14 above as if fully stated herein.

16.      Rahman admits the Stock Purchase Agreement contains certain representations and warranties. Rahman denies concealing material and important issues from Enscicon during the negotiation and execution of the Stock Purchase Agreement. Rahman also denies breaching any representation or warranty contained in the Stock Purchase Agreement. Rahman further denies all remaining allegations in full.

a.      Rahman admits Section 3.5 of the Stock Purchase provides that, "No representation or warranty by such Seller in Article 3 of this Agreement, nor any schedule, certificate, document, or instrument furnished or to be furnished to Buyer by such Seller in connection therewith, contains or will contain any untrue statement of a fact or omits or will omit to state a fact required to be stated herein or therein or necessary to make any statement herein or therein no misleading." Rahman denies breaching this provision and denies all remaining allegations in full.

b.      Rahman admits Section 4.6 of the Stock Purchase provides that, "The books of account and other financial records of the Company, all of which have been made available to Buyer, are complete and correct, and represent actual, bona fide transactions and have been maintained in accordance with sound business practices." Rahman denies breaching this provision and denies all remaining allegations in full.

c.      Rahman admits Section 4.7 of the Stock Purchase provides that certain financial statements, "fairly present the financial condition and the results of operations of the Company at

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                       Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

the respective dates of and for the periods referred to in such Financial Statements, all in accordance with GAAP (subject to the lack of footnotes and normal year-end adjustments, none of which would be material)." Rahman denies breaching this provision and denies all remaining allegations in full.

d.      Rahman admits Section 4.9 of the Stock Purchase provides that, "Except as set forth on Section 4.9 of the Disclosure Schedule, the Company has no Liabilities, except for (i) Liabilities set forth on the face of the Most Recent Balance Sheet (rather than in any notes thereto) or reserved against in the Most Recent Balance Sheet, (ii) Liabilities for contractual obligations incurred in the Ordinary Course of Business, and (iii) Liabilities which have arisen after November 30, 2019 in the Ordinary Course of Business (none of which results from, arises out of, relates to, is in the nature of, or was caused by any breach of contract, breach of warranty, tort, infringement, or violation of Law)." Rahman denies breaching this provision and denies all remaining allegations in full.

e.      Rahman admits Section 4.10 of the Stock Purchase provides that, "Since November 30, 2019, there has not been any Material Adverse Change, and to the Knowledge of each of the Majority Shareholders no event has occurred or circumstance exists that would reasonably be expected to result in a Material Adverse Change." Rahman denies breaching this provision and denies all remaining allegations in full.

f.      Rahman admits Section 4.15.1 of the Stock Purchase provides that, "Section 4.15.1 of the Disclosure Schedule lists the following Contracts and other agreements to which the Company is a party: (a) any agreement (or group of related agreements) for the lease of personal property to or from any Person providing for lease payments in excess of $10,000 per annum;

7

RAHMAN'S ANSWER, AFFIRMATIVE                    Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

Rahman denies breaching this provision and denies all remaining allegations in full;… (d) any agreement concerning confidentiality or noncompetition;… and (l) any other agreement (or group of related agreements) the performance of which involves consideration in excess of $25,000." Rahman denies breaching this provision and denies all remaining allegations in full.

g.      Rahman admits Section 4.28 of the Stock Purchase provides that, "The Company has no Liability to pay any fees or commissions to any broker, finder, or agent with respect to the transactions contemplated by this Agreement." Rahman denies breaching this provision and denies all remaining allegations in full.

h.      Rahman admits Section 4.29 of the Stock Purchase provides that, "… To the Knowledge of each of the Majority Shareholders, there is no fact, event or circumstance that affects the business, prospects, conditions, affairs or operations of the Company or any of its properties or assets which has not been fully described in this Agreement or the exhibits or schedules hereto, that would reasonably be expected to result in a Material Adverse Change." Rahman denies breaching this provision and denies all remaining allegations in full.

i.      **The ACTON Agreement**

17.     Rahman admits LocalBlox entered a payment agreement with Acton International, Ltd. for a certain sum of money. Rahman denies concealing any fact from Enscicon, denies entering into a payment agreement with Acton International, Ltd. without Enscicon's knowledge, and denies that the agreement was not disclosed to Enscicon. Rahman also denies violating any explicit representations or warranties including those contained within the Stock Purchase Agreement. Rahman additionally denies concealing any fact from Enscison. Rahman denies all remaining allegations in full.

RAHMAN'S ANSWER, AFFIRMATIVE                    Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

18.    Rahman admits he advised Enscicon that LocalBlox had a business relationship with Acton International, Ltd. before the parties entered the Stock Purchase Agreement. Rahman denies concealing any fact from Enscicon including the resolution of a payment dispute between LocalBlox and Acton International, Ltd., denies entering into a payment agreement with Acton International, Ltd. without Enscicon's knowledge, and denies that the agreement was not disclosed to Enscicon. Rahman also denies withholding documents relating to the payment dispute. Rahman further denies that Acton International, Ltd.'s agent, Datastream, was owed any amount including $22,750. Rahman lacks sufficient knowledge and information to form a belief about the truth of whether William Smith of Enscicon executed a personal guarantee for the debt, and, therefore denies the allegation in full. Rahman denies William Smith of Enscicon was required to execute a personal guarantee for the debt. Rahman lacks sufficient knowledge and information to form a belief about the truth of what Enscicon's investigation revealed, and, therefore, denies the allegation in full. Rahman denies all remaining allegations in full.

19.    Rahman denies all allegations in full.

20.    Rahman denies all allegations in full.

21.    Rahman denies all allegations in full.

ii.        **The Forbes and Managed Chaos Broker**

22.    Rahman denies representations and warranties asserted within prior allegations of Onemata's Amended Complaint proved false. Rahman also denies concealing a business agreement between LocalBlox and Managed Chaos Holdings, LLC.  Rahman additionally denies concealing a business agreement between LocalBlox and The Forbes M+A Group. Rahman admits entering agreements with The Forbes M+A Group and Smarter Chaos Holdings, LLC on behalf of

RAHMAN'S ANSWER, AFFIRMATIVE                                  Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

LocalBlox. Rahman admits the agreement with Forbes M+A related to the promotion of LocalBlox. Rahman denies the agreement with Smarter Chaos Holdings, LLC (or Managed Chaos Holdings, LLC) related to the promotion and sale of LocalBlox. Rahman denies these agreements were entered into outside the ordinary course of LocalBlox business. Rahman denies all remaining allegations in full.

23.     Rahman admits LocalBlox was required to pay Smarter Chaos Holdings, LLC a monthly fee of $1,500 and The Forbes M+A Group a monthly fee of $2,500. Rahman denies LocalBlox was required to pay Managed Chaos Holdings, LLC or The Forbes M+A Group any transaction fee including $200,000. Rahman denies all remaining allegations in full.

24.     Rahman denies all allegations in full.

25.     Rahman denies all allegations in full.

26.     Rahman denies all allegations in full.

**iii.     <u>The Datastream Contract</u>**

27.     Rahman admits December 12, 2019 is six days before December 18, 2019. Rahman admits he executed a contract on behalf of LocalBlox with Datastream Group, Inc. to acquire X-Mode Data (more particularly known as an SSID feed). Rahman denies concealing this contract from Enscicon, denies concealing the contract terms from Enscicon, and denies concealing the relationship from Enscicon. Rahman also denies the LocalBlox/Datastream Group, Inc. contract prohibits LocalBlox from providing X-Mode Data to certain entities including LocalBlox customers. Rahman denies that LocalBlox provided any X-Mode Data to some of its customers including Safegraph/VerSet before the parties executed the Stock Purchase Agreement in connection with the December 12, 2019 agreement. Rahman denies providing X-Mode Data in its

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                                Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

pristine format to LocalBlox customers and denies that the provision of X-Mode Data to LocalBlox customers violated the December 12, 2019 agreement with Datastream Group, Inc. Rahman lacks sufficient knowledge and information to form a belief about the truth of whether X-Mode threatened a lawsuit, and, therefore, Rahman denies the allegation in full. Rahman denies violating any agreement regarding X-Mode Data. Rahman admits he agreed to personally pay X-Mode Social, Inc. $127,000 to resolve any alleged disputes arising after the parties entered the Stock Purchase Agreement even though he was not required to do so, and further admits to personally paying X-Mode Social, Inc. $127,000 to resolve all alleged disputes (arising after the parties entered the Stock Purchase Agreement). Rahman denies concealing any settlement agreement concerning X-Mode Data and their terms from LocalBlox or Enscicon. Rahman denies all remaining allegations in full.

### iv.    Other Liabilities

28.    Rahman lacks sufficient knowledge and information to form a belief about the truth of what Onemata discovered after the Stock Purchase Agreement closed, and, therefore denies the allegation in full. Rahman denies Onemata discovered fraud after the Stock Purchase Agreement closed. Rahman admits LocalBlox used Amazon webservers to process data. Rahman lacks sufficient knowledge and information to form a belief about the truth on the exact Amazon services Onemata is referring, and, therefore denies the allegation in full Rahman admits setting-up new servers and transferring data to these new servers. However, Rahman denies the purpose for setting-up new servers and transferring data to these new servers was to avoid paying Amazon. Rahman denies all remaining allegations in full.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

Case No.: 20-cv-62002-WPD

29.    Rahman lacks sufficient knowledge and information to form a belief about the truth of what was revealed after the Stock Purchase Agreement closed, and therefore denies the allegation in full. Rahman denies concealing any fact from Enscicon before the Stock Purchase Agreement closed. Rahman also denies LocalBlox owed considerable amounts for professional services. Rahman additionally denies that LocalBlox owed Embark Consulting $15,000 before the Stock Purchase Agreement closed, and denies this amount was concealed from Enscicon. Rahman lacks sufficient knowledge and information to form a belief about the truth of what Onemata's beliefs are, and, therefore, denies the allegation in full. Rahman denies all remaining allegations in full.

30.    Rahman denies all allegations in full.

31.    Rahman denies all allegations in full.

32.    Rahman denies all allegations in full.

**B.    <u>Customer Service Usage</u>**

33.     Rahman admits the Stock Purchase Agreement contains certain representations and warranties. Rahman denies breaching any representation or warranty and denies all remaining allegations in full.

a.    Rahman admits Section 4.6 of the Stock Purchase provides that, "The books of account and other financial records of the Company, all of which have been made available to Buyer, are complete and correct, and represent actual, bona fide transactions and have been maintained in accordance with sound business practices." Rahman denies breaching this provision and denies all remaining allegations in full.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE            Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

b.       Rahman admits Section 4.7 of the Stock Purchase provides that certain financial statements, "fairly present the financial condition and the results of operations of the Company at the respective dates of and for the periods referred to in such Financial Statements, all in accordance with GAAP (subject to the lack of footnotes and normal year-end adjustments, none of which would be material)." Rahman denies breaching this provision and denies all remaining allegations in full.

c.       Rahman admits Section 4.9 of the Stock Purchase provides that, "Except as set forth on Section 4.9 of the Disclosure Schedule, the Company has no Liabilities, except for (i) Liabilities set forth on the face of the Most Recent Balance Sheet (rather than in any notes thereto) or reserved against in the Most Recent Balance Sheet, (ii) Liabilities for contractual obligations incurred in the Ordinary Course of Business, and (iii) Liabilities which have arisen after November 30, 2019 in the Ordinary Course of Business (none of which results from, arises out of, relates to, is in the nature of, or was caused by any breach of contract, breach of warranty, tort, infringement, or violation of Law)." Rahman denies breaching this provision and denies all remaining allegations in full.

d.       Rahman admits Section 4.11 of the Stock Purchase provides that, "Except for properties and assets disposed of or consumed in the Ordinary Course of Business since November 30, 2019, the Company has good and marketable title (free and clear of all Security Interests) to, or a valid leasehold interest in, the properties and assets (a) shown on the Most Recent Balance Sheet, (b) acquired by the Company since the date of the Most Recent Balance Sheet, and (c) used by it or necessary to operate the business of the Company as presently conducted." Rahman denies breaching this provision and denies all remaining allegations in full.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

Case No.: 20-cv-62002-WPD

e.    Rahman admits Section 4.13.6 of the Stock Purchase provides that, "The computer systems, including the software, firmware, hardware, internal networks, interfaces, platforms and related systems currently used in the Business (collectively, 'Systems') are sufficient for the operation of the Business in the Ordinary Course of Business." Rahman denies breaching this provision and denies all remaining allegations in full.

f.    Rahman admits Section 4.18 of the Stock Purchase provides that, "Except as set forth in Section 4.18 of the Disclosure Schedule, the Company is in compliance with, and at all times has complied with, all applicable Laws, and no Proceeding has been filed or commenced against the Company alleging any failure so to comply." Rahman also admits Section 6.2 (h) of the Stock Purchase provides that, "comply with all requirements of any laws and contractual obligations applicable to the operations of their business." Rahman denies breaching these provisions and denies all remaining allegations in full.

g.    Rahman admits Section 4.29 of the Stock Purchase provides that, "… To the Knowledge of each of the Majority Shareholders, there is no fact, event or circumstance that affects the business, prospects, conditions, affairs or operations of the Company or any of its properties or assets which has not been fully described in this Agreement or the exhibits or schedules hereto, that would reasonably be expected to result in a Material Adverse Change." Rahman denies breaching this provision and denies all remaining allegations in full.

34.    Rahman denies all allegations in full.

35.    Rahman denies all allegations in full.

36.    Rahman denies all allegations in full.

37.    Rahman denies all allegations in full.

14

RAHMAN'S ANSWER, AFFIRMATIVE          Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

38.      Rahman denies all allegations in full.

39.      Rahman denies all allegations in full.

40.      Rahman denies all allegations in full.

**C.**      **Pre-Closing Payments and Actions**

41.      Rahman admits the Stock Purchase Agreement contains certain representations. Rahman denies breaching any representation and denies all remaining allegations in full.

a.      Rahman admits Section 4.9 of the Stock Purchase provides that, "Except as set forth on Section 4.9 of the Disclosure Schedule, the Company has no Liabilities, except for (i) Liabilities set forth on the face of the Most Recent Balance Sheet (rather than in any notes thereto) or reserved against in the Most Recent Balance Sheet, (ii) Liabilities for contractual obligations incurred in the Ordinary Course of Business, and (iii) Liabilities which have arisen after November 30, 2019 in the Ordinary Course of Business (none of which results from, arises out of, relates to, is in the nature of, or was caused by any breach of contract, breach of warranty, tort, infringement, or violation of Law)." Rahman denies breaching this provision and denies all remaining allegations in full.

b.      Rahman admits Section 4.10 of the Stock Purchase provides that, "Since November 30, 2019, there has not been any Material Adverse Change, and to the Knowledge of each of the Majority Shareholders no event has occurred or circumstance exists that would reasonably be expected to result in a Material Adverse Change." Rahman denies breaching this provision and denies all remaining allegations in full.

c.      Rahman admits Section 4.29 of the Stock Purchase provides that, "… To the Knowledge of each of the Majority Shareholders, there is no fact, event or circumstance that affects

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                          Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

the business, prospects, conditions, affairs or operations of the Company or any of its properties

or assets which has not been fully described in this Agreement or the exhibits or schedules hereto,

that would reasonably be expected to result in a Material Adverse Change." Rahman denies

breaching this provision and denies all remaining allegations in full.

42.     Rahman admits the Stock Purchase Agreement contains certain covenants. Rahman

denies breaching any covenant and denies all remaining allegations in full.

a.     Rahman admits Section 6.2 (a) of the Stock Purchase provides that, "Between the

date of this Agreement and the Closing, the Company shall (and the Sellers shall cause the

Company to): conduct the Business only in the Ordinary Course of Business." Rahman denies

breaching this provision and denies all remaining allegations in full.

b.     Rahman admits Section 6.2 (f) of the Stock Purchase provides that, "Between the

date of this Agreement and the Closing, the Company shall (and the Sellers shall cause the

Company to):… maintain the Company's assets, rights and properties." Rahman denies breaching

this provision and denies all remaining allegations in full.

c.     Rahman admits Section 6.2 (k) of the Stock Purchase provides that, "Between the

date of this Agreement and the Closing, the Company shall (and the Sellers shall cause the

Company to):… not change any salaries, wages or other pay (including bonuses) of the Company's

Employees." Rahman denies breaching this provision and denies all remaining allegations in full.

d.     Rahman admits Section 6.5 of the Stock Purchase provides that, "Each Party will

give prompt written notice to the other Parties of any material adverse development causing a

breach of any of such Party's representations and warranties herein." Rahman denies breaching

this provision and denies all remaining allegations in full.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

43.     Rahman denies all allegations in full.

44.     Rahman denies all allegations in full.

45.     Rahman denies all allegations in full.

a.     Rahman denies this allegation in full.

b.     Rahman denies this allegation in full.

c.     Rahman denies this allegation in full.

d.     Rahman denies this allegation in full.

e.     Rahman denies this allegation in full.

f.     Rahman denies this allegation in full.

46.     Rahman denies all allegations in full.

47.     Rahman denies all allegations in full.

48.     Rahman denies all allegations in full.

49.     Rahman denies all allegations in full.

WHEREFORE, Defendant Ashfaq Rahman respectfully requests that the Court enter judgment in his favor and against Onemata Corporation. Defendant Ashfaq Rahman also respectfully requests that the Court enter Final Judgment determining that Onemata Corporation take nothing and that Rahman be awarded his costs along with all prejudgment and post-judgment on such costs.

**2nd Claim for Relief**
**Fraudulent Misrepresentation**

A.     **Financial Statement Misrepresentation**

50.     Rahman incorporates and realleges allegations 1 through 49 above (including all subparts) as if fully stated herein.

17

RAHMAN'S ANSWER, AFFIRMATIVE        Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

51.     Rahman admits the Stock Purchase Agreement contains certain representations and warranties. Rahman denies breaching any representation or warranty and denies all remaining allegations in full.

a.     Rahman admits Section 3.5 of the Stock Purchase provides that, "No representation or warranty by such Seller in Article 3 of this Agreement, nor any schedule, certificate, document, or instrument furnished or to be furnished to Buyer by such Seller in connection therewith, contains or will contain any untrue statement of a fact or omits or will omit to state a fact required to be stated herein or therein or necessary to make any statement herein or therein no misleading." Rahman denies breaching this provision and denies all remaining allegations in full.

b.     Rahman admits Section 4.6 of the Stock Purchase provides that, "The books of account and other financial records of the Company, all of which have been made available to Buyer, are complete and correct, and represent actual, bona fide transactions and have been maintained in accordance with sound business practices." Rahman denies breaching this provision and denies all remaining allegations in full.

c.     Rahman admits Section 4.7 of the Stock Purchase provides that certain financial statements, "fairly present the financial condition and the results of operations of the Company at the respective dates of and for the periods referred to in such Financial Statements, all in accordance with GAAP (subject to the lack of footnotes and normal year-end adjustments, none of which would be material)." Rahman denies breaching this provision and denies all remaining allegations in full.

d.     Rahman admits Section 4.8 of the Stock Purchase provides that, "All notes and accounts receivable of the Company which are reflected in the books and records of the Company,

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

Case No.: 20-cv-62002-WPD

are valid receivables subject to no setoffs or counterclaims, are current and will be collected in accordance with their terms at their recorded amounts, subject only to the reserve for bad debts (if any, and as finally determined in accordance with Section 2.3), within 90 days of the date they were incurred." Rahman denies breaching this provision and denies all remaining allegations in full.

e.       Rahman admits Section 4.9 of the Stock Purchase provides that, "Except as set forth on Section 4.9 of the Disclosure Schedule, the Company has no Liabilities, except for (i) Liabilities set forth on the face of the Most Recent Balance Sheet (rather than in any notes thereto) or reserved against in the Most Recent Balance Sheet, (ii) Liabilities for contractual obligations incurred in the Ordinary Course of Business, and (iii) Liabilities which have arisen after November 30, 2019 in the Ordinary course of Business (none of which results from, arises out of, relates to, is in the nature of, or was caused by any breach of contract, breach of warranty, tort, infringement, or violation of Law)." Rahman denies breaching this provision and denies all remaining allegations in full.

f.       Rahman admits Section 4.29 of the Stock Purchase provides that, "… To the Knowledge of each of the Majority Shareholders, there is no fact, event or circumstance that affects the business, prospects, conditions, affairs or operations of the Company or any of its properties or assets which has not been fully described in this Agreement or the exhibits or schedules hereto, that would reasonably be expected to result in a Material Adverse Change." Rahman denies breaching this provision and denies all remaining allegations in full.

52.      Rahman admits LocalBlox made its financial statements and books and records available to Enscison before the parties entered the Stock Purchase Agreement. Rahman lacks

19

RAHMAN'S ANSWER, AFFIRMATIVE                                  Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

sufficient knowledge and information to form a belief about the truth of whether Onemata and/or

Enscicon determined LocalBlox's financial statements and books and records contain a number of

irregularities and outright misrepresentations, and, therefore, denies the allegation in full. Rahman

denies LocalBlox's financial statements and books and records contain any irregularity or

misrepresentation. Rahman denies all remaining allegations in full.

53.     Rahman lacks sufficient knowledge and information to form a belief about the truth

of whether Onemata learned a $1.3mm promissory note on the LocalBlox balance sheet reflected

a fraudulent note payable to the Defendants, and, therefore, denies the allegation in full. Rahman

denies the LocalBlox balance sheet reflected a fraudulent note payable anyone. Rahman also

denies fraudulently preparing and backdating a promissory note to show an obligation owed to

him by LocalBlox. Rahman additionally denies that LocalBlox did not owe him money due under

the alleged promissory note. Rahman denies all remaining allegations in full.

54.     Rahman denies that LocalBlox's financial statements misrepresent items of long-

term revenue as short-term revenue, do not comply with accrual accounting requirements under

Generally Accepted Accounting Principles, misrepresent revenues that were payable to the

Defendants' separate entities or to the Rahman individually, and misrepresent receivable amounts

(including amounts from Device IQ and Interphase totaling $78,000) that are uncollectable.

Rahman denies all remaining allegations in full.

55.     Rahman denies all allegations in full.

56.     Rahman denies all allegations in full.

57.     Rahman denies all allegations in full.

58.     Rahman denies all allegations in full.

RAHMAN'S ANSWER, AFFIRMATIVE           Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

59.       Rahman denies all allegations in full.

60.       Rahman denies all allegations in full.

**B.**       **<u>Mark Grether Ownership</u>**

61.       Rahman admits the Stock Purchase Agreement contains certain representations and warranties. Rahman denies breaching any representation or warranty and denies all remaining allegations in full.

a.       Rahman admits Section 4.4 of the Stock Purchase provides that, "The entire authorized equity interests of the Company consists solely of 10,253,808 shares of common stock, all of which are issued and outstanding, to the Persons and in the amounts set forth in Section 4.4 of the Disclosure Schedule …There are no outstanding or authorized options, warrants, purchase rights, subscription rights, conversion rights, exchange rights, or other Contracts or commitments that could require the Company to issue, sell, or otherwise cause to become outstanding any of its equity membership interests." Rahman denies breaching this provision and denies all remaining allegations in full.

b.       Rahman admits Section 4.6 of the Stock Purchase provides that, "The books of account and other financial records of the Company, all of which have been made available to Buyer, are complete and correct, and represent actual, bona fide transactions and have been maintained in accordance with sound business practices." Rahman denies breaching this provision and denies all remaining allegations in full.

62.       Rahman admits the Disclosure Schedule to Stock Purchase Agreement Dated December 18, 2019 By and Among Enscicon Acquisitions LLC, Sabira Arefin, Ashfaq Rahman and LocalBlox Inc. regarding Section 4.4 of the Stock Purchase Agreement indicates Mark Gether

RAHMAN'S ANSWER, AFFIRMATIVE
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

Case No.: 20-cv-62002-WPD

holds 50,000 shares of LocalBlox Inc. stock. Rahman lacks sufficient knowledge and information to form a belief about the truth of whether Enscicon learned Mr. Grether claimed to own 100,000 shares in LocalBlox, and, therefore, Rahman denies the allegation in full. Rahman also lacks sufficient knowledge and information to form a belief about the truth of whether Mr. Grether demands compensation for the sale of his shares whether Onemata sought to acquire Mr. Grether's shares, and, therefore, denies these allegations in full. Rahman denies Onemata will incur significant additional expenses in gaining full ownership of LocalBlox. Rahman denies all remaining allegations in full.

63.    Rahman denies all allegations in full.

64.    Rahman denies all allegations in full.

65.    Rahman denies all allegations in full.

66.    Rahman denies all allegations in full.

67.    Rahman denies all allegations in full.

WHEREFORE, Defendant Ashfaq Rahman respectfully requests that the Court enter judgment in his favor and against Onemata Corporation. Defendant Ashfaq Rahman also respectfully requests that the Court enter Final Judgment determining that Onemata Corporation take nothing and that Rahman be awarded his costs along with all prejudgment and post-judgment on such costs.

### 3rd Claim for Relief
### Fraudulent Inducement – Recession of Employment Agreement

68.    Rahman incorporates and realleges allegations 1 through 67 above (including all subparts) as if fully stated herein.

RAHMAN'S ANSWER, AFFIRMATIVE Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

69. Rahman admits he entered an Employment Agreement with LocalBlox, and that Section 2.1 of the Employment Agreement provides that, "Employer hereby employs the Employee, and the Employee hereby accepts employment by the Employments, upon the terms and conditions set forth in this Agreement." Rahman denies all remaining allegations in full.

70. Rahman lacks sufficient knowledge and information to form a belief about the truth of whether the Employment Agreement and its consideration were part of the stock purchase transaction and is inextricably linked with that transaction. Therefore, Rahman denies the allegations in full. Rahman also lacks sufficient knowledge and information to form a belief about the truth of whether Section 7.2 (i), 8.2.1 (g), and 8.2.2 (b) of the Stock Purchase Agreement explicitly link the agreement and state that the Employment Agreement was a condition and requirement for execution of the Stock Purchase Agreement. Therefore, Rahman denies the allegations in full. Rahman denies all remaining allegations in full.

71. Rahman denies all allegations in full.

72. Rahman denies all allegations in full.

73. Rahman denies all allegations in full.

74. Rahman lacks sufficient knowledge and information to form a belief about the truth of whether Onemata elects contract repudiation and/or rescission as a remedy in this lawsuit, and, therefore, denies the allegation in full. Rahman denies Onemata is entitled to any remedy in this lawsuit including repudiation and recession. Rahman denies all remaining allegations in full.

WHEREFORE, Defendant Ashfaq Rahman respectfully requests that the Court enter judgment in his favor and against Onemata Corporation. Defendant Ashfaq Rahman also respectfully requests that the Court enter Final Judgment determining that Onemata Corporation

RAHMAN'S ANSWER, AFFIRMATIVE                    Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

take nothing and that Rahman be awarded his costs along with all prejudgment and post-judgment on such costs.

### 4th Claim for Relief
### Fraudulent Inducement – Rescission of Consulting Agreement

75.     Rahman incorporates and realleges allegations 1 through 67 above (including all subparts) as if fully stated herein.

76.     Rahman admits Arefin entered a Consulting Agreement with LocalBlox. Rahman also admits Section 2.1 of the Consulting Agreement provides that, "The Company hereby employs the Consultant, and the Consultant hereby accepts employment by the Company, upon the terms and conditions set forth in this Agreement." Rahman lacks sufficient knowledge and information to form a belief about the truth of whether Arefin agreed to be a consultant of LocalBlox pursuant to the terms of the Consulting Agreement, and, therefore, denies the allegation in full. Rahman denies all remaining allegations in full.

77.     Rahman lacks sufficient knowledge and information to form a belief about the truth of whether the Consulting was part of the stock purchase transaction and is inextricably linked with that transaction. Therefore, Rahman denies the allegations in full. Rahman also lacks sufficient knowledge and information to form a belief about the truth of whether Section 7.2 (i), 8.2.1 (g), and 8.2.2 (b) of the Stock Purchase Agreement inexplicably link the agreement and state that the Consulting Agreement was a condition and requirement for execution of the Stock Purchase Agreement. Therefore, Rahman denies the allegations in full. Rahman denies all remaining allegations in full.

78.     Rahman denies all allegations in full.

79.     Rahman denies all allegations in full.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

Case No.: 20-cv-62002-WPD

80.     Rahman denies all allegations in full.

81.     Rahman lacks sufficient knowledge and information to form a belief about the truth of whether Onemata elects contract repudiation and/or rescission as a remedy in this lawsuit, and, therefore, denies the allegation in full. Rahman denies Onemata is entitled to any remedy in this lawsuit including repudiation and recession. Rahman denies all remaining allegations in full.

WHEREFORE, Defendant Ashfaq Rahman respectfully requests that the Court enter judgment in his favor and against Onemata Corporation. Defendant Ashfaq Rahman also respectfully requests that the Court enter Final Judgment determining that Onemata Corporation take nothing and that Rahman be awarded his costs along with all prejudgment and post-judgment on such costs.

**5th Claim for Relief**
**Breach of Contract – Stock Purchase Agreement**

82.     Rahman incorporates and realleges allegations 1 through 81 above (including all subparts) as if fully stated herein.

83.     Rahman denies all allegations in full.

84.     Rahman denies all allegations in full.

85.     Rahman denies all allegations in full.

WHEREFORE, Defendant Ashfaq Rahman respectfully requests that the Court enter judgment in his favor and against Onemata Corporation. Defendant Ashfaq Rahman also respectfully requests that the Court enter Final Judgment determining that Onemata Corporation take nothing and that Rahman be awarded his attorneys' fees and costs along with all prejudgment and post-judgment on such fees and costs.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                     Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

### 6th Claim for Relief
### Promissory Estoppel

86.     Rahman incorporates and realleges allegations 1 through 85 above (including all subparts) as if fully stated herein.

87.     Rahman denies all allegations in full.

88.     Rahman denies all allegations in full.

89.     Rahman denies all allegations in full.

90.     Rahman denies all allegations in full.

91.     Rahman denies all allegations in full.

92.     Rahman denies all allegations in full.

WHEREFORE, Defendant Ashfaq Rahman respectfully requests that the Court enter judgment in his favor and against Onemata Corporation. Defendant Ashfaq Rahman also respectfully requests that the Court enter Final Judgment determining that Onemata Corporation take nothing and that Rahman be awarded his costs along with all prejudgment and post-judgment on such costs.

### 7th Claim for Relief
### Unjust Enrichment

93.     Rahman incorporates and realleges allegations 1 through 92 above (including all subparts) as if fully stated herein.

94.     Rahman denies all allegations in full.

95.     Rahman denies all allegations in full.

96.     Rahman denies all allegations in full.

97.     Rahman denies all allegations in full.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                                    Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

98.     Rahman denies all allegations in full.

99.     Rahman denies all allegations in full.

WHEREFORE, Defendant Ashfaq Rahman respectfully requests that the Court enter judgment in his favor and against Onemata Corporation. Defendant Ashfaq Rahman also respectfully requests that the Court enter Final Judgment determining that Onemata Corporation take nothing and that Rahman be awarded his costs along with all prejudgment and post-judgment on such costs.

## AFFIRMATIVE DEFENSES

Affirmative Defenses One: Onemata failed to state claims for fraudulent concealment, fraudulent misrepresentation, and fraudulent inducement because it was not induced into the Stock Purchase Agreement. Onemata's predecessor in interest, Enscicon, requested an extensive and meaningful due diligence period before the parties consummated the Stock Purchase Agreement. Rahman authorized Enscicon to review all LocalBlox books and records and did not prohibit or impede review of any documents. Rahman provided Enscicon with a "data-room" digital storage device containing all relevant LocalBlox records. Rahman also provided Enscicon with additional documents not contained in the data-room such as financial statements. Thus, Enscicon had access to all LocalBlox documents including financial statements, data and documents underlying and supporting all financial statements, vendor contracts, customer contracts, and shareholder records before the parties entered into the Stock Purchase Agreement. Enscicon had sole discretion to determine whether to enter the Stock Purchase Agreement at the end of the due diligence period and decided to enter the Stock Purchase Agreement without conducting adequate due diligence or investigations. Onemata cannot therefore claim Rahman fraudulently induced it into the Stock Purchase Agreement because Enscicon failed to conduct mandatory due diligence and investigations prior to entering the Stock Purchase Agreement.

Affirmative Defenses Two: Onemata failed to state claims for fraudulent concealment, fraudulent misrepresentation, and fraudulent inducement because Enscicon did not reasonably rely on the representations, warranties, and covenants contained within the Stock Purchase Agreement. Onemata's predecessor in interest, Enscicon, requested an extensive due diligence period before the parties consummated the Stock Purchase Agreement. Rahman authorized Enscicon to review all LocalBlox books and records and did not prohibit or impede review of any documents. Rahman provided Enscicon with a "data-room" digital storage device containing all relevant LocalBlox records. Rahman also provided Enscicon with additional documents not contained in the data-

27
**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                          Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

room such as financial statements and bank account record. Thus, Enscicon had access to all LocalBlox documents including financial statements, data and documents underlying and supporting all financial statements, vendor contracts, customer contracts, and shareholder records before the parties entered the Stock Purchase Agreement. Enscicon had sole discretion to determine whether to enter the Stock Purchase Agreement at the end of the due diligence period and decided to enter the Stock Purchase Agreement without conducting adequate due diligence or investigations. Onemata cannot therefore claim it reasonably relied on any false representation, warranty, or covenant contained within the Stock Purchase Agreement because Enscicon failed to conduct mandatory due diligence and investigations prior to entering the Stock Purchase Agreement.

Affirmative Defenses Three: Onemata failed to state claims for fraudulent concealment, fraudulent misrepresentation, and fraudulent inducement because Rahman had no affirmative obligation to disclose facts within Enscicon's control. Rahman and Enscicon entered an arm's length transaction in which no party was a fiduciary of the other. Based on these circumstances, nondisclosure of material facts is not an actionable misrepresentation because Rahman did not employ an artifice or trick to prevent Enscicon from making further independent inquiry or discovering the truth of any matter. To the contrary, Rahman provided Enscicon with the "data-room" containing all relevant information and provided supplemental documents before the parties entered into the Stock Purchase Agreement.  Enscicon failed to review the information, investigate the information, make inquiry into the information. Therefore, Onemata's fraud claims fail.

Affirmative Defenses Four: Onemata failed to state claims for fraudulent concealment, fraudulent misrepresentation, fraudulent inducement, breach of contract, promissory estoppel, and unjust enrichment because Enscicon fraudulently induced Rahman into the Stock Purchase Agreement. Enscicon represented and "expressly acknowledged that it is sufficiently experienced to determine the risks inherent in this transaction." Rahman reasonably relied on this representation when he entered the Stock Purchase Agreement and would not have entered the Stock Purchase Agreement had he known the representation was false.

Enscicon did not determine the risks inherent with the Stock Purchase Agreement because it was unable or unwilling to conduct adequate due diligence and investigations in connection with entering the Stock Purchase Agreement.  Enscicon failed to adequality review, examine, analyze, and research foundational financial matters underlying the transaction despite the provision of all relevant books and records necessary to facilitate Enscicon's due diligence and investigations. Rahman provided Enscicon with a "data-room" digital storage device containing all relevant LocalBlox records. Rahman also provided Enscicon with additional documents not contained in the data-room such as financial statements. LocalBlox and Rahman did not prohibit or otherwise impede Enscicon from reviewing any additional documents. However, Enscicon failed to conduct

RAHMAN'S ANSWER, AFFIRMATIVE                                     Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

the due diligence and investigations needed to enter a complicated transaction such as the Stock Purchase Agreement. Rahman was therefore fraudulently induced into the Stock Purchase Agreement based on Enscicon's false representation that is was sufficiently capable and experienced to determine the risks associated with the Stock Purchase Agreement. Therefore, the Stock Purchase Agreement should be rescinded or Rahman should be awarded damages resulting therefrom.

Affirmative Defenses Five: Onemata failed to state claims for fraudulent concealment, fraudulent misrepresentation, fraudulent inducement, breach of contract, promissory estoppel, and unjust enrichment because Enscicon fraudulently induced Rahman into the Stock Purchase Agreement. Enscicon offered to purchase Rahman's equity interest in LocalBlox. William Smith ("Smith"), acting as an agent for Enscicon, courted Rahman by flying to Boca Raton, Florida in November 2019 to discuss the terms and conditions of the sale. Smith stayed in Rahman's Boca Raton, Florida Home for at least two days while the parties discussed the sale of LocalBlox.  During the in-home discussions, Smith misrepresented that Rahman was integral to LocalBlox's success and promised to keep Rahman onboard as an important member of the team. Smith also misrepresented that Rahman would remain a vital part of LocalBlox because Rahman was the only person capable of understanding and enhancing the company's technology.  Rahman reasonably relied on these representations when he entered the Stock Purchase Agreement because he knew the only way to sell LocalBlox and benefit from LocalBlox's future success was to remain a critical part of the company.  Smith flew back to his home state of Colorado and continued to discuss the purchase of LocalBlox's equity with Rahman over the phone and through email correspondence throughout November 2019 and December 2019. During these conversations, Smith continued to misrepresent that Rahman was integral to LocalBlox's success and promised to keep Rahman onboard as a critical member of the team. Smith then met Rahman in his Washington home and reiterated the same misrepresentations. However, Enscicon never intended to retain Rahman in any meaningful capacity once the acquisition of LocalBlox stock was complete and LocalBlox technology was sufficiently integrated with Enscicon. Enscicon knew at the time it made the above misrepresentations that it would terminate Rahman's employment with LocalBlox, oust Rahman from the company he founded, and refuse to pay Rahman for his LocalBlox equity. Ten months after Rahman entered the Stock Purchase Agreement, Enscicon contrived this lawsuit against Rahman as a pretext for terminating his employment, ousting Rahman from the company, and refusing to pay Rahman for the LocalBlox Equity.

Affirmative Defenses Six: Onemata failed to state claims for fraudulent concealment, fraudulent misrepresentation, fraudulent inducement, breach of contract, promissory estoppel, and unjust enrichment because Enscicon fraudulently induced Rahman into the Stock Purchase Agreement. Enscicon offered to purchase Rahman's equity interest in LocalBlox through a letter of intent. The letter of intent authorized Enscicon to conduct due diligence through the date the parties finalized

RAHMAN'S ANSWER, AFFIRMATIVE                              Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

the equity sale of LocalBlox and required LocalBlox to make its business records and other documents available for review and inspection. At the end of the due diligence period, Smith had the unbridled right to walk away from the deal.  Rahman fully cooperated by providing Enscicon with the relevant due diligence documents to allow a thorough investigation.  Enscicon never objected to or expressed a problem with LocalBlox's documentation before closing.  Despite reviewing, studying, and knowing the content of LocalBlox's records and information in the almost 7-week due diligence period, Enscicon always intended to use LocalBlox's books and records to manufacture a lawsuit against Rahman for material misrepresentations to avoid paying Rahman to full value of the LocalBlox equity.

Rahman provided Enscicon with a data-room of digital files containing most documents regarding LocalBlox's business and provided supplemental document before the parties entered the Stock Purchase Agreement. Rahman also provided Enscicon with additional documents not contained in the data room such as financial statements and bank account records.  Rahman provided the data-room and additional documents to ensure Enscicon had all relevant information needed to make an informed decision regarding the purchase of LocalBlox equity. Enscicon reviewed the data-room and other documents provided by Rahman but secretly intended to allege it remained ignorant to any facts that might dissuade Enscicon from purchasing the LocalBlox equity. Rahman signed the Stock Purchase Agreement in reliance on Enscion's representations and outward behavior above. LocalBlox's technology was then integrated with Enscicon Once complete, Enscicon contrived this lawsuit against Rahman as a pretext for terminating his employment, ousting Rahman from the company, and refusing to pay Rahman for the LocalBlox Equity.

Affirmative Defenses Seven: Onemata failed to state claims for breach of contract because it failed to comply with conditions precedent requiring the parties to reconcile the purchase price based on the value of LocalBlox. Section 2.3 *et seq.* of the Stock Purchase Agreement requires Enscicon to submit a schedule of the actual Closing Purchase Price to Rahman "reflecting [Enscicon]'s calculation of Net Working Capital and Transaction Expenses as of the Closing Date." Rahman (and Arefin) were then required to pay Enscicon the difference between the Estimated Closing Price and the Closing Purchase Price if the Estimated Closing Price exceeded the Closing Purchase Price. However, Enscicon failed to comply with the condition precedent because it never submitted a schedule of the actual Closing Purchase Price to Rahman as required by the Stock Purchase Agreement. As a result, Onemata prohibited Rahman from adjusting the purchase price for any alleged or perceived fraud thereby avoiding this lawsuit. Submission of the schedule under the Stock Purchase Agreement was thus a mandatory condition precedent to bringing this lawsuit and Enscicon's failure to comply with the provision prohibits Onemata from asserting claims against Rahman.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                                    Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

Affirmative Defenses Eight: Onemata failed to state claims for breach of contract because it failed to comply with conditions precedent requiring the parties to reconcile the principal amount of the Revenue Quality Note based on LocalBlox's revenues through 2025. Section 2.4 *et seq.* of the Stock Purchase Agreement requires the parties to automatically reduce the principal amount of the Revenue Quality Note by "the amount by which actual Revenues for each of the five calendar years beginning 2020… are less than the 'Target Revenue'". *See also* Revenue Quality Note p. 1 (requiring a reduction in the value of the note under certain circumstances relating to actual revenues and target revenues). Therefore, Onemata was required to reduce the principal amount of the Revenue Quality Note by the amount Rahman's alleged fraudulent concealments, misrepresentations, inducements transfers, or expenditures caused actual revenues to decrease target revenues. Onemata was required to reduce the principal amount as a conditions precedent to bringing this lawsuit. However, Onemata failed to reduce the principal amount of the Revenue Quality Note before bringing this lawsuit and is thus prohibited from asserting its claims against Rahman.

Affirmative Defenses Nine: Onemata failed to state claims for unjust enrichment and promissory estoppel because an express contract exits. The parties' conduct was governed by the Stock Purchase Agreement, which is a written contract signed by all parties. Therefore, Onemata's claims for unjust enrichment and promissory estoppel fail as a matter of law.

Affirmative Defenses Ten: Onemata failed to state claims for unjust enrichment because Rahman provided Onemata with consideration. Rahman conveyed and assigned 4,850,000 shares of LocalBlox stock to Enscicon and Arefin conveyed and assigned an additional 4,850,000 shares in LocalBlox stock to Enscicon. Therefore, Rahman was not unjustly enriched because Onemata received adequate consideration for the cash payments, promissory notes, and equity provided by Enscicon.

Affirmative Defenses Eleven: Any damages Rahman owes to Onemata are fully or partially setoff by the damages Onemata owes Rahman under Rahman's counterclaims and third-party impleader claims.

Affirmative Defenses Twelve: Onemata failed to state claims and remedies for rescission and repudiation because Onemata cannot rescind and repudiate certain contracts relating to the Stock Purchase Agreement while simultaneously enforcing other contracts relating to the Stock Purchase Agreement. Rahman entered the Stock Purchase Agreement with Enscicon along with several other related contracts including an Executive Employment Agreement, Seller Financing Note, Revenue Quality Promissory Note, and Pledge Agreement. All of these agreements were executed at or near the same time; concerned the same transaction; and related to the same or substantially similar subject matters. In fact, Onemata alleges in its verified pleading that "the Employment

31

RAHMAN'S ANSWER, AFFIRMATIVE                    Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

Agreement, and its consideration, was part of the stock purchase transaction and is inextricably linked with that transaction." Amended Complaint ¶ 70. Therefore, each of these contracts are considered a single contract. Onemata cannot rescind and/or repudiate one part of a contract (such as the Employment Agreement) while enforcing other parts of the contract (such as the Stock Purchase Agreement) because all the above referenced contracts are part of a single contract.

Affirmative Defenses Thirteen: Onemata failed to state claims and remedies for rescission and repudiation because it failed to plead any intention to return Rahman to his status quo before he entered the Stock Purchase Agreement and the related Employment Agreement.

Affirmative Defenses Fourteen: Onemata failed to state claims and remedies for rescission and repudiation because it has an adequate remedy at law.

Affirmative Defenses Fifteen: Onemata failed to state claims and remedies for rescission and repudiation because it failed comply with conditions precedent by promptly notifying Rahman about the alleged fraud and failing to provide Rahman ten-days period to explain the non-existence of fraud or cure the alleged fraud. Onemata knew or should have known about the facts giving rise to their purported fraud claim several months before it filed this lawsuit. Onemata did not notify Rahman about the facts giving rise to his alleged fraud at the time Onemata became aware of them or anytime shortly thereafter. Onemata also failed to provide Rahman an opportunity to cure the alleged fraud and explain any perceived fraud. Instead, Onemata surprised Rahman by filing this lawsuit.

Affirmative Defenses Sixteen: Onemata failed to state claims and remedies for rescission and repudiation because it is not possible to return Rahman to his pre-agreement status. Onemata knew or should have known about the facts giving rise to their purported fraud claim several months before it filed this lawsuit. Onemata did not promptly notify Rahman about the facts giving rise to the alleged fraud at the time Onemata became aware of them. Instead, Onemata continued carrying on the business of LocalBlox thereby committing LocalBlox to certain actions, decisions, and transactions internally and externally with customers, vendors, affiliates, employees, and consultants. It is difficult, impossible, or impracticable to unwind these actions, decisions, and transactions. Therefore, it is impossible or impracticable to rescind the Purchase Agreement or any other related contract or transactional document such as the Employment Agreement.

Affirmative Defenses Seventeen: Onemata failed to state claims and remedies for rescission and repudiation because Enscicon ratified its transaction with Rahman. Onemata and its predecessor Enscicon accepted the proceeds and benefits of the of the Stock Purchase Agreement. For example, Enscicon accepted money from LocalBlox's customers, accepted LocalBlox's technology, and grew its business based on LocalBlox' technology. Onemata therefore cannot rescind or repudiate

RAHMAN'S ANSWER, AFFIRMATIVE                         Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

the Stock Purchase Agreement or any other related agreement including the Employment Agreement.

Affirmative Defenses Eighteen: Onemata failed to state claims and remedies for rescission and repudiation because it waived the right to rescind or repudiate the Stock Purchase Agreement and all related agreements including the Employment Agreement. Onemata and its predecessor Enscicon knowingly accepted the proceeds and benefits of the of the Stock Purchase Agreement. Enscicon therefore waived the right to rescind or repudiate the Stock Purchase Agreement or any related agreement including the Employment Agreement.

Affirmative Defenses Nineteen: Onemata failed to state claims for fraudulent concealment, fraudulent misrepresentation, and fraudulent inducement because it did not plead its fraud claims with specificity. Fraud claims can and should be dismissed when the party asserting the claim does not state the specific facts giving rise to the claim. Onemata fails to provide all allegations with sufficient specificity including the time and place of any misrepresentations, who received the representations, and why the alleged representations induced Enscicon into the Stock Purchase Agreement.

Affirmative Defenses Twenty: Onemata failed to mitigate its damages, therefore its damages should be reduced accordingly.

Affirmative Defenses Twenty-One: Onemata failed to state claims for fraudulent concealment, fraudulent misrepresentation, fraudulent inducement, and breach of contract due to one or more unilateral mistakes. Enscicon mistakenly believed information contained within LocalBlox's financial statements indicated certain financial circumstances existed when, in fact, the opposite was true. Enscicon also mistakenly believed the information contained within LocalBlox's financial statements was complete and accurate even though Rahman notified Enscicon that LocalBLox's financial statements were subject to end of the year adjustments. Such adjustments are normal business practices. Onemata's unilateral mistakes prohibit it from enforcing the Stock Purchase Agreement.

Affirmative Defenses Twenty-Two: Onemata failed to state claims for fraudulent concealment, fraudulent misrepresentation, fraudulent inducement, and breach of contract due to one or more mutual mistakes. Onemata and Rahman did not understand Sections 2.3 and 2.4 of the Stock Purchase Agreement and each party believed these provisions provided different rights and obligations. For example, Rahman believed Sections 2.3 and 2.4 of the Stock Purchase Agreement allowed the parties to reconcile LocalBlox's books and records at the close of the accounting period and modify the LocalBlox purchase price based on the end-of-year financial adjustments.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                    Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

The existence of end-of-year financial reconciliations were material and substantial elements of the parties' agreement and Rahman relied on the existence of these end-of-year financial reconciliations when he decided to enter the Stock Purchase Agreement. Evidently, Onemata does not believe Sections 2.3 and 2.4 of the Stock Purchase Agreement allows for reconciliation as demonstrated by its Amended Complaint. Therefore, a material mutual mistake existed between the parties, which requires the Stock Purchase Agreement and all related contracts to be voided. In the alternative, Rahman should be excused from performing under the Stock Purchase Agreement based on the parties' mutual mistake.

Affirmative Defenses Twenty-Three: Onemata failed to state claims for fraudulent concealment, fraudulent misrepresentation, fraudulent inducement, and breach of contract due to one or more unilateral mistakes. Rahman believed Sections 2.3 and 2.4 of the Stock Purchase Agreement allowed the parties to reconcile LocalBlox's books and records at the close of the accounting period and modify the LocalBlox purchase price based on the end-of-year financial adjustments. Rahman possessed this belief because Enscicon's agent, Smith, told Rahman he would have the ability to reconcile LocalBlox's books and records and make financial adjustments at the end of the fiscal year. Rahman also possessed this belief because Smith told Rahman that one purpose of the Stock Purchase Agreement was to acquire additional management personnel capable of maintaining better books and records for LocalBlox. Rahman exercised due care when he entered the Stock Purchase Agreement by ensuring the parties had the ability to review LocalBlox's books and records before the transaction was consumed and at the year's end. Denying Rahman's release from the Stock Purchase Agreement is thus inequitable under these circumstances. Onemata's position has not changed enough that granting relief would be unjust.

Affirmative Defenses Twenty-Four: Onemata failed to state claims for fraudulent inducement – rescission of the Employment Agreement (Count 3), breach of contract – Stock Purchase Agreement (Count 5), promissory estopple (Count 6), and unjust enrichment (Count 7) because Onemata failed to comply with the pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Onemata does not specify the purported fraudulent conduct giving rise to its claim for rescission of the Employment Agreement; the misrepresentations, concealments, inducements, warranties, and covenants giving rise to its breach of contract claims; the concealed and misrepresented facts giving rise to its promissory estopple claim; or the benefits conferred on, and accepted by, Rahman giving rise to its unjust enrichment claim. Instead, Onemata references all prior allegations which creates an inscrutable tangle of facts. The Eleventh circuit prohibits such a shotgun approach to pleadings. *See Sarhan v. Miami Dade Coll.*, 800 Fed. Appx. 769, 771 (Jan. 28, 2020 11th Cir. 2020) ("Shotgun pleadings violate Fed. R. Civ. P. 8's requirement that a complaint contain a short and plain statement of the claim, and courts in this Circuit 'have little tolerance for shotgun pleadings.'

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                     Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

*Vibe Micro*, 878 F.3d at 1294–95. Shotgun pleadings include complaints that: (1) 'contain multiple counts where each count adopts the allegations of all preceding counts.'").

Affirmative Defenses Twenty-Five: Onemata failed to state claims for fraudulent concealment, fraudulent misrepresentation, and fraudulent inducement because Onemata failed to comply with the pleading standards announced in *Ashcroft*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 570. Onemata combines two defendants and many fraud claims into three causes of action, creating an inscrutable tangle of facts. The Eleventh circuit prohibits this shotgun approach to pleadings. *See Sarhan v.*, 800 Fed. Appx. at 771 ("Shotgun pleadings violate Fed. R. Civ. P. 8's requirement that a complaint contain a short and plain statement of the claim, and courts in this Circuit 'have little tolerance for shotgun pleadings.' *Vibe Micro*, 878 F.3d at 1294–95. Shotgun pleadings include complaints that:… (3) do not separate each cause of action or claim for relief into separate counts; or (4) in a multi-defendant action, contain counts that present a claim for relief without specifying which defendants the claim is brought against.").

Affirmative Defenses Twenty-Six: Rahman is not liable for any alleged misrepresentation or fraudulent statement because Rahman made these statements in reliance on representations made by internal and external actors such as LocalBlox's accountants and bookkeepers, LocalBlox's financial advisors, LocalBlox's attorneys, and other professionals hired or retained by LocalBlox. These individuals and their respective firms and principals are *Fabre* defendants who are wholly or partially liable to Onemata for Onemata's alleged damages.

Affirmative Defenses Twenty-Seven: Onemata cannot enforce the restrictive covenants, non-compete provisions, non-solicitation provisions, and confidentiality provisions of the Stock Purchase Agreement and related agreements including the Employment Agreement and Restrictive Covenant Agreement because Onemata has unclean hands by virtue of its fraudulent inducement. Enscicon offered to purchase Rahman's equity interest in LocalBlox and its agent William Smith flew to Boca Raton, Florida in November 2019 to discuss the terms and conditions of the sale. Smith stayed in Rahman's Boca Raton, Florida Home for at least two days while the parties discussed the sale of LocalBlox. During the in-home discussions, Smith represented that Rahman was integral to LocalBlox's success and promised to keep Rahman onboard as an important member of the team. Smith also represented that Rahman would remain a vital part of LocalBlox because Rahman was the only person capable of understanding and enhancing the company's technology. Rahman reasonably relied on these representations when he entered the Stock Purchase Agreement because he knew the only way to sell LocalBlox and benefit from LocalBlox's future success was to remain a critical part of the company. Smith flew back to his home state of Colorado and continued to discuss the purchase of LocalBlox's equity with Rahman over the phone and through email correspondence throughout November 2019 and December 2019. During these conversations, Smith continued to represent that Rahman was integral to

RAHMAN'S ANSWER, AFFIRMATIVE                                    Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

LocalBlox's success and promised to keep Rahman onboard as a critical member of the team. However, Enscicon never intended to retain Rahman in any meaningful capacity once the acquisition of LocalBlox stock was complete and LocalBlox technology was sufficiently integrated with Enscicon. Enscicon knew at the time it made the above representations that he would terminate Rahman in any employment capacity he may have with LocalBlox, oust Rahman from the company he founded, and refuse to pay Rahman for his LocalBlox equity. Ten months after Rahman entered the Stock Purchase Agreement, Enscicon contrived this lawsuit against Rahman as a pretext for terminating his employment, ousting Rahman from the company, and refusing to pay Rahman for the LocalBlox Equity.

Affirmative Defenses Twenty-Eight: Onemata cannot enforce the restrictive covenants, non-compete provisions, non-solicitation provisions, and confidentiality provisions of the Stock Purchase Agreement and related agreements including the Employment Agreement and Restrictive Covenant Agreement because Onemata has unclean hands by virtue of its fraudulent inducement. Enscicon offered to purchase Rahman's equity interest in LocalBlox through a letter of intent. The letter of intent authorized Enscicon to conduct due diligence through the date the parties finalized the equity sale of LocalBlox and required LocalBlox to make its business records and other documents available for review and inspection. Enscicon assured Rahman that the due diligence provision was unnecessary because Enscicon was committed to purchasing Rahman's LocalBlox equity. However, Enscicon knew these representations were false when made. Enscicon dishonestly always intended to use LocalBlox's books and records to manufacture a lawsuit against Rahman for material misrepresentations to avoid paying Rahman to full value of the LocalBlox equity.

Rahman provided Enscicon with a data-room of digital files containing most documents regarding LocalBlox's business and provided supplemental documents before the parties entered the Stock Purchase Agreement. Rahman also provided Enscicon with additional documents not contained in the data room such as financial statements and bank records. Rahman provided the data-room and additional documents to ensure Enscicon had all relevant information needed to make an informed decision regarding the purchase of LocalBlox equity. At the end of the due diligence period, Enscicon had the unbridled right to walk away from the deal. Rahman fully cooperated by providing Enscicon with the relevant due diligence documents to allow a thorough investigation. Smith never objected to or expressed a problem with LocalBlox's documentation before closing.

Rahman signed the Purchase Agreement in reliance on the representations above. LocalBlox's technology was then integrated with Enscicon. Once complete, Enscicon contrived a lawsuit against Rahman as a pretext for terminating his employment, ousting Rahman from the company he founded, and refusing to pay Rahman for the LocalBlox Equity.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                                Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

<u>Affirmative Defenses Twenty-Nine:</u> Onemata failed to state claims for fraudulent concealment, fraudulent misrepresentation, and fraudulent inducement under the doctrine of *caveat emptor*. Rahman provided Enscicon with a data-room of digital files containing most documents regarding LocalBlox's business and provided supplemental documents before the parties entered the Stock Purchase Agreement. Rahman also provided Enscicon with additional documents not contained in the data room such as financial statements and bank account records.  Rahman provided the data-room and additional documents to ensure Enscicon had all relevant information needed to make an informed decision regarding the purchase of LocalBlox equity. Enscicon's failure to fully or partially review the data-room and other documents supplemental documents cannot be imputed to Rahman.

## COUNTERCLAIMS AND THIRD-PARTY IMPLEADER CLAIMS

## PARTIES, JURISDICTION, AND VENUE

1.     Counter plaintiff and third-party plaintiff Ashfaq Rahman ("Rahman") is an individual, a citizen of the state of Florida, domiciled within the Southern District of Florida, and maintains permanent residency within the Southern District of Florida.

2.     Counter defendant Onemata Corporation ("Onemata") is a Colorado corporation with a principal place of business located in Denver, Colorado. Onemata is the successor corporation to Enscicon Acquisitions, LLC ("Enscicon") and the surviving entity by virtue of a merger between Onemata and Enscicon occurring on or about September 14, 2020. Onemata is liable for all Enscicon liabilities including all claims asserted in these counterclaims.

3.     The Court has personal jurisdiction over Onemata because it consented to the Court's jurisdiction. Onemata commenced this lawsuit against Rahman and co-defendant Sabira Arefin ("Arefin") by filing it in the United States District Court for the Southern District of Florida. Therefore, Onemata subjected itself to this Court's personal jurisdiction. Onemata also executed a Stock Purchase Agreement containing a forum selection clause requiring all proceedings arising out of the Stock Purchase Agreement to be brought exclusively in United States District Court for the Southern District of Florida. Onemata's claims against Rahman and Rahman's counterclaims

RAHMAN'S ANSWER, AFFIRMATIVE
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

Case No.: 20-cv-62002-WPD

against Onemata arise out of the Stock Purchase Agreement. Consequently, the forum selection clause is effective and subjects Onemata to the personal jurisdiction of this Court.

4. Third party defendant William Smith ("Smith") is an individual and a citizen of the state of Colorado.

5. The Court has personal jurisdiction over Smith because he committed the tortious acts giving rise to Rahman's third-party impleader claims within the Southern District of Florida. The Court also has personal jurisdiction over Smith because he injured Rahman in Florida by committing certain acts and omissions described below that resulted in damages to Rahman. At the time such acts and omissions occurred, Smith engaged in solicitation activities in the State of Florida such as soliciting Rahman's LocalBlox equity interest. And at the time Rahman was injured, Smith was engaged in solicitation activities in the state of Florida.

6. Third party defendant Enscicon Acquisitions II LLC ("Enscicon II") is a Colorado limited liability company with a principal place of business located in Denver, Colorado. Enscicon II is a Colorado citizen.

7. The Court has personal jurisdiction over Enscicon II because Enscicon II consented to this Court's jurisdiction. Enscicon II executed two promissory notes in favor of Rahman containing forum selection clauses requiring that all proceedings arising out of the notes be brought exclusively in United States District Court for the Southern District of Florida. Rahman's third-party impleader claims against Enscicon II arise out of these promissory notes. Thus, the forum selection clauses are effective and subject Enscicon II to the personal jurisdiction of this Court.

8. The Court has subject matter jurisdiction over all counterclaims and third-party impleader claims asserted against Onemata, Smith, and Enscicon II under 28 U.S.C. § 1332,

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                    Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

diversity jurisdiction. Rahman and Onemata are citizens of different states, Rahman and Smith are citizens of different states, and Rahman and Enscicon II are citizens of different states. In addition, Rahman's counterclaims and third-party impleader claims exceed $75,000 exclusive of costs and attorneys' fees. The Court also has subject matter jurisdiction over all counterclaims and third-party impleader claims asserted against Onemata, Smith, and Enscicon II under 28 U.S.C. § 1367, supplemental jurisdiction. Rahman's counterclaims and third-party impleader claims are so related to the claims asserted by Onemata in this lawsuit that Rahman's claims are part of the same case or controversy.

9.      The United States District Court for the Southern District of Florida is the proper venue for these counterclaims and third-party impleader claims because it is the judicial district where a substantial part of the events and omissions giving rise to the claims accrued. The United States District Court for the Southern District of Florida is also the proper venue for these counterclaims and third-party impleader claims because Onemata, Smith, and Enscicon II are subject to the Court's personal jurisdiction due to aforementioned forum selection clauses, their fraudulent statements, and/or contractual breaches occurring within the Southern District of Florida.

## GENERAL ALLEGATIONS

### Introduction

10.      Rahman was an entrepreneur who started and built LocalBlox Inc. ("LocaBlox") into a profitable information technology company.  He knew Localblox had potential to become a major Fortune 500 enterprise.  William Smith and the companies he controlled (collectively, "Smith"), recognized this potential.

39

RAHMAN'S ANSWER, AFFIRMATIVE
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

Case No.: 20-cv-62002-WPD

11.     Smith approached Rahman and made an unsolicited offer to buy his company. Smith said that much of his offer would be deferred benefits in the future.  For example, approximately 75% of the purchase price was funded by promissory notes fully payable in 5 years; Rahman would earn 1.2 million dollars from future employee salaries, and Rahman would make most of his money from retention of a 17% ownership interest the company.  Smith's major selling point for his offer was that his business acumen would grow LocalBlox so much that it would be traded on the public stock exchange and Rahman's and his wife's stock would be immensely valuable.  In addition, Smith promised Rahman and his wife 2 million dollars at closing.

12.     Unbeknownst to Rahman, from the very beginning Smith intended to renege on his promises in the future after he gained control of LocalBlox and got Rahman to provide him all of LocalBlox' trade secrets, methods of operation, and knowhow.  Smith strategically intended to make a delayed, and phony, accusation of fraud against Rahman to claw back the 2 million dollar down payment, disavow the promissory notes, terminate employee compensation, and terminate their entire working relationship with the company.

13.     Rahman did not know Smith's true intentions.  Rahman was interested in growing LocalBlox into a publicly traded company and in continuing to work for LocalBlox until this happened. Smith induced Rahman to sell his LocalBlox shares by promising to (1) provide 6 million dollars of capital as a loan to LocalBlox by the summer of 2020, (2) increase annual revenue to 10 million dollars by the end of 2020 (from about 4-5 million dollars at the end of 2019), and (3) retain Rahman so he could continue to be intimately involved in growing LocalBlox. Rahman agreed to the sale based on Smith's representations and additional representations regarding Smith's business acumen. Rahman reasonably believed Smith had significant business

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                        Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

experience because of his vast business acumen and experience in building businesses. Rahman believed that Smith would use his financial acumen to make LocalBlox an enormous success. Smith had built multiple companies with collective annual revenues exceeding 40 million dollars, including Enscicon (annual revenues of about 15-20 million dollars), Reglera, LLC , a group of fast food and Slim Chickens restaurants, and a sales organization  business.

14.     Smith used a letter of intent to make his offer to purchase LocalBlox. The letter of intent allowed Smith a lengthy due diligence period (about 7 weeks) to study all LocalBlox's documents and information. At the end of the due diligence period, Smith had the unbridled right to walk away from the deal. Rahman fully cooperated by providing Smith with the relevant due diligence documents to allow a thorough investigation. Smith never objected to or expressed a problem with LocalBlox's documentation before closing. Smith then purchased LocalBlox.

15.     Rahman sold his LocalBlox equity to Smith's company Enscicon Acquisitions II, became a shareholder of Enscicon Acquisitions II, and an employee of LocalBlox in mid-December 2019. After Rahman sold his stock, Smith urged Rahman to teach everything about LocalBlox's technology and how to run the business to new personnel Smith put in place to run LocalBlox. Rahman complied. During the next ten months, Rahman integrated LocalBlox's technology with Enscicon Acquisitions II, and its successor in interest, Onemata Corporation ("Onemata"),.

16.     Once complete, Smith, through Onemata, initiated his plan to seize control of LocalBlox and oust Rahman. Onemata terminated Rahman's employment and refused to tender the full purchase price due. Onemata used the pretextual excuse that Rahman fraudulently concealed certain facts and fraudulently misrepresented other facts that induced Onemata into

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

Case No.: 20-cv-62002-WPD

purchasing LocalBlox's equity. These pretextual allegations were based on the due diligence documents Rahman candidly and in good faith provided before the parties consummated the transaction. Therefore, Onemata's allegations were a meritless ruse to evade payment and future benefits due to Rahman because Smith knew he could, and would, use the due diligence documents provided before the parties entered the transaction to manufacture insincere claims against Rahman.

17. LocalBlox is a unique big data technology company formed in the State of Washington by Rahman and his wife, Arefin.

18. Rahman and Arefin developed the company over several years, owned approximately 95% of LocalBlox equity, and operated LocalBlox from their home.

19. Rahman and Arefin moved to Boca Raton, Florida in early 2019 and simultaneously relocated LocalBlox's principal place of business to Boca Raton, Florida.

20. Rahman and Arefin desired to sell LocalBlox for a large cash payout or obtain a significant capital infusion beginning in or about Q3 of 2019.

21. Rahman knew LocalBlox had a billion-dollar valuation potential and could become a tech giant like Apple, Google, or Amazon. Rahman would sell LocalBlox only if the buyer allowed Rahman to remain with the company in a meaningful manner, grow with the company, actively participate in the company's growth, and benefit from the company's growth. Therefore, Rahman would sell LocalBlox to a buyer for less money than LocalBlox's true market valuation in return for assurances that Rahman would remain a vital participant of the company.

22. All conditions precedent to bringing each claim asserted herein have been satisfied or waived.

RAHMAN'S ANSWER, AFFIRMATIVE      Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

### Onemata's Fraudulent Scheme to Acquire LocalBlox and Oust Rahman

23. Smith formally offered to purchase LocalBlox's equity from Rahman and Arefin as an agent for a not-yet formed entity, Enscicon Acquisitions, LLC ("Enscicon"), on October 31, 2019. Smith issued a letter of intent on behalf of Enscicon offering (i) to pay Rahman and Arefin a total of $5,280,000 in cash and promissory notes and (ii) provide an additional thirty-four percent ownership interest in Enscicon (the "Letter of Intent").

24. Smith, acting as an agent for Enscicon, courted Rahman and Arefin by flying to Boca Raton, Florida in November 2019 to meet Rahman and Arefin in person and discuss the terms and conditions of the purchase. Smith stayed in Rahman's and Arefin's Boca Raton, Florida Home for at least two days while the parties discussed the purchase of LocalBlox.

25. During the in-home discussions, Smith misrepresented himself as a very skilled and successful businessman capable of turning LocalBlox into the billion-dollar company Rahman knew it would be. Smith promised Rahman that LocalBlox would generate at least ten-million dollars in revenue by the end of 2020 under his direction. Smith also informed Rahman that he had access to a six-million-dollar credit line and promised to use this credit line by the summer of 2020 to grow LocalBlox's business. Smith assured Rahman that the vast majority of the credit line would be used to achieve the ten million dollar revenue goal Smith guaranteed.

26. Smith acknowledged that Rahman was integral to LocalBlox's success and promised to keep Rahman onboard as an important member of the team during these same in-home discussions. Smith misrepresented that Rahman would remain a vital part of LocalBlox because Rahman was the only person capable of understanding and enhancing the company's technology.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

Case No.: 20-cv-62002-WPD

27.     Rahman relied on these misrepresentations because he knew the realization of LocalBlox's large growth potential required a large capital infusion. Rahman insisted that he remain an active participant in LocalBlox to achieve and enjoy the future benefits associated therewith.

28.     Rahman informed Smith he would accept a discounted purchase price in exchange for his LocalBlox equity. The discounted purchase price was conditioned on Rahman remaining an integral part of LocalBlox. Rahman made the offer conditional because he believed it was the only way to sell LocalBlox and still achieve and benefit from the company's future success.

29.     In addition, Rahman conditioned the discounted purchase price on Smith's promises to inject six-million dollars of capital into LocalBlox by the summer of 2020 and generate at least ten-million dollars of revenue by the end of 2020. Rahman made the offer conditional because he knew LocalBlox needed additional capital and revenue stream to grow.

30.     Smith flew back to Colorado and continued to discuss the purchase of LocalBlox's equity with Rahman and Arefin over the phone and through email correspondence. During these conversations, Smith continued to misrepresent himself as an entrepreneur with a high business acumen capable of transitioning LocalBlox into a billion-dollar company. Smith reiterated his promises to inject capital via the credit line into LocalBlox and that Rahman would remain an integral member of LocalBlox team.

31.     A disagreement regarding the proposed deal terms caused Smith, acting as an agent for Enscicon, to visit Rahman in his house in Washington in December 2020 to continue discussions regarding the sale of LocalBlox's equity and ease Rahman's reservations about the transactions. Smith continued to misrepresent that Rahman would remain integral to LocalBlox

RAHMAN'S ANSWER, AFFIRMATIVE                    Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

and an active member the team. Smith also continued to misrepresent that he would deploy resources to achieve large growth success.

32.     However, Smith, as an agent for Enscicon, never intended to retain Rahman in any meaningful capacity once the acquisition of LocalBlox stock was complete, LocalBlox technology was sufficiently integrated with Enscicon,.

33.     Smith knew the purchase of the controlling equity stake in LocalBlox would require Rahman to divulge LocalBlox's technology to Enscicon officers and technical staff. Enscion's officers and technical staff would thereby understand and enhance LocalBlox's technology without Rahman's assistance. Smith knew these facts at the time he made the above misrepresentations to Rahman.

34.     Smith also knew and intended that Enscicon would terminate Rahman as an employee, oust Rahman from LocalBlox, and refuse to pay Rahman what Enscicon owed Rahman under the Purchase Agreement and related agreements (detailed below). Smith knew these facts at the time he made the misrepresentations to Rahman.

**Onemata's Fraudulent Scheme to Manufacture Claims**
**Against Rahman to Oust him from LocalBlox**

35.     Rahman provided Enscicon with a "data-room" digital data storage file containing most documents regarding LocalBlox's business before Smith and Enscicon sent the Letter of Intent. Rahman also provided Enscicon with additional documents not contained in the data room such as financial statements and bank account records after the Letter of Intent was issued.

36.      Rahman provided the data-room and additional documents to Enscicon to candidly ensure Enscicon had all relevant information needed to make an informed decision regarding the purchase of LocalBlox equity.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                    Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

37.     The Letter of Intent authorized Enscicon to conduct due diligence through the date the parties finalized the equity sale of LocalBlox, and required LocalBlox to make its business records and other documents available for review and inspection.

38.     Enscicon retained sole discretion to determine whether it should proceed with the equity sale based on its due diligence investigation.

39.     Smith, as an agent for Enscicon, assured Rahman that due diligence documents were unnecessary because Enscicon was committed to purchasing Rahman's and Arefin's LocalBlox equity. Smith represented that problems with LocalBlox's books and records were trivial and would be reconciled after closing. Smith made these representations when he visited Rahman in Boca Raton, Florida, after Smith's return to Colorado, and in Rahman's Washington home.

40.     Smith, as an agent for Enscicon, knew his representations were false when he made them because Smith knew and intended that Enscicon would use LocalBlox's books and records to manufacture a lawsuit against Rahman for material misrepresentations. Smith also knew his representations were false when he made them because the lawsuit would be an excuse to oust Rahman from LocalBlox and refuse to pay Rahman under the Purchase Agreement.

41.     Enscicon reviewed the data-room and other documents provided by Rahman before it entered the Stock Purchase Agreement and determined that certain inaccuracies existed. Enscicon decided to keep its determination to itself so that is could use the finding to oust Rahman from LocalBlox and manufacture a lawsuit for fraud. Enscicon did not object to Rahman about any inaccuracy or anything else, and completed the stock purchase.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                    Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

## The Stock Purchase Agreement

42.     Enscicon incorporated on December 12, 2019 under the laws of Colorado.

43.     Enscicon entered a Stock Purchase Agreement with Rahman, Arefin, and LocalBlox on or about December 18, 2019 to purchase all of Rahman's and Arefin's equity interest in LocalBlox (the "Stock Purchase Agreement").

44.     Enscicon promised to pay Rahman and Arefin a total of $2,000,000 in cash, promised to execute promissory notes in favor of Rahman and Arefin totaling $2,994,827, promised to convey Rahman and Arefin a thirty-four percent interest in Enscicon, promised to employ Rahman for at least four years at an annual salary of $300,000, and promised to retain Arefin as a consultant for at least four years at an annual rate of $240,000 as consideration for the Stock Purchase Agreement.

45.     However, the Stock Purchase Agreement contained a mechanism to increase the purchase price if the Closing Purchase Price exceeded the Estimated Closing Price.

46.     Enscicon was required to deliver a schedule of the actual Closing Purchase Price to Rahman reflecting Enscicon's Net Working Capital and Transaction Expenses as of the Closing Date.

47.     The schedule was needed to determine whether the Stock Purchase Agreement purchase price needed to be increased.

48.     However, Enscicon failed to deliver the requisite schedule, thus prohibiting Rahman from determining whether the Stock Purchase Agreement purchase price needed to be increased.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE           Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

49.      Upon information and belief, the Stock Purchase Agreement purchase price needed to be increased based on Enscicon's Net Working Capital, Transaction Expenses, Estimated Purchase Price, and Closing Purchase Price.

### Auxiliary Agreements Intertwined with the Stock Purchase Agreement

50.      Enscicon or a related company, Enscicon II, contemporaneously entered about ten contracts intertwined with the Stock Purchase Agreement. The parties entered each of these contracts at or near the same time as the Stock Purchase Agreement and each of these contracts relates to the Stock Purchase Agreement. Many of these auxiliary contracts memorialize the considerations provided under the Stock Purchase Agreement. These contracts included five promissory notes, two pledge agreements securitizing the promissory notes, an employment agreement, a consulting agreement, and a debt conversion agreement.

51.      Enscicon II executed a Seller Financing Note in favor of Rahman in the amount of $1,039,454 (the "Seller Financing Note"). The Seller Financing Note required payment in ten equal semi-annual installments beginning December 18, 2021.

52.      The Seller Financing Note contains an acceleration clause allowing Rahman to accelerate all payments due under the note if Enscicon or Enscicon II defaulted and did not cure the default within ten days after notice thereof.

53.      Enscicon II similarly executed a Revenue Financing Note in favor of Rahman in the amount of the amount of $457,959.50 (the "Revenue Financing Note"). The Revenue Financing Note required payment in ten equal semi-annual installments of $45,795.95 beginning June 18, 2022.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                    Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

54.    The Revenue Financing Note contains an acceleration clause allowing Rahman to accelerate all payments due under the note if Enscicon or Enscicon II defaulted and did not cure the default within ten days thereof.

55.    The Seller Financing Note and the Revenue Financing Note were secured by a Pledge Agreement executed by Enscicon (the "Pledge Agreement"). Enscicon pledged 2,102,031 shares of LocalBlox common stock as collateral for the all payments due under the Seller Financing Note and the Revenue Financing Note.

56.    Enscicon executed an Executive Employment Agreement (the "Employment Agreement") in favor of Rahman. The Employment Agreement required Enscicon to employ Rahman for four years and pay him a salary of $300,000 plus additional employee benefits.

57.    Enscicon could terminate Rahman as an employee under the Employment Agreement for cause under certain circumstances. However, the termination for cause provision required Enscicon to notify Rahman about the alleged violation and provide Rahman ten days to cure the violation.

58.    Rahman executed a Debt Conversion Agreement with LocalBlox as part of the Stock Purchase Agreement transaction (the "Debt Conversion Agreement"). Rahman agreed to convert a loan made to LocalBlox in the amount of $664,963.86 into LocalBlox equity and that equity was deemed to be made a part of Rahman's capital account.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

Case No.: 20-cv-62002-WPD

**Enscicon perpetuated its fraud and breached the Stock Purchase Agreement, the Seller Financing Note, the Revenue Financing Note, Pledge Agreement, and the Employment <u>Agreement by filing this lawsuit</u>**

59.     Smith and Enscicon's successor, Onemata, set their ouster plan into motion on October 5, 2020 by sending Rahman a demand letter falsely asserting that Rahman fraudulently induced Enscicon into the Purchase Agreement.

60.     Onemata terminated Rahman's employment, refused to pay Rahman the total purchase price for his LocalBlox equity under both promissory notes, and commenced this lawsuit based on alleged fraud.

61.     Onemata did not notify Rahman that his prior actions constituted fraud and never gave him an opportunity address or respond to the accusations or cure any possible issue.

62.     Rahman notified Onemata, Enscicon, and Enscicon II that the October 5, 2020 letter and subsequent lawsuit constituted a wrongful anticipatory breach of both promissory notes. Rahman notified Onemata, Enscicon, and Enscicon II that they had ten days to cure their default or all payments due under both promissory notes would be accelerated and the security interest collateralizing both notes would be foreclosed.

63.     Onemata, Enscicon, and Enscicon II received Rahman's correspondence and sent reply correspondence refusing to cure their default.

**Count 1**
**<u>Fraudulent Inducement into the Purchase Agreement</u>**
**(Against Onemata and Smith)**

64.     Rahman incorporates and realleges paragraphs 1 through 63 as if fully stated herein.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                        Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

65.    Smith and Enscicon (as the predecessor in interest to Onemata) purposefully made certain material misrepresentations to Rahman to induce Rahman into entering the Stock Purchase Agreement.

66.    Smith and Enscicon (as the predecessor in interest to Onemata) misrepresented that Rahman was integral to LocalBlox's success and that Rahman would remain with LocalBlox as an active participant and important member of the team after the parties consummated the Stock Purchase Agreement.

67.    Smith and Enscicon (as the predecessor in interest to Onemata) made these misrepresentations in person, over the phone, and through email correspondence between October 31, 2019 and December 18, 2019.

68.    Smith and Enscicon (as the predecessor in interest to Onemata) knew their misrepresentations were false at the time they were made because Smith and Enscicon (as the predecessor in interest to Onemata) intended to oust Rahman from LocalBlox and retain all or most of the benefits for themselves.

69.    Rahman reasonably relied on Smith's and Enscicon's (as the predecessor in interest to Onemata) misrepresentations when he entered the Stock Purchase Agreement because Rahman understood LocalBlox's large growth potential and knew he needed to remain an active member of the company to realize the maximum benefits from LocalBlox's growth potential.

70.    Smith and Onemata executed their ouster plan on October 5, 2020 by delivering correspondence to Rahman wrongfully accusing Rahman of fraud, refusing to pay Rahman all sums due under the Seller Financing Note and the Revenue Financing Note, and terminated Rahman's employment.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                          Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

71.     Smith and Onemata continued their ouster plan by commencing this lawsuit alleging various claims for fraudulent concealment, fraudulent misrepresentation, and fraudulent inducement.

72.     Smith's and Enscicon's (as the predecessor in interest to Onemata) fraudulent misrepresentations directly and proximality damaged Rahman because Rahman would not have entered the Stock Purchase Agreement if he knew he would not remain an integral part of LocalBlox. Therefore, Rahman seeks to rescind the Stock Purchase Agreement and all related agreements.

73.     Smith's and Enscicon's (as the predecessor in interest to Onemata) fraudulent misrepresentations also directly and proximality damaged Rahman because Rahman would not have sold his LocalBlox equity for $2,497,413.50 plus a seventeen percent interest in Enscicon. Rahman had other purchase offers for his LocalBlox equity that exceeded the value of Enscicon's purchase offer. However, Rahman elected to forsake the more lucrative purchase offers because Smith and Enscicon promised Rahman would remain an integral part of LocalBlox. Rahman decided to enter the Stock Purchase Agreement for less money than he could have obtained from other offerors. Therefore, Rahman seeks damages for the value of his LocalBlox equity he could have acquired but for Smith's and Enscicon's fraudulent representations.

74.      Smith's and Enscicon's (as the predecessor in interest to Onemata) fraudulent representations additionally directly and proximality damaged Rahman because Onemata refuses to pay Rahman all sums due under the Seller Financing Note and the Revenue Financing Notes. Therefore, Rahman accelerates all sums due under the two promissory notes, demands damages in

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

Case No.: 20-cv-62002-WPD

an amount of least $1,497,413.50 plus eight present interest, attorneys' fees, costs, and post judgment interest.

75.     Smith's and Enscicon's (as the predecessor in interest to Onemata) fraudulent representations further directly and proximality damaged Rahman because Smith and Onemata terminated Rahman without cause. Therefore, Rahman is damaged in an amount of at least $950,000 for all salary payments due under the Employment Agreement.

WHEREFORE, Ashfaq Rahman respectfully requests that the Court enter judgment in his favor and against Smith and Onemata. Rahman further requests that the Court rescind the Purchase Agreement and all related and underlying agreements. Alternatively, Rahman respectfully requests that the Court enter an award of damages for all damages resulting from Smith's and Enscicon's fraud including lost value for other sale offers, all sums due under the Seller Financing Note and the Revenue Financing Notes, and all sums due under the Employment Agreement together with all related prejudgment interest, post judgment interest, attorneys' fees, and costs. Rahman further requests punitive damages for Smith's and Enscicon's fraudulent conduct. Rahman will elect to rescind the Purchase Agreement or recover damages in writing prior to trial.

### Count 2
### Fraudulent Inducement into the Purchase Agreement
(Against Onemata and Smith)

76.     Rahman incorporates and realleges paragraphs 1 through 63 as if fully stated herein.

77.     Smith and Enscicon (as the predecessor in interest to Onemata) purposefully made certain material misrepresentations to Rahman to induce Rahman into entering the Stock Purchase Agreement.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                    Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

78.    Smith and Enscicon (as the predecessor in interest to Onemata) misrepresented that due diligence documents were unnecessary because Enscicon was fully committed to purchasing Rahman's and Arefin's LocalBlox equity and that Enscicon would reconcile any issues with LocalBlox's books and records after closing.

79.    Smith and Enscicon (as the predecessor in interest to Onemata) made these misrepresentations in person, over the phone, and through email correspondence between October 31, 2019 and December 18, 2019.

80.    Smith and Enscicon (as the predecessor in interest to Onemata) knew their representations were false at the time they were made because Smith and Enscicon (as the predecessor in interest to Onemata) intended to use LocalBlox's books and records to oust Rahman from LocalBlox and retain all or most of the benefits for themselves.

81.    Rahman reasonably relied on Smith's and Enscicon's (as the predecessor in interest to Onemata) representations when he entered the Stock Purchase Agreement because Rahman knew Smith and Enscicon (as the predecessor in interest to Onemata) were eager to purchase the LocalBlox equity thereby acquiring a company with a billion-dollar growth potential.

82.    Smith's and Enscicon's (as the predecessor in interest to Onemata) fraudulent representations directly and proximality damaged Rahman because Rahman would not have entered the Stock Purchase Agreement if he knew he would not remain an integral part of LocalBlox. Therefore, Rahman seeks to rescind the Stock Purchase Agreement and all related agreements.

83.    Smith's and Enscicon's (as the predecessor in interest to Onemata) fraudulent representations also directly and proximality damaged Rahman because he would not have sold

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                           Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

his LocalBlox equity for $2,497,413.50 plus a seventeen percent interest in Enscicon. Rahman had

other purchase offers for his LocalBlox equity that exceeded the value of Enscicon's purchase

offer. However, Rahman elected to forsake the more lucrative purchase offers because Smith and

Enscicon promised Rahman would remain an integral part of LocalBlox. Rahman decided to enter

the Stock Purchase Agreement for less money than he could have realized from other offerors.

Therefore, Rahman seeks damages for the value of his LocalBlox equity he could have acquired

but for Smith's and Enscicon's fraudulent representations.

84.     Smith's and Enscicon's (as the predecessor in interest to Onemata) fraudulent

representations additionally directly and proximality damaged Rahman because Onemata refuses

to pay Rahman all sums due under the Seller Financing Note and the Revenue Financing Notes.

Therefore, Rahman accelerates all sums due under the two promissory notes, demands damages in

an amount of least $1,497,413.50 plus eight present interest, attorneys' fees, costs, and

postjudgment interest.

85.     Smith's and Enscicon's (as the predecessor in interest to Onemata) fraudulent

representations further directly and proximality damaged Rahman because Smith and Onemata

terminated Rahman without cause. Therefore, Rahman is damaged in an amount of at least

$950,000 for all salary payments due under the Employment Agreement.

WHEREFORE, Ashfaq Rahman respectfully requests that the Court enter judgment in his

favor and against Smith and Onemata. Rahman further requests that the Court rescind the Purchase

Agreement and all related and underlying agreements. Alternatively, Rahman respectfully requests

that the Court enter an award of damages for all damages resulting from Smith's and Enscicon's

fraud including lost value for other sale offers, all sums due under the Seller Financing Note and

RAHMAN'S ANSWER, AFFIRMATIVE                Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

the Revenue Financing Notes, and all sums due under the Employment Agreement together with

all related prejudgment interest, post judgment interest, attorneys' fees, and costs. Rahman further

requests punitive damages for Smith's and Enscicon's fraudulent conduct. Rahman will elect to

rescind the Purchase Agreement or recover damages in writing prior to trial.

## Count 3
## Fraudulent Inducement into the Purchase Agreement
### (Against Onemata and Smith)

86.    Rahman incorporates and realleges paragraphs 1 through 63 as if fully stated herein.

87.    Smith and Enscicon (as the predecessor in interest to Onemata) purposefully made

certain material misrepresentations to Rahman to induce Rahman into entering the Stock Purchase

Agreement.

88.    Smith and Enscicon (as the predecessor in interest to Onemata) misrepresented that

they had access to a six-millions dollar credit line and would use all or most of this credit line for

the benefit of LocalBlox.

89.    Smith and Enscicon (as the predecessor in interest to Onemata) also misrepresented

that the credit line would be deployed by the summer of 2020.

90.    Smith and Enscicon (as the predecessor in interest to Onemata) made these

misrepresentations in person, over the phone, and through email correspondence between October

31, 2019 and December 18, 2019.

91.    Smith and Enscicon (as the predecessor in interest to Onemata) knew their

representations were false at the time they were made because Smith and Enscicon (as the

predecessor in interest to Onemata) knew they would not use a majority of the credit line to benefit

LocalBlox.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                                    Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

92.    Rahman reasonably relied on Smith's and Enscicon's (as the predecessor in interest to Onemata) representations when he entered the Stock Purchase Agreement because Rahman knew he needed additional capital to grow LocalBlox.

93.    However, Smith and Enscicon (as the predecessor in interest to Onemata) only deployed one-millions dollars out of the six-millions dollars for the benefit of LocalBlox.

94.    Smith and Onemata then retracted the one-millions dollar credit line it did provided in the summer of 2020 without any explanation or authority.

95.    Smith's and Enscicon's (as the predecessor in interest to Onemata) fraudulent representations directly and proximality damaged Rahman because Rahman would not have entered the Stock Purchase Agreement if he knew Smith Enscicon (as the predecessor in interest to Onemata) would not use all or most of the six-millions dollar credit line for the benefit of LocalBlox.

96.    Smith's and Enscicon's (as the predecessor in interest to Onemata) fraudulent representations also directly and proximality damaged Rahman because he would not have sold his LocalBlox equity for $2,497,413.50 plus a seventeen percent interest in Enscicon. Rahman had other purchase offers for his LocalBlox equity that exceeded the value of Enscicon's purchase offer. However, Rahman elected to forsake the more lucrative purchase offers because Smith and Enscicon promised Rahman would remain an integral part of LocalBlox. Rahman decided to enter the Stock Purchase Agreement for less money than he could have realized from other offerors. Therefore, Rahman seeks damages for the value of his LocalBlox equity he could have acquired but for Smith's and Enscicon's fraudulent representations.

57

RAHMAN'S ANSWER, AFFIRMATIVE                              Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

97.     Smith's and Enscicon's (as the predecessor in interest to Onemata) fraudulent representations additionally directly and proximality damaged Rahman because Onemata refuses to pay Rahman all sums due under the Seller Financing Note and the Revenue Financing Notes. Therefore, Rahman accelerates all sums due under the two promissory notes, demands damages in an amount of least $1,497,413.50 plus eight present interest, attorneys' fees, costs, and postjudgment interest.

98.     Smith's and Enscicon's (as the predecessor in interest to Onemata) fraudulent representations further directly and proximality damaged Rahman because Smith and Onemata terminated Rahman without cause. Therefore, Rahman is damaged in an amount of at least $950,000 for all salary payments due under the Employment Agreement.

WHEREFORE, Ashfaq Rahman respectfully requests that the Court enter judgment in his favor and against Smith and Onemata. Rahman further requests that the Court rescind the Purchase Agreement and all related and underlying agreements. Alternatively, Rahman respectfully requests that the Court enter an award of damages for all damages resulting from Smith's and Enscicon's fraud including lost value for other sale offers, all sums due under the Seller Financing Note and the Revenue Financing Notes, and all sums due under the Employment Agreement together with all related prejudgment interest, post judgment interest, attorneys' fees, and costs. Rahman further requests punitive damages for Smith's and Enscicon's fraudulent conduct. Rahman will elect to rescind the Purchase Agreement or recover damages in writing prior to trial.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                    Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

## Count 4
### Fraudulent Inducement into the Purchase Agreement
**(Against Onemata and Smith)**

99.      Rahman incorporates and realleges paragraphs 1 through 63 as if fully stated herein.

100.     Smith and Enscicon (as the predecessor in interest to Onemata) purposefully made certain material misrepresentations to Rahman to induce Rahman into entering the Stock Purchase Agreement.

101.     Smith and Enscicon (as the predecessor in interest to Onemata) misrepresented that they would increase LocalBlox revenues to ten-million dollars by the end of 2020.

102.     Smith and Enscicon (as the predecessor in interest to Onemata) made these misrepresentations in person, over the phone, and through email correspondence between October 31, 2019 and December 18, 2019.

103.     Smith and Enscicon (as the predecessor in interest to Onemata) knew their representations were false at the time they were made because Smith and Enscicon (as the predecessor in interest to Onemata) knew they would not increase LocalBlox revenues.

104.     Rahman reasonably relied on Smith's and Enscicon's (as the predecessor in interest to Onemata) representations when he entered the Stock Purchase Agreement because Rahman knew a significant revenue increase was the only way for LocalBlox to become a major technology company.

105.     However, Smith, Enscicon, and Onemata only retained a single client generating $3,000 a month over the past 12 months. Smith, Enscicon, and Onemata failed to generate the additional revenues promised and LocalBlox never generated ten-million dollars promised. In fact, LocalBlox's revenues remain essentially the same as they did before the parties entered the Stock Purchase Agreement.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

Case No.: 20-cv-62002-WPD

106. Smith's and Enscicon's (as the predecessor in interest to Onemata) fraudulent representations directly and proximality damaged Rahman because Rahman would not have entered the Stock Purchase Agreement if he knew Smith, Enscicon, and Onemata would not generate the ten-millions dollar revenues promised.

107. Smith's and Enscicon's (as the predecessor in interest to Onemata) fraudulent representations also directly and proximality damaged Rahman because he would not have sold his LocalBlox equity for $2,497,413.50 plus a seventeen percent interest in Enscicon. Rahman had other purchase offers for his LocalBlox equity that exceeded the value of Enscicon's purchase offer. However, Rahman elected to forsake the more lucrative purchase offers because Smith and Enscicon promised Rahman would remain an integral part of LocalBlox. Rahman decided to enter the Stock Purchase Agreement for less money than he could have realized from other offerors. Therefore, Rahman seeks damages for the value of his LocalBlox equity he could have acquired but for Smith's and Enscicon's fraudulent representations.

108. Smith's and Enscicon's (as the predecessor in interest to Onemata) fraudulent representations additionally directly and proximality damaged Rahman because Onemata refuses to pay Rahman all sums due under the Seller Financing Note and the Revenue Financing Notes. Therefore, Rahman accelerates all sums due under the two promissory notes, demands damages in an amount of least $1,497,413.50 plus eight present interest, attorneys' fees, costs, and postjudgment interest.

109. Smith's and Enscicon's (as the predecessor in interest to Onemata) fraudulent representations further directly and proximality damaged Rahman because Smith and Onemata

RAHMAN'S ANSWER, AFFIRMATIVE
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

Case No.: 20-cv-62002-WPD

terminated Rahman without cause. Therefore, Rahman is damaged in an amount of at least $950,000 for all salary payments due under the Employment Agreement.

WHEREFORE, Ashfaq Rahman respectfully requests that the Court enter judgment in his favor and against Smith and Onemata. Rahman further requests that the Court rescind the Purchase Agreement and all related and underlying agreements. Alternatively, Rahman respectfully requests that the Court enter an award of damages for all damages resulting from Smith's and Enscicon's fraud including lost value for other sale offers, all sums due under the Seller Financing Note and the Revenue Financing Notes, and all sums due under the Employment Agreement together with all related prejudgment interest, post judgment interest, attorneys' fees, and costs. Rahman further requests punitive damages for Smith's and Enscicon's fraudulent conduct. Rahman will elect to rescind the Purchase Agreement or recover damages in writing prior to trial.

### Count 5
### <u>Breach of the Seller Financing Note</u>
**(Against Enscicon II and Onemata)**

110.   Rahman incorporates and realleges paragraphs 1 through 63 as if fully stated herein.

111.   Rahman entered the Seller Financing Note with Enscicon II.

112.   The Seller Financing Note obligates Enscicon II to pay Rahman a total of $1,039,454.

113.   Enscicon II was required to make ten equal semi-annual payments of $103,954.4 beginning June 18, 2022.

114.   The Seller Financing Note contains an acceleration clause allowing Rahman to demand all payments due immediately in the event of a default after providing a 10-day cure period.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

Case No.: 20-cv-62002-WPD

115.   The Seller Financing Note also contains a "time is of the essence" clause.

116.   Enscicon II and Onemata defaulted under the Seller Financing Note by distinctly, unequivocally and absolutely refusing to tender required payments due thereunder. Onemata sent Rahman a October 5, 2020 letter asserting that "no further payments will be made related to the Promissory Notes," and that Onemata "deem[s] the[ ] [Promissory] Notes fully satisfied."

117.   Enscicon II's and Onemata's October 5, 2020 letter constitutes a distinct, unequivocal, and absolute anticipatory breach of the Seller Financing Note.

118.   Rahman triggered the Seller Financing Note's acceleration clause by notifying Enscicon II and Onemata in writing as required under the terms of the Seller Financing Note that their October 5, 2020 letter constitutes breach and/or anticipatory repudiation of the Seller Financing Note.

119.   Enscicon II and Onemata refused to cure their default, and thus materially breached the Seller Financing Note.

120.   Rahman therefore accelerates all amounts due under the Seller Financing Note and demands immediate payment of the full $1,039,454.

121.   Enscicon II's and Onemata's material breach of the Seller Financing Note directly and proximality damaged Rahman because they refused to pay him all sums due under the Seller Financing Note.

122.   Therefore, Rahman has been damaged in an amount ot at least $1,039,454 plus interest, attorneys' fees and costs.

WHEREFORE, Ashfaq Rahman respectfully requests that the Court enter judgment in his favor and against Enscicon II and Onemata. Rahman further requests that the Court enter an award

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE　　　　　　Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

of damages for all damages resulting from Smith's and Enscicon's material breach of the Seller

Financing Note together with all related prejudgment interest, post judgment interest, attorneys'

fees, and costs.

### Count 6
### Breach of the Revenue Financing Note
### (Against Enscicon II and Onemata)

123.　　Rahman incorporates and realleges paragraphs 1 through 63 as if fully stated herein.

124.　　Rahman entered the Revenue Financing Note with Enscicon II.

125.　　The Revenue Financing Note obligates Enscicon II to pay Rahman a total of $457,959.50.

126.　　Enscicon II was required to make ten equal semi-annual payments of $45,795.95 beginning June 18, 2022.

127.　　The Revenue Financing Note contains an acceleration clause allowing Rahman to demand all payments due immediately in the event of a default after providing a 10-day cure period.

128.　　The Revenue Financing Note also contains a "time is of the essence" clause.

129.　　Enscicon II and Onemata defaulted under the Revenue Financing Note by distinctly, unequivocally and absolutely refusing to tender required payments due thereunder. Onemata sent Rahman a October 5, 2020 letter asserting that "no further payments will be made related to the Promissory Notes," and that Onemata "deem[s] the[ ] [Promissory] Notes fully satisfied."

130.　　Enscicon II's and Onemata's October 5, 2020 letter constitutes a distinct, unequivocal, and absolute anticipatory breach of the Revenue Financing Note.

MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246

RAHMAN'S ANSWER, AFFIRMATIVE         Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

131.     Rahman triggered the Revenue Financing Note's acceleration clause by notifying Enscicon II and Onemata in writing as required under the terms of the Revenue Financing Note that their October 5, 2020 letter constitutes breach and/or anticipatory repudiation of the Revenue Financing Note.

132.     Enscicon II and Onemata refused to cure their default, and thus materially breached the Revenue Financing Note.

133.     Rahman therefore accelerates all amounts due under the Revenue Financing Note and demands immediate payment of the full $457,959.50.

134.     Enscicon II's and Onemata's material breach of the Revenue Financing Note directly and proximality damaged Rahman because they refused to pay him all sums due under the Revenue Financing Note.

135.     Therefore, Rahman has been damaged in an amount of at least $457,959.50 plus interest, attorneys' fees, and costs.

WHEREFORE, Ashfaq Rahman respectfully requests that the Court enter judgment in his favor and against Enscicon II and Onemata. Rahman further requests that the Court enter an award of damages for all damages resulting from Smith's and Enscicon's material breach of the Revenue Financing Note together with all related prejudgment interest, post judgment interest, attorneys' fees, and costs.

### Count 7
### <u>Foreclosure of a Security Interest</u>
**(Against Onemata)**

136.     Rahman incorporates and realleges paragraphs 1 through 63 and 110 through 135 as if fully stated herein.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                  Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

137.    Rahman entered the Seller Financing Note and the Revenue Financing Note with Enscicon II.

138.    Rahman secured all amounts due under both notes by entering the Pledge Agreement with Enscicon.

139.    The Pledge Agreement secured all amounts due under the Seller Financing Note and the Revenue Financing Note with 2,102,031 shares of LocalBlox common stock.

140.    Onemata and Enscicon II defaulted and materially breached the Seller Financing Note and the Revenue Financing Note by wrongfully refusing to make the required payment thereunder.

141.    Rahman notified Onemata and Enscicon II, in writing as required by both notes, that they were in default under both promissory notes and provided them an opportunity to cure the defaults under both notes. Onemata and Enscicon II received the notice, but refused to cure.

142.    Correspondingly, Onemata defaulted and materially breached the Pledge Agreement.

143.    Rahman therefore forecloses on the 2,102,031 shares of LocalBlox common stock, to sell the shares as permitted by the Pledge Agreement, the 1933 Securities Exchange Act, the 1934 Securities Exchange Act, and all other applicable Securities Exchange Commission rules and regulations.

WHEREFORE, Ashfaq Rahman respectfully requests that the Court enter judgment in his favor and against Onemata. Rahman additionally requests that the Court foreclosure his security interest in the 2,102,031 shares of LocalBlox common stock and award damages in the amount of prejudgment interest, post judgment interest, attorneys' fees, and costs.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

Case No.: 20-cv-62002-WPD

## Count 8
## Breach of the Employment Agreement
### (Against Onemata)

144.     Rahman incorporates and realleges paragraphs 1 through 63 as if fully stated herein.

145.     Rahman entered the Employment Agreement with Enscicon.

146.     The Employment Agreement required Enscicon to employ Rahman for four years, pay Rahman an annual salary of $300,000, and provide Rahman other benefits typically associated with employment, such as insurance benefits.

147.     Enscicon was permitted to terminate Rahman for cause under certain circumstances, but had to provide Rahman notice of the cause and provide Rahman ten days to cure the issue.

148.     Rahman worked for Enscicon and its successor Onemata for approximately ten months.

149.     Then, Onemata suddenly and unexpectedly terminated Rahman in October 2020. Onemata never provided Rahman the contractually required prior notice or an opportunity to cure.

150.     Onemata pretextually based its termination on false allegations that Rahman fraudulently induced Enscicon into the Stock Purchase Agreement, fraudulently concealed certain facts from Enscicon, and fraudulently misrepresented certain facts to Enscicon.

151.     Rahman did not fraudulently induce Enscicon into the Stock Purchase Agreement, did not fraudulently conceal any fact from Enscicon, and did not fraudulently misrepresent any fact to Enscicon.

MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246

RAHMAN'S ANSWER, AFFIRMATIVE                              Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

152.    Therefore, Onemata materially breached the Employment Agreement by terminating Rahman's employment without proper cause and by not providing Rahman the contractually required prior notice and opportunity to cure.

.

153.    Onemata's material breaches of the Employment Agreement directly and proximately damaged Rahman in an amount of at least $9500,000.

WHEREFORE, Ashfaq Rahman respectfully requests that the Court enter judgment in his favor and against Onemata. Rahman further requests that the Court enter an award of damages for all sums due under the Employment Agreement together with all related prejudgment interest, post judgment interest, attorneys' fees, and costs.

**Count 9**
**<u>Breach of Stock Purchase Agreement</u>**
**(Against Onemata)**

154.    Rahman incorporates and realleges paragraphs 1 through 63 as if fully stated herein.

155.    The Stock Purchase Agreement contained a mechanism to increase the purchase price if the Closing Purchase Price is greater than the Estimated Closing Price.

156.    Enscicon was required to deliver a schedule of the actual Closing Purchase Price to Rahman reflecting Enscicon's Net Working Capital and Transaction Expenses as of the Closing Date.

157.    The schedule was needed to determine whether the Stock Purchase Agreement purchase price needed to be increased.

67

RAHMAN'S ANSWER, AFFIRMATIVE                              Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

158.   However, Enscicon failed to deliver the requisite schedule.   This prohibited Rahman from determining whether the Stock Purchase Agreement purchase price was required to be increased.

159.   Enscicon's contractual failure to provide the schedule required by the Stock Purchase Agreement constituted a material breach of the Purchase Agreement and directly and proximately damaging Rahman.

160.   Upon information and belief, the Stock Purchase Agreement purchase price needed to be increased based on Enscicon's Net Working Capital, Transaction Expenses, Estimated Purchase Price, and Closing Purchase Price.

161.   Therefore, Enscicon's failure to pay Rahman the increased purchase price constituted an additional material breach of the Stock Purchase Agreement.

162.   Rahman was directly and proximality damaged by both material breaches.

163.   Rahman was damaged in an amount to be determined at trial based on the Net Working Capital, Transaction Expenses, Estimated Purchase Price, Closing Purchase Price and other relevant factors to be determined at trial.

WHEREFORE, Ashfaq Rahman respectfully requests that the Court enter judgment in his favor and against Onemata. Rahman further requests that the Court enter an award of damages for all amounts resulting from Onemata's material breach Stock Purchase Agreement together with all related prejudgment interest, post judgment interest, attorneys' fees, and costs.

## **JURY DEMAND**

Rahman demands trial by jury.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                     Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing was served via email through the court's CM/ECF electronic filing system to all counsel of record at the email addresses enumerated on the Service List below on November 30, 2020.

Respectfully submitted,

**Mavrick Law Firm**
*Attorneys for*
*Defendant and Counter/Third-Party Plaintiff*
*Ashfaq Rahman*
1620 West Oakland Park Boulevard
Suite 300
Fort Lauderdale, Florida 33311
Telephone: (954) 564-2246
Peter T. Mavrick, Esq.
E-mail: peter@mavricklaw.com
Jacob M. Resnick, Esq.
E-mail: jacob@mavricklaw.com

BY: /s/ *Peter T. Mavrick*
Peter T. Mavrick
Florida Bar No.: 0083739
Jacob M. Resnick
Florida Bar No.: 085314

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

RAHMAN'S ANSWER, AFFIRMATIVE                    Case No.: 20-cv-62002-WPD
DEFENSES, COUNTERCLAIMS, AND
THIRD PARTY IMPLEADER CLAIMS

## Service List

*Onemata Corp. v. Ashfaq Rahman, et al. v. William Smith et al.*
*Case No. 30-cv-62002-WPD*

Harry Winderman, Esq.
Email: harry4334@hotmail.com
2255 Glades Road, Suite 205E
Boca Raton, FL 33431
Phone: 561-241- 0332
*Attorney for Defendant*
*Sabira Arefin*

**Robinson Waters & O'dorisio, P.C.**
Anthony L. Leffert (*pro hac vice*)
Email: aleffert@rwolaw.com
Samuel G. John, Esq. (*pro hac vice*)
sjohn@rwolaw.com
1099 18th Street, Suite 2600
Denver, CO 80202
Telephone: (303) 297-2600
*Attorneys for Plaintiff*
*Onemata Corp.*

**Rice Pugatch Robinson Storfer & Cohen PLLC**
Riley W. Cirulnick
Email: rcirulnick@rprslaw.com
101 NE 3rd Ave., Suite 1800
Fort Lauderdale, FL 33301
Telephone: (954) 331-4082
*Attorneys for Plaintiff*
*Onemata Corp.*

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**