UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:20-cv-62002-WPD

ONEMATA CORPORATION,

     Plaintiff,

v.

ASHFAQ RAHMAN and
SABIRA AREFIN,

     Defendants,

vs.

WILLIAM SMITH and ENSCICON
ACQUISITIONS II, LLC,

     Third-Party Defendants.

_____/

## RAHMAN'S MOTION TO VALUE ONEMATA STOCK
## BEFORE SUPPLEMENTAL PROCEEDINGS ARE COMMENCED

     Ashfaq Rahman ("Rahman") moves for an order compelling the valuation of Onemata and Rahman's Onemata equity before any supplemental proceedings and third-party actions are commenced because the value of Rahman's Onemata equity could satisfy all or a substantial portion of the final judgment entered in this lawsuit.

**A.**     **Introduction**

     Onemata Corporation ("Onemata") is unwilling to fairly compensate Rahman and Sabira Arefin ("Arefin") for their equity interest in Onemata because it intentionally used biased valuators, incorrect information, and outdated information to repurchase their equity. Onemata relies on a faulty February 2021 report prepared by its testifying expert to determine the repurchase value of Onemata's stock. The problems with the report are two-fold. First, Onemata's expert is wholly biased against Rahman and Arefin. Onemata's expert was incentivized to generate a report with the lowest possible valuation rather than providing a neutral independent assessment of Onemata's value and the true market-value of Rahman's and Arefin's equity interest therein.

MOTION TO VALUE ONEMATA EQUITY                     CASE NO.: 20-cv-62002-WPD

Second, the report valued Onemata on a date almost two years prior to the alleged repurchase date (December 8, 2022). Onemata per its own trial admissions gained significant value during the period succeeding the expert's 2021 report and Rahman and Arefin should get the benefit of that increased value. Onemata's unwillingness to fairly compensate Rahman and Arefin for their Onemata equity warrants judicial intervention, a court ordered independent valuator, and the cessation of all supplemental proceedings.

**B.      Relevant Factual Background**

Onemata purchased LocalBlox from Rahman and Arefin for approximately $7.6 million. D.E. 373-2 at p. 1, ¶ 2.2. The purchase price was divided into three components. *Id.* at p. 2, ¶ 2.2.2. $2 million was paid in cash as closing, approximately $3 million was provided under four promissory notes, and the remaining (approximate) $2.5 million was paid by conveying a 34% ownership interest in Onemata. *Id*; *see also* D.E. 380 at p. 238:5-241:3. Rahman and Arefin received the cash and equity. D.E. 382 at p. 94:8-11. However, Onemata never paid Rahman or Arefin any sum under the notes. D.E. 380 at p. 87:3-9.

A dispute between the parties arose. Onemata sued Rahman and Arefin for breach contract and Onemata sued Rahman for tortious interference. D.E. 73 at ¶¶ 7-74, 89-96, 119-132. Rahman counter-sued Onemata for breaching the notes. D.E. 144. The jury found against Rahman on all issues and a final judgment was entered in favor of Onemata for a total of $7 million in mid-September. D.E. 364; D.E. 368. Rahman and Arefin jointly owe $5 million under Onemata's breach of contract claim and Rahman owes an additional $2 million under Onemata's tortious interference claim. D.E. 368. The lopsided judgment allowed Onemata to retain possession of LocalBlox without paying any consideration for the business and forced Rahman to pay extra sums exceeding the purchase price. *See* D.E. 393 at pp. 17-18.

Onemata issued a letter notifying Rahman and Arefin that it would repurchase Rahman's and Arefin's Onemata stock in partial satisfaction of the judgement on December 7, 2022. D.E. 496-17. Onemata valued the stock at $669,354.44 based on a valuation conducted by its testifying expert, Ronald Seigneur ("Seigneur"), on April 16, 2021. *Id.* at p. 2 ("The company's most recent appraisal was performed on April 16, 2021); *see also* 171-1 at pp. 94-130. *Seigneur used a valuation date of February 28, 2021*. D.E. 496-17 at p. 2 ("Expert Report Business Valuation of: Onemata Corporation as of February 28, 2021.); *see also* 171-1 at pp. 94, 102. Rahman promptly objected to the valuation and sale. D.E. 487-1 at p. 1. Onemata never obtained a writ of execution

to acquire the stock, but now claims (improperly) that it already owns the stock. It does not. Rahman never agreed to sell his Onemata equity to Onemata.

Onemata allegedly went forward with the repurchase and reacquired Rahman's and Arefin's equity. D.E. 496 at p. 22. Onemata purportedly offset the final judgment amount by the value of Onemata equity repurchased from Rahman and Arefin. *See Id*. Therefore, Onemata claims the remaining judgment amount against Rahman and Arefin jointly is $4,330,645.56 and $6,330,645.56 against Rahman. *Id*. However, Rahman contends the sale never occurred, his equity was never conveyed to Onemata, and the value of his equity combined with Arefin's equity fully satisfy the final judgment. As a result, Onemata should be prohibited from conducting further judgment execution proceedings.

**C.    Rahman should not be bound by Seigneur's partial valuation because he was a hired gun engaged for the purpose of depressing the value of Onemata as much as possible to maximize Onemata's ability to claim damages at trial.**

Rahman should not be required to sell his Onemata equity at a price that was determined by Onemata's biased trial expert because Rahman is not receiving the fair value of the stock as consideration. *See* Fla. Stat. 607.1302 ("A shareholder of a domestic corporation is entitled to appraisal rights, and to obtain payment or the fair value of that shareholder's shares."); Colo. Rev. Stat. Ann. § 7-113-102 (same); *Foreclosure FreeSearch, Inc. v. Sullivan*, 12 So. 3d 771, 778 (Fla. 4th DCA 2009) (Although "the majority shareholder [have] a right to engage the appraisal process to eliminate the rights of dissenting shareholders and put an end to corporate strife[, t]he process must produce a fair result for the minority shareholders."). Onemata valued Rahman's and Arefin's equity at a total of $669,354.44 based on a biased opinion provided by an expert Onemata hired to testify on Onemata's behalf at trial. D.E. 497-17. Onemata hired and paid Seigneur to value Onemata. Onemata likely encouraged Seigneur to depress his valuation as low as possible because Onemata desired to show maximum damages to the jury at trial. Onemata's valuation was based on the same calculations and assumptions as the LocalBlox valuation. Compare D.E. 171-1 at pp. 1-33 with pp. 94-130. Rahman demonstrated many deficiencies with Seigneur's valuation during trial because Seigneur's foundational numerical assumptions were belied by the company's tax returns. D.E. 384 at pp. 26:17-45:17; *see also* D.E. 373-17. Rahman would have identified additional deficiencies during trial, but the Court prohibited Rahman from doing so. *Id*. at 46:21-47:9. Therefore, a neutral appraiser should be appointed to provide an unvarnished fair market value of Rahman's Onemata equity. The parties can then determine the actual remaining value of

3

MOTION TO VALUE ONEMATA EQUITY                    CASE NO.: 20-cv-62002-WPD

the judgment (if any). Any additional collections actions or supplemental proceedings should be stopped until the valuation is complete because the equity could fully satisfy the judgment. *See infra* at pp. 5-7.

Onemata's forced "sale" artificially depressed the equity's value because the "sale price" did not reflect the price a willing seller would accept to sell the equity or the price a willing buyer would accept to purchase the equity. *See Bright's Estate v. U. S.*, 619 F.2d 407, 410 (5th Cir. 1980), *on reh'g*, 658 F.2d 999 (5th Cir. 1981) (using the market value test to value equity, which requires the court to determine "the price at which [the equity] would have changed hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts.") (internal quotations omitted); *King v. King*, 313 So. 3d 887, 891 (Fla. 1st DCA 2021), *reh'g denied* (Mar. 29, 2021) ("The valuation of a business is calculated by determining the fair market value of the business, which is the amount for which a willing buyer and a willing seller would exchange assets, absent duress.") (internal quotations omitted). Rahman was not a willing seller and never offered to sell his equity to Onemata for $334,677.22. Rahman is unaware of any fact demonstrating Arefin willingly offered to sell her equity to Onemata for $334,677.22. No evidence demonstrates an unbiased willing seller would agree to sell the Onemata equity *in December 2022* for a total of $669,354.44. *See infra* at pp. 4-5. Onemata ignored the price a willing seller would sell his/her Onemata equity back to Onemata because it was incentivized to do so. The lower Onemata made the stock re-purchase price, the more Onemata could collect from Rahman in other assets thereby collecting more than what the final judgment permits.

Onemata cannot use Seigneur's valuation to determine the value of equity allegedly repurchased from Rahman because the valuation is outdated and in violation of the precept that a valuation must be based on what is known and knowable. D.E. 217-3 at p. 16:23-217:9. Seigneur's determined the value of Onemata as of February 28, 2021. D.E. 171-1 at pp. 94, 102. This arbitrary valuation date was almost two years before Onemata purportedly repurchased Rahman's equity in December 2022. An innumerable number of transactions and occurrences transpired during the two-year intervening period that would have impacted Onemata's value and the value of Rahman's and Arefin's equity by extension. Seigneur's valuation could not have taken these transactions and occurrences into account because they did not happen yet. Therefore, Seigneur's valuation cannot accurately reflect the value of Onemata in December 2022 and cannot dictate the value of

Rahman's and Arefin's equity. There is no reason why Rahman should be bound by Onemata's inaccurate valuation predicated on an arbitrary date that lapsed almost two years before his equity was allegedly repurchased.

Seigneur's valuation does not include valuable Onemata assets that are separate and distinct from the assets Onemata acquired by purchasing LocalBlox. As argued above, Onemata's valuation was based on the same calculations and assumptions as the LocalBlox valuation. Compare D.E. 171-1 at pp. 1-33 with pp. 94-130. Consequently, the Onemata valuation was limited to LocalBlox assets. This valuation method was erroneous because Onemata's CEO testified that Onemata owns assets unrelated to LocalBlox that have significant independent value like registered trademarks and software. D.E. 380 at p. 242:1-25 ("So even if we didn't have a dime of revenue in [our trademarks], there was an incredible amount of value in Onemata."). However, Onemata never determined the value of these assets as of the trial date. *Id*. (I have no idea how much value is in Onemata for the software and what we created."). Seigneur did not value these Onemata assets and could not therefore incorporate their value into his overall February 21, 2020 valuation of Onemata. A new independent Onemata valuation must therefore be conducted because Seigneur neglected to value significant asset classes that would increase the value of Onemata and Rahman's and Arefin's equity proportionally.

Seigneur's valuation is not the only method to value Rahman's equity. Rahman's Onemata equity could be valued based solely on revenues. Onemata's CTO, Brad Brown indicated this fact in a June 5, 2020. Mr. Brown stated, "if we can get to $5M in recurring revenue, it would be a[ttractive] for [ZoomInfo] to buy us and pay $200M – today." D.E. 375-9 at p. 1. This revenue only valuation can be common in the tech industry. Seigneur's valuation is not therefore the only method to value Onemata. There are different approaches based on a variety of factors and a neutral appraiser should be used to select the correct appraisal method and calculate the appraisal thereafter.

Rahman sought Onemata's First Amended and Restated Stockholders Agreement and other governing documents to determine the procedures for valuing the company. Operating documents like a stockholders agreement usually provide a rubric for determining the company's value and usually include provisions dictating how one or more neutral valuators will be selected to perform the valuation. Rahman initially asked Onemata for the documents on December 8, 2022. D.E. 487-1. Rahman lodged his request less than twenty-four hours after Onemata notified Rahman about

MOTION TO VALUE ONEMATA EQUITY                   CASE NO.: 20-cv-62002-WPD

the repurchase event. D.E. 496-17. Rahman never received the document or any response. Notwithstanding, Rahman believes Onemata failed to adhere to the proper requirements for selecting a valuator, valuating the company, and repurchasing Rahman's equity because these types of provisions are usually contained in a corporation's governing documents.[1]

Onemata had no authority to unilaterally force the sale of his equity under the circumstances of this case. Fla. Stat. § 678.1121 (1) ("The interest of a debtor in a certificated security may be reached by a creditor only by actual seizure of the security certificate by the officer making the attachment or levy."). The letter Onemata sent Rahman was not self-executing. And automatic forced equity sales are usually reserved for instances when the equity holder declares bankruptcy, dies, or becomes incapacitated under the terms of a shareholder agreement. None of those situations occurred here. Therefore, Rahman rejects that Onemata repurchased his equity, owns his equity, or otherwise controls his equity. Rahman can therefore negotiate the sale of his equity to Onemata for a fair market value sometime in the future if the parties agree on a price and other relevant terms.

**D.      Rahman's and Arefin's combined equity interest in Onemata likely satisfied the final judgment amount thereby obviating the need for Onemata to engage in further collection proceedings such as supplemental proceedings and third-party actions.**

Onemata should have valued itself much higher than Seigneur opined based on Onemata's own admission. Onemata's CEO, William Smith, and TrueInfluence's CEO, Michael VanPatten, negotiated a potential sale of LocalBlox in early July 2021. D.E. 373-24. Smith offered to sell LocalBlox assets to TrueInfluence for at least $10 million exclusive of any consideration paid to Rahman and Arefin. D.E. 373-24 at p. 2. The sale price had the ability to increase to $15 million if certain earnout benchmarks were achieved. *Id*. The sale price of LocalBlox significantly impacted Onemata's value because LocalBlox was Onemata's chief asset and responsible for a large portion of Onemata's value. D.E. 380 at p. 238:5-241:3. Therefore, Onemata's offer to sell LocalBlox for $10 million to $15 million dictates that Onemata believed it was worth at least $10 million to $15 million.

---

[1] It bears mention that the operating agreement for Onemata's predecessor in interest, Enscicon Acquisitions, LLC, requires buybacks to be mutually agreed upon. D.E. 373-2 at p. 115 § 11.2. The agreement also provides the member ten days to reject the purchase price offer and provides for an appraisal method. *Id*. at p. 117 § 11.3.

Rahman's and Arefin's 34% equity interest in Onemata could fully satisfy the judgment had Onemata fairly valued itself. Indeed, Rahman's and Arefin's 34% equity interest in Onemata should have been valued at a minimum of $5.1 million based on the Onemata/TrueInfluence purchase offer of LocalBlox assets [$15 million × 34% = $5.1 million]. This valuation would fully satisfy Rahman's and Arefin's joint and several liability under the judgment, thereby negating the need for Onemata to engage in any further collection proceedings including supplemental proceedings requested by Onemata. D.E. 496.[2] Onemata could have also gained additional value in the 18 months following the Onemata/TrueInfluence offer and Rahman's and Arefin's ownership value in Onemata should increase proportionately. The additional value could substantially or fully offset Rahman's remaining $2 million liability under the judgment. Again, this would obviate the need for Onemata to pursue post-judgment execution.

Onemata miscalculated the amount of Rahman's and Arefin's collective shares by 89,779.84, and as a result, miscalculated the total value of Rahman's and Arefin's equity. Rahman and Arefin were promised a collective 34% equity interest of all combined equity (voting and non-voting shares). *See* D.E. 373-2 at p. 2, ¶ 2.2.2; D.E. 497-17 at p. 1. Onemata's repurchase letter indicates it had a total of 15,415,577 shares. D.E. 497-17 at p. 3. Arithmetic therefore dictates that Rahman and Arefin owned 5,241,296 shares in Onemata (rounded) [15,415,577 × 34% = 5,241,296]. However, Onemata claims Rahman and Arefin only had 5,151,516 combined between because Rahman owned 2,575,758 shares and Arefin owned 2,575,758 shares [2,575,758 + 2,575,758 = 5,151,516]. D.E. 496-17 at p. 3. As a result, Onemata shorted Rahman and Arefin out of 89,780 shares and their corresponding value.

Onemata also miscalculated the value Rahman's and Arefin's collective shares assuming Seigneur's report is true. Onemata claims its value was $2,003,000 based on Seigneur's valuation. D.E. 496-17. However, Seigneur's valuation indicates the total value of Onemata is $3,806,000. *See* D.E. 171-1 at pp. 102, 130. Seigneur valued Onemata's class A shares at $2,003,000 and class B shares at $1,803,000. Therefore, the combined value of Onemata's class A and class B shares is $3,806,000 [$2,003,000 + $1,803,000= $3,806,000].

Applying the same logic, the value of Rahman's and Arefin's collective Onemata equity should be at least $847,966. There are 10,953,473 class B shares. *See* **Exhibit 1** at p. 2. Rahman

---

[2] Onemata owes Rahman and Arefin at least $8 million [$15 million valuation - $7 million judgment = $8 million payout to Rahman and Arefin].

MOTION TO VALUE ONEMATA EQUITY                     CASE NO.: 20-cv-62002-WPD

owns 2,575,758 class B shares and Arefin owns 2,575,758 class B shares. *Id*. Therefore, Rahman and Arefin own 47.03% of class B shares [(2,575,758 + 2,575,758) ÷ 10,953,473 = 47.03%]. Assuming Seigneur's Class B valuation of $1,803,000 was correct (which it is not), Rahman and Arefin were owed $847,966 for their equity [$1,803,000 × 47.03% = $847,966].

Onemata may oppose Rahman by arguing that Seigneur's class B share valuation was the total value of the company discounted to account for the non-voting non-controlling interest of class B shares. However, Onemata's interpretation is incorrect because an equity holder owning non-voting non-controlling cannot sell 100% of the company. *See* 171-1 at p. 130. Class A shares would need to be joined in the sale and approve the sale as a prerequisite to selling 100% of the company.

**E.     Conclusion**

Rahman respectfully requests that the Court grant this motion in all respects; appoint a neutral third party to appraise the value of Onemata, Rahman's Onemata equity, and Arefin's Onemata equity as of December 8, 2022; issue an order prohibiting Onemata from taking any further collection actions in this case including supplemental proceedings and third-party actions; alternatively deem the judgment full satisfied; and grant such other and further relief the Court deems just and proper under the circumstances.

**MAVRICK LAW FIRM, 1620 W. Oakland Park Blvd., Suite 300, Fort Lauderdale, FL 33311 Tel:954-564-2246**

MOTION TO VALUE ONEMATA EQUITY                    CASE NO.: 20-cv-62002-WPD

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

I hereby certify that undersigned counsel conferred with all Parties who may be affected by the relief sought in this motion pursuant to Local Rule 7.1(a)(3). Undersigned counsel for Rahman corresponded with Anthony Leffert on May 23, 2023 about the issues contained herein, and Mr. Leffert objects to all relief requested herein on behalf of Onemata.

Respectfully submitted,

**Mavrick Law Firm**
*Attorneys for Ashfaq Rahman*
1620 West Oakland Park Boulevard
Suite 300
Fort Lauderdale, Florida 33311
Telephone: (954) 564-2246
Peter T. Mavrick, Esq.
E-mail: peter@mavricklaw.com
Jacob M. Resnick, Esq.
Email: jacob@mavricklaw.com

By: */s/ Jacob M. Resnick*
      Peter T. Mavrick, Esq.
      Florida Bar No. 0083739
      Jacob M. Resnick, Esq.
      Florida Bar No. 0085314

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on June 8, 2023, the foregoing document was served via email through the Court's CM/ECF portal on all counsel of record at the email addresses enumerated on the Service List below.

*/s/ Jacob M. Resnick*

MOTION TO VALUE ONEMATA EQUITY                    CASE NO.: 20-cv-62002-WPD

## <u>SERVICE LIST</u>

*Onemata Corp. v. Ashfaq Rahman, et al. v. William Smith et al.*
*Case No. 20-cv-62002-WPD*

Harry Winderman, Esq.
Email: harry4334@hotmail.com
2255 Glades Road, Suite 205E
Boca Raton, FL 33431
Phone: 561-241- 0332
*Attorney for Defendant Sabira Arefin*

**Minerly Fein, P.A.**
Kenneth L. Minerley
Email: ken@minerleyfein.com
Jackson Pellingra
Email: jackson@minerleyfein.com
1200 North Federal Highway, Suite 420
Boca Raton, Florida 33432
Telephone: (561) 362-6699
*Attorneys for Plaintiff Onemata Corporation
and Third-Party Defendants William Smith
and Enscicon Acquisition II, LLC*

**Robinson Waters & O'dorisio, P.C.**
Anthony L. Leffert (*pro hac vice*)
Email: aleffert@rwolaw.com
Samuel G. John, Esq. (*pro hac vice*)
Email: sjohn@rwolaw.com
1099 18th Street, Suite 2600
Denver, CO 80202
Telephone: (303) 297-2600
*Attorneys for Plaintiff Onemata
Corporation and Third-Party Defendants
William Smith and Enscicon Acquisition
II, LLC*

**Lorium Law**
Riley W. Cirulnick
Email: rcirulnick@rprslaw.com
101 NE 3rd Ave., Suite 1800
Fort Lauderdale, FL 33301
Telephone: (954) 331-4082
*Attorneys for Plaintiff Onemata
Corporation and Third-Party Defendants
William Smith and Enscicon Acquisition
II, LLC*