UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:20-cv-62002-WPD

ONEMATA CORPORATION,

    Plaintiff,

v.

ASHFAQ RAHMAN and
SABIRA AREFIN,

    Defendants,

vs.

WILLIAM SMITH and ENSCICON
ACQUISITIONS II, LLC,

    Third-Party Defendants.
_____/

**RAHMAN'S MOTION TO VALUE ONEMATA STOCK
BEFORE SUPPLEMENTAL PROCEEDINGS ARE COMMENCED**

    Ashfaq Rahman ("Rahman") replies in support of his Motion to Value Onemata Stock Before Supplemental Proceedings are Commenced [D.E. 508] (the "Motion").

**A.**    **Introduction**

    Rahman is not trying to stay collection or obtain discovery from Onemata. Instead, Rahman seeks fair and adequate remuneration for his Onemata equity Onemata claims to possess. Rahman demonstrated under his Motion that Onemata believes his stock is worth $10 million to $15 million, thereby satisfying the judgment based on Onemata's own valuation. Therefore, Rahman requests an independent party value the stock so that Rahman can consummate the equity conveyance transaction, receive fair compensation for his asset, and end the parties' dispute. Rahman should not be subjected to further execution efforts when Onemata already possesses Rahman's asset (according to Onemata), which is worth more than the judgment.

**B.     Onemata had no authority to force Rahman to sell his Onemata equity and had no power to unilaterally dictate the sale terms.**

Onemata cannot unilaterally and arbitrarily set the buyback price for Rahman's equity merely because it is the judgment creditor. *See* Fla. Stat. 607.1302 ("A shareholder of a domestic corporation is entitled to appraisal rights, and to obtain payment or the fair value of that shareholder's shares."); Colo. Rev. Stat. Ann. § 7-113-102 (same); *Foreclosure FreeSearch, Inc. v. Sullivan,* 12 So. 3d 771, 778 (Fla. 4th DCA 2009) (Although "the majority shareholder [have] a right to engage the appraisal process to eliminate the rights of dissenting shareholders and put an end to corporate strife[, t]he process must produce a fair result for the minority shareholders."). Onemata had to purchase Rahman's stock for its fair market value at the time of sale and undertake the proper seizure mechanisms. *See Bright's Estate v. U. S.,* 619 F.2d 407, 410 (5th Cir. 1980), *on reh'g,* 658 F.2d 999 (5th Cir. 1981) (using the market value test to value equity, which requires the court to determine "the price at which [the equity] would have changed hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts.") (internal quotations omitted); *King v. King,* 313 So. 3d 887, 891 (Fla. 1st DCA 2021), *reh'g denied* (Mar. 29, 2021) ("The valuation of a business is calculated by determining the fair market value of the business, which is the amount for which a willing buyer and a willing seller would exchange assets, absent duress.") (internal quotations omitted); Fla. Stat. § 678.1121 (1) ("The interest of a debtor in a certificated security may be reached by a creditor only by actual seizure of the security certificate by the officer making the attachment or levy."). Onemata failed to provide any authority in opposition to Rahman's motion suggesting that it can ignore these fundamental requirements and set the value based on an outdated biased report from its own expert. Therefore, a neutral-third party should be appointed to value the Onemata equity, ensure Rahman obtains fair-market-value for his stock, and ensure Rahman obtains equivalent fair-market value offset for the judgment debt.

**C.     The Court has jurisdiction to compel a neutral business valuator to value Onemata and Rahman's Onemata equity because Rahman's appeal is based on a valuation of LocalBlox.**

Onemata attempts to misdirect this Court by arguing it lacks jurisdiction to rule on Rahman's Motion because the relevant issues were already tried and subject to appellate review. *See* D.E. 513 at p. 5 ("This Court lacks jurisdiction to order the valuation of the stock repurchased by Onemata while the Judgment Debtors' appeal is pending."). The Court should not be persuaded

because the value of <u>Onemata</u> was never litigated, never tried, and therefore not an issue on appeal. In fact, the Court prohibited Onemata from admitting trial evidence regarding Onemata's value. D.E. 384 at p. 18:23 (sustaining Rahman's objection to Onemata's attempt to admit evidence regarding Onemata's value).

Onemata submitted evidence during trial regarding <u>LocalBlox's</u> value. The sole purpose of this evidence was to establish Onemata's damages by demonstrating Onemata <u>overpaid for LocalBlox</u>. Ronald Seigneur ("Seigneur") exclusively provided the damages evidence by testifying about <u>LocalBlox's true value</u> as of the December 19, 2019 purchase date. *See* D.E. 384 at p. 18:8-14 ("Q. Do you recall what the purchase price was for the company[1] including all of the consideration as of December 18th? A. Slightly less than eight million. Q. And what was your valuation as you valued it considering all of these factors? What is the valuation you believe of the company actually was on 12-18? A. $2,338,000."); *see also* D.E. 384 at p. 14:2-20 (testifying about the circumstances of LocalBlox that affected the financial opinions), p. 80:1-5 (examining LocalBlox's profit and loss statement); D.E. 387 at p. 62:11-23 (Onemata's attorney providing closing argument about "the real value of the company on the date of the purchase", asserting that Ron Seigneur was "the only person that testified about the value on the day they bought it", that Seigneur's "valuation was a fair market value on December 19th of 2019 of $2,338,000", and that the value of LocalBlox "wasn't eight million, but it was 2.3."). Therefore, this Court has jurisdiction to rule on the Motion because Seigner never opined on Onemata's value during trial. *See, generally*, D.E. 384 (Court neglecting to provide a valuation for Onemata).

Rahman maintains post-judgment and on appeal that Seigneur's <u>LocalBlox valuation</u> was flawed because no evidence supports his foundational factual assumptions <u>pertaining to LocalBlox</u>. *See, e.g*., D.E. App. 43 at p. 44 ("Onemata had to prove Rahman breached the Purchase Agreement <u>by causing LocalBlox</u> to distribute X-Mode data to Prohibited Customers, misuse customer servers, and fail to pay sales tax.") (emphasis supplied). Rahman argues on appeal that Onemata "failed to establish that Rahman breached the Purchase Agreement by <u>causing LocalBlox</u> to disseminate X-Mode data to Prohibited Customers on or before the Purchase Date." *Id*. at pp.

---

[1] "The company" cannot refer to Onemata because Onemata did not purchase LocalBlox. Enscicon Acquisitions LLC purchased LocalBlox and later merged with Onemata in 2020. D.E. 380 at p. 45:15-17 ("Q. Can you tell me what Enscicon Acquisition, LLC is? A. That's a company that we formed to purchase -- to do the agreements to purchase LocalBlox."), p. 45:21-23 ("Q. Okay. And ultimately, did Onemata merge into Enscicon Acquisition? A. It did.").

45-48 (emphasis supplied). Rahman additionally argues Onemata "failed to establish that Rahman breached the Purchase Agreement *by causing LocalBlox* to misuse its customers servers to process data before the Purchase Date." *Id*. at pp. 48-53 (emphasis supplied). And Rahman argues that LocalBlox's alleged failure to pay sales tax was not an issue in the case, and thus not a basis to value LocalBlox. *Id*. at pp. 53-55 ("No allegation pertains to *unpaid LocalBlox sales tax* and no evidence established the amount of outstanding sales tax as of the Purchase Date.") (emphasis supplied). All of these arguments are directed to LocalBlox, not Onemata. Therefore, Rahman's appeal does not interfere with the Court's jurisdiction to issue an order requiring a neutral third-party to value Onemata because Rahman's appeal is directed to Seigneur's valuation of LocalBlox.

There was no reason to elicit evidence from Seigneur or any other witness regarding Onemata's value because the evidence would have been irrelevant to any claim or controversy in the lawsuit. Onemata alleged Rahman's and Arefin's contractual breaches caused Onemata to purchase LocalBlox at an inflated price. *See* D.E. 73 at ¶¶ 7-74, 89-96. Determining this purported price does not require a valuation of Onemata because the Court already ruled that Onemata and LocalBlox are separate and distinct companies. *See* D.E. 259 at p. 16 ("There is no record evidence that Onemata or Enscicon ever merged or consolidated with LocalBlox, Inc., which remains a separate legal entity.").[2] Therefore, there was no reason to proffer evidence relating to Onemata's value (through expert opinion or otherwise) because the issue was wholly irrelevant.

**D.    Rahman is a present shareholder of Onemata because Onemata never obtained a writ to seize Rahman's Onemata security certificate.**

Onemata contends Rahman is not a shareholder without providing any authority to support its position. While Onemata issued a buyback letter unilaterally fixing buyback price of Rahman's stock and the purchase date, Onemata fails to provide any contract term demonstrating it had such authority or that Rahman assented to such actions. *See, generally,* D.E. 513; D.E. 496-17. If such a provision existed in Onemata's governing documents (which Onemata refuses to provide), one would expect Onemata to rely upon it. The absence of such contractual authority in Onemata's Response provides strong indication that no such authority exists. *See, generally,* D.E. 513.

---

[2] It is noteworthy that the operating agreement for Onemata's predecessor in interest, Enscicon Acquisitions, LLC, requires buybacks to be mutually agreed upon, permits a ten-day purchase price rejection period, and provides for certain appraisal methods. D.E. 373-2 at pp. 115 § 11.2, 117 § 11.3.

Therefore, the parties must default to the norms associated with buying and selling. The stock's fair market value price must be established *before* the transaction is consummated. Rahman must accept the offer price *before* the transaction is consummated. Onemata cannot upend centuries of basic contract law merely because it holds a judgment against Rahman.

Onemata does not own the stock in question because Rahman rejected the price and terms offered by Onemata in its buyback letter. D.E. 487-1 at p. 1. As a result, no transaction was ever consummated and Rahman's equity was never conveyed to Onemata. Onemata does not provide any authority suggesting it has unilateral power to force the equity sale (because none exists), and Florida statute provides the exclusive method that a judgment credit can acquire a judgment debtor's stock. *See supra* at p. 4; Fla. Stat. § 678.1121 (1). Therefore, Rahman's rejection of Onemata's purchase offer precluded the transfer of equity.

*Colvistec AG v. Equitech Int'l Corp*, 2020 WL 13595110, at *1 (M.D. Fla. Mar. 26, 2020) is in apposite and does not permit Onemata to dictate the sale price of Rahman's equity to Rahman. In *Colvistec AG,* the judgment debtor tried to force the judgment creditor to accept the judgment debtor's equity in satisfaction of the judgment. *Id*. The court rejected the judgment debtor's approach because the judgment creditor is permitted to forego certain judgment debtor assets in favor of other assets. *Id*. This is not the case here because Onemata proclaims to already own and possess Rahman's equity. *See* D.E. 518-1 at p. 21:13-23:6 (Onemata's counsel representing Rahman does not own his Onemata stock). Rahman is not trying to force Onemata to accept his equity in lieu of other assets, but instead, requesting that he be fairly compensated for the equity Onemata proclaims it already possesses. Otherwise, Rahman will not receive the proper judgment offset and Onemata will be permitted to collect more than the judgment value.

E.   **Rahman's and Arefin's equity ownership in Onemta's is worth more than $669,354.44.**

As previously argued, Seigneur's valuation is not the only method to value Rahman's equity. Rahman's Onemata equity could be valued based solely on revenues. Onemata's CTO, Brad Brown indicated this fact in a June 5, 2020. Mr. Brown stated, "if we can get to $5M in recurring revenue, it would be a[ttractive] for [ZoomInfo] to buy us and pay $200M – today." D.E. 375-9 at p. 1; *see also* D.E. 518-2 (showing Onemata revenues of $3,831,278 after nine months). This revenue only valuation can be common in the tech industry. Seigneur's valuation is not therefore the only method to value Onemata. There are different approaches based on a variety of

factors and a neutral appraiser should be used to select the correct appraisal method and calculate the appraisal thereafter.

Also as previously argued, Onemata miscalculated the value of Rahman's and Arefin's collective shares assuming Seigneur's report is true. Onemata claims its value was $2,003,000 based on Seigneur's valuation. D.E. 496-17. However, Seigneur's valuation indicates the total value of Onemata is $3,806,000. *See* D.E. 171-1 at pp. 102, 130. Seigneur valued Onemata's class A shares at $2,003,000 and class B shares at $1,803,000. Therefore, the combined value of Onemata's class A and class B shares is $3,806,000 [$2,003,000 + $1,803,000= $3,806,000]. Applying the same logic, the value of Rahman's and Arefin's collective Onemata equity should be at least $847,966. There are 10,953,473 class B shares. *See* D.E. 508-1 at p. 2. Rahman owns 2,575,758 class B shares and Arefin owns 2,575,758 class B shares. *Id.* Therefore, Rahman and Arefin own 47.03% of class B shares [(2,575,758 + 2,575,758) ÷ 10,953,473 = 47.03%]. Assuming Seigneur's Class B valuation of $1,803,000 was correct (which it is not), Rahman and Arefin were owed $847,966 for their equity [$1,803,000 × 47.03% = $847,966].

Alternatively, Will Smith admitted Rahman and Arefin owned a combined total of 34% of Onemata. D.E. 380 at page 240:19-241:3. As a result, Rahman are Arefin should be credited $1.3 million for their Onemata equity [34% × $3.8 million = $1.3 million].

**F.    Conclusion**

Rahman respectfully requests that the Court grant his Motion to Value Onemata Stock Before Supplemental Proceedings are Commenced; appoint a neutral third party to appraise the value of Onemata, Rahman's Onemata equity, and Arefin's Onemata equity as of December 8, 2022; issue an order prohibiting Onemata from taking any further collection actions in this case including supplemental proceedings and third-party actions until this valuation is completed; or alternatively deem the judgment full satisfied; and grant such other and further relief the Court deems just and proper under the circumstances.

Respectfully submitted,

**Mavrick Law Firm**
*Attorneys for Ashfaq Rahman*
1620 West Oakland Park Boulevard
Suite 300
Fort Lauderdale, Florida 33311
Telephone: (954) 564-2246
Peter T. Mavrick, Esq.
E-mail: peter@mavricklaw.com
Jacob M. Resnick, Esq.
Email: jacob@mavricklaw.com

By: /s/ *Jacob M. Resnick*
Peter T. Mavrick, Esq.
Florida Bar No. 0083739
Jacob M. Resnick, Esq.
Florida Bar No. 0085314

REPLY TO MOTION TO VALUE ONEMATA EQUITY                                      CASE NO.: 20-cv-62002-WPD

## CERTIFICATE OF SERVICE

I certify that, on June 28, 2023, the foregoing document was served via email through the Court's CM/ECF portal on all counsel of record at the email addresses enumerated on the Service List below.

/s/ Jacob M. Resnick

## SERVICE LIST

*Onemata Corp. v. Ashfaq Rahman, et al. v. William Smith et al.*
*Case No. 20-cv-62002-WPD*

Harry Winderman, Esq.
Email: harry4334@hotmail.com
2255 Glades Road, Suite 205E
Boca Raton, FL 33431
Phone: 561-241- 0332
*Attorney for Defendant Sabira Arefin*

**Minerly Fein, P.A.**
Kenneth L. Minerley
Email: ken@minerleyfein.com
Jackson Pellingra
Email: jackson@minerleyfein.com
1200 North Federal Highway, Suite 420
Boca Raton, Florida 33432
Telephone: (561) 362-6699
*Attorneys for Plaintiff Onemata Corporation and Third-Party Defendants William Smith and Enscicon Acquisition II, LLC*

**Robinson Waters & O'dorisio, P.C.**
Anthony L. Leffert (*pro hac vice*)
Email: aleffert@rwolaw.com
Samuel G. John, Esq. (*pro hac vice*)
Email: sjohn@rwolaw.com
1099 18th Street, Suite 2600
Denver, CO 80202
Telephone: (303) 297-2600
*Attorneys for Plaintiff Onemata Corporation and Third-Party Defendants William Smith and Enscicon Acquisition II, LLC*

**Lorium Law**
Riley W. Cirulnick
Email: rcirulnick@rprslaw.com
101 NE 3rd Ave., Suite 1800
Fort Lauderdale, FL 33301
Telephone: (954) 331-4082
*Attorneys for Plaintiff Onemata Corporation and Third-Party Defendants William Smith and Enscicon Acquisition II, LLC*