UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:20-cv-62002-WPD

ONEMATA CORPORATION,

    Plaintiff,

v.

ASHFAQ RAHMAN and
SABIRA AREFIN,

    Defendants,

vs.

WILLIAM SMITH and ENSCICON
ACQUISITIONS II, LLC,

    Third-Party Defendants.
_____/

## RAHMAN'S AMENDED SUPPLEMENTAL REPLY
## IN SUPPORT OF HIS MOTION TO VALUE ONEMATA STOCK
## BEFORE SUPPLEMENTAL PROCEEDINGS ARE COMMENCED

Ashfaq Rahman ("Rahman") amends[1] and supplementally replies in support of his Motion to Value Onemata Stock Before Supplemental Proceedings are Commenced [D.E. 508] (the "Motion").

**A.    Introduction**

Rahman is not trying to stay collection or obtain discovery from Onemata. Instead, Rahman seeks fair and adequate remuneration for his Onemata equity Onemata claims to possess. Rahman demonstrated under his Motion that Onemata believes his stock is worth $10 million to $15 million, thereby satisfying the judgment based on Onemata's own valuation. Therefore, Rahman requests an independent party value the stock so that Rahman can consummate the equity conveyance transaction, receive fair compensation for his asset, and end the parties' dispute.

---

[1] Rahman amends his Supplemental Reply in Support of His Motion to Value [D.E. 520] to provide additional argument and documents demonstrating Onemata's equity re-purchase from Rahman was ineffective. *See infra* at pp. 3-4.

Rahman should not be subjected to further execution efforts when Onemata already possesses Rahman's asset (according to Onemata), which is worth more than the judgment.

Rahman files this Amended Supplemental Reply because Onemata provided Rahman with its First Amended and Restated Stockholders Agreement *two days after he filed his Reply*. D.E. 518. In doing so, Onemata finally admitted it never provided a copy of the document to Rahman during pre-trial discovery. *See* D.E. 520-1 (Onemata's counsel stating "I believed it had been produced with a bates number but it seems it was not produced."); *see also* D.E. 498 at pp. 3-4 (finding that Onemata "asserts that Defendant/Judgment Debtors were previously provided with the corporate governance documents.") (citing D.E. 484 at p. 3). The plain terms of the First Amended and Restated Stockholders Agreement ("Stockholder Agreement") confirms Rahman's suspicions all along. *Onemata had no authority to unilaterally purchase Rahman's or Arefin's equity*.

**B.    Onemata never re-purchased Rahman's and Arefin's equity under the Stockholder Agreement because they were never Onemata employees or disabled, and Onemata failed to comply with the appraisal requirements under the Stockholder Agreement.**

The Stockholder agreement provides Onemata limited authority to unilaterally repurchase stock when employees are terminated and security holders die or become disabled. D.E. 520-2 at p. 6 ¶ 3.1(a)(i) ("If a Securityholder's employment with the Company is terminated… the Company… will have the right and option to purchase from that Securityholder all of the Company Securities owned by that Securityholder as of the date of termination of the Securityholder's employment…."); *Id*. at pp. 5-6 ¶ 3.1(1)(b) ("Upon the death or Disability… of a Securityholder who is an individual, the Company or its assignee will have the same Repurchase Option as in Section 3.1(a) above…."). However, these provisions do not apply to Rahman and Arefin because they were never Onemata employees, are not dead, and are not disabled. Therefore, the Stockholder Agreement does not provide Onemata any authority to unilaterally re-purchase Rahman's or Arefin's Onemata stock, and certainly does not require Rahman and Arefin to sell their stock at a price mandated by Onemata. Onemata should accordingly be required to submit itself to a neutral valuation so that Rahman can sell his stock to Onemata for a fair price and obtain fair credit against the judgment.

Rahman was never an Onemata employee because he worked for LocalBlox. *See* D.E. 373-4 (Executive Employment Agreement between LocalBlox and Rahman). Onemata's Chief Executive Officer and main trial witness, Will Smith, declared under penalty of perjury that

"Enscicon Acquisitions never merged or consolidated with LocalBlox, Inc." D.E. 183-2 at ¶ 5.[2] The Court entered summary judgment against Rahman on his claims *against Onemata* for breach of his employment agreement based on Mr. Smith's statements because the claims were brought against Onemata instead of LocalBlox. D.E. 259 at p. 16. Onemata is therefore equitably estopped from now claiming Rahman was an Onemata employee. *See Florida Dept. of Health & Rehab. Services v. S.A.P*, 835 So. 2d 1091, 1096 (Fla. 2002) (quoting *State ex rel. Watson v. Gray,* 48 So.2d 84, 87–88 (Fla.1950) (quoting 3 *Pomeroy's Equity Jurisprudence* § 804 (5th ed.1941) ("Equitable estoppel is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position.")).

Arefin was a consultant for LocalBlox, not Onemata. *See* D.E. 373-5 (Consulting Agreement between LocalBlox and Arefin). Therefore, Arefin was never employed by Onemata or LocalBlox. *Id*.

Onemata's likely contention that Rahman and Arefin were Onemata employees is false and belied by the documents LocalBlox and Onemata provided to Rahman in real-time. Onemata sued Rahman and Arefin on October 2, 2020, and <u>LocalBlox</u> terminated Rahman's employment agreement and Arefin's consulting agreement on October 5, 2023. *See* D.E. 1; D.E. 373-21 (LocalBlox terminating Arfin's Consulting Agreement); D.E. 373-22 (LocalBlox terminating Rahman's Employment Agreement). About twenty days <u>later</u>, Onemata transferred the Onemata stock to Rahman and Arefin. D.E. 527-1 at p. 2 (Onemata's attorney providing Rahman's and Arefin's attorney with the Onemata stock certificates). Onemata provided the stock to Rahman and Arefin <u>after</u> it sued them and <u>after LocalBlox terminated their respective agreements</u>. *Id*. Onemata provided Rahman and Arefin the stock despite its the already existing lawsuit and LocalBlox's termination of the employment agreement and consulting agreement because Mr. Smith gave his word, he was going to do it regardless of the consequence. *See* D.E. 380 at p. 242:9-243:10 ("I did it after we had all these problems because I gave them my word I was going to do it."). This transaction of events demonstrates the transfer of stock from Onemata to Rahman and Arefin had nothing to do with their alleged status as employees because the stock was transferred

---

[2] Enscicon Acquisitions was Onemata's predecessor in interest. D.E. 183-2 at ¶ 6 ("Onemata merged with Enscicon Acquisition LLC on September 30, 2020."); D.E. 380 at p. 45:15-23; D.E. 381 at p. 15:13-18.
.

AMENDED SUPP. REPLY TO MOTION                           CASE NO.: 20-cv-62002-WPD
TO VALUE ONEMATA EQUITY

after LocalBlox terminated any employment relationship. Instead, Onemata transferred the stock to Rahman and Arefin as a natural result of Enscicon Acquisition's purchase of LocalBlox from Rahman and Arefin and subsequent merger into Onemata.

Rahman and Arefin are not disabled because no claim or evidence suggests either was unable to substantially perform his or her duties as an employee or director of Onemata due to sickness or injury for more than twelve days. *See* D.E. 520-2 at p. 6 ¶ 3.1(1)(b) (defining disabled as an "individual [who] has been unable to substantially perform his or her duties as an employee or director of the Company as a result of sickness or injury; and he or she remained unable to perform any such duties for a period of more than one hundred twenty (120) days in any twelve (12) month period."). Rahman and Arefin also are not dead. Therefore, Onemata has no basis to unilaterally re-purchase Rahman's or Arefin's stock.

Onemata failed to comply with the Stockholder Agreement's repurchase terms thereby nullifying any alleged sale. The Stockholder Agreement requires Onemata and Rahman to attempt to agree on a fair market price within fifteen days after Onemata notified Rahan and Arefin of its intent to repurchase. *Id*. at p. 8 ¶ 3.2 ("The parties to the purchase and sale shall attempt to agree upon a fair market value per share within fifteen (15) days of the date of the Repurchase Option Exercise Notice under Section 3.1."). The Stockholder Agreement also obligated Onemata to allow Rahman an ability to designate an appraiser to value Onemata. *Id*. ("If the parties are unable to agree upon a purchase price… The transferring shareholder… shall designate one certified public accountant (CPA) and the acquiring party (the Company or Smith, as the case may be) shall designate one CPA."). Onemata did neither. Onemata never provided Rahman an opportunity to negotiate the price of his stock or select a CPA that could conduct the valuation. *See* D.E. 496-17 at pp. 3-4 (Onemata's December 7, 2022 letter dictating the share price at $0.1299). Onemata allotted Rahman less than two days' notice before the alleged purchase occurred. *See* D.E. 496-17 at p. 4 (Onemata's December 7, 2022 letter informing Rahman of its intention to repurchase Rahman's stock on December 9, 2022). Therefore, Onemata never complied with the repurchase requirements in its own Stockholders Agreement. *Id*.

**C.  Onemata had no authority to force Rahman to sell his Onemata equity and had no power to unilaterally dictate the sale terms.**

Onemata cannot unilaterally and arbitrarily set the buyback price for Rahman's equity merely because it is the judgment creditor. *See* Fla. Stat. 607.1302 ("A shareholder of a domestic

4

AMENDED SUPP. REPLY TO MOTION            CASE NO.: 20-cv-62002-WPD
TO VALUE ONEMATA EQUITY

corporation is entitled to appraisal rights, and to obtain payment or the fair value of that shareholder's shares."); Colo. Rev. Stat. Ann. § 7-113-102 (same); *Foreclosure FreeSearch, Inc. v. Sullivan,* 12 So. 3d 771, 778 (Fla. 4th DCA 2009) (Although "the majority shareholder [have] a right to engage the appraisal process to eliminate the rights of dissenting shareholders and put an end to corporate strife[, t]he process must produce a fair result for the minority shareholders."). Onemata had to purchase Rahman's stock for its fair market value at the time of sale and undertake the proper seizure mechanisms. *See Bright's Estate v. U. S.,* 619 F.2d 407, 410 (5th Cir. 1980), *on reh'g,* 658 F.2d 999 (5th Cir. 1981) (using the market value test to value equity, which requires the court to determine "the price at which [the equity] would have changed hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts.") (internal quotations omitted); *King v. King,* 313 So. 3d 887, 891 (Fla. 1st DCA 2021), *reh'g denied* (Mar. 29, 2021) ("The valuation of a business is calculated by determining the fair market value of the business, which is the amount for which a willing buyer and a willing seller would exchange assets, absent duress.") (internal quotations omitted); Fla. Stat. § 678.1121 (1) ("The interest of a debtor in a certificated security may be reached by a creditor only by actual seizure of the security certificate by the officer making the attachment or levy."). Onemata failed to provide any authority in opposition to Rahman's motion suggesting that it can ignore these fundamental requirements and set the value based on an outdated biased report from its own expert. Therefore, a neutral-third party should be appointed to value the Onemata equity, ensure Rahman obtains fair-market-value for his stock, and ensure Rahman obtains equivalent fair-market value offset for the judgment debt.

**D.**     **The Court has jurisdiction to compel a neutral business valuator to value Onemata and Rahman's Onemata equity because Rahman's appeal is based on a valuation of LocalBlox.**

Onemata attempts to misdirect this Court by arguing it lacks jurisdiction to rule on Rahman's Motion because the relevant issues were already tried and subject to appellate review. *See* D.E. 513 at p. 5 ("This Court lacks jurisdiction to order the valuation of the stock repurchased by Onemata while the Judgment Debtors' appeal is pending."). The Court should not be persuaded because the value of <u>Onemata</u> was never litigated, never tried, and therefore not an issue on appeal. In fact, the Court prohibited Onemata from admitting trial evidence regarding Onemata's value. D.E. 384 at p. 18:23 (sustaining Rahman's objection to Onemata's attempt to admit evidence regarding Onemata's value).

Onemata submitted evidence during trial regarding *LocalBlox's* value. The sole purpose of this evidence was to establish Onemata's damages by demonstrating Onemata *overpaid for LocalBlox*. Ronald Seigneur ("Seigneur") exclusively provided the damages evidence by testifying about *LocalBlox's true value* as of the December 19, 2019 purchase date. *See* D.E. 384 at p. 18:8-14 ("Q. Do you recall what the purchase price was for the company[3] including all of the consideration as of December 18th? A. Slightly less than eight million. Q. And what was your valuation as you valued it considering all of these factors? What is the valuation you believe of the company actually was on 12-18? A. $2,338,000."); *see also* D.E. 384 at p. 14:2-20 (testifying about the circumstances of LocalBlox that affected the financial opinions), p. 80:1-5 (examining LocalBlox's profit and loss statement); D.E. 387 at p. 62:11-23 (Onemata's attorney providing closing argument about "the real value of the company on the date of the purchase", asserting that Ron Seigneur was "the only person that testified about the value on the day they bought it", that Seigneur's "valuation was a fair market value on December 19th of 2019 of $2,338,000", and that the value of LocalBlox "wasn't eight million, but it was 2.3."). Therefore, this Court has jurisdiction to rule on the Motion because Seigner never opined on Onemata's value during trial. *See, generally*, D.E. 384 (Court neglecting to provide a valuation for Onemata).

Rahman maintains post-judgment and on appeal that Seigneur's *LocalBlox valuation* was flawed because no evidence supports his foundational factual assumptions *pertaining to LocalBlox*. *See, e.g*., D.E. App. 43 at p. 44 ("Onemata had to prove Rahman breached the Purchase Agreement *by causing LocalBlox* to distribute X-Mode data to Prohibited Customers, misuse customer servers, and fail to pay sales tax.") (emphasis supplied). Rahman argues on appeal that Onemata "failed to establish that Rahman breached the Purchase Agreement by *causing LocalBlox* to disseminate X-Mode data to Prohibited Customers on or before the Purchase Date." *Id*. at pp. 45-48 (emphasis supplied). Rahman additionally argues Onemata "failed to establish that Rahman breached the Purchase Agreement *by causing LocalBlox* to misuse its customers servers to process data before the Purchase Date." *Id*. at pp. 48-53 (emphasis supplied). And Rahman argues that LocalBlox's alleged failure to pay sales tax was not an issue in the case, and thus not a basis to

---

[3] "The company" cannot refer to Onemata because Onemata did not purchase LocalBlox. Enscicon Acquisitions LLC purchased LocalBlox and later merged with Onemata in 2020. D.E. 380 at p. 45:15-17 ("Q. Can you tell me what Enscicon Acquisition, LLC is? A. That's a company that we formed to purchase -- to do the agreements to purchase LocalBlox."), p. 45:21-23 ("Q. Okay. And ultimately, did Onemata merge into Enscicon Acquisition? A. It did.").

value LocalBlox. *Id*. at pp. 53-55 ("No allegation pertains to <u>unpaid LocalBlox sales tax</u> and no evidence established the amount of outstanding sales tax as of the Purchase Date.") (emphasis supplied). All of these arguments are directed to LocalBlox, not Onemata. Therefore, Rahman's appeal does not interfere with the Court's jurisdiction to issue an order requiring a neutral third-party to value Onemata because Rahman's appeal is directed to Seigneur's valuation of LocalBlox.

There was no reason to elicit evidence from Seigneur or any other witness regarding Onemata's value because the evidence would have been irrelevant to any claim or controversy in the lawsuit. Onemata alleged Rahman's and Arefin's contractual breaches caused Onemata to purchase LocalBlox at an inflated price. *See* D.E. 73 at ¶¶ 7-74, 89-96. Determining this purported price does not require a valuation of Onemata because the Court already ruled that Onemata and LocalBlox are separate and distinct companies. *See* D.E. 259 at p. 16 ("There is no record evidence that Onemata or Enscicon ever merged or consolidated with LocalBlox, Inc., which remains a separate legal entity.").[4] Therefore, there was no reason to proffer evidence relating to Onemata's value (through expert opinion or otherwise) because the issue was wholly irrelevant.

E.  **Rahman is a present shareholder of Onemata because Onemata never obtained a writ to seize Rahman's Onemata security certificate.**

Onemata contends Rahman is not a shareholder without providing any authority to support its position. While Onemata issued a buyback letter unilaterally fixing buyback price of Rahman's stock and the purchase date, Onemata fails to provide any contract term demonstrating it had such authority or that Rahman assented to such actions. *See, generally,* D.E. 513; D.E. 496-17. If such a provision existed in Onemata's governing documents (which Onemata refuses to provide), one would expect Onemata to rely upon it. The absence of such contractual authority in Onemata's Response provides strong indication that no such authority exists. *See, generally,* D.E. 513. Therefore, the parties must default to the norms associated with buying and selling. The stock's fair market value price must be established *before* the transaction is consummated. Rahman must accept the offer price *before* the transaction is consummated. Onemata cannot upend centuries of basic contract law merely because it holds a judgment against Rahman.

---

[4] It is noteworthy that the operating agreement for Onemata's predecessor in interest, Enscicon Acquisitions, LLC, requires buybacks to be mutually agreed upon, permits a ten-day purchase price rejection period, and provides for certain appraisal methods. D.E. 373-2 at pp. 115 § 11.2, 117 § 11.3.

Onemata does not own the stock in question because Rahman rejected the price and terms offered by Onemata in its buyback letter. D.E. 487-1 at p. 1. As a result, no transaction was ever consummated and Rahman's equity was never conveyed to Onemata. Onemata does not provide any authority suggesting it has unilateral power to force the equity sale (because none exists), and Florida statute provides the exclusive method that a judgment credit can acquire a judgment debtor's stock. *See supra* at p. 4; Fla. Stat. § 678.1121 (1). Therefore, Rahman's rejection of Onemata's purchase offer precluded the transfer of equity.

*Colvistec AG v. Equitech Int'l Corp*, 2020 WL 13595110, at *1 (M.D. Fla. Mar. 26, 2020) is in apposite and does not permit Onemata to dictate the sale price of Rahman's equity to Rahman. In *Colvistec AG,* the judgment debtor tried to force the judgment creditor to accept the judgment debtor's equity in satisfaction of the judgment. *Id*. The court rejected the judgment debtor's approach because the judgment creditor is permitted to forego certain judgment debtor assets in favor of other assets. *Id*. This is not the case here because Onemata proclaims to already own and possess Rahman's equity. *See* D.E. 518-1 at p. 21:13-23:6 (Onemata's counsel representing Rahman does not own his Onemata stock). Rahman is not trying to force Onemata to accept his equity in lieu of other assets, but instead, requesting that he be fairly compensated for the equity Onemata proclaims it already possesses. Otherwise, Rahman will not receive the proper judgment offset and Onemata will be permitted to collect more than the judgment value.

F.	**Rahman's and Arefin's equity ownership in Onemata's is worth more than $669,354.44.**

As previously argued, Seigneur's valuation is not the only method to value Rahman's equity. Rahman's Onemata equity could be valued based solely on revenues. Onemata's CTO, Brad Brown indicated this fact in a June 5, 2020. Mr. Brown stated, "if we can get to $5M in recurring revenue, it would be a[ttractive] for [ZoomInfo] to buy us and pay $200M – today." D.E. 375-9 at p. 1; *see also* D.E. 518-2 (showing Onemata revenues of $3,831,278 after nine months). This revenue only valuation can be common in the tech industry. Seigneur's valuation is not therefore the only method to value Onemata. There are different approaches based on a variety of factors and a neutral appraiser should be used to select the correct appraisal method and calculate the appraisal thereafter.

Also as previously argued, Onemata miscalculated the value of Rahman's and Arefin's collective shares assuming Seigneur's report is true. Onemata claims its value was $2,003,000

based on Seigneur's valuation. D.E. 496-17. However, Seigneur's valuation indicates the total value of Onemata is $3,806,000. *See* D.E. 171-1 at pp. 102, 130. Seigneur valued Onemata's class A shares at $2,003,000 and class B shares at $1,803,000. Therefore, the combined value of Onemata's class A and class B shares is $3,806,000 [$2,003,000 + $1,803,000= $3,806,000]. Applying the same logic, the value of Rahman's and Arefin's collective Onemata equity should be at least $847,966. There are 10,953,473 class B shares. *See* D.E. 508-1 at p. 2. Rahman owns 2,575,758 class B shares and Arefin owns 2,575,758 class B shares. *Id.* Therefore, Rahman and Arefin own 47.03% of class B shares [(2,575,758 + 2,575,758) ÷ 10,953,473 = 47.03%]. Assuming Seigneur's Class B valuation of $1,803,000 was correct (which it is not), Rahman and Arefin were owed $847,966 for their equity [$1,803,000 × 47.03% = $847,966].

Alternatively, Will Smith admitted Rahman and Arefin owned a combined total of 34% of Onemata. D.E. 380 at page 240:19-241:3. As a result, Rahman are Arefin should be credited $1.3 million for their Onemata equity [34% × $3.8 million = $1.3 million].

**G.     Conclusion**

Rahman respectfully requests that the Court grant his Motion to Value Onemata Stock Before Supplemental Proceedings are Commenced; appoint a neutral third party to appraise the value of Onemata, Rahman's Onemata equity, and Arefin's Onemata equity as of December 8, 2022; issue an order prohibiting Onemata from taking any further collection actions in this case including supplemental proceedings and third-party actions until this valuation is completed; or alternatively deem the judgment full satisfied; and grant such other and further relief the Court deems just and proper under the circumstances.

AMENDED SUPP. REPLY TO MOTION          CASE NO.: 20-cv-62002-WPD
TO VALUE ONEMATA EQUITY

                Respectfully submitted,

                **Mavrick Law Firm**
                *Attorneys for Ashfaq Rahman*
                1620 West Oakland Park Boulevard
                Suite 300
                Fort Lauderdale, Florida 33311
                Telephone: (954) 564-2246
                Peter T. Mavrick, Esq.
                E-mail: peter@mavricklaw.com
                Jacob M. Resnick, Esq.
                Email: jacob@mavricklaw.com

By: /s/ *Jacob M. Resnick*
     Peter T. Mavrick, Esq.
     Florida Bar No. 0083739
     Jacob M. Resnick, Esq.
     Florida Bar No. 0085314

AMENDED SUPP. REPLY TO MOTION  CASE NO.: 20-cv-62002-WPD
TO VALUE ONEMATA EQUITY

## CERTIFICATE OF SERVICE

I certify that, on July 24, 2023, the foregoing document was served via email through the Court's CM/ECF portal on all counsel of record at the email addresses enumerated on the Service List below.

/s/ Jacob M. Resnick

## SERVICE LIST

*Onemata Corp. v. Ashfaq Rahman, et al. v. William Smith et al.*
*Case No. 20-cv-62002-WPD*

Harry Winderman, Esq.
Email: harry4334@hotmail.com
2255 Glades Road, Suite 205E
Boca Raton, FL 33431
Phone: 561-241- 0332
*Attorney for Defendant Sabira Arefin*

**Minerly Fein, P.A.**
Kenneth L. Minerley
Email: ken@minerleyfein.com
Jackson Pellingra
Email: jackson@minerleyfein.com
1200 North Federal Highway, Suite 420
Boca Raton, Florida 33432
Telephone: (561) 362-6699
*Attorneys for Plaintiff Onemata Corporation and Third-Party Defendants William Smith and Enscicon Acquisition II, LLC*

**Robinson Waters & O'dorisio, P.C.**
Anthony L. Leffert (*pro hac vice*)
Email: aleffert@rwolaw.com
Samuel G. John, Esq. (*pro hac vice*)
Email: sjohn@rwolaw.com
1099 18th Street, Suite 2600
Denver, CO 80202
Telephone: (303) 297-2600
*Attorneys for Plaintiff Onemata Corporation and Third-Party Defendants William Smith and Enscicon Acquisition II, LLC*

**Lorium Law**
Riley W. Cirulnick
Email: rcirulnick@rprslaw.com
101 NE 3rd Ave., Suite 1800
Fort Lauderdale, FL 33301
Telephone: (954) 331-4082
*Attorneys for Plaintiff Onemata Corporation and Third-Party Defendants William Smith and Enscicon Acquisition II, LLC*