UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-62002-DIMITROULEAS/VALLE

ONEMATA CORPORATION,

     Plaintiff,

v.

ASHFAQ RAHMAN and
SABIRA AREFIN,

     Defendants,

v.

WILLIAM SMITH and ENSCICON
ACQUISITIONS II, LLC,

     Third-Party Defendants.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

This cause comes before the Court upon: (i) Onemata Corporation's ("Onemata's") Motion for Bill of Costs (ECF Nos. 390, 391); and (ii) Plaintiff and Third-Party Defendants' Verified Motion for Award of Attorney's Fees, Costs, and Expenses[1] (ECF No. 436) (together, the "Motions").  United States District Judge William P. Dimitrouleas has referred the Motions to the undersigned for appropriate disposition or a report and recommendation.  (ECF Nos. 397, 438).

Having reviewed the Motions, the responses from Defendants Ashfaq Rahman and Sabira Arefin (together "Defendants") (ECF Nos. 455, 456), the Onemata Parties' reply (ECF No. 458), and being otherwise fully advised in the matter, the undersigned recommends that the Onemata Parties': (i) Motion for Bill of  Costs be **GRANTED IN PART AND DENIED IN PART**; and

---

[1] For ease of reference and unless otherwise indicated, the Court will refer to Onemata and the Third-Party Defendants collectively as the "Onemata Parties."

(ii) Verified Motion for Award of Attorney's Fees, Costs, and Expenses be **GRANTED IN PART AND DENIED IN PART** as set forth below.

## I.      BACKGROUND

### A.  Claims and Trial Proceedings

This action arises from the acquisition/sale of LocalBlox, Inc. ("LocalBlox"), an information technology company. (ECF No. 73 ¶¶ 7-8). The extensive litigation history before the District Court has been summarized in the Court's prior Orders, which are incorporated by reference. *See, e.g.*, (ECF No. 259) (District Court's Omnibus Order on motion for summary judgment and *Daubert* motions); (ECF No. 368) (District Court's Final Judgment); (ECF No. 440) (Order Denying Defendants' Renewed Motions for Judgment as a Matter of Law, for New Trial, to Amend Final Judgment, and Remittitur); *see also* (ECF No. 498) (Omnibus Order on Post-Judgment Motions).

Relevant here, in October 2020, Onemata filed suit against Defendants. *See generally* (ECF No. 1). In March 2021, Onemata filed a Second Amended Verified Complaint ("Second Amended Complaint") against Defendants. *See generally* (ECF No. 73).[2]  In October 2021, Defendants filed their Second Amended Counterclaims and Third-Party Impleader Claims against Onemata and third-parties William Smith ("Smith") and Enscicon Acquisition, LLC (together,

---

[2] Trial on the Second Amended Complaint was held in late August through early September. *See* (ECF Nos. 328, 336, 337, 340, 342, 344, 353, 361, 367). Shortly before trial, the District Judge granted Onemata's unopposed motion to dismiss Counts 6 and 7 of its Second Amended Complaint for promissory estoppel and unjust enrichment. *See* (ECF No. 351). Although after trial Onemata filed a Third Amended Verified Complaint, the Second Amended Complaint was the operative complaint for trial and controls the instant Motions. *Compare* (ECF No. 73) (Second Amended Complaint, filed 3/31/2021)*, with* (ECF No. 514) (Third Amended Verified Complaint, filed 6/21/2023).

"Third-Party Defendants").[3]  *See generally* (ECF Nos. 146, 149).   The claims in the Second

Amended Complaint included the following allegations:

> Pursuant to the terms of the Stock Purchase Agreement, Enscicon Acquisition paid $2,000,000 in cash and agreed to have its affiliates execute a total of four promissory notes consisting of two promissory notes each, in the original principal balance of $457,959.50, one payable to each of the Defendants; and two promissory notes each in the original principal balance of $1,039,454 payable to each of the Defendants. In addition, as part of the consideration for the transaction, LocalBlox executed a promissory note in favor of Defendant Arefin[.]  Based on the merger of Enscicon [] into [Onemata], the Enscicon Acquisition units were converted into common stock of [Onemata].

***

> Pursuant to the terms and conditions of the Stock Purchase Agreement, the Defendants made numerous representations and warranties regarding LocalBlox, its condition, its business activities, and covenants regarding its ongoing operation of the business. Enscicon Acquisition relied on the accuracy and completeness of these representations, warranties, and covenants.

***

> Following the acquisition of LocalBlox, Enscicon Acquisition, and later its successor in interest Onemata, determined that many of the representations, warranties and covenants given by the Defendants were false and/or incomplete. Many of the covenants of the Defendants were flagrantly disregarded. In addition, the Defendants made misrepresentations to representatives of Enscicon Acquisition and Onemata concerning these matters and actively made efforts to conceal numerous problems following the closing of the Stock Purchase Agreement.

(ECF No. 73 ¶¶ 9, 12, 13).

Similarly, Defendants' counterclaims against Onemata and impleader claims against the

Third-Party Defendants involved Onemata's acquisition of LocalBlox.   *See generally* (ECF

Nos. 146, 149).   According to the Second Amended Counterclaims and Third-Party Impleader

Claims:

---

[3]  Enscicon subsequently merged into Onemata, with Onemata being the surviving entity. (ECF No. 73 ¶ 10).  Thereafter, Enscicon transferred all legal rights, title, and interest in any legal claims or proceedings to Onemata.  *Id.*  Smith was Enscicon's manager and controlled Enscicon. (ECF No. 146 ¶ 10).

Smith approached Arefin and made an unsolicited offer to buy [LocalBlox.] Smith said that much of her offer would be deferred benefits in the future. For example, approximately 75% of the purchase price was funded by promissory notes fully payable in 5 years; Arefin would earn 960,000 dollars from future consulting salaries, and Arefin would make most of her money from retention of a 17% ownership interest the company. Smith's major selling point for his offer was that his business acumen would grow LocalBlox so much that it would be traded on the public stock exchange and Arefin and her husband's stock would be immensely valuable. In addition, Smith promised Arefin and her husband 2 million dollars at closing.

\*\*\*

Smith formally offered to purchase LocalBlox's equity from Rahman and Arefin as an agent for [Enscicon], on October 31, 2019. Smith issued a letter of intent on behalf of Enscicon offering (i) to pay Rahman and Arefin a total of $5,280,000 in cash and promissory notes and (ii) provide an additional thirty-four percent ownership interest in Enscicon[.]

(ECF Nos. 146 ¶¶ 11, 23, 149 ¶¶ 11, 23).

The case progressed through extensive discovery and dispositive motion practice with the District Judge granting in part and denying in part the cross-motions for summary judgment. *See, e.g.*, (ECF No. 259) (Omnibus Order on cross-motions for summary judgment and *Daubert* motions). On August 29, 2022, the case proceeded to trial, concluding in a jury verdict in favor of the Onemata Parties and against Defendants on all counts. *See* (ECF Nos. 328, 364). Thereafter, the Court entered Final Judgment: (i) against Defendants jointly and severally in the amount of $5 million; and (ii) against Defendant Rahman individually in the amount of $2 million.[4] (R. 368). The instant Motions followed.

### B. The Motions

In the Motions, the Onemata Parties seek recovery of fees and taxable and nontaxable costs. *See generally* (ECF Nos. 390, 436). In their initial Motion for Bill of Costs, the Onemata Parties seek $40,670.79 in taxable costs. (ECF Nos. 390 at 1, 391 at 3). In their subsequent Verified

---

[4] Defendants have filed Notices of Appeal to the Eleventh Circuit. *See* (ECF Nos. 461, 462, 463). The trial record was recently transmitted to the appellate court. (ECF No. 536).

Motion for Award of Attorney's Fees, Costs, and Expenses, the Onemata Parties seek $1,004,610 in attorney's fees and $252,257.16 in nontaxable costs for work performed by the law firms Minerley Fein, P.A. ("Minerley Fein"), Robinson Waters & O'Dorisio, P.C. ("Robinson Waters"), and Lorium Law PLLC ("Lorium Law").  (ECF No. 436 at 10, 12, 20).  Defendants object to the recovery of fees and costs on several grounds.  *See generally* (ECF Nos. 455, 456).

## II.    DISCUSSION

### A.    The Onemata Parties are Entitled to Attorney's Fees

The party seeking attorney's fees bears the burden of establishing entitlement.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) ("[F]ee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates.") (quoting *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)).  Where, as here, the Court's jurisdiction is based on diversity of citizenship, Florida law governs a party's entitlement to attorney's fees.  *See McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001); *Prime Ins. Syndicate, Inc. v. Soil Tech Distribs., Inc.*, 270 F. App'x 962, 963 (11th Cir. 2008) (noting that the Eleventh Circuit has "consistently recognized that in diversity cases a party's right to attorney's fees is determined by reference to state law").

Further, "Florida courts follow the 'American Rule' that attorney's fees may only be awarded pursuant to an entitling statute or agreement among the parties."  *Dade Cnty v. Pena*, 664 So. 2d 959, 960 (Fla. 1995).  Thus, under Florida law, attorney's fees may be awarded to the prevailing party pursuant to a contractual agreement authorizing such recovery.  *Hendershott v. Ostuw*, No. 20-CV-80006, 2021 WL 4049305, at *2 (S.D. Fla. Aug. 31, 2021) (citing *Price v. Tyler*, 890 So. 2d 246, 250 (Fla. 2004)).

In determining the Onemata Parties' entitlement to attorney's fees, the Court must consider the contractual provisions contained in: (i) two notes: (a) Revenue Quality Promissory Note, and

(b) Seller Financing Note between Enscicon (as Maker) and Defendants (as Payee), *see* (ECF Nos. 373-41, 373-42, 373-43, 373-44, respectively) (together, the "Notes"); and (ii) the Stock Purchase Agreement between Onemata (as successor to Enscicon) and Defendants, *see* (ECF No. 180-2) (the "Stock Purchase Agreement"). Also relevant to determining the Onemata Parties' entitlement to fees is Florida Statute § 57.105(7), which converts an otherwise unilateral fee provision in a contract into a bilateral provision that applies to both sides. *See, e.g., Ham v. Portfolio Recovery, Assocs., LLC*, 308 So. 3d 942, 943 (Fla. 2020).

Here, the parties dispute whether the underlying contractual provision entitles the Onemata Parties to an award of attorney's fees and costs. *Compare* (ECF No. 436 at 4-6) (arguing that Onemata is entitled to fees under the Stock Purchase Agreement and Notes)*, with* (ECF No. 455 at 1, 3) (arguing that the fee provision in the Notes is limited to recovery of fees for collection efforts under the Notes). Undoubtedly, Onemata prevailed on its claims against Defendants by virtue of the jury's verdict in its favor on all claims. *See generally* (ECF No. 364) (verdict form). The Third-Party Defendants similarly prevailed against Defendants by successfully defending against the impleader claims. *Id.*

Accordingly, the Court must next consider whether the Onemata Parties, as prevailing parties, are entitled to recover fees under the parties' contract. In this regard, the Court will consider: (i) whether the Stock Purchase Agreement incorporates the Notes, which contain the attorney's fees provision; (ii) whether the unilateral attorney's fees provision in the Notes can be applied bilaterally to the Onemata Parties pursuant to § 57.105(7); and (iii) if so, the scope of the Onemata Parties' entitlement to attorney's fees.

### 1. The Stock Purchase Agreement Incorporates the Notes

The Stock Purchase Agreement that is the basis for Onemata's claims against Defendants incorporates the Notes. More specifically, Paragraph 13.3 of the Stock Purchase Agreement

defines the "Entire Agreement" as the Stock Purchase Agreement and the documents referred to in the Stock Purchase Agreement, which include the Notes.  (ECF No. 180-2 ¶ 13.3).  Similarly, Paragraph 13.13 of the Stock Purchase Agreement incorporates "[t]he Exhibits and Schedules" identified in the Stock Purchase Agreement.  *Id.* ¶ 13.13.  Although Defendants challenge the applicability of the attorney's fees provision in the Notes to claims beyond collection efforts, *see, e.g.*, (ECF No. 455 at 3-5), they do not dispute that the Stock Purchase Agreement, together with the Notes, constitutes the entire agreement.   Accordingly, the Court's inquiry regarding the Onemata Parties' entitlement to fees turns to § 57.105(7)'s application to the unilateral attorney's fees provision in the Notes.

### 2.   *The Onemata Parties are Entitled to Fees under § 57.105(7)'s Reciprocity Provision*

The Notes provide that "[i]n the event of default[,] Payee shall be entitled to recover all costs and expenses of collection including, without limitation, reasonable attorneys' fees and court costs."  (ECF Nos. 373-41 at 2, 373-42 at 2, 373-43 at 1, 373-44 at 1).  "Payee" refers exclusively to Defendants.  The Onemata Parties argue that under Florida's reciprocal attorney's fees statute (§ 57.105(7)), either party (if prevailing) may benefit from the otherwise unilateral fee provision in the Notes.  (ECF No. 436 at 6).

In relevant part, § 57.105(7), provides that:

> If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract.

§ 57.105(7), Fla. Stat.

The parties agree that the statute provides for the reciprocal application of an otherwise unilateral contractual clause for prevailing party attorney's fees.  *See* (ECF Nos. 436 at 5-6, 455 at 3-4); *see also Int'l Fid. Ins. Co. v. Americaribe-Moriarty JV*, 906 F.3d 1329, 1336 (11th Cir. 2018)

(citing *Merchants Bonding Co. (Mut.) v. City of Melbourne*, 832 So. 2d 184, 185 (Fla. 5th DCA 2002)); *Ham*, 308 So. 3d at 950 (holding that "unilateral fee provisions . . . are made reciprocal to the prevailing [parties] under §57.105(7)"). Nonetheless, relying on several Florida district court cases, Defendants argue that the attorney's fees provision in the Notes is limited to claims for collection brought under the Notes and does not extend to any other type of claim arising under or related to the Notes/Stock Purchase Agreement. (ECF No. 455 at 3-5); *see also Fla. Hurricane Prot. & Awning, Inc. v. Pastina*, 43 So. 3d 893, 895-96 (Fla. 4th DCA 2010) (declining to award attorney's fees to prevailing homeowner on breach of contract claim where unilateral fee provision specified recovery for "costs of collection"); *Subway Rests., Inc. v. Thomas*, 860 So. 2d 462, 464 (Fla. 4th DCA 2003) (declining to award attorney's fees to prevailing franchisee on eviction-related claims where unilateral fee provision was limited to "actions for the collection of overdue unpaid rents"); *Indem. Ins. Co. of N. Am. v. Chambers*, 732 So. 2d 1141, 1143 (Fla. 4th DCA 1999) (reversing award of attorney's fees to prevailing party where unilateral fee provision specified recovery of "fees for collection of charges due under the agreement"). Here, however, Onemata's Second Amended Complaint does not allege collection claims. *See* (ECF No. 73).

In determining the applicability of the fees provision in the Notes to the Onemata Parties' claims and defenses, the Court must interpret precedent from Florida's highest court—the Florida Supreme Court. *SE Prop. Holdings, LLC v. Welch*, 65 F. 4th 1335, 1342 (11th Cir. 2023). The controlling precedent is *Ham, III v. Portfolio Recovery Associates, LLC*, 308 So. 3d 942 (2020). In *Ham*, the Florida Supreme Court considered the applicability and scope of § 57.105(7) in addressing the certified question "whether a unilateral attorney's fee provision in a credit card contract is made reciprocal to a debtor under [§] 57.105(7) . . . when the debtor prevails in an account stated action brought to collect unpaid credit card debt." *Ham*, 308 So. 3d at 943.

*Ham* involved contracts between a creditor and debtor that contained fee provisions granting the creditor the right to recover "collection costs—including attorney's fees if the creditor used the services of an attorney[.]"  *Ham*, 308 So. 3d at 944, 948.  In answering the certified question, the Florida Supreme Court explained that § 57.105(7) applies when two conditions are met: (i) the contract includes "a provision allowing attorney's fees to a party when he or she is required to *take any action to enforce the contract*," and (ii) the other "party prevails *in any action*, whether as plaintiff or defendant, *with respect to the contract*."  *Id.* at 947-48 (emphasis added); *see also Page v. Deutsche Bank Tr. Co. Americas*, 308 So. 3d 953, 959 (Fla. 2020).[5]  Both conditions of § 57.105(7) must be satisfied before fees may be reciprocally awarded.  *Page*, 308 So. 3d at 959.

Here, the first prong of § 57.105(7) is satisfied.  The Notes provide recovery to Defendants of "all costs and expenses of collection including, without limitation, reasonable attorneys' fees and court costs."  (ECF Nos. 373-41 at 2, 373-42 at 2, 373-43 at 1, 373-44 at 1); *see also Ham*, 308 So. 3d at 944, 948 (noting contracts allowed recovery for "collection costs," including attorney's fees).  The second prong of § 57.105(7) is likewise satisfied.  The second prong requires the Onemata Parties to have prevailed "in any action . . . with respect to the contract."  *Ham*, 308 So. 3d at 947.  As noted above, the Stock Purchase Agreement and Notes constitute the parties' entire agreement and must be read together.  *See, e.g.*, (ECF No. 180-2 ¶ 13.3).  As in *Ham*,  the Stock Purchase Agreement and Notes controlled the business relationship between the parties. *Ham*, 308 So. 3d at 949.  Also as in *Ham*, Onemata's claims under the Stock Purchase Agreement

---

[5] *Ham* and *Page* were issued on the same day (December 31, 2020).  In both cases, the Florida Supreme Court applied principles of statutory construction to find that the prevailing parties were entitled to attorney's fees under § 57.105(7)'s reciprocal application.  *Castellanos v. Reverse Mortg. Funding LLC*, 320 So. 3d 904, 905 (Fla. 3d DCA 2021);  *see also Gartner v. Reverse Mortg. Sols., Inc.*, 322 So. 3d 751 (Fla. 1st DCA 2021) (discussing *Ham* and *Page* to conclude that mortgagor was eligible to recover attorney's fees under § 57.105(7)).

(on which Onemata prevailed) were claims "with regard or relation to" the Notes.  *Id.*; *see also Page*, 308 So. 3d at 959 (concluding that the second statutory prong is met where party successfully defended against an action to enforce the contract).   The Third-Party Defendants likewise successfully defended Third-Party Impleader Claims, which alleged breach of the Notes.  *See* (ECF No. 146 ¶¶ 117, 120, 131, 134); (ECF No. 149 ¶¶ 117, 120, 131, 136).

Having met both statutory prongs, the unilateral fee provision in the Notes is to be reciprocally applied to benefit the Onemata Parties.  *Ham*, 308 So. 3d at 949; *but see Placida Pro. Ctr., LLC v. F.D.I.C.*, 512 F. App'x 938, 952 (11th Cir. 2013) (reversing award of attorney's fees because contractual fee provision was limited to actions to collect on the note/mortgage and did not apply to repudiation claim of a construction contract).[6]   In reaching this conclusion, the undersigned finds no merit in Defendants' alternative argument that the Onemata Parties are not entitled to fees because they are not parties to the Stock Purchase Agreement and/or Notes.[7]  *See generally* (ECF No. 455 at 7-8).   As discussed above, the transaction underlying the litigation is governed by the Stock Purchase Agreement and Notes.  *See supra* Section II.A.1.   Further, Onemata is Enscicon's successor under the Notes.  *See, e.g.*, (ECF No. 73 ¶ 10) (alleging that "[a]ll legal rights and all right[,] title and interest in any legal claims or proceedings were transferred from [Enscicon] to Onemata); *see also* (ECF No. 146 ¶ 2) ("Onemata is liable for all Enscicon liabilities[,] including all claims asserted in [the] counterclaims.").   Onemata has also stipulated that it was responsible for payment under the Notes.  *See* (ECF No. 458 at 4).

---

[6] *Placida* and the cases that Defendants rely upon precede *Ham* and are, therefore, less persuasive.

[7] The undersigned is also unpersuaded by Defendants cursory argument that the parties' intentional omission of an attorney's fee provision in the Stock Purchase Agreement demonstrates their intent to limit attorney's fees to matters involving collection under the Notes.  *See* (ECF No. 455 at 5).

3. *The Onemata Parties Can Recover All Reasonable Fees on Inextricably Intertwined Claims*

Because the Onemata Parties are entitled to reasonable attorney's fees under § 57.105(7) "with regard to or in relation to" the Notes, the Court next considers the Onemata Parties' request for attorney's fees incurred in litigating all claims in this case.  In doing so, the Court must consider whether the claims are so inextricably intertwined as to make apportionment impractical.  By way of background, Onemata's claims against Defendants alleged fraud, fraudulent misrepresentation, breach of the Stock Purchase Agreement, and tortious interference with contractual relations.  *See generally* (ECF No. 73).  Defendants' claims against Onemata and impleader claims against the Third-Party Defendants involved fraud, fraudulent inducement, breach of the Stock Purchase Agreement and Notes, and breach of other related contracts.  *See generally* (ECF Nos. 146, 149).

When a party prevails on a claim on which it is entitled to an award of attorney's fees and also prevails on another claim for which there is no entitlement to fees, the prevailing party is entitled to recover attorney's fees for both claims when the claims are so intertwined that reasonable apportionment of the attorney's time is impractical.  *Abern Fin., Inc. v. IMS Secs., Inc.*, No. 07-CV-20765, 2009 WL 8173611, at *1 (S.D. Fla. Aug. 13, 2009), *report and recommendation adopted*, 2010 WL 6808332 (S.D. Fla. Aug. 17, 2010).  Moreover when—as here—the claims involve a common core of facts and are based on related legal theories, then all reasonable fees may be awarded unless the opposing party can show that the requesting attorneys spent separate and distinct time working on counts as to which attorney's fees are not authorized.  *Thompson v. Branch Banking & Tr. Co.*, No. 19-CV-60108, 2020 WL 7061558, at *4 (S.D. Fla. Nov. 10, 2020), *report and recommendation adopted*, 2020 WL 7059353 (S.D. Fla. Dec. 2, 2020) (citation omitted); *Filippova v. Mogilevsky*, No. 18-CV-80044, 2019 WL 1216150, at *6 (S.D. Fla. Feb. 14, 2019), *report and recommendation adopted*, 2019 WL 1216205 (S.D. Fla. Mar. 7, 2019);

*see also Pro. Plaza Condo. Ass'n, Inc. v. Landmark Infrastructure Holding Co., LLC*, No. 20-CV-

20707, 2022 WL 2819667, at *9 (S.D. Fla. June 14, 2022), *report and recommendation adopted*,

2022 WL 2817879 (S.D. Fla. July 19, 2022) ("When facts supporting all causes of action are so

intertwined that apportionment is not feasible, the court may award the prevailing party all

attorney's fees.") (citations omitted); *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159,

1164 n.3 (11th Cir. 2017) (noting that the issue of whether claims are inextricably intertwined

usually arises when a court seeks to apportion fees among unsuccessful and successful claims);

*Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1251 (11th Cir. 2013) (concluding that all claims

in the litigation were "inextricably intertwined with the contract and therefore arise out of the

contract"); *Waverly at Las Olas Condo. Ass'n, Inc. v. Waverly Las Olas, LLC*, 88 So. 3d 386, 388

(Fla. 4th DCA 2012) (affirming fee award where claims were based on core set of facts and broad

language in the fee provision contemplated more than breach of contract claims); *Hensley*, 461

U.S. at 435 (providing that where the claims involve a common core of facts or are based on related

legal theories, "[m]uch of counsel's time will be devoted generally to the litigation as a whole,

making it difficult to divide the hours expended on a claim-by- claim basis" and that "[s]uch a

lawsuit cannot be viewed as a series of discrete claims" but must instead be viewed in terms of

"the significance of the overall relief obtained [by the prevailing party] in relation to the hours

reasonably expended on the litigation").

    Here, all the claims arise out of a multi-contract acquisition of LocalBlox, with the Stock

Purchase Agreement and Notes at the core of the transaction.  *Compare* (ECF No. 73)*, with* (ECF

Nos. 146, 149).  The Second Amended Complaint and the Second Amended Counterclaim and

Third-Party Impleader Claims further highlight the inter-relationship of the claims.  *See supra*

Section I.A.  Indeed, Defendants allege that:

Enscicon or a related company, Enscicon II, contemporaneously *entered about ten contracts intertwined with the Stock Purchase Agreement.* The parties entered each of these contracts at or near the same time as the Stock Purchase Agreement and each of these contracts relates to the Stock Purchase Agreement. Many of these auxiliary contracts memorialize the considerations provided under the Stock Purchase Agreement. These contracts included five promissory notes, two pledge agreements securitizing the promissory notes, an employment agreement, a consulting agreement, and a debt conversion agreement.

(ECF Nos. 146 ¶ 51, 149 ¶ 51) (emphasis added).  Thus, the claims, counterclaims, and impleader claims revolve around a common core of facts regarding the LocalBlox acquisition and the Stock Purchase Agreement, Notes, and related contracts.  Onemata and the Third-Party Defendants were successful on all claims.  Under these circumstances, the undersigned finds that Onemata' claims under the Stock Purchase Agreement, Notes, and related contracts are inextricably intertwined with the counterclaims and Third-Party impleader claims under the Notes.[8]  Accordingly, the Onemata Parties should recover attorney's fees incurred in litigating all claims and defenses in this case.

    4.   *Determining Reasonable Fees*

Having determined that the Onemata Parties are entitled to attorney's fees for litigating all the claims and defenses in the case, the undersigned next addresses the reasonableness of the requested fees.  In assessing the reasonableness of a request for attorney's fees in the Eleventh Circuit, courts use the "lodestar" method to calculate an objective estimate of the value of an attorney's services.  *Norman*, 836 F.2d at 1299. Under the lodestar method, the value of an attorney's services is calculated by multiplying the hours that the attorney reasonably worked by a reasonable rate of pay. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Norman*,

---

[8] Further, although Defendants argue that the claims are not intertwined, they fail to identify which time entries should be excluded as non-compensable.  *See* (ECF No. 455 at 7); *see also Thompson*, 2020 WL 7061558, at *6 (noting that objections to hours must be specific and reasonably precise) (citing *Barnes*, 168 F.3d at 428).

836 F.2d at 1299).   The "'fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates.'"  *Barnes*, 168 F.3d at 427 (quoting *Norman*, 836 F.2d at 1303).

Importantly, courts are not authorized "to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded."  *Id.* at 428.   When a request for attorney's fees is unreasonably high, courts may "conduct an hour-by-hour analysis" or "reduce the requested hours with an across-the-board cut."  *Bivins v. Wrap it Up Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008); *see also Procaps S.A. v. Patheon Inc.*, No. 12-CV-24356, 2013 WL 6238647, at *17 (S.D. Fla. Dec. 3, 2013) (reducing fee request with across-the-board reduction for billing inefficiencies). Although courts may apply either method, they cannot apply both.  *Bivins*, 548 F.3d at 1351. Finally, courts need not become "green-eyeshade accountants."  *Fox v. Vice*, 563 U.S. 826, 837 (2011).   Instead, the essential goal for the court is to "do rough justice, not to achieve auditing perfection."  *Id*.   Additionally, the court may use its own expertise to fashion a pragmatic and reasonable remedy as "a request for attorney's fees should not result in a second major litigation." *Taylor Newman Cabinetry*, 436 F. App'x 888, 895 (11th Cir. 2011) (*citing Hensley*, 461 U.S. at 437).

### a. Reasonable Hourly Rates

The Onemata Parties seek $1,004,610 in attorney's fees for work performed by the Minerley Fein, Robinson Waters, and Lorium law firms.  *See* (ECF No. 436 at 10).   For ease of reference, below is a summary of the timekeepers, their experience, and requested hourly rates mirroring the chart included in the Motion.  *See* (ECF No. 436 at 11-12).

| Time Keeper (ECF No. 436 at 11-12) | Experience/Position *See generally*, (ECF Nos. 436 at 11-12, 436-1, 436-2, 436-3, 436-4) | Hourly Rates [9] *See generally*, (ECF Nos. 436 at 11, 436-1 at 1-5, 436-2 at 1-3, 436-3 at 2-5, 436-4 at 2-5) |
|---|---|---|
| Kenneth L. Minerley | 38+years – attorney @ Minerley Fein | $400 |
| Jackson Pellingra | 5 years – attorney @ Minerley Fein | $275/$300 |
| L. Rachel Dolnick | 30 years – attorney @ Minerley Fein | $325/$335 |
| Meghan E. Miller | 6 years – attorney @ Minerley Fein | $300 |
| Danielle Hammer | 8 years – paralegal @ Minerley Fein | $135 |
| Anthony L. Leffert | 40+ years – attorney @ Robinson Waters admitted pro hac vice | $405/$450 |
| Samuel G. John | 8 years – attorney @ Robinson Waters admitted pro hac vice | $280/$300 |
| Bryan D. Biesterfeld | 26 years – attorney @ Robinson Waters | $395/$405/$450 |
| Robert B. Bliss | 15 years – attorney @ Robinson Waters | $295/$310 |
| Nina Olson | 9 years – paralegal @ Robinson Waters | $125/$165 |
| Carrie Reynolds | 32 years – paralegal @ Robinson Waters | $175 |
| Julia House | 14 years – paralegal @ Robinson Waters | $125 |
| Gianna C. Rossi | law Clerk @ Robinson Waters | $150 |
| Rebecca M. Voorhees | law Clerk @ Robinson Waters | $95 |
| Riley W. Cirulnick | 23 years – attorney @ Lorium Law | $300 |
| Sandy Fallas | 14 years – paralegal @ Lorium Law | $160 |

Defendants object to an hour-by-hour analysis of the requested attorney's fees based on the "voluminous records in the case." (ECF No. 455 at 13). Instead, because of volume and alleged instances of "block billing," Defendants request that the Court apply an across-the-board reduction of 25%. *Id.* For the reasons discussed below, although some adjustment is appropriate, the undersigned rejects Defendants' conclusory arguments for a more significant 25% reduction of the requested attorney's fees, and instead recommends a 10% overall reduction.

---

[9] The hourly rates increased throughout the litigation, with corresponding rates noted in the Motions and summary chart.

First, Defendants' objection is procedurally deficient for failure to comply with Local Rule 7.3.  In relevant part, Rule 7.3 requires that a nonmoving party "describe with reasonable particularity each time entry or nontaxable expense to which it objects, both as to issues of entitlement and amount, and shall provide supporting legal authority."  S.D. Fla. L.R. 7.3(a).  Here, Defendants do not identify any potentially offensive time entries and only summarily argue against the fees incurred.  *See generally* (ECF No. 455).  Defendants' conclusory objections can be overruled on this basis alone.  *See, e.g., Perez v. Praetorian Ins. Co.*, No. 16-CV-23817, 2019 WL 2255578, at *5 (S.D. Fla. Feb. 26, 2019) ("any objections to defense counsel's time entries would have been waived because Local Rule 7.3's requirements are mandatory, not optional"); *Taverna Imps. v. A&M Wine & Spirits*, No. 15-CV-24198, 2019 WL 12446711, at *10 n.9 (S.D. Fla. Oct. 2, 2019) (finding nonmoving party violated Local Rule 7.3(a)'s requirement to "describe with reasonable particularity each time entry or nontaxable expense to which it objects, both as to issues of entitlement and as to amount, and [to] provide supporting legal authority" and therefore party had waived objections).

Second, the hourly rates for counsel to the Onemata Parties are reasonable for the South Florida community.  *See, e.g., Tebbbutt v. Anderson*, No. 21-CV-81602-AMC (S.D. Fla. Dec. 30, 2022) (ECF Nos. 37, 38) (awarding attorney Pellingra $275/hr); *Garcia v. J & J, Inc.*, No. 19-CV-60728, 2021 WL 633377, at *6 (S.D. Fla. Feb. 1, 2021), *report and recommendation adopted*, 2021 WL 616529 (S.D. Fla. Feb. 17, 2021) (awarding $350/hr to attorneys with 9-10 years of experience); *Alexandre v. Millenia Housing Mngm't Ltd.*, No. 19-CV-80612 (S.D. Fla. Mar. 4, 2020) (ECF No. 62) (recommending award of $400/hr to attorney with 39 years of experience); *Garcia v. Pajeoly Corp.*, No. 18-CV-23399, 2020 WL 764127, at *4 (S.D. Fla. Jan. 10, 2020), *report and recommendation adopted*, 2020 WL 764035 (S.D. Fla. Jan. 31, 2020) (awarding hourly rates of $375/$325 to attorneys with approximately 25 and 10 years of experience, respectively);

*Caruso v. Titan List & Mailing Servs., Inc.*, No. 17-CV-62160, 2018 WL 5620279, at *1 (S.D. Fla. Oct. 30, 2018) (awarding $395/hr to attorney with 19 years of experience); *Salinas v. Ramsey*, No. 03-CV-22046, 2018 WL 6807341, at *2 (S.D. Fla. Sept. 26, 2018), *report and recommendation adopted*, 2018 WL 6807313 (S.D. Fla. Oct. 31, 2018) (recommending $375/hr for attorney with approximately 20 years of experience).

Lastly, the Court is "deemed an expert on the issue of hourly rates in this community and may properly consider 'its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'" *Fiedler v. Anglin's Beach Café, LLC*, No. 15-CV-60989, 2017 WL 1278632, at *1 (S.D. Fla. April 3, 2017) (quoting *Loranger*, 10 F.3d at 781). Accordingly, based on their experience, qualifications, and the prevailing market rates in South Florida, the undersigned recommends that counsel to the Onemata Parties be awarded fees at the requested hourly rates, without reduction.

### b. Reasonable Hours Expended

Having determined counsel's reasonable hourly rates, the undersigned next determines the reasonableness of the hours expended by the attorneys working on the case. Generally, attorneys must exercise what the Supreme Court has termed "billing judgment." *Hensley*, 461 U.S. at 434. That means they must exclude from fee applications "excessive, redundant, or otherwise unnecessary hours," which are hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Norman*, 836 F.2d at 1301 (quotations and citations omitted).

Importantly, "if fee applicants do not exercise billing judgment, courts are obligated to do it for them." *ACLU*, 168 F.3d at 428. The fee applicant also bears the burden of providing specific and detailed evidence so that the court can determine the necessity and reasonableness of the time claimed for the task. *Id.* at 427, 432-33. In the end, however, "exclusions for excessive or

unnecessary work on given tasks must be left to the discretion of the district court." *Norman*, 836 F. 2d at 1301. Here, the Court has reviewed counsel's billing records and finds that some adjustment is necessary to account for certain billing inefficiencies, such as instances of inappropriate "block billing." "Block billing" is the practice of including multiple distinct tasks within the same time entry. *See Interim Healthcare, Inc. v. Health Care@Home, LLC*, No. 17-CV-61378, 2019 WL 6791465, at *6 (S.D. Fla. Nov. 27, 2019), *report and recommendation adopted,* 2019 WL 6769666 (S.D. Fla. Dec. 12, 2019).

To illustrate, without indicating how much time was spent on each task, the 8/19/2021 entry for attorney Dolnick from Minerley Fein reflects more than six hours spent to: "[r]eview cases in Motion for Protective Order. Reviewed complaints and counterclaims regarding COVID cases and MPOs. Online research regarding local and state COVID restrictions. Draft Memo in opposition to Defendant's MPO> [sic] Reviewed S.D[.] Fla. Administrative orders regarding COVID. Reviewed Governor's orders and Fl. Dept. of Health information regarding COVID. Review emails between counsel regarding vaccination status and health conditions of Defendant." (ECF No. 436-1 at 17). Similarly, on 8/24/2021 and 8/25/2021, attorney Minerley billed exactly eight hours each day for attending the depositions of Smith and Defendant Rahman, followed by post-deposition conferences with various individuals, without any indication of how much time was allocated to the deposition versus the review of deposition notes and subsequent conferences. *Id.* at 18; *see also id.* at 22 (9/27/2021 entry for attorney Pellingra for 3.1 hours to "[f]inalize exhibits and outline for deposition of Nybsys corporate rep after receipt and review of documents from Nybsys; prepare Ken Minerley for deposition").

The billing entries for attorney Leffert from Robinson Waters suffer from the same block billing deficiencies. *See, e.g.*, (ECF No. 436-3 at 7, 12, 18-19, 37, 49) (8/24/2020 entry for 6.9 hours for "legal research on claims for relief; research jurisdictional and venue issue; telephone

conference with local counsel in Florida regarding representation on case; review Stock Purchase Agreement and Employment Agreement; draft parties and jurisdiction section of Complaint; begin to draft general allegations; outline legal research to be done; [r]eview and revise demand letter; emails to R. Bliss and B. Biesterfeld regarding demand letter and termination letters."); (8/25/2020 entry for 6.7 hours to "[r]eview and revise demand letter; review and revise termination letters; continue drafting Complaint; legal research for Complaint."); (12/17/2020 entry for 6.1 hours for paralegal Olson reflecting "[c]ontinue review of D's answers, etc. and drafting answers to counterclaims; send the same to R. Bliss, W. Smith, and A. Leffert for conference review; review correspondence regarding Joint Scheduling Report and conference call on same; confer with A. Leffert; review and revise Answer to Arefin Counterclaims; confer with S. John regarding affirmative defenses; review and revise again; send version 3 to R. Cirulnick for review; review and revise Answers to Rahman's Counterclaims and Third Party Complaint; proof both Answers again; send to attorneys and client."); (3/3/2021 entry for 7.2 hours for attorney Leffert for "[t]elephone conferences with W. Smith regarding Truvix and True Influence; telephone conferences and emails with opposing counsel regarding amended complaint; review and revise letter to True Influence; prepare for meeting with expert; review evidence files; review and revise amended complaint; telephone conference with other potential expert; listen to telephone conference with W. Smith and A. Rahman."); (8/13/2021 entry for paralegal Olson for 11.5 hours for "[c]ontinue[d] review of discovery produced for bates documents assigned to case outline exhibits; review and revise case outline exhibits multiple times; continue to review and pull from disclosed/produced files; confer with A. Leffert regarding next steps for upcoming depositions; draft response to Rahman third requests for production of documents; review and incorporate client's redlines to responses to third requests for production . . . confer with third party vendor on

status of clean drive files for 150k emails downloaded from Google drive . . . set follow up supplemental production . . . .").  And there are more examples.

While the undersigned does not doubt that counsel worked in good faith on the projects attributed to this case, the Court must be able to verify the need or relatedness of those projects before it can approve payment for the time incurred.  *Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.,* No. 15-CV-62688, 2021 WL 1092214, at *6 (S.D. Fla. Mar. 4, 2021); *Interim Healthcare*, 2019 WL 6791465, at *6 (citation omitted).  Because of block billing, however, it is impossible for the Court "to ascertain how much time was spent on each task." *Dial HD, Inc. v. ClearOne Commc'ns, Inc.*, 536 F. App'x 927, 931 (11th Cir. 2013); *Maiden Specialty Ins. Co. v. Three Chefs & a Chicken, Inc.*, No. 12-CV-22724, 2014 WL 11429052, at *10 (S.D. Fla. Jan. 28, 2014), *report and recommendation adopted*, 2014 WL 11429053 (S.D. Fla. Mar. 13, 2014) (reducing fees for block billing where court was unable to determine if the amount of time spent on each task was reasonable).

For the foregoing reasons, the undersigned concludes that a reduction in the requested fees is appropriate.  Rather than conducting an hour-by-hour analysis of counsel's time entries, the undersigned recommends an across-the-board 10% reduction to the requested fees to account for counsel's block billing.  *See, e.g., Floridians for Solar Choice*, 2021 WL 1092214, at *6 (recommending a 5% reduction for block billing); *Interim Healthcare*, 2019 WL 6791465, at *6 (recommending a 10% reduction for billing inefficiencies); *Ovalle v. Perez*, No. 16-CV-62134, 2017 WL 7792719, at *2 (S.D. Fla. Nov. 9, 2017), *report and recommendation adopted*, 2017 WL 7796183 (S.D. Fla. Nov. 30, 2017) (adopting a 10% reduction for block billing, redacted time entries, and redundancy); *Shipping and Transit, LLC v. 1A Auto, Inc.*, 283 F. Supp. 3d 1290, 1306 (S.D. Fla. 2017) (adopting 15% reduction in fees based on billing inefficiencies); *Rubenstein v. Fla. Bar*, No. 14-CV-20786, 2015 WL 1470633, at *4-6 (S.D. Fla. Mar. 31, 2015), *report and*

*recommendation adopted*, 2015 WL 11216722 (S.D. Fla. Apr. 22, 2015) (adopting a 30% reduction to counsel's hours for block billing); *see also Bivins*, 548 F.3d at 1350 (noting that when the number of hours claimed is unreasonably high, a court may conduct an hour-by-hour analysis or may reduce the requested hours with an across-the-board cut). Consequently, the undersigned recommends that counsel for the Onemata Parties be awarded $904,149 in attorneys' fees.[10]

### B. Section § 57.105(7) Does not Extend to Recovery of Nontaxable Costs

Next, the undersigned considers whether the Onemata Parties are also entitled to nontaxable costs based on the application of § 57.105(7). In this regard, the Onemata Parties argue that they are not only entitled to recover fees, but also to recovery of taxable and nontaxable costs and expenses incurred in this litigation.[11] (ECF No. 436 at 13-16). The Onemata Parties seek $252,257.16 in nontaxable costs. *Id.* at 18. Although Defendants oppose the application of § 57.105(7) to fees other than those incurred in collection efforts, they do not address whether § 57.105(7) applies to costs.

As to costs, the Court is unpersuaded by the Onemata Parties' argument that the "expansive provision" in the Notes extends to recovery of costs of collection. *See* (ECF No. 436 at 13-16). The clear language of § 57.105(7) provides for the award of reciprocal attorney's fees, but does not mention an award of costs.[12] Fla. Stat. § 57.105(7) ("the court may also allow reasonable

---

[10] This amount consists of $1,004,610 (the amount requested) x .90 = $904,149 (reflecting 10% reduction for billing inefficiencies).

[11] Taxable costs are discussed separately below. *See infra* Section II.C.

[12] Moreover, the cases cited by the Onemata Parties in support of an expansive interpretation of the contract to allow recovery of costs are inapposite in that they do not involve § 57.105(7). *See, e.g., Kipu Sys. LLC v. ZenCharts LLC*, No. 17-CV-24733, 2021 WL 1895881, at *7 (S.D. Fla. Apr. 6, 2021), *report and recommendation adopted sub nom. Kipu Sys. LLC, v. ZenCharts LLC*, 2021 WL 4479451 (S.D. Fla. Sept. 30, 2021), *appeal dismissed sub nom. KIPU Sys., LLC v. ZenCharts, LLC*, No. 20-14802-X, 2022 WL 16579536 (11th Cir. Feb. 8, 2022) (awarding nontaxable costs to prevailing plaintiff on breach of contract claim where the contract provision did not limit recovery to any particular costs); *Yellow Pages Photos*, 846 F.3d at 1166 (concluding that contract

*attorney's fees* to the prevailing party"); *see also SE Prop. Holdings*, 65 F.4th at 1342 ("When the statute is clear and unambiguous, Florida courts will not look behind its plain language for legislative intent") (citation omitted); *U.S. ex rel. Se. Enter. Grp., Inc. v. Skanska USA Bldg., Inc.*, No. 03-CV-572J25-MCR, 2005 WL 2179774, at *1 (M.D. Fla. Sept. 9, 2005), *aff'd in part, vacated in part sub nom. United States v. Skanska USA Bldg., Inc.*, 209 F. App'x 880, 882 n.1 (11th Cir. 2006) (limiting scope of § 57.105(7) to recover attorney's fees while disallowing award of expert fees); *see also In re Basil St. Partners, LLC*, No. 11-BK-19510-FMD, 2013 WL 4461566, at *8 (Bankr. M.D. Fla. Aug. 19, 2013) (reviewing case law to conclude that § 57.105(7) provides for reciprocal fees, but not costs).

Against this factual and legal backdrop, the undersigned concludes that § 57.105(7) does not provide for the award of nontaxable costs.  Accordingly, the Onemata Parties' request for $252,257.16 in nontaxable costs should be denied.

### C.  The Onemata Parties are Entitled to Recover Certain Taxable Costs

*1.  Standard for Taxable Costs*

The Onemata Parties seek $40,670.79  in taxable costs pursuant to Federal Rule of Civil Procedure 54 and 28 U.S.C. § 1920.  (ECF Nos. 390 at 1, 391 at 1).  Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  A prevailing party is "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded."

---

contained broad enough language to cover the award of both taxable and nontaxable costs related to the copyright and breach of contract litigation); *Am. Infoage, LLC v. Regions Bank*, No. 13-CV-1533-T-23JSS, 2016 WL 7733983, at *9 (M.D. Fla. Dec. 7, 2016), *report and recommendation adopted*, 2017 WL 111601 (M.D. Fla. Jan. 11, 2017) (concluding that the loan documents permitted recovery of costs beyond those enumerated in § 1920); *MKT Reps S.A. De C.V. v. Standard Chartered Bank Int'l (Americas) Ltd.*, No. 10-CV-22963, 2013 WL 1289261, at *2 (S.D. Fla. Mar. 28, 2013) (concluding that prevailing defendant is entitled to award of costs under § 1920 in addition to costs recoverable pursuant to agreement between the parties).

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603

(2001); *see also Util. Automation 2000, Inc. v. Choctawhatchee Elec. Coop.*, 298 F.3d 1238, 1248

(11th Cir. 2002).

      A prevailing party is "entitled to receive all costs that are recoverable under 28 U.S.C.

§ 1920." *Bryant v. Cab Asset Mgmt., LLC*, No. 10-CV-61514, 2011 WL 1331267, at *3 (S.D. Fla.

Apr. 6, 2011).  The items that may be taxed as costs under § 1920 include: (1) fees of the clerk and

marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in

the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and

the costs of making copies of any materials where the copies are necessarily obtained for use in

the case; (5) docket fees under § 1923 of this title; and (6) compensation of court appointed experts,

compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation

services under §1828 of this title.  28 U.S.C. § 1920.

      Unless otherwise prohibited, "[a] prevailing party may recover costs as a matter of course"

and "the losing party bears the burden of demonstrating that a cost is not taxable, unless knowledge

regarding the proposed cost is within the exclusive control of the prevailing party." *Monelus v.

Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1333 (S.D. Fla. 2009) (citations omitted).  Nonetheless, the

prevailing party must submit a request for costs that allows the Court to determine what costs were

incurred and whether the prevailing party is entitled to them. *Ferguson v. N. Broward Hosp. Dist.*,

No. 10-CV-61606, 2011 WL 3583754, at *3 (S.D. Fla. Aug. 15, 2011) (citation omitted).  The

Court has the discretion to award those costs specifically enumerated in § 1920, but the Court may

not tax as costs any items not authorized by the statute. *See, e.g., Crawford Fitting Co. v. J. T.

Gibbons, Inc.,* 482 U.S. 437, 441-42 (1987).  Additionally, pursuant to Local Rule 7.3, a bill of

costs must include documentation showing the amount of costs and a supporting memorandum.

S.D. Fla. L.R. 7.3(c).  Lastly, although the Court has discretion in determining whether to award

costs to a prevailing party, the Court must give a reason for denying costs.  *Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995).

    2.  *Costs Incurred by the Onemata Parties*

The Onemata Parties seek $40,670.79 in taxable costs for: (i) fees of the clerk ($400); (ii) fees for service of summons and subpoena ($3,156.04); (iii) fees for printed or electronically recorded transcripts necessarily obtained for use in the case ($30,197.70); (iv) fees for witnesses ($5,536.39); (v) fees for exemplification and costs of making copies ($1,303.16); and (vi) docket fees ($77.50).  *See* (ECF Nos. 390 at 1, 391 at 3).  Defendants object to several of these costs as: (i) superfluous; (ii) exceeding the maximum amount authorized; and (iii) not necessarily obtained for use at trial.  *See generally* (ECF Nos. 456, 457).

    a.  *Filing Fees*

There is no dispute that the Onemata Parties are entitled to the filing fees associated with the commencement of this case.  Accordingly, that amount ($400) should be awarded.

    b.  *Fees for Service of Summons*

The Onemata Parties seek $3,156.04 in costs for service of the summons, complaint, and subpoena.  *See generally* (ECF No. 390 at 1, 3-4).  Relatedly, the Eleventh Circuit has held that private process fees may be recoverable pursuant to § 1920(1) if the fees do not exceed the rate charged by the U.S. Marshals Service.  *See U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000).  Currently, the rate charged by the U.S Marshals Service is "$65 per hour (or portion thereof) for each item served . . . plus travel costs and out of pocket expenses."  28 C.F.R § 0.114(a)(3).  Here, although the Onemata Parties recognize the statutory rate, they seek a higher amount for the cost of private process servers.  *See* (ECF No. 391 at 3-4).  Defendants challenge the costs for: (i) private service in excess of the statutory limit; and (ii) attempted service rather than actual service.  (ECF No. 456 at 2 n.2).

Under the statutory limits in 28 C.F.R. § 0.114, the Onemata Parties should recover for service of process based on the reduced rate charged by the U.S. Marshal Service. *Monelus*, 609 F. Supp. 2d at 1332-33; *cf. Simmons v. Twin 918 Inc.*, No. 19-CV-23737, 2019 WL 7283218, at *5 (S.D. Fla. Dec. 27, 2019) (granting service of process fees in excess of statutory amount without objection upon default judgment).  Further, absent an explanation for the multiple failed attempts at service, the Onemata Parties should only recover for one attempt at service on the individuals identified in the Bill of Costs.  *See* (ECF No. 390 at 3-4); *see also, Am. Marine Tech, Inc. v. M/Y Alchemist*, No. 19-CV-60636, 2022 WL 4345297, at *7 (S.D. Fla. Sept. 9, 2022), *report and recommendation adopted sub nom. Am. Marine Tech., Inc. v. M/Y Alchemist*, 2022 WL 4310894 (S.D. Fla. Sept. 19, 2022) (awarding statutory limit for attempted service of a non-party trial subpoena); *Guzy v. QBE Specialty Ins. Co.*, No. 20-CV-23169, 2023 WL 2244829, at *10 (S.D. Fla. Feb. 9, 2023), *report and recommendation adopted*, No. 20-CV-23169, 2023 WL 2240456 (S.D. Fla. Feb. 27, 2023) (disallowing costs for unexplained multiple attempts of service on witnesses); *Banuchi v. City of Homestead*, No. 20-CV-25133, 2023 WL 2587389, at *6 (S.D. Fla. Feb. 7, 2023), *report and recommendation adopted*, 2023 WL 2585061 (S.D. Fla. Mar. 21, 2023) (reducing duplicative and unexplained costs for service of process).

Accordingly, the Onemata Parties should be awarded a reduced $845 for fees incurred for service of process on the individuals identified in the Bill of Costs, *see* (ECF No. 390 at 3-4), based on the rate charged by the U.S. Marshal Service. [13]

---

[13] This amount is based on awarding $65 for one time service (or attempted service) to the following 13 individuals/entities: Defendants, X-Mode Social Inc., Forbes M &A, True Influence LLC, Acton International Ltd, DataStream Group, Inc., Mark Grether, Videal, Nybsys, Tanko Yakubu, Gregory Loomar, and Harry Winderman ($65 x 13 = $845).

     *c.*  *Fees for Printed/Electronically Recorded Transcripts*

The Onemata Parties seek $30,197.70 in costs for printed or electronically recorded transcripts. (ECF Nos. 390 at 1, 391 at 3). "[W]hether the costs for a deposition are taxable depends on the factual question of whether the deposition is wholly or partially 'necessarily obtained for use in the case.'" *W&O*, 213 F.3d at 620-21 (citation omitted). If a deposition cost was incurred merely for convenience, to aid in thorough preparation, or for purposes of investigation only, then the cost is not recoverable. *W&O*, 213 F.3d at 620 (citations omitted); *see also Wreal, LLC v. Amazon.com, Inc.*, No. 14-CV-21385, 2019 WL 12278758, at *3 (S.D. Fla. Dec. 26, 2019), *report and recommendation adopted*, 2020 WL 9551978 (S.D. Fla. Jan. 15, 2020). It is the losing party's burden to show that "specific deposition costs [are] not necessary for use in the case[.]" *Monelus*, 609 F. Supp. 2d at 1337 (citing *W&O*, 213 F.3d at 621).

In support of their request for the cost of deposition transcripts, the Onemata Parties list and provide supporting invoices for 21 individuals whose depositions were transcribed. *See* (ECF No. 390 at 4-6); *see also* (*id.* at 30-63) (containing invoices bates numbered C1-C34 reflecting deposition-related costs). Defendants challenge the deposition transcripts as duplicative and argue that the Court should deny transcript costs for depositions that were not admitted into evidence or used at trial. (ECF No. 456 at 9). According to Defendants, the only five depositions that were used at trial or admitted into evidence were their own depositions and those of Ray Estevez, Craig Smith, and Eric Cole. *Id.*

In reviewing the litigation history, the undersigned finds that the number of depositions is reasonable given the complex and highly contested nature of the claims. *See, e.g.*, *Wreal,* 2019 WL 12278758, at *4 (finding 22 depositions to be reasonable given the heavily contested action). Further, the Court is unpersuaded by Defendants' argument that only the costs of those transcripts used at trial should be recoverable. (ECF No. 456 at 9). Actual use of the deposition transcript at

trial is unnecessary and a court may tax costs associated with a deposition used in support of a motion for summary judgment.  *W&O*, 213 F.3d at 621 (finding that taxation of deposition costs of witnesses on the losing party's witness list was reasonable);  *see also Transatlantic Lines, LLC v. Portus Stevedoring LLC*, No. 14-CV-60528, 2016 WL 11547976, at *5 (S.D. Fla. Jan. 13, 2016) (finding that depositions relied upon for summary judgment are taxable), *report and recommendation adopted*, 2016 WL 11547727 (S.D. Fla. Feb. 11, 2016); *see also Delotta v. S. Broward Hosp. Dist.*, No. 19-CV-62905, 2023 WL 2432337, at *3 (S.D. Fla. Feb. 16, 2023) (citation omitted) ("in determining whether the cost of a particular deposition is taxable, 'the district court must evaluate the facts of each case and determine whether all or any part of a copy of any or all of the depositions was necessarily obtained for use in the case.'"), *report and recommendation adopted*, 2023 WL 2426318 (S.D. Fla. Mar. 9, 2023).  Moreover, the Court has broad latitude in determining whether a deposition was necessarily obtained for use in the case or was obtained for the convenience of the attorneys. *Delotta*, 2023 WL 2432337, at *3 (citation omitted).  Indeed, a deposition may still have been necessarily obtained for use in the case even if the case ultimately did not go to trial and even if the transcript was not cited in a dispositive motion. *Id.* at *3.

Thus, based on the complex litigation history and Defendants' unpersuasive objection to taxing the costs of deposition transcripts, the undersigned finds that the Onemata Parties should recover the costs of deposition transcripts for all 21 individuals listed in the Bill of Costs.  *See* (ECF No. 390 at 4-6).  Nevertheless, the invoices for the deposition transcripts reflect certain costs that are not recoverable (e.g., costs for litigation support/exhibit packages, electronic processing, condensed transcripts, and delivery and handling).  *See* (ECF No. 390 at 30-63) (invoices bates stamped C1-C34 reflecting extraneous deposition transcript costs).  The Onemata Parties do not explain the reasonableness or necessity of these extraneous charges.  Therefore, these costs should

be deducted from the cost award, as they appear to have been incurred for counsel's convenience. *Brady v. Carnival Corp.*, No. 19-CV-22989, 2021 WL 1988524, at *5 (S.D. Fla. Mar. 8, 2021), *report and recommendation adopted*, 2021 WL 1998316 (S.D. Fla. May 19, 2021) (denying costs of expedited or immediate delivery, color exhibits, and litigation packages incurred merely for counsel's convenience); *Wreal,* 2019 WL 12278758, at *4-8 (analyzing invoices and excluding charges that were not taxable costs of deposition transcripts).

Accordingly, the Onemata Parties should recover $27,732.20 for costs incurred for printed or electronically recorded transcripts, excluding costs incurred for counsel's convenience.[14]

    *d.  Witness Fees and Related Costs*

Pursuant to 28 U.S.C. §§ 1920(3) and 1821, the Onemata Parties request $5,536.39 in fees for three witnesses who testified at trial. (ECF Nos. 390 at 1, 391 at 4-5) (requesting $2,173.36 for Bruce Wilson; $1,243.91 for Ronald Seigneur; and $2,119.12 for Daniel O'Day). Defendants argue that these costs should be limited to $40/day for each witness. (ECF No. 456 at 6).

The presiding District Judge has previously set forth the framework for compensation to witnesses who appear in federal court proceedings. *James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645, 651 (S.D. Fla. 2007) (citing *Morrison v. Reichhold Chems., Inc.*, 97 F.3d 460 (11th Cir. 1996)). "A witness who appears before a federal court 'or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States' is entitled to fees and allowances, including 'an attendance fee of $40 per day for each day's attendance.'" *Id.* at 651 (quoting 28 U.S.C. § 1821(a)(1) & (b)). "Section 1920 of title 28 provides that '[a] judge or clerk of any court of the United States may tax as costs . . . fees and disbursements for printing

---

[14] The calculation is based on: $30,197.70 (amount requested) minus $2,465.50 (reduction for unrecoverable charges such as costs for litigation support/exhibit packages, electronic processing, condensed transcripts, and delivery and handling).

and witnesses.'"  *Id.* (quoting 28 U.S.C. § 1920(3)).  Taken together, these two statutes provide that no more than $40 a day could be charged as cost of attendance.  *Id.* at 651.  Nevertheless, § 1821 also provides for additional travel-related compensation.  *See e.g.*, *Peeler v. KVH Indus., Inc.*, No. 12-CV-1584-T-33TGW, 2014 WL 12617558, at *6 (M.D. Fla. June 16, 2014) ("A witness is also entitled to the actual expenses of travel by common carrier at the most economical rate reasonably available.").  This recovery, however, requires the party requesting costs to detail the expenses and present a valid receipt.  *See e.g.*, 28 U.S.C. § 1821(c)(1) & (3); *Peeler*, 2014 WL 12617558, at *6 (noting that a party requesting travel costs needs to provide detailed documentation of the expenses incurred).

Further, under § 1821, "a witness is allowed actual travel expenses as limited by the 100-mile rule which states that travel expenses are limited to a distance of 100 miles absent 'special circumstances.'"  *Peeler*, 2014 WL 12617558, at *6 (citation omitted).  "In determining whether special circumstances exist, the Court considers the relevance and necessity of the witness's testimony, the existence of court approval before incurrence of the travel expenses, and whether the movant seeking costs could have obtained similar testimony from witnesses residing closer."  *Id.*

The Onemata Parties assert that each of the witnesses was necessary for trial and provide invoices supporting the claimed costs.  For example, according to the Onemata Parties, Mr. Bruce Wilson flew twice from Nebraska to Florida to attend trial and incurred $2,173.36 in costs for travel, hotel, and subsistence.  (ECF No. 391 at 5); *see also* (ECF No. 390 at 64-81) (providing receipts for Mr. Wilson's travel-related expenses).  Similarly, Mr. Ronald Seigneur was Onemata's valuation expert and provided testimony regarding the value of LocalBlox.  (ECF No. 391 at 5).  Mr. Seigneur incurred $1,243.91 in costs for travel, hotel, and subsistence.  *Id.*; *see also* (ECF No. 390 at 82-84).  Lastly, Mr. Daniel O'Day was Onemata's forensic computer expert who

conducted digital and software analysis.  (ECF No. 391 at 5).  Mr. O'Day incurred $2,119.12 in costs for travel, hotel, and subsistence.  *Id.*; *see also* (ECF No. 390 at 6, 85).

Against this factual background, the undersigned finds that the Onemata Parties should fully recover $5,536.39 for witness fees and related costs.

*e. Fees for Printing, Photocopying; Docket Fees*

Next, the Onemata Parties seek $1,303.16 in costs for copying, including exhibits attached to the depositions of Defendant Rahman, and witnesses Ray Estevez and John D. Agogliati. (ECF Nos. 390 at 1, 391 at 3, 86-91).  Defendants object to these costs as extraneous costs not related to copying/exemplification.  (ECF No. 456 at 7).

"Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case" are recoverable under 28 U.S.C. § 1920(4).  The prevailing party cannot make unsubstantiated claims that copies of the documents were necessary. *Alexsam, Inc. v. WildCard Sys., Inc.*, No. 15-CV-61736, 2019 WL 2245420, at *6 (S.D. Fla. Feb. 13, 2019), *report and recommendation adopted*, 2019 WL 1010241 (S.D. Fla. Mar. 4, 2019) (citation omitted); *Arnold v. Heritage Enters., LLC*, No. 13-CV-14447, 2017 WL 8794776, at *3 (S.D. Fla. Sept. 21, 2017), *report and recommendation adopted*, 2018 WL 1795446 (S.D. Fla. Jan. 11, 2018) (reducing amount claimed for exemplification and copies for failing to demonstrate the necessity of copies).  Rather, the party moving for taxation of costs must present evidence "regarding the documents copied including their use or intended use."  *Cullens v. Georgia Dep't. of Trans.*, 29 F.3d 1489, 1494 (11th Cir. 1994); *Monelus*, 609 F. Supp. 2d at 1332-33.  Here, other than summarily requesting costs for copying and preparation of deposition exhibits, the Onemata Parties have failed to explain how this category of costs is necessary and recoverable. Accordingly, the undersigned recommends against an award of costs for exemplification and printing.

Lastly, the Onemata Parties seek an award of $77.50 as docket fees pursuant to §§ 1920(5) and 1923(a) (permitting for docket fees and costs of briefs).  (ECF Nos. 390 at 1, 2, 391 at 3).  Defendants object that this category of costs is duplicative of transcripts already taxed as costs.  (ECF No. 456 at 9).  The undersigned finds that the Onemata Parties sufficiently itemize the docketed items to support recovery of these costs.  Accordingly, the Onemata Parties should fully recover for this cost.

In sum, the Onemata Parties' Motion for Bill of Costs should be granted in part and denied in part.  The chart below summarizes the recommended award of taxable costs:

| COST ITEM | RECOMMENDED AWARD |
|---|---|
| Fees of the Clerk | $400 |
| Fees for service of summons and subpoena | $845 |
| Fees for printed or electronically recorded transcripts necessarily obtained for use in the case | $27,732.20 |
| Fees for witnesses and related costs | $5,536.39 |
| Fees and disbursements for exemplification and costs of making copies | $0 |
| Docket Fees | $77.50 |
| TOTAL | $34,591.09 |

### III.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that:

1.      Plaintiff and Third-Party Defendants' Verified  Motion for Award of Attorney's Fees, Costs, and Expenses (ECF No. 436) be **GRANTED IN PART AND DENIED IN PART**. The Onemata Parties should be awarded $904,149 in attorney's fees and nothing in nontaxable costs;

2.      Plaintiff Onemata Corporation's Motion for Bill of Costs (ECF No. 390) be **GRANTED IN PART AND DENIED IN PART**. The Onemata Parties should be awarded $34,591.09 in taxable costs pursuant to 28 U.S.C. § 1920; and

3.      The award of fees and taxable costs be joint and several against the Defendants.

*See Fernau v. Enchante Beauty Prod., Inc.*, No. 18-CV-20866, 2021 WL 1923285, at *2 (S.D. Fla. May 13, 2021) (noting that balance of equities favors joint and several liability where parties operate as single cohesive unit and there is no compelling reason to choose any other method to apportion fees and costs); *American Infoage*, 2016 WL 7733983, at *11 (recommending that award of attorney's fees be joint and several where the relevant agreement provided for joint/several obligations and benefits).

Within **7 days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. J. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1 (2022); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Florida on August 23, 2023.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge William P. Dimitrouleas
    All counsel of record