UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-62002-DIMITROULEAS/VALLE

ONEMATA CORPORATION,

     Plaintiff,

v.

ASHFAQ RAHMAN and
SABIRA AREFIN,

     Defendants,

v.

WILLIAM SMITH and ENSCICON
ACQUISITIONS II, LLC,

     Third-Party Defendants.

_____/

## <u>REPORT AND RECOMMENDATION TO DISTRICT JUDGE</u>

THIS CAUSE comes before the Court upon: (i) Moving Parties' Motions to Dismiss Notices to Appear and Proceedings Supplementary (ECF Nos. 621, 649); and (ii) The Rahman Arefin Living Trust's Amended and Restated Motion to Dismiss Proceedings Supplementary and Notice to Appear (ECF No. 624) (together, the "Motions to Dismiss the Notices to Appear"); and (iii) Moving Parties' Motion to Dismiss Supplemental Complaint or, in the Alternative, for a More Definite Statement (ECF No. 673) (the "Motion to Dismiss Supplemental Complaint") (collectively, the "Motions").[1]   United States District Judge William P. Dimitrouleas has referred

---

[1] The "Moving Parties" in the Motions to Dismiss the Notices to Appear are: (i) MaskGene, LLC, Peacenheaven, LLC, Lakemont Property, LLC, BashaBari, LLC, Sunshine Irrevocable Trust, Paradise Valley Irrevocable Trust, and Bright Stars Irrevocable Trust, each alleged to be a Nevada LLC or a Nevada irrevocable trust; and (ii) CSB Holdings and HomeLien Investment LLC, aka Trident Trust (Nevis) ("HomeLien LLC"), Ora Partners Wealth Solutions, and HomeLien Investment LTD (hereinafter, collectively the "Third Parties").  *See* (ECF Nos. 621 at 1, 649 at 1). As noted below, while all Third Parties seek dismissal of the Notices to Appear, only the Nevada

all post-judgment motions in aid of execution to the undersigned for appropriate disposition. *See* (ECF No. 472).

Having reviewed the record, the Motions, Plaintiff/Judgment Creditor Onemata Corporation's ("Onemata's") Responses (ECF Nos. 625, 654, 627, 691), the Third Parties' Replies (ECF Nos. 628, 632, 657, 694), and Onemata's Sur-Reply (ECF No. 698), and being otherwise duly advised in the matter, the undersigned respectfully recommends that: (i) the Motions to Dismiss the Notices to Appear be **DENIED AS MOOT**; and (ii) the Motion to Dismiss Supplemental Complaint be **GRANTED**, with leave to amend, for the reasons set forth below.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Onemata commenced post-judgment proceedings to collect on an unsatisfied judgment for more than $7 million in favor of Onemata and against Defendants/Judgment Debtors Ashfaq Rahman and Sabira Arefin (together, "Judgment Debtors").  *See* (ECF No. 368) ($7 million Final Judgment); (ECF No. 496 at 22) (Onemata's motion alleging that the Judgment Debtors are jointly and severally liable for $4,330,645.56, with Judgment Debtor Rahman individually liable for an additional $6,330,645.56); (ECF No. 558 at 3) (asserting that judgment is now more than $8 million).  The Eleventh Circuit recently upheld the Final Judgment.  *Onemata Corp. v. Arefin*, No. 23-10070 (11th Cir. Aug. 6, 2024) (Docket No. 104-1).[2]

---

LLCs and Ran Chae (as Distribution Trustee for the Nevada Irrevocable Trusts) seek dismissal of the Supplemental Complaint.  *See infra* Section III.

[2] The facts and procedural history of this case have also been summarized in the Court's prior Orders, which are incorporated by reference. *See, e.g.*, (ECF No. 259) (Omnibus Order granting in part Motions for Summary Judgment and Daubert Motions); (ECF No. 368) (Final Judgment in favor of Plaintiff and against Defendants/Judgment Debtors); (ECF No. 537) (Report and Recommendation to District Judge recommending that Onemata's Bill of Costs and Motion for Award of Attorney's Fees be granted in part); (ECF No. 545) (Omnibus Order adopting the undersigned's recommendation regarding fees and costs); *see also* (ECF Nos. 477, 498, 547, 552) (various orders on post-judgment proceedings, including discovery motions and hearing); (ECF No. 585) (Order on Verified Motion to Commence Proceedings Supplementary and Related Relief); (ECF Nos. 586, 588-96) (Notices to Appear); (ECF No. 617) (transcript of 11/21/2023

Relevant here, on December 1, 2023, the Court granted Onemata's Verified Motion to Commence Proceedings Supplementary and to Set Aside Fraudulent Transfers.  *See generally* (ECF No. 585) (the "Order Commencing Proceedings Supplementary").  The Order Commencing Proceedings Supplementary impleaded the Third Parties as alleged alter egos of the Judgment Debtors.  *Id.*  The undersigned also issued Notices to Appear to the Third Parties.  *See* (ECF Nos. 586, 588-96).  Lastly, the Court also ordered that "[w]ithin two business days from the date of th[e] Order," Onemata "(i) serve a copy of [the] Order and all Notices to Appear on the Third Parties and the Judgment Debtors; and (ii) file a Notice of Compliance with the same."  (ECF No. 585 at 8).

On December 5, 2023, Onemata filed its Notice of Compliance, advising that copies of the Order Commencing Proceedings Supplementary and the Notices to Appear were "provided to a process server to be personally served pursuant to [Florida law] as well as sent by registered mail to the respective third-parties on each Notice," the Judgment Debtors, and all counsel of record. (ECF No. 600 at 1-2).  The instant Motions followed.  On January 18, 2024, Onemata filed its Supplemental Complaint seeking to avoid allegedly fraudulent transfers (Count 1) and requesting declaratory relief (Count 2).  *See* (ECF No. 626) ("Suppl. Complaint").

## II.    MOTIONS TO DISMISS THE NOTICES TO APPEAR

The Court first addresses the Third Parties' Motions to Dismiss the Notices to Appear, which all raise similar challenges.  *See generally* (ECF Nos. 621, 624, 649).  For the reasons set forth below, the undersigned recommends that the Motions to Dismiss the Notices to Appear be denied as moot.

---

evidentiary hearing); (ECF No. 708) (the undersigned's 6/27/2024 Omnibus Order on Procedural Post-Judgment Motions).

First, the undersigned is unpersuaded by the Third Parties' argument that Onemata failed to timely serve the Notices to Appear within two days of the Order Commencing Proceedings Supplementary. *See, e.g.*, (ECF Nos. 621 at 3, 624 at 3, 649 at 3). By way of background, the Court ordered that within two business days of the Court's Order, Onemata "(i) serve a copy of [the] Order and all Notices to Appear on the Third Parties and the Judgment Debtors; and (ii) file a Notice of Compliance with the same." (ECF No. 585 at 8). These proceedings involve numerous parties, including the Judgment Debtors, almost a dozen Third Parties, across several states (e.g., Washington and Nevada), and several countries (e.g., the United States and West Indies). *See* (ECF No. 654 at 3). As evidenced by Onemata's Notice of Compliance, Onemata commenced the process of serving the Third Parties within two business days of the undersigned's Order. *See* (ECF No. 600) (Onemata's Notice of Compliance regarding service of process); *see also* (ECF Nos. 644, 644-1 to 644-7) (Affidavits of Service declaring that several of the Third Parties were served through their registered agent in Las Vegas, Nevada on December 6, 2023).[3] Accordingly, the undersigned rejects the Third Parties' argument that dismissal is warranted because service of the Notices to Appear is untimely.

Second, Onemata has filed a Supplemental Complaint. *See* (ECF No. 626). Accordingly, Florida Statute § 56.29(9) is satisfied and dismissal of the Notices to Appear is unwarranted. *See* Fl. Stat. § 56.29(9) (requiring that claims for fraudulent transfer be initiated by a supplemental complaint and served pursuant to the rules of civil procedure); *see also In re Brit. Am. Ins. Co. Ltd.*, 607 B.R. 753, 759 (Bankr. S.D. Fla. 2019) (noting that plaintiff could pursue fraudulent transfers by filing a supplemental complaint or by filing an independent action under Florida law);

---

[3] Relatedly, the undersigned has separately granted Onemata additional time to serve the Summonses and Supplemental Complaint on HomeLien Investment, LLC ("HomeLien") and CSB Holdings 329, LLC ("CSB Holdings") through personal service and registered mail at their registered offices in Nevis, West Indies. (ECF No. 712 at 3).

*see also* (ECF No. 625 at 5) (Onemata's notes—and the Third Parties do not challenge—that none are aware of a deadline for filing a supplemental complaint under § 56.29). Moreover, in seeking dismissal of the Notices to Appear, the Third Parties concede that the Supplemental Complaint "supersedes and replaces" the Notices to Appear. (ECF Nos. 628 at 4, 632 at 1-2, 657 at 2); *see also* (ECF No. 649 at 10) (recognizing that Onemata's Supplemental Complaint moots the Notices to Appear). Accordingly, dismissal of the Notices to Appear is unwarranted.

Third, all factual and legal challenges to the claims asserted in the Notices to Appear are preserved as challenges to the Supplemental Complaint.[4]  *See* (ECF No. 621 at 10) (Third Parties' concession that "[a]fter Onemata files and serves a supplemental complaint . . . the [Third] Parties reserve their right to further plead all factual and legal defenses in response to the Notices to Appear."); *see also* (ECF No. 673) (the Motion to Dismiss Supplemental Complaint or, in the Alternative, for a More Definite Statement filed by the Nevada LLCs and Chae (as defined below)). Accordingly, the Third Parties' Motion to Dismiss the Notices to Appear should be denied as moot based on the filing of the Supplemental Complaint.

## III.   MOTION TO DISMISS SUPPLEMENTAL COMPLAINT

The Nevada LLCs[5] and Ran Chae, as Distribution Trustee of the Sunshine Irrevocable Trust, the Paradise Valley Irrevocable Trust, and the Bright Stars Irrevocable Trust ("Chae,") seek

---

[4] These include, for example: (i) the alleged failure to plead with particularity (ECF Nos. 621 at 6, 649 at 7-8); (ii) the purported lack of personal and in rem jurisdiction over non-residents (ECF No. 621 at 8-9, 649 at 9-10); and (iii) whether the Haydn Property is exempt from a judgment lien under Florida law as the homestead of the Judgment Debtors. (ECF No. 621 at 7). The Nevada LLCs and Chae raise similar arguments in their Motion to Dismiss the Supplemental Complaint. *See* (ECF No. 673).

[5] For ease of reference (and without deciding its legal accuracy), the undersigned uses the term "Nevada LLCs" to collectively refer to "MaskGene, LLC ("MaskGene"), Peacenheaven, LLC ("Peacenheaven"), Lakemont Property, LLC ("Lakemont NV") and BashaBari, LLC ("BashaBari NV"). *See* (ECF No. 673 at 1). Other entities (i.e., HomeLien, CSB Holdings, and The Rahman

dismissal of the Supplemental Complaint under Federal Rule of Civil Procedure 12(b) for, among other things, failure to state a claim, the lack of personal jurisdiction, and as time barred. *See generally* (ECF Nos. 626, 673). Alternatively, the Nevada LLCs and Chae seek a more definite statement pursuant to Rule 12(e) on grounds that the Supplemental Complaint is a shotgun and duplicitous pleading under Rule 10(b). (ECF No. 673 at 10, 13). For the reasons set forth below, the undersigned recommends that the Motion to Dismiss the Supplemental Complaint be granted with leave to amend.

### A.  Legal Standard for Motion to Dismiss

To withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim that is "plausible on its face." *Alcon Lab'ys, Inc.,* No. 18-CV-61638, 2019 WL 2245584, at *1 (S.D. Fla. Mar. 7, 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A court's review of the sufficiency of the complaint and its counterclaims is limited to the allegations presented in the complaint and exhibits attached thereto. *Id.* (citing *GSW, Inc. v. Long Cty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). Further, all factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in plaintiff's favor. *Id.* (citing *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citations omitted)); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998) (citations omitted).

While a plaintiff need not provide "detailed factual allegations," the allegations must consist of more than "a formulaic recitation of the elements of a cause of action." *Alcon Lab'ys, Inc.,* 2019 WL 2245584, at *2 (citing *Bell v. Twombly*, 550 U.S. 544, 555 (2007)). Factual allegations must be enough to raise a right to relief above the speculative level. *Id.* Conclusory

---

Arefin Living Trust) are not parties to the Motion to Dismiss. Accordingly, the recommendations herein concern solely the Nevada LLCs and Chae.

allegations, unwarranted factual deductions, and legal conclusions masquerading as facts may result in dismissal. *United States ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 792-93 (11th Cir. 2014) (citation omitted).

Moreover, courts conduct a "two-pronged approach" when considering a motion to dismiss under Rule 12(b)(6). *Alcon Lab'ys, Inc.,* 2019 WL 2245584, at *2 (citation omitted). First, a "court should first ask whether the pleading properly asserts 'well-pleaded factual allegations,' or instead merely asserts legal conclusions that are not entitled to the assumption of truth." *Id.* (citations omitted). Second, if the complaint contains factual allegations that are well pled, then the court should assume their veracity, and move to the next step and ask whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.* Thus, where the pleading asserts non-conclusory, factual allegations that, if true, would push the claim "across the line from conceivable to plausible," the motion to dismiss should be denied. *Id.* (quoting *Twombly*, 550 U.S. at 570).

### B.  FUFTA and the Claims Alleged in the Supplemental Complaint

In relevant part, the claims in the Supplemental Complaint are premised on Florida Statute § 726.101 (Florida's Uniform Fraudulent Transfers Act ("FUFTA")). Suppl. Complaint at 2.

FUFTA was promulgated to prevent an insolvent debtor from transferring assets out of the reach of its creditors when the debtor's intent is to hinder, delay, or defraud any of its creditors. *Gulf Coast Produce, Inc. v. Am. Growers, Inc.*, No. 07-CV-80633, 2008 WL 660100, at *5 (S.D. Fla. Mar. 7, 2008). FUFTA provides that any transfer made or obligation incurred by a debtor is fraudulent as to a creditor if the debtor made the transfer or incurred the obligation to hinder or defraud the creditor or without receiving "reasonably equivalent value in exchange for the transfer or obligation." *Id.* (citing Fla. Stat. § 726.105-106).

Further, a creditor victimized by a fraudulent transfer has remedies against both the debtor and third-party transferees. *Capitol Recs., LLC v. Mellerski*, No. 22-CV-80380, 2022 WL 9510984, at *4 (S.D. Fla. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 9435976 (S.D. Fla. Oct. 14, 2022). For example, the creditor can: (i) avoid the transfer, Fla. Stat. § 726.108(1)(a); (ii) enjoin further disposition of the debtor or transferee's property, Fla. Stat. § 726.108(c)(1); and (iii) (if a judgment creditor) can levy the asset transferred or its proceeds. Fla. Stat. § 726.108(2). Where the fraudulent transfer is voided, the creditor can obtain a money judgment for the value of the transferred assets, which judgment can be against the "first transferee of the asset or the person for whose benefit the transfer was made; or [a]ny subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee." Fla. Stat. § 726.109(2)(a), (b); *see also Capitol Recs.,* 2022 WL 9510984, at *4.

Although the Supplemental Complaint does not specify which subsection of § 726.105 governs the alleged claims, Onemata asserts in response to the Motion to Dismiss that it alleges claims under both subsections (a) and (b). *See* (ECF No. 691 at 7); *see also Profilet v. Cambridge Fin. Corp.*, 231 B.R. 373, 382 (S.D. Fla. 1999) (denying motion to dismiss where plaintiff had plead prima facie case of fraudulent transfer under Florida law although complaint did not specify statutory subsection). In response to the Motion to Dismiss, Onemata summarizes the Supplemental Complaint as alleging claims regarding:

> transfers of nine (9) properties, all of which . . . (except for the Haydn Drive Property)[6] occurred after the underlying litigation was filed [i.e., October 2020]. These transfers were done with the actual intent to hinder and defraud Onemata. The Judgment Debtors transferred the properties to the Nevada limited liabilities companies and placed liens on them through HomeLien Investment, another entity [the Judgment Debtors] formed in the West Indies, nineteen (19) days after the Final Judgment was entered.

---

[6] All capitalized terms have the same meaning as in the Supplemental Complaint. *See* (ECF No. 626).

(ECF No. 691 at 8); *see also id.* at 3 ("The Supplemental Complaint sets forth facts to support numerous fraudulent transfers of various real properties owned by the Judgment Debtors, jointly and severally, some of which were transferred to the Nevada limited liability companies owned and controlled by the Judgment Debtors.  The Debtors formed all of the Nevada limited liability companies during the pendency of the underlying litigation.  Subsequently, the Judgment Debtors transferred their membership interests in the Nevada limited liability companies to various irrevocable Trusts of which the Judgment Debtors and/or [Chae] are trustees.  In addition, the Judgment Debtors took out equity lines of credit from [HomeLien], another entity formed by them while the litigation was pending, which lines of credit were secured by the properties fraudulently transferred.").

Despite involving numerous properties and various alleged transfers/mortgages, the Supplemental Complaint contains only two counts:  Count 1 (incorporating fraudulent transfer allegations for numerous properties/loans/mortgages) and Count 2 (seeking declaratory relief). The Nevada LLCs and Chae challenge both counts of the Supplemental Complaint on several grounds.  The undersigned finds that dismissal (with leave to amend) is warranted because: (i) Count 1 of the Supplemental Complaint does not sufficiently plead the elements of § 726.105(1); (ii) it constitutes a shotgun and duplicitous pleading that violates Rule 10(b); and (iii) Count 2 is duplicative of Count 1 and without a useful purpose.  Nevertheless, the undersigned addresses other arguments (e.g., alter ego jurisdiction and Federal Rules of Civil Procedure 8 and 9(b) as they relate to pleading issues relevant to any amendment of the Supplemental Complaint. Arguments that go to the merits of the claims, however, are not discussed in this Report and

Recommendation as they are better addressed if the case proceeds beyond the pleading stage.[7]
*See, e.g.*, *Pataro v. Castellon*, No. 22-CV-20866, 2023 WL 4014793, at *2 (S.D. Fla. Mar. 24, 2023) (granting dismissal of complaint and declining to address substantive arguments).

### C.  Onemata Has Failed to Sufficiently State a Claim for Fraudulent Transfers

Rule 8 requires "a short and plain statement of the claim" and "a demand for relief."  Fed. R. Civ. P. 8(a)(2)-(3).  Further, Rule 10(b) provides that a party "must state its claims or defenses . . . each limited as far as practicable to a statement of a single set of circumstances."  *Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996) (quotations omitted).  Rules 8 and 10 work together to require the pleader to present its claims discretely and succinctly, so that: (i) an adversary can discern the claims and frame a responsive pleading; (ii) the court can determine which facts support which claims and whether plaintiff has stated any claims upon which relief can be granted; and (iii) the court can determine what evidence is relevant at trial.  *Id.* (citation omitted); s*ee also Alcon Lab'ys*, 2019 WL 2245584, at *5.

Although the Supplemental Complaint does not specify which subsection of § 726.105 governs Onemata's alleged claims, Onemata argues in response to the Motion to Dismiss that it alleges claims under both § 726.105(1)(a) (governing claims of actual fraud) and § 726.105(1)(b) (governing claims of constructive fraud).  *See* (ECF No. 691 at 7).  Therefore, the undersigned evaluates the allegations in the Supplemental Complaint under both subsections to determine whether Count 1 sufficiently states a claim.

---

[7] For example, the Nevada LLCs and Chae also argue that: (i) they have factual and legal defenses to the claims; (ii) certain of the transfers are time barred under Nevada law or the FUFTA four-year statute of limitations; and (iii) the alleged transfers are not subject to avoidance under FUFTA. *See* (ECF No. 673 at 6-8, 11-13).  These substantive arguments go beyond the pleading stage (where the Court must accept all allegations as true) and should be addressed on the merits.

### 1.  *Actual Fraudulent Intent under § 726.105(1)(a)*

Florida law avoids transfers made with actual intent to hinder, delay or defraud creditors.

In relevant part, § 726.105(1)(a) states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of debtor.

Fla. Stat. § 726.105(1)(a).[8]  Because proof of actual intent is often unavailable through direct evidence, courts have traditionally relied upon certain badges of fraud as circumstantial evidence of fraudulent intent.  *In re Amelung*, No. 07-15492-BKC-PGH, 2010 WL 1417742, at *5 (Bankr. S.D. Fla. Apr. 7, 2010) (citation and quotation omitted); *In re Goldberg*, No. 97-35293-BKC-PGH, 229 B.R. 877, 885 (Bankr. S.D. Fla. 1998) (noting nonexclusive badges of fraud that a court may use in determining whether debtor acts with actual intent); *see also* § 726.105(2)(a)-(k) (nonexclusive list of badges of fraud that provide circumstantial evidence of actual fraudulent intent).  "[I]t is clear from the language of the Statute that in determining intent, consideration may be given to factors other than those listed."  *In re Amelung*, 2010 WL 1417742, at *5.  Although a

---

[8] In full, § 726.105(1) provides that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> 1.  Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> 2.  Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

single badge of fraud may only create a suspicious circumstance and may not constitute the level of fraud to set aside a conveyance, when combined, several badges may afford a basis to infer fraud. *In re Amelung*, 2010 WL 1417742, at *5; *In re Goldberg*, 229 B.R. at 885 (same).

Here, Count 1 alleges that on various dates after Onemata filed the underlying litigation, the Judgment Debtors transferred nine different properties to different trusts and/or obtained lines of credit/loans against those properties. *See generally* Suppl. Complaint.  Although Onemata alleges facts regarding each property, the allegations are grouped into a single count, making it difficult for the Nevada LLCs, Chae, and the Court to determine the specific claims and conduct upon which each claim rests. *See, e.g.*, *Wells Fargo Bank, N.A. v. Barber*, 85 F. Supp. 3d 1308, 1312 (M.D. Fla. 2015) (alleging actual fraud and constructive fraud in separate counts).  For example, in some instances, Onemata alleges actual intent to hinder, delay, and defraud. *See, e.g.*, Suppl. Complaint ¶ 42 (allegations regarding the Buckskin Property conveyance to MaskGene and subsequent transfer to Bright Stars); ¶ 56 (allegations regarding the San Mateo Property transfer to Peacenheaven and subsequent transfer to the Paradise Valley Irrevocable Trust); ¶ 80 (allegations regarding the Unit 201 Property allegedly conveyed to Bashari and subsequent transfer to Sunshine Irrevocable Trust); ¶ 93 (allegations regarding the 173rd Avenue Property allegedly conveyed to Lakemont and subsequent transfer to Sunshine Irrevocable Trust); ¶ 120 (allegations regarding transfer of the Highline Loop Property to the Sunshine Irrevocable Trust); ¶ 129 (alleging mortgages made by HomeLien).  In the same Count 1, however, Onemata also alleges "concealment" of the lines of credit/loans, without mention of actual intent, an element of fraud under § 726.105(1)(a). *See, e.g.*, ¶ 71 (alleging concealment of equity line of credit secured by the Parc Corniche Property); ¶ 102 (alleging concealment of loan secured by the Bella Vista Property).

Moreover, Count 1 includes allegations regarding the Haydn Property, which was allegedly transferred pre-litigation (i.e., 2019) to The Rahman/Arefin Living Trust "without consideration for the transfer of the property." Suppl. Complaint ¶¶ 63-67; *see also* (ECF No. 691 at 9) (recognizing that, unlike other alleged transfers, the transfer related to the Haydn Property predated the litigation). On its face, the Supplemental Complaint includes allegations regarding a specific, pre-litigation transfer of property: (i) without alleging actual intent to hinder, delay or defraud; and (ii) without distinguishing whether pre-litigation events differ from post-litigation allegations. Accordingly, the Motion to Dismiss Count 1 should be granted for failure to state a claim under § 726.105(1)(a).

### 2. *Constructive Fraud under § 726.105(1)(b) and § 726.106(1)* [9]

Onemata also argues that Count 1 the Supplemental Complaint alleges "facts supporting the other elements necessary to state a claim under § 726.105(1)(b)" and § 726.106, i.e., constructive fraud. *See* (ECF No. 691 at 7). Relevant here, §§ 726.105(1)(b) and 726.106(1) "deal with transfers made by a debtor without receiving reasonably equivalent value in exchange for the obligation while the debtor was insolvent or intended to incur or believed or should have believed that he or she would incur debts beyond his or her ability to pay as they became due." *In re Amelung*, 2010 WL 1417742, at *3 (citing *In re Goldberg*, 229 B.R. 877 at 884). Florida's constructive fraud statutes do not require proof of fraudulent intent. *In re Amelung*, 2010 WL 1417742, at *3 (citation omitted). To establish a claim of constructive fraud, however, a

---

[9] Florida Statute § 726.106(1) provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the claim arose before the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving reasonably equivalent value in exchange for the transfer or obligation, and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

plaintiff must prove "that the debtor was insolvent at the time the transfer was made and that the debtor received less than reasonably equivalent value in exchange for the transfer." *In re Amelung*, 2010 WL 1417742, at *3 (citation omitted).

Having reviewed the Supplemental Complaint, the undersigned recommends that the Motion to Dismiss be granted for several reasons. First, although Onemata argues that the facts alleged in Count 1 of the Supplemental Complaint "establish that the Judgment Debtors were insolvent at the time of the transfers or became insolvent as a result of the transfers," (ECF No. 691 at 7), the Supplemental Complaint contains no such allegations. Accordingly, Count 1 should be dismissed for failure to state a claim under § 726.105(b) for constructive fraud.

Second, a review of Count 1 reveals that the Supplemental Complaint is a shotgun pleading that "commits the sin of not separating into a different count each cause of action or claim for relief." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). More specifically, as discussed above, although Onemata argues that it alleges claims for both actual and constructive fraud, *see* (ECF No. 691 at 7), it has nonetheless failed to allege the specific elements of each claim in separate counts. Even if the alleged facts in the Supplemental Complaint are taken as true, Count 1 as drafted fails to give the Nevada LLCs and Chae adequate notice of the claims against them and the grounds upon which each claim rests. *Weiland*, 792 F.3d at 1323 n.13 (noting that a complaint that combines multiple causes of action into one count is a shotgun pleading that likely runs afoul of Rule 10(b)). Accordingly, Count 1 of the Supplemental Complaint should also be dismissed as a shotgun pleading and as duplicitous in violation of Rule 10(b) by joining two or more distinct claims in a single count.

### D.  Onemata Has Sufficiently Alleged Alter Ego Jurisdiction

Because the undersigned recommends dismissal of Count 1 with leave to amend, the Court addresses the Nevada LLCs and Chae's challenges regarding alter ego jurisdiction and whether a

FUFTA claim requires heightened pleading under Rule 9(b) as it applies to any amended complaint.  First, the parties dispute whether Onemata has sufficiently alleged personal jurisdiction under an alter ego theory.  *Compare* (ECF No. 673 at 15-18)*, with* (ECF No. 691 at 14-15).  As an initial matter, a federal court "generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007); *see also Steel Co. v. Citizens for A Better Env't*, 523 U.S. 83, 93-102 (1998).   Ordinarily, federal courts follow state law in determining the bounds of their jurisdiction over persons.  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *see* Fed. R. Civ. P. 4(k)(1)(A) (service of process is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located").   "A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."  *Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*, 2020 WL 5757083, at *3 (S.D. Fla. Sept. 28, 2020), *report and recommendation adopted in part,* 2020 WL 5757083 (S.D. Fla. Sept. 28, 2020); *see also Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015) (citation omitted); *Broward Marine, Inc. v. S/V Zeus*, No. 05-CV-23105, 2010 WL 427496, at *4 (S.D. Fla. Feb. 1, 2010) (citing *Sculptchair v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)).  Both prongs must be satisfied for personal jurisdiction to exist.  *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990); *see also Broward Marine*, 2010 WL 427496, at *4.  Thus, a federal district court in Florida "may exercise personal jurisdiction over a nonresident defendant, to the same extent that a Florida court may, so long as

15

the exercise is consistent with federal due process requirements." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010) (citation omitted).

A court must determine whether it has personal jurisdiction over a defendant even in proceedings supplementary, which are considered "a continuation of the initial underlying proceeding and venue in the case does not shift from jurisdiction to jurisdiction . . . but remains with the court which entered the judgment." *Floridians for Solar Choice*, 2020 WL 5757083, at *3; *State, Dep't of Ins. v. Accelerated Benefits Corp.*, 817 So. 2d 1086, 1088 (Fla. 4th DCA 2002). Indeed, Florida Statute § 56.29 (governing proceedings supplementary) does not alleviate the requirement that a trial court have jurisdiction over an impleaded party. *Deluca v. King*, 197 So. 3d 74, 76-77 (Fla. 2d DCA 2016); *see also Jarboe Family & Friends Irrevocable Living Trust v. Spielman*, 136 So. 3d 666, 670 (Fla. 2d DCA 2014) (holding that a trial court must have personal jurisdiction over an impleaded defendant under *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499 (Fla.1989), and the long-arm statute).

Also relevant here is the alter ego theory of long-arm jurisdiction, which exists as a limited exception to the general two-step process of establishing long-arm jurisdiction. *Broward Marine*, 2010 WL 427496, at *6 (citation omitted).  To pierce the corporate veil under Florida law, "a plaintiff is required to prove both that the corporation is a mere instrumentality or alter ego of the defendant and that the defendant engaged in improper conduct in the formation or use of the corporation." *Id.; see also Floridians for Solar Choice*, 2020 WL 5757083, at *3.  In Florida, the corporate veil will be pierced only in "exceptional circumstances, such as for fraud or where the corporation is formed for some illegal purpose." *Broward Marine*, 2010 WL 427496, at *10. Improper conduct is present only in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose. *SEB S.A. v. Sunbeam Corp.*, 148 F. App'x 774, 800 (11th Cir. 2005)

16

(citation and quotation omitted).  Moreover, when analyzing an alter ego/veil-piercing claim in a motion to dismiss, the issue is not whether the plaintiff may ultimately prevail on that theory, but whether the allegations are sufficient to allow plaintiff to conduct discovery in an attempt to prove their allegations.  *Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, 343 F.R.D. 443, 450 (S.D. Fla. 2023) (citation omitted).

Here, the Supplemental Complaint contains sufficient allegations (which must be taken as true at this pleading stage of the litigation) to support alter ego jurisdiction over the Nevada LLCs and Chae.  For example, Onemata alleges:

> This Court has personal jurisdiction over the third-party interpleader defendants as they are alter egos of, and under the control of, Rahman and Arefin, as more particularly alleged above. The alter ego theory of long-arm jurisdiction is a limited exception to the usual two-step process of establishing long-arm jurisdiction. *See, e.g., Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*, 2020 WL 5757083 *3 (S.D. Fla. Sept. 28, 2020) (quoting *Broward Marine, Inc. v. S/V Zeus*, 2010 WL 427496 *6 (S.D. Fla. Feb. 1, 2010).

Suppl. Complaint ¶ 17.  Onemata further alleges that the Judgment Debtors are the "grantors and trustees" who: (i) control several of the entities and the trusts, *see* (Suppl. Complaint ¶¶ 4, 6, 7, 11, 12, 13, 35, 36, 53, 54, 64, 78, 79, 108, 109, 118, 119); (ii) transferred membership interests to the LLCs/trusts (*id.* ¶¶ 34, 49, 52, 77, 107), and (iii) formed HomeLien for the purpose of creating fraudulent mortgages to protect their real property (*id.* ¶ 127).

At this stage, the allegations in the Supplemental Complaint are sufficient to permit Onemata to conduct discovery to attempt to prove its claim of alter ego jurisdiction.  *See, e.g., Floridians for Solar Choice,* 2020 WL 6808669, at *10 (finding sufficient allegations for personal jurisdiction under alter ego theory).  Accordingly, the Supplemental Complaint sufficiently alleges alter ego personal jurisdiction and denial on that basis is not warranted.

### E.  Rule 9(b)'s Heightened Pleading Standard is Inapplicable to FUFTA Claim

The Nevada LLCs and Chae also argue that dismissal of the Supplemental Complaint is proper because it fails to allege fraudulent activity under the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) (requiring that allegations of fraud be alleged with particularity).  *See* (ECF No. 673 at 4).  This argument is unpersuasive.

Case law makes clear that the heightened pleading standard of Rule 9(b) does not apply to claims brought under the FUFTA.  *Tropical Paradise Resorts*, 343 F.R.D. at 450 (citation omitted); *Capitol Recs.,* 2022 WL 9510984, at *6 ("Rule 9(b) does not apply to fraudulent transfer claims under [FUFTA].");  *Pearlman v. Alexis*, No. 09-CV-20865, 2009 WL 3161830, at *6 (S.D. Fla. Sept. 25, 2009) (same); *Gulf Coast Produce*, 2008 WL 660100, at *5 (same).  Unlike common law fraud claims, fraudulent transfer claims are asserted against a person or entity that did not deal directly with the plaintiff in the challenged transaction.  *Id.*  Rather, the fraudulent act is allegedly committed by a defendant and another, without the plaintiff.  *Id.*  Therefore, a plaintiff possesses little or no information about the alleged fraudulent transfer other than it occurred.  *Id.*  This is in stark contrast to a common law fraud claim where a plaintiff alleges that a defendant made a material false statement or omission directly to the plaintiff, putting plaintiff in a position to plead with the specificity required by Rule 9(b). Thus, despite the use of the word "fraud," a fraudulent transfer claim is significantly different from other fraud claims to which Rule 9(b) is directed. *Id.* Given a plaintiff's lack of access to information in a fraudulent transfer case, application of a heightened pleading standard is inappropriate.  *Id.*

### F.  The Declaratory Relief Alleged in Count 2 is Duplicative and Without a Useful Purpose

Count 2 of the Supplemental Complaint seeks declaratory relief to: (i) nullify and void the alleged fraudulent transfers and find that the properties identified in the Supplemental Complaint

are still "owned by, controlled by, and titled in the name of [the Judgment Debtors];" (ii) void and nullify the alleged mortgages held by HomeLien; (iii) set aside the alleged assignments to CSB Holdings; and (iv) declare that Bright Star, Paradise Valley, and Sunshine Trusts are not valid spendthrift trusts under Nevada law because the Judgment Debtors allegedly created them to hinder, delay, and defraud Onemata.  Suppl. Complaint ¶¶ 156-57.  Count 2 also requests an injunction prohibiting the Judgment Debtors from effecting any other transfers of properties or entities.  *Id.* ¶ 156.  The Nevada LLCs and Chae move to dismiss Count 2 as duplicative and for failure to state a claim.  (ECF No. 673 at 13-15).  Onemata opposes dismissal, arguing that even if Count 2 is duplicative, dismissal is unwarranted.  (ECF No. 691 at 12-14).

Relevant to the instant Motion is the Declaratory Judgment Act, 28 U.S.C. § 2201, which applies to a diversity case, as here.  *Meir v. Hudson Specialty Ins. Co.*, No. 21-CV-61409, 2022 WL 787942, at *2 (S.D. Fla. Feb. 7, 2022), *report and recommendation adopted*, 2022 WL 783217 (S.D. Fla. Mar. 15, 2022) (citation omitted).  The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a). The Court's authority to grant declaratory relief under is discretionary.  *Alcon Lab'ys, Inc.,* 2019 WL 2245584, at *2 (citations omitted); *see also Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 151 F. Supp. 3d 1294, 1303 (M.D. Fla. 2015) (citation omitted).  The Declaratory Judgment Act is procedural rather than substantive: "It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so."  *Alcon Lab'ys, Inc.,* 2019 WL 2245584, at *2 (citations omitted).  If a court determines that a request for declaratory relief "will not serve a useful purpose," the court is not required to proceed to the merits before dismissing the complaint.  *Id.* (citations omitted).

Here, a review of the allegations in Counts and 1 and 2 of the Supplemental Complaint reveals that Count 2, as alleged, is duplicative of Count 1 and does not serve a useful purpose. For example, the available remedies under Count 1 (for alleged fraudulent transfers) include: (i) avoidance of the transfer or obligations to the extent necessary to satisfy the creditor's claim; (ii) attachment or other provisional remedy against the asset transferred; and (iii) an injunction against further disposition of the asset by the debtor, transferee, or both, subject to principles of equity and in accordance with the applicable rules of civil procedure. Fla. Stat. § 726.108 (governing creditor's remedies). The claims and available remedies in Count 1 will necessarily decide the claims in Count 2. *See, e.g.*, *Alcon Lab'ys, Inc.,* 2019 WL 2245584, at *4 (recommending dismissal of redundant and unnecessary declaratory claim). Accordingly, Count 2 should be dismissed.

## IV.   RECOMMENDATION

For the reasons stated above, the undersigned respectfully **RECOMMENDS** that:

(i)   The Moving Parties' Motions to Dismiss Notices to Appear and Proceedings Supplementary (ECF Nos. 621, 649) be **DENIED AS MOOT**;

(ii)   The Rahman Arefin Living Trust's Amended and Restated Motion to Dismiss Proceedings Supplementary and Notice to Appear (ECF No. 624) be **DENIED AS MOOT**; and

(iii)   The Moving Parties' Motion to Dismiss Supplemental Complaint or, in the Alternative, for a More Definite Statement (ECF No. 673) be **GRANTED** with leave to amend to cure the pleading deficiencies described above.[10]

---

[10] Because the undersigned recommends that the Motion to Dismiss be granted with leave to amend, the Court should defer on the Third Parties' request for a scheduling order to set discovery and all other deadlines to govern these proceedings supplementary. (ECF Nos. 621 at 10, 624 at 15, 649 at 11).

Within **seven days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. *See* Mag. J. R. 4(b) (any party may object to a Magistrate Judge's recommendation regarding dispositive motions within 14-days or within such other time as may be allowed by the Court). Further, within **seven days**, any party may respond to a parties' objections. *Id.* Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2023); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida on August 28, 2024.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge William P. Dimitrouleas
    All Counsel of Record