**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 20-CV-62002 DIMITROULEAS/VALLE**

ONEMATA CORPORATION,

      Plaintiff,

v.

ASHFAQ RAHMAN,  et al.,

      Defendants/Third-Party Defendants.

_____/

**MOVING PARTIES'**
**MOTION TO DISMISS AMENDED SUPPLEMENTAL COMPLAINT**
**OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

Ashfaq Rahman and Sabira Arefin ("Moving Party"), pursuant to this special and limited

appearance, move to dismiss (the "Motion") the Amended Supplemental Complaint [ECF No.

720] (the "Amended Complaint") filed by Onemata Corporation ("Onemata") pursuant to Rule

12(b) of the Federal Rule of Civil Procedure, because:

    (i)      Onemata fails to state a claim to avoid the alleged fraudulent transfers under
            Nevada law, which governs the claims on Nevada parties at issue, pursuant to
            Florida's choice of law framework; similarly, Nevis and Cook Islands laws shall
            apply to the other transfers related to entities from these jurisdictions.

    (ii)     Onemata fails to state a claim to avoid the alleged fraudulent transfers under Florida
            law, even if applicable, since Onemata failed to, among other things, sufficiently
            allege insolvency or related insolvency elements; failed to allege a "transfer" of an
            "asset" under FUFTA; and lacks standing to avoid transfers by non-Judgment
            Debtors;

    (iii)    many of the Transfers (defined herein) are time barred;

    (iv)    the Court lacks personal jurisdiction over all transferees and in rem jurisdiction over
            the Properties and Membership Interests; and

    (v)      Chae and the Trusts are not real parties in interest that may sue or be sued.

    (vi)    Rahman and Arefin are alleged transferors but fraudulent transfer action must be

137531872.2

dismissed if the action on transferees is dismissed.

In the alternative, the Court should require Onemata to provide a more definite statement pursuant to Federal Rule 12(e), since the Amended Supplemental Complaint improperly pleads claims under Florida's Uniform Fraudulent Transfer Act, which does not apply to the claims asserted in this proceedings supplementary. Because Counts 1-18 are not alleged under Nevada law (as made applicable to the Nevada Parties and International Third Parties under Florida's choice of law requirements) and each Count does not identify who Onemata seeks relief against, it is impossible for the Moving Parties to appropriately respond to targeted allegations specific to each, individual party under the Nevada laws governing the claims against the Nevada LLCs and the Trustees of the Nevada Trusts and Nevis and Cook Islands law on the Nevis and Cook Islands entities.

## **FACTUAL BACKGROUND**

1.      On September 14, 2022, the Court entered a Final Judgment in favor of Onemata and against defendants Ashfaq Rahman ("Rahman") and Sabira Arefin ("Arefin") (collectively, the "Judgment Debtors"). The Final Judgment is currently on appeal before the United States Court of Appeals for the Eleventh Circuit, Case No. 23-10070.

2.      On September 11, 2024, Onemata filed its Amended Supplemental Complaint [ECF No. 720] (the "Complaint"), against the Moving Parties, the Judgment Debtors, the Rahman/Arefin Living Trust, Rahman and Arefin as Trustees of the Rahman/Arefin Living Trust, HomeLien Investment LLC (Nevis), a Nevis limited liability company ("HomeLien") and CSB Holdings 329 LLC, a Cook Islands limited liability company ("CSB") (collectively, the "Third-Party Defendants" or "Third Parties").

3.      The Complaint asserts eighteen counts to avoid fraudulent transfers against the Third Parties under Florida law (including nine counts for actual fraud under Fla. Stat.

§§726.105(1)(a) and 726.106, and nine counts for constructive fraud under Fla. Stat. §726.105(1)(b), without any foundation to support the application of Florida law to claims against the Third Parties, most of whom were formed and/or reside in Nevada, the Cook Islands, or Nevis Island.

4.     The claims relate to various transactions (referred to generally as the "Transfers"), involving the Buckskin Property, San Mateo Property, the Haydn Property, the Parc Corniche Property, the Unit 201 Property, the 173rd Avenue Property, the Bella Vista Property, the Unit C302 Property and the Highline Loop Property (the "Properties"), the membership interests in the Nevada LLCs owned by the Nevada Trusts (the "Membership Interests"), and/or mortgage liens (in exchange for home equity loans) granted against the Properties and subsequently assigned. Onemata does not specify which Counts are sought against which Third Parties.

5.     As more fully explained below, the Complaint should be dismissed as to the Moving Parties since Onemata fails to state a claim as to Counts 1 – 18, since, among other things: (i) Florida law does not apply to any Transfers involving the Nevada and International Third Parties, (ii) many of the Transfers to or by the Moving Parties and other third parties are time barred under Nevada's statute of limitations, Nevis and Cook Islands statute of limitation or by its limitation on creditor remedies against Nevada LLCs, and (iii) the Court lacks personal jurisdiction over the Nevada and International Third Parties and lacks in rem jurisdiction over the Properties and Membership Interests related to the Nevada and International Third Parties. In the alternative, the Court should require Onemata to provide a more definite statement of their claims against the Moving Parties, Nevada and International Third Parties under Nevada law and identify which parties it seeks relief against in each Count, so that the Moving Parties can identify which Counts it must answer and appropriately respond to targeted, specific allegations under Nevada law and

further respond to each allegation under Nevis and Cook Islands law for international third parties.

**MEMORANDUM OF LAW**

A.    **Florida's Uniform Fraudulent Transfer Act does not apply to Onemata's Claims**

Counts 1 through 18 of the Complaint presume, without any basis, that Florida's Uniform Fraudulent Transfer Act ("FUFTA") applies simply because the Complaint was filed in Florida. Florida's choice of law analysis requires applying the laws of the Nevada Parties' domicile/state of formation to any fraudulent transfer claims alleged against them. Though Onemata fails to identify who it seeks relief against in each Count, it appears Counts 1 – 4, 9 – 12, and 15 –18 are intended to assert claims against the Nevada Parties. Because each of these claims are stated under Florida law, they must be dismissed against the Nevada Parties. Additionally, Counts 5 – 8 and 13 – 14 should be dismissed against the Moving Parties and Nevada Third Parties since they do not involve allegations against the Nevada Third Parties. Contrary to Onemata's Complaint, Florida's choice of law analysis requires applying the laws of the jurisdictions where the Third Parties reside and/or were formed to the claims asserted. Consequently, Nevada, Cook Islands and Nevis laws apply to the alleged fraudulent transfer claims against the Third Parties, with the exception of claims against the Florida formed Rahman/Arefin Living Trust which the third party is addressing separately.

With respect to substantive choice of law issues involving tort claims, Florida courts generally follow the "most significant relationship" test established in the Restatement (Second) of Conflict of Laws. *In re Palm Beach Fin. Partners, L.P.*, 2014 WL 12498025, at \*5 (Bankr. S.D. Fla. Dec. 10, 2014). Key factors of the significant relationship test include: (i) location of the parties involved (i.e. residence or place of formation), (ii) location of the injury in dispute, (iii) location of the subject matter causing the alleged injury (i.e. site of property or transaction

4

involved), (iv) place where relationship between the parties, if any, is centered, and (v) policy interests of the states involved. *Id.* at *8 (citing Restatement (Second) of Conflict of Laws §§ 6, 145).

Unlike traditional torts of battery and negligence, the intangible nature of the injury in fraudulent transfer cases complicates the identification of relevant contacts as outlined in § 145 of the Restatement. As the Fifth Circuit highlighted in *MC Asset Recovery LLC v. Commerzbank A.G. (In re Mirant Corp.)*, 675 F.3d 530, 537 (5th Cir. 2012), the intangibility of the injury diminishes the importance of determining its location, making it challenging to pinpoint where the harmful conduct occurred. *In re Palm Beach Fin. Partners, L.P.*, 2014 WL 12498025, at *9.

"Indeed, only one of the § 145(2) contacts—the domicile, residence, nationality, place of incorporation, and place of business of the parties—is particularly relevant to a choice-of-law analysis in the context of a fraudulent transfer action." *Id.* at *9. Because the Restatement's §145 contact factors are only minimally relevant to a fraudulent transfer choice of law analysis, courts must instead focus on the policy driven factors under the Restatement's § 6, including the basic policy underlying fraudulent transfer law, the relevant policies of the forum and other interested states, and predictability and uniformity of result and ease in determination and application of the law to be applied. *Id.* at 10-11.

As determined in *Palm Beach Finance*, courts interests in furthering harmonious relations between states, facilitating commercial dealings between states, and promoting certainty, predictability and ease in the determination of the law to be applied, favors application of the law of the state in which a defendant-transferee is formed. *Id.* at 11. The same is true with respect to alter-ego claims, which Onemata relies on for jurisdiction and the basis of its FUFTA claims. *See Milliken & Co. v. Haima Grp. Corp.*, No. 08-22891-MC, 2010 WL 1286462, at *3 (S.D. Fla.

Mar. 1, 2010) (determining that a formation state's laws apply to alter-ego issues, under Florida's choice of law analysis using the Restatement's significant relationship test); *In re Friedlander Capital Mgmt. Corp.*, 411 B.R. 434, 442 (Bankr. S.D. Fla. 2009) (finding that reverse veil piercing claims, which involve internal company affairs, are governed by laws of the defendant's state of formation which was Connecticut) the Court assets that the plaintiff "presented no evidence to suggest that Florida had more significant contacts."…."The parties have not established, and no facts on the record indicate that this is an unusual case where some other state has a more significant relationship to the occurrence and parties." Other Courts even outside of Florida has consistently taken the same standing in claims founded on the alter ego theory. In a recent ruling, U.S. District Court Judge Dale A. Drozd established that to determine whether a limited liability company is liable under the alter ego theory, courts apply the substantive law of the state where the limited liability company is formed. MacRae v. HCR Manor Care Servs., LLC, No. 8:14-cv-140715-DOC-RNB, 2017 WL 11480091, at *3 (C.D. Cal. Sept. 14, 2017) (collecting cases) (citing Cal. Corp. Code § 17708.01(a)). Pizana v. SanMedica Int'l LLC, No. 118CV00644DADSKO, 2022 WL 1241098, at *13 (E.D. Cal. Apr. 27, 2022). Judge Drozd's decision is in accord with several other rulings in the federal courts, including Wehlage v. EmpRes Healthcare Inc., 821 F. Supp. 2d 1122, 1126 (N.D. Cal. 2011) and Greenlight Sys., LLC v. Breckenfelder, No. 19-CV-06658-EMC, 2021 WL 2651377 (N.D. Cal. June 28, 2021).

"This is because these transferees would need only be well-versed in the laws of their own states, rather than the law of various other states whose law might apply several years down the road, when deciding whether to accept certain transfers." *Palm Beach Finance*, 2014 WL 12498025, at *11. Further, in actions like this case involving multiple transferee-defendants, each transferee is entitled to a separate choice of law analysis. *Id.* Therefore, "[a]ssigning significant

weight to the state in which the ***defendant-transferee*** is domiciled or has its principal place of business … circumvents a great deal of this uncertainty." *Id.* at 12.

Under the Complaint, Onemata groups multiple Transfers and/or transactions in a single count and does not identify which party it seeks relief against. Further, Florida law cannot and does not apply to any claims asserted against the Nevada Third Parties and the International Third Parties. Given the unique choice of law considerations for fraudulent transfer claims set forth in *Palm Beach Finance* and related precedent, Florida law cannot and does not apply to the claims asserted against the Nevada Trusts, Nevada LLCs, the Distribution Trustee, the Trustees, CSB, or Homelien against the alleged transfers. The third parties do not maintain a minimum connection to Florida, nor Onemata has claimed in its complaint that such connection exists through this Court's long arm jurisdiction to establish Florida law.

As a result, Counts 1 – 18 must each be dismissed for failure to state a claim, so that the Parties can respond to specific, individual claims under applicable law, and ultimately plead and prove their factual and legal defenses, which include but are not limited to, the following:

(i)     Inapplicability of Fla. Stat. § 56.29 to alleged fraudulent transfer claims under applicable laws outside the State of Florida (i.e. Nevada law);

(ii)    Statute of limitations (including the two-year statute of limitations pursuant to Nev. Rev. Stat. § 166.170, with respect to transfers into a Nevada spendthrift trust, or six-months from recording of such transfer);

(iii)   Lack of personal jurisdiction (for failure to satisfy Florida's long arm jurisdiction and/or alter ego exception thereto);

(iv)   Lack of *in rem* jurisdiction over the real and personal property outside of this Court's jurisdiction, which Onemata attempts to reach via these Proceedings Supplementary;

(v)    Barred by Nev. Rev. Stat. § 86.401, which limits a judgment's creditors exclusive remedy against a judgment debtor's membership interest in a Nevada limited liability company to a charging order against such membership interest, excluding all other remedies, including equitable remedies and claims such as alter ego. *See also e.g.*, *Ramos v. Mississippi Real Estate Dispositions, LLC*, 314 So. 3d 643, 644 (Fla. 3d DCA 2021) (analyzing Florida's similar exclusive charging order remedy as to LLC membership interests, pursuant to Fla. Stat. § 605.0503, in the context of a proceeding supplementary);

(vi)    Setoff/offset with respect to Onemata's prior levy on the Judgment Debtors' personal property, including in the State of Washington;

(vii)   Setoff/offset with respect to Onemata's prior repurchase and reissuance of the Judgment Debtors' stock in Onemata, which, upon information and belief, exceeds the value of the Final Judgment; and

(viii)  Unjust enrichment and/or estoppel, since Onemata has received value from the Judgment Debtors' assets without a proper setoff/offset as described in (vi) and (vii) above.

(ix)    Barred by the Nevis Limited Liability Company Ordinance, the Nevis International Exempt Trust Ordinance and/or the Cook Islands Limited Liability Companies Act (including the applicable one or two-year statute of limitations, limitation of remedies to charging order, bond requirements, etc.).

Because Onemata fails to identify the party it seeks relief against under Counts 1 – 18, and fails to allege its claims against the Nevada Parties under Nevada law (as dictated by Florida's choice of law framework) and International Third parties under their appropriate law, the Moving Parties cannot determine which Counts it must answer and assert its defenses under applicable Nevada laws. Therefore, Counts 1 – 18 must be dismissed.

**B.**    **The Transfers involving the Moving Parties are barred by Nevada's statute of limitations or other statutory limitations on creditor remedies.**

As an initial matter, Onemata blurs the line as to which parties made certain transfers and when the transfers were made (as opposed to when relevant instruments were recorded), by failing to attach the relevant documents underlying Counts 1 – 18. Onemata conveniently and repeatedly asserts some February 2022 documents but fails to identify the exact date of transfer and the date of public recording on each transfer which are clearly mentioned in these documents, most of which would cross the statute of limitation. Onemata must not bring any claim on any transfer that is beyond the statute of limitation per the plain reading of Nevada statute 160.70. Further, Onemata improperly applies FUFTA to all of the Transfers against the Nevada Third Parties, even though any such claims are governed by Nevada law. This is not surprising since claims against the Nevada Third Parties (which appear to be stated in Counts 1 – 4, 9, 11 – 12, and 15 – 18) are barred as untimely or limited by Nevada's exclusive remedy for a charging order against a Nevada LLC.

*See* Nev. Rev. Stat. §§ 166.170 (two-year limitations period for transfers to a spendthrift trust; or six-months from the date of recording of the transfer) and 86.401 (exclusive charging order remedy as to LLCs). Additionally, to the extent Onemata asserts a §726.106(2) claim in Counts 1, 3, 5, 7, 9, 11, 13, 15 and 17, which is unclear, such claims are barred by the one-year limitations period. See Fla. Stat. § 726.110(3). Accordingly, Counts 1-5, 7, 9, 11 – 13, and 15 – 18 must be dismissed against the Nevada Third Parties.  Even in Florida, In Ramos vs Mississippi 2021, Eleventh circuit reinstated charging order as the exclusive remedy for a creditor against LLC membership interest. "We agree with Ramos and Sunstate that the trial court's equitable powers to fashion remedies in proceedings supplementary are limited by the specific provisions of section 605.0503." "Florida's courts have concluded that section 605.0503(3) 's "sole and exclusive remedy" language restricts courts from providing a remedy beyond the narrow scope of the permissible charging order authorized in section 605.0503(1). …Hence, notwithstanding the equitable powers vested in a trial court pursuant to section 56.29(6), we are compelled to reverse the Order because the relief provided therein to Mississippi exceeds the express scope of relief a trial court may afford a judgment creditor under section 605.0503(1)." 'Any other remedy including any other equitable remedy' is explicitly barred by this verdict. Here Onemata is seeking an equitable remedy to undo a series of alleged transfers. Even if some of these remedies are afforded assuming Onemata's allegations on both judgement debtors' control and ownership of the LLCs are true ( which they are not ), the charging order would apply, making it impossible to afford Onemata the remedy it is seeking.

**C.    Even if FUFTA applies, Counts 1 -18 of the Complaint fail to state a claim against the Moving Parties for Avoidance or Recovery of the Transfers.**

Even if FUFTA applies, Counts 1 – 18 fail to sufficiently state a cause of action against each of the Moving Parties to avoid any of the Transfers as either actually or constructively

fraudulent under Florida law, since, among other things:

(i)     Onemata fails to sufficiently allege the Judgment Debtors' were insolvent or had unreasonably small assets or an inability to pay its debts as due at the time of each Transfer;

(ii)    the Transfers involving the Moving Parties do not constitute a "transfer" by the Judgment Debtors under §726.102(14);

(iii)   Onemata does not have standing against the non-debtor Nevada Third Parties and International Third Parties;

(iv)    Onemata did not sufficiently allege actual intent under §§ 726.105(1)(a) and 726.106.

### 1. Florida's Pleading Standard for Fraudulent Transfers

Counts 1 – 18 must be dismissed against the Nevada Third Parties since Onemata fails to state a cause of action upon which relief could be granted. Federal Rule 12(b)(6); *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1278 (11th Cir. 2005). While courts are required to view the well-pled allegations of a complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265 (1986).

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The "short and plain statement," however, must "possess enough heft to 'show that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (internal citation omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than just labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555.

With respect to a claim of actual intent under Fla. Stat. § 726.105(1)(a), actual fraud must

be alleged with respect to <u>each</u> transfer. Similarly, with respect to a claim for constructive fraud under §§ 726.105(1)(b) or 726.106(1), the pleading must state the property exchanged for <u>each</u> transfer and its value and with respect to <u>each</u> transfer, facts to show that the debtor at the time of <u>each</u> such transfer was insolvent, would be left with unreasonably small capital, or would incur debts beyond the debtor's ability to pay such debts as they matured. *In re Image Masters,* 421 B.R. at 171-2; *Angell v. BER Care, Inc. (In re Caremerica, Inc.*), 409 B.R. 737, 756 (Bankr. E.D.N.C. 2009); *Russell v. Little (In re Anderson),* No. 10-5081, 2010 Bankr. LEXIS 4395, at *7 (Bankr. E.D. Tenn. December 1, 2010) (***complaint insufficient which "simply alleges insolvency, without any factual support…."***) (emphasis added). Counts 1 – 18 must be dismissed against the Nevada Third Parties since Onemata does not provide supporting allegations of intent or insolvency for each Transfer, only blanket, conclusory allegations.

### 2.   Onemata's avoidance allegations in Counts 1 -18 are insufficient.

Onemata does not identify which Parties it seeks relief against in each of its Counts. The Moving Parties are thus left to address all Counts in generalities, as set forth below, though it Counts 5 – 8 and 13 – 14 do not involve allegations against the Nevada Third Parties.

### a.   Counts 1 - 18 fail to sufficiently plead insolvency and/or inability to pay debts under Fla. Stat. §§ 726.105(1)(b) and 726.106.

Onemata asserts a § 726.106 claim in Counts 1, 3, 5, 7, 9, 11, 13, 15, and 17, but does not specify whether it is traveling under §§ 726.106(1) or (2). Regardless, both sub-sections require *factually supported* allegations of the Judgment Debtors' insolvency to state a claim – which Onemata fails to allege. *See* Fla. Stat. § 726.106(1) and (2), and § 726.103. Similarly, §726.105(1)(b) requires pleading factually supported allegations that at the time of each Transfer, the Judgment Debtors' had unreasonably small assets in relationship to the alleged Transfer, or would incur debts beyond his or her ability to pay them as they became due. See § 726.105 (1)(b)1.

and 2., Fla. Stat. Onemata fails to do this in Counts 2, 4, 6, 8, 10, 12, 14, 16 and 18.

Onemata repeatedly asserts that the various Transfers "were made by Rahman and Arefin knowing that they would not have sufficient assets to satisfy their debts and would be insolvent." However, this alleged support is directly contrary to Onemata's repeated allegations throughout the Complaint, that the Judgment Debtors are the actual owners of the various Properties, mortgage liens, and Nevada LLC membership interests, which Onemata subscribes significant value to and seeks to collect against. Consequently, if taken as true, the Judgment Debtors could not have been insolvent at the time of the Transfers. Conveniently, Onemata also fails to address the multi-million dollar value of the remaining Onemata stock the Judgment Debtors retained after the sale to Onemata, and Rahman's multi-million dollar income in the same year as the transfer. For the foregoing reasons, Counts 1 – 18 must be dismissed.

### b.  The Transfers are not a "transfer" under Fla. Stat. § 726.102(14).

Counts 1 – 18 fail to allege a "transfer" under FUFTA. In order to establish a fraudulent transfer under any provision of FUFTA, a plaintiff must show that the challenged transactions are "transfers" subject to avoidance. *See* Fla. Stat. §§ 726.105 and 726.106 (each requiring "[a] transfer"); *see also In re Bal Harbour Quarzo, LLC,* 623 B.R. 903, 914 (Bankr. S.D. Fla. 2020).

FUFTA defines "transfer" as meaning "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an *asset* or an *interest in an asset*, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Fla. Stat. § 726.102(14) (emphasis added). FUFTA defines "asset" as "property of a debtor" but specifically excludes "[p]roperty to the extent it is encumbered by a valid lien," "generally exempt under nonbankruptcy law," or "held in tenancy by the entireties." Fla. Stat. § 726.102(2); *Bal*

*Harbour Quarzo,* 623 B.R. at 914*; Wiand v. Lee,* 753 F.3d 1194, 1200 (11th Cir. 2014).

Here, certain Transfers do not qualify as "transfers" under FUFTA since no "asset" (§726.102(2)) of the Judgment Debtor was transferred or involved in the obligation incurred. For example, because each Property that is the subject of a Transfer was subject to a mortgage lien, it does not constitute an "asset" which may be the subject of a "transfer" under FUFTA. Similarly, any obligations incurred by the Nevada LLCs do not involve an "asset" subject to a "transfer" under FUFTA, since the obligations would not have been incurred by the Judgment Debtors.

Consequently, Onemata has not alleged that each Transfer involves a "transfer" of an "asset" under §726.102(14). As a result, Counts 1 – 18 must be dismissed.

### c. Onemata lacks standing as to Transfers by the Nevada Third Parties and International Third Parties.

Counts 1 – 18 include Transfers *not* made by the Judgment Debtors. All of Onemata's avoidance claims regarding any Transfer by an entity other than the Judgment Debtors must be dismissed. *See* §§ 726.105 and 726.106, Fla. Stat. (specifically require pleading "[a] transfer … by a debtor….").

To the extent that Onemata tries to circumvent a plain reading of Ch. 726 by alleging that the Third Parties "are alter egos of, and under the control of" the Judgment Debtors (Complaint, ¶ 17), such conclusory allegations are insufficient to confer standing to Onemata to avoid Transfers by the non-debtor Moving Parties. For example, with respect to any mortgage liens granted by the Nevada LLCs or International Third Parties, Onemata lacks standing.

Further, even to the extent Onemata claims the third parties are alter-egos of the Judgment Debtors, Onemata fails to allege "a blurring of corporate lines, such as ignoring corporate formalities" or "commingling of corporate funds" (i.e. dominion and control). *Tropical Paradise Resorts, LLC v. JBSHBM, LLC,* 343 F.R.D. 443, 450 (S.D. Fla. 2023). Nor has Onemata alleged

13

that the third parties were organized or used for an improper purpose. Mere allegations of common management and/or ownership is insufficient to pierce the corporate veil (or reverse veil pierce), absent additional facts that the Judgment Debtors abused the corporate form. *See Oginsky v. Paragon Properties of Costa Rica LLC,* 784 F. Supp. 2d 1353, 1373 (S.D. Fla. 2011).

Onemata does not even articulate who made the transfer on behalf of Homelient on the HomeLien to CSB transfers and whether the judgement debtors were a part of these transfers at all. As a result of the foregoing, successive transfers in Counts 1 – 18 must be dismissed if these transfers were not initiated by the judgement debtors.

### d. Onemata fails to allege intent under §§ 726.105(1)(a) and 726.106.

In Counts 1, 3, 5, 7, 11, 13, 15 and 17, Onemata fails to adequately allege the intent element of its actual fraudulent transfer claims under §§ 726.105(1)(a) and 726.106. "Because of the difficulty of proving actual intent, past statutory law, existing case law and the UFTA look to indicia of intent commonly known as 'badges of fraud.' " *In re XYZ Options, Inc.,* 154 F.3d 1262, 1271 (11th Cir.1998) ("in determining whether the circumstantial evidence is sufficient to establish fraudulent intent, the court should investigate the transfer for the existence of badges of fraud."). FUFTA lists eleven nonexclusive "badges of fraud" that may be considered in determining actual intent. Fla. Stat. § 726.105(2). Though Onemata has attempted to allege a number of these enumerated "badges of fraud" with respect to each Transfer, Onemata merely recites the "badge" in a cursory fashion. *See, e.g.,* Supp. Compl. ¶ 62 ("Rahman and Arefin retained possession and control over the Buckskin Property after the transfers."); *see also id.* at ¶ 61 ("the transfers occurred at a time when Rahman and Arefin knew of the claims by Onemata"). Moreover, the central allegation intent is that the Transfers were "made with actual intent to hinder, delay,

and defraud Onemata." *See, e.g.,* Supp. Compl. ¶¶ 61. This is the type of "formulaic recitation of a cause of action's elements [that] will not do." *Twombly*, 550 U.S. at 555.

Further, to avoid the Transfers as actually fraudulent under § 726.105(1)(a), Onemata heavily relies on framing the Transfers as being made to an "insider," a badge of fraud under §726.105(2)(a). However, the "insider" of an individual judgment debtor is narrowly defined under §726.102(8). It only includes "a relative of the debtor," "a general partner of the debtor," "a partnership in which the debtor is a general partner," "a general partner in a partnership" in which the debtor is a general partner, or "a corporation of which the debtor is a director, officer or person in control." Consequently, the Nevada Third Parties and International Third Parties are not insiders of the Judgment Debtors under FUFTA. For the foregoing reasons, Counts 1, 3, 5, 7, 11, 13, 15 and 17 must be dismissed.

### D.   The Court lacks jurisdiction against the Nevada, International Third Parties, Properties and Membership Interests.

Generally, jurisdiction is either *in rem,* quasi *in rem,* or *in personam. In rem* and quasi *in rem* jurisdiction are based on the location of the property within the jurisdiction of the Court, while *in personam* is rooted in personal service or submission to jurisdiction within the state. *Cooper v. Gibson,* 208 So. 2d 117, 118 (Fla. 4th DCA 1968). Here, the Court does not have jurisdiction over the Nevada Third Parries Parties or International Third Partes, the Properties or Membership Interests since they are all outside of Florida.

#### a.  The Court lacks personal jurisdiction over NV and International Parties.

The Court should dismiss the Complaint against the Moving Parties as it lacks personal jurisdiction over the Nevada Third Parties and International Third Parties, all non-residents according to Onemata. Supp. Compl. ¶¶ 4 – 8, 10 – 14.  "A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint

sufficient facts to make out a prima facie case of jurisdiction." *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (citing *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir.2009)"). In order to determine if a court has personal jurisdiction over the non-resident Parties, this Court must:

> ... undertake a two-part analysis. First, [the Court] must determine whether the Florida long-arm statute provides a basis for personal jurisdiction. If so, then [the Court] must determine whether sufficient minimum contacts exist between the defendant and the forum state so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment.

*Sculptchair, Inc. v. Century Arts*, Ltd., 94 F.3d 623, 627 (11th Cir. 1996). "Only if both prongs are satisfied may a court exercise personal jurisdiction over a nonresident defendant." *Schuster v. Carnival Corp.*, No. 10-21879-CIV, 2011 WL 13220428, at *4 (S.D. Fla. Feb. 3, 2011). Onemata did not plead allegations with respect to personal jurisdiction under Florida's long-arm statute in the Complaint and thus this Court does not have long-arm jurisdiction over the Nevada Third Parties or International Third Parties. Accordingly, no further analysis under Florida's long-arm statute is required at this time.

Instead, Onemata relies exclusively on the limited alter-ego exception to Florida's long-arm statute analysis for personal jurisdiction. Compl. ¶ 17. However, Onemata fails to allege sufficient facts to establish alter ego in order to create any basis for personal jurisdiction over each of the third Parties. As this Court noted in *Floridians for Solar Choice, Inc. v. PCI Consultants* :

> "The alter ego theory of long-arm jurisdiction exists as a limited exception to the general, two-step process of establishing long-arm jurisdiction." *Broward Marine, Inc. v. S/V Zeus*, No. 05-23105-CIV, 2010 WL 427496, at *6 (S.D. Fla. Feb. 1, 2010). Under the alter ego theory, the complaint only must allege facts sufficient to pierce the corporate veil of the resident corporation. *Bellairs v. Mohrmann*, 716 So. 2d 320, 322 (Fla. 2d DCA 1998). In order to pierce a corporate veil under Florida law, "a plaintiff is required to prove both that the corporation is a mere instrumentality or alter ego of the defendant and that the defendant engaged in improper conduct." *Priskie v. Missry*, 958 So. 2d 613, 614-15 (Fla. 4th DCA 2007).

> The corporate veil will be pierced only in exceptional circumstances, such as for fraud or where the corporation is formed for some illegal purpose. *Bellairs*, 716 So.2d at 323. Improper conduct is present only in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose. *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1117 (Fla. 1984). 2020 WL 5757083, at *3 (S.D. Fla. Sept. 28, 2020).

The corporate shield doctrine provides that personal jurisdiction cannot be exercised over a nonresident corporate, absent the allegation of facts to establish alter ego liability, thereby piercing the corporate veil. *See id.* Similarly, in order to hold a Moving Party liable as to a particular Transfer purported to be a fraudulent transfer, Onemata must establish alter ego status with respect to that particular Third Party. *In re Evergreen Sec.*, Ltd., 319 B.R. 245, 256 (Bankr. M.D. Fla. 2003).

A party seeking to pierce the corporate veil and establish alter ego status bears the heavy burden of showing that: (1) the party exercised complete domination in respect to the transaction attacked, and (2) such domination was used to commit a fraud or wrong, which proximately caused the injury. *Tropical Paradise*, 343 F.R.D. at 450.

Here, Onemata fails to sufficiently allege that any of the Nevada Third Parties or International Third Parties are alter egos of the Judgment Debtors.  Instead, Onemata makes a general and sweeping legal conclusion. Supp. Compl. ¶17 ("this Court has personal jurisdiction over the third-party interpleader defendants as they are alter egos of, and under the control of, Rahman and Arefin"); *see also id.* ¶ 44. Such barebones allegations do not satisfy requirements for alleging grounds to reverse veil pierce or otherwise claim alter ego.

Absent from Onemata's claims are any allegations of "a blurring of corporate lines, such as ignoring corporate formalities" (i.e. dominion and control). *Tropical Paradise,* 343 F.R.D at 450. Moreover, unlike the complaint in *Floridians for Solar Choice*, Onemata's Complaint lacks

any allegations that the Third Parties: (i) were created/formed for an improper purpose, and (ii) are mere continuations or instrumentalities. Allegations of common management and/or ownership, absent additional facts of abusing the corporate form, is insufficient. *See Oginsky v. Paragon Properties of Costa Rica LLC,* 784 F. Supp. 2d 1353, 1373 (S.D. Fla. 2011).

At most, Onemata has alleged that the Judgment Debtors have either direct or indirect ownership interest in the Third Parties.  That alone, without more, is insufficient to establish personal jurisdiction over the Third Parties or otherwise reverse veil pierce for purposes of Onemata's fraudulent transfer claims.

> **b. The Court lacks *in rem* or quasi *in rem* jurisdiction over the Properties and Membership Interests.**

The Court should dismiss the Complaint against the Parties since it lacks *in rem* or quasi *in rem* jurisdiction over the Properties and Membership Interests owned by the Nevada Third Parties. The Properties owned by the Nevada Third Parties are located in Arizona and Washington. The Membership Interests in the Nevada LLCs owned by the Nevada Trusts are also located in Nevada. For subject matter jurisdiction in an *in rem* proceeding, a court must have both jurisdictional authority over the class of cases and territorial jurisdiction over the property involved. *Ruth v. Dep't of Legal Affairs*, 684 So. 2d 181, 185 (Fla. 1996).

When a dispute involves real property, jurisdiction exists only in the county or circuit where the property is located, as the court must control the *res*. *Id.*; *Publix Super Markets, Inc. v. Cheesbro Roofing, Inc.*, 502 So. 2d 484, 487 (Fla. 5th DCA 1987). This type of action requires the seizure of property or its equivalent, within the court's jurisdiction. *Flagship State Bank of Jacksonville v. Carantzas*, 352 So. 2d 1259, 1261 (Fla. 1st DCA 1977). A quasi *in rem* action also requires seizure of property or its equivalent within the court's jurisdiction, and service of process (unless waived), to proceed against the defendants and the property. *Harris v. City of Sarasota,* 181

So. 366, 36970 (Fla. 1938).

Since the Properties owned by the Nevada Third Parties are in Arizona and Washington, seizure or its equivalent (i.e. Onemata's request to avoid transfers of title, seek attachment, avoid mortgage liens, etc.) is not feasible. Accordingly, this Court does not have subject matter jurisdiction over the *in rem* relief sought. "Like lines in the sand, state boundaries determine a court's jurisdiction over real property." *Polkowski v. Polkowski*, 854 So. 2d 286, 286 (Fla. 4th DCA 2003). Additionally, because LLC membership interests are intangible personal property, courts have routinely held that such interests are "located" in the state where the LLC is formed. *SE Prop. Holdings, LLC v. Green*, 2020 WL 9396383, at *5 (S.D. Ala. Sept. 1, 2020), *report and recommendation adopted,* 2020 WL 5637400 (S.D. Ala. Sept. 18, 2020) (internal citations omitted). Here, the Membership Interests are in Nevada LLCs formed under Nevada law and owned by Nevada Trusts governed under Nevada Law. Thus, the Membership Interests are located in Nevada. Accordingly, the Court does not have subject matter jurisdiction over the *in rem* relief sought as to the Membership Interests.

**E.    Chae and the Nevada Trusts must be dismissed with prejudice since they are not the real parties in interest.**

Chae and the Nevada Trusts must be dismissed with prejudice from Counts 1 – 18. The real party in interest with respect to a trust is the trustee, since it is the only party that may sue or be sued in connection with a trust. "[A] trust is not an independent legal entity which is separate and distinct from its trustees." *Thomas & Kathleen Garland Family Tr. v. Melton*, 136 Nev. 811, 460 P.3d 31 (Nev. App. 2020) (internal citations omitted). As a result, "a trust itself can neither sue nor be sued in its own name." *Id.* Instead, it is the trustee who is the real party in interest and entitled to bring suit. *Id.* Chae, by the terms of the trust agreements for the Nevada Trusts, has no authority to sue on behalf of the Nevada Trusts, and likewise cannot be sued. Her limited role is

to distribute money from the Nevada Trusts, when applicable. Thus, the Nevada Trusts and Chae, must be dismissed with prejudice from this Proceedings Supplementary.[1] Even if the Nevada Trusts were somehow independent parties from the Trustees, Onemata never sought an extension of time to serve the Nevada Trusts, and the Court's Order extending the deadline to serve the Moving Parties only applied as to the Trustees. ECF Nos. 690 and 708;  Trusts must be dismissed.

**F.    Absent dismissal, Onemata must provide a more definite statement as to Counts 1 – 18 since they are vague and ambiguous.**

Absent dismissal, Counts 1 – 18 must be amended to provide a more definite statement since they do not identify the party against which relief is sought, or plead the claims against each party under the laws of the defendant transferees' domicile. Courts typically grant motions under Federal Rule 12(e) (motion for more definite statement) where the Complaint is "vague and ambiguous" and the responding party cannot reasonably prepare a response. The foregoing standard is met here since Onemata has failed to properly apply, or even consider, Florida's choice of law requirements, which dictate the application of Nevada law against the Nevada Third Parties and Nevis and Cook Island law against the Nevis and Cook Island companies. Pursuant to Federal Rule 12(e), absent dismissal, a more definite statement is required.

**G.  Fraudulent Transfer Claim against Rahman and Arefin cannot stand if the claims don't stand against the transfers and transferees**

Eleventh Circuit has made it very clear in a recent ruling on SE Property Holdings, LLC v. Welch, 65 F.4th 1335 (11th Cir., 2023) that when a fraudulent transfer claim was brought in Florida against an Oklahoma transferee, the case was dismissed for lack of personal jurisdiction on the transferee and consequently dismissed against the transferor / debtor. Since all Nevada third parties have

_____

submitted a motion to dismiss and the international third parties have filed a motion to quash, the fraudulent transfer claim against the judgement debtors cannot continue on its own. In addition, arguments have been made above on why these fraudulent transfer claims must be dismissed.

## **CONCLUSION**

As demonstrated above, Onemata fails to state a claim to avoid allegedly fraudulent transfers or obligations against all parties in Counts 1 – 18. At a minimum, Counts 5 – 8 and 13 – 14 do not appear to involve allegations against the third parties. As to Counts 1 – 4, 9 – 12, and 15 – 18, Onemata fails to state a claim, since, among other things, the claims are not alleged under Nevada law. Likewise, claims barred by Nevada's two-year statute of limitations for spendthrift trusts or exclusive charging order remedy against Nevada LLCs, must be dismissed with prejudice. Further, even if Florida law applies, claims involving transfers by the non-debtor Third Parties must also be dismissed with prejudice. FUFTA can only apply, if at all, to "transfers" by the Judgement Debtors. Further, even if FUFTA applies, the Transfers do not satisfy the elements of the Ch. 726 claims asserted since they were not pled with sufficient factual support to demonstrate intent, insolvency, or a "transfer" of an "asset" as defined under Fla. Stat. § 726.102, or are barred by the statute of limitations set forth in § 726.110. Furthermore, the statute requires proof by clear and convincing evidence standard thus establishing a very high bar to prove fraudulent transfer even if it is assumed that a transfer fell within the statute of limitation.

Onemata also fails to sufficiently allege that the Court has personal jurisdiction over the Third Parties or in rem jurisdiction over the Properties and Membership Interests owned by the Third Parties. Onemata's conclusory allegations attempting to establish an alter-ego exception to personal jurisdiction to the Third Parties are insufficient. Additionally, Chae and the Nevada Trusts should be dismissed with prejudice since they are not the real parties in interest with respect to the

Claims asserted against the Trustees of the Nevada Trusts. Finally, despite Onemata's attempt, FUFTA does not provide a statutory basis to recover attorneys' fees and costs.

Accordingly, the Complaint must be dismissed as to the Moving Parties and Third Parties pursuant to Federal Rule 12(b). In the alternative, the Court should require a more definite statement and order Onemata to further amend Counts 1 – 18 to identify the party against which relief is sought in each Count, and plead any claims under laws applicable to the defendant-transferees (as dictated by Florida's choice of law framework) so that the Moving Parties can adequately answer and raise defenses to specific, targeted allegations and claims under the applicable laws.

**WHEREFORE**, the Moving Parties, respectfully request that the Court enter an Order: (i) granting this Motion to Dismiss; (ii) dismissing Counts 1- 18 of the Amended Supplemental Complaint as to the Moving Parties, and (iii) granting such further and other relief as this Court deems just and proper, including, in the alternative, a more definite statement.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **Notice** with the Clerk of the Court for the United States District Court by using the CM/ECF system on October 15, 2024 and all parties of record that are registered CM/ECF participants were selected for service.

Harry Winderman, Esq.
One Boca Place, Suite 205E
2255 Glades Road
Boca Raton, Florida 33431
(561) 901-5110 Cellular
(561) 707-0000 Office
Harry4334@hotmail.com

BY:   /s/ Harry Winderman
Florida Bar No. 0209562