UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-62002-DIMITROULEAS/VALLE

ONEMATA CORPORATION,

       Plaintiff,

v.

ASHFAQ RAHMAN and
SABIRA AREFIN,

       Defendants,

v.

WILLIAM SMITH and ENSCICON
ACQUISITIONS II, LLC,

       Third-Party Defendants.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS CAUSE comes before the Court upon: (i) the Nevada Entities[1] Motions to Dismiss Amended Supplemental Complaint or, in the Alternative for a More Definite Statement (ECF No. 746); (ii) Ashfaq Rahman and Sabira Arefin's (hereinafter, the "Judgment Debtors") Motion to Dismiss the Amended Supplemental Complaint (ECF Nos. 748, 749);[2] (iii) the Rahman Arefin Living Trust's (the "Living Trust") Motion to Dismiss Amended Supplemental Complaint with

---

[1] The "Nevada Entities" refers to: MaskGene, LLC; Peacenheaven, LLC; Lakemont Property, LLC; BashaBari, LLC (each of which is alleged to be a Nevada LLC and collectively referred to as the "Nevada LLCs"); the Sunshine Irrevocable Trust; the Paradise Valley Irrevocable Trust; and the Bright Stars Irrevocable Trust (collectively referred to as the "Nevada Trusts"). *See* (ECF No. 746 at 1). For ease of reference, the Nevada Entities also includes Ran Chae, referred to as the "Distribution Trustee" of the Sunshine Irrevocable Trust, the Paradise Valley Irrevocable Trust, and the Bright Stars Irrevocable Trust. *Id.*

[2] ECF Nos. 748 and 749 are duplicative. For ease of reference, this Report and Recommendation ("R&R") references ECF No. 748.

Prejudice and Joinder to the Motion to Dismiss Arguments filed by the Nevada Entities(ECF No. 750); (iv) CSB Holdings 329 LLC ("CSB") and HomeLien Investment LLC's ("HomeLien") Motion to Dismiss Amended Supplemental Complaint for Lack of Jurisdiction, Failure to State a Claim and for Lack of Proper Service of Process (ECF No. 865)[3] (collectively, the "Motions to Dismiss"). United States District Judge William P. Dimitrouleas has referred all post-judgment motions in aid of execution to the undersigned for appropriate disposition. *See* (ECF No. 472).

Having reviewed the record, the Motions to Dismiss, Plaintiff/Judgment Creditor Onemata Corporation's ("Onemata's") Responses (ECF Nos. 761, 762, 763, 866), the Moving Parties'[4] Replies (ECF Nos. 777, 778, 779, 872) the record of the hearing held on April 29, 2025 (ECF No. 855) ("Hr'g. Tr."), and the parties' Supplemental Briefs regarding statute of limitations and choice of law issues (ECF Nos. 847, 848, 849), and being otherwise duly advised in the matter, the undersigned respectfully recommends that the Motions to Dismiss be **DENIED** for the reasons set forth below.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Onemata commenced post-judgment proceedings to collect on an unsatisfied judgment for more than $7 million in favor of Onemata and against Defendants/Judgment Debtors Ashfaq Rahman and Sabira Arefin (together, "Judgment Debtors"). *See* (ECF No. 368) ($7 million Final Judgment); (ECF No. 496 at 22) (Onemata's motion alleging that the Judgment Debtors are jointly and severally liable for $4,330,645.56, with Judgment Debtor Rahman individually liable for an

---

[3] CSB and HomeLien filed a joint motion and will be handled collectively in this R&R. *See* (ECF No. 865). Moreover, because ECF No. 864 should be denied as mooted by the amended motion filed at ECF No. 865, this R&R will address solely ECF No. 865.

[4] The "Moving Parties" collectively refers to the Nevada Entities, the Judgment Debtors, the Living Trust, CSB, and HomeLien.

additional $6,330,645.56); (ECF No. 558 at 3) (asserting that judgment is now more than $8 million). The Eleventh Circuit upheld the Final Judgment. *Onemata Corp. v. Arefin*, No. 23-10070 (11th Cir. Aug. 6, 2024) (Docket No. 104-1).[5]

Relevant here, on December 1, 2023, the Court granted Onemata's Verified Motion to Commence Proceedings Supplementary and to Set Aside Fraudulent Transfers. *See generally* (ECF No. 585) (the "Order Commencing Proceedings Supplementary"). The Order Commencing Proceedings Supplementary impleaded the Nevada Entities, the Living Trust, CSB, and HomeLien as alleged alter egos of the Judgment Debtors. *Id.* On January 18, 2024, Onemata filed its Supplemental Complaint seeking to avoid allegedly fraudulent transfers (Count 1) and requesting declaratory relief (Count 2). *See* (ECF No. 626) (the "Supplemental Complaint"). The Moving Parties moved to dismiss the initial Supplemental Complaint, which motion the Court granted with leave to amend to cure certain pleading deficiencies. *See* (ECF Nos. 673, 714, 718). On September 11, 2024, Onemata filed its Amended Supplemental Complaint. *See* (ECF No. 720) (the "Am. Suppl. Compl."). The instant Motions to Dismiss followed.

The four Motions to Dismiss seek dismissal of the Amended Supplemental Complaint on overlapping grounds. More specifically, the Nevada Entities, the Judgment Debtors, CSB, and HomeLien all argue that dismissal is warranted because: (i) pursuant to Florida's choice of law framework, the Amended Supplemental Complaint fails to state a claim for alleged fraudulent

---

[5] The facts and procedural history of this case have been summarized in the Court's prior Orders, which are incorporated by reference. *See, e.g.*, (ECF No. 259) (Omnibus Order granting in part Motions for Summary Judgment and Daubert Motions); (ECF No. 368) (Final Judgment in favor of Plaintiff and against Defendants/Judgment Debtors); (ECF Nos. 477, 498, 547, 552) (various orders on post-judgment proceedings, including discovery motions and hearing); (ECF No. 585) (Order on Verified Motion to Commence Proceedings Supplementary and Related Relief); (ECF Nos. 586, 588-96) (Notices to Appear); (ECF No. 617) (transcript of 11/21/2023 evidentiary hearing on motion to quash writ of execution on the Hyadn Property); (ECF No. 708) (the undersigned's 6/27/2024 Omnibus Order on Procedural Post-Judgment Motions).

transfers under the laws of Nevada (for the Nevada Entities), the Cook Islands (for CSB), or Nevis West Indies (for HomeLien) (*see* ECF Nos. 746 at 1-2, 4-7; 748 at 1, 4-8; 865 at 2-5); (ii) many of the alleged transfers are time-barred (*see* ECF Nos. 746 at 2, 7-8; 748 at 1, 8-9; 865 at 1, 5-7); (iii) the Court lacks personal jurisdiction over the Moving Parties and in rem jurisdiction over the Properties and Membership Interests[6] (*see* ECF Nos. 746 at 2, 14-18; 748 at 1, 15-19; 865 at 1, 12-16); (iv) the Amended Supplemental Complaint fails to state a claim to avoid the alleged fraudulent transfers even under Florida as it does not allege: (a) insolvency or related elements; (b) a "transfer" of an "asset;" (c) standing to avoid transfers by non-Judgment Debtors; and/or (d) intent (ECF Nos. 746 at 2, 10-14; 748 at 1, 11-15; 865 at 1, 8-11); and (v) Ran Chae, as Distribution Trustee, is not a real party in interest (ECF Nos. 746 at 2, 14-18; 748 at 1, 19-20).

In their joint motion, CSB and HomeLien also argue that: (i) under Florida law, financial institutions cannot be held liable to transferees unless they are the recipients of the debtors' assets; (ii) this Court cannot set aside mortgages on properties located outside of the Court's jurisdiction; (iii) the Supplemental Amended Complaint fails to plead a basis for personal jurisdiction over CSB and HomeLien; and (iv) dismissal is warranted for lack of jurisdiction due to improper service of process. *See generally* (ECF No. 865); *see also* (ECF No. 872). Alternatively, the Nevada Entities, the Judgment Debtors, CSB, and HomeLien seek a more definite statement pursuant to Rule 12(e). *See* (ECF Nos. 746 at 2, 20; 748 at 2, 20; 865 at 2, 20).

For its part, the Living Trust joins in the arguments of the Nevada Entities and further seeks dismissal of the claims against it arguing that: (i) the Haydn Property is the Judgment Debtors' homestead and owned (by husband and wife) as tenants by the entirety at the time of the transfer;

---

[6] Capitalized terms shall have the meanings as in the Motions or the Amened Supplemental Complaint.

and (ii) the transfer of the Haydn Property is time-barred. *See generally* (ECF No. 750). Onemata opposes all Motions to Dismiss.

For the reasons set forth below, the undersigned recommends that the Motions to Dismiss the Amended Supplemental Complaint be **DENIED**.

## II.   <u>LEGAL STANDARDS</u>

### A.  Motions to Dismiss

To withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim that is "plausible on its face." *Alcon Lab'ys, Inc. v. Allied Vision Grp., Inc.,* No. 18-CV-61638, 2019 WL 2245584, at *1 (S.D. Fla. Mar. 7, 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A court's review of the sufficiency of the complaint and its counterclaims is limited to the allegations presented in the complaint and exhibits attached thereto. *Id.* (citing *GSW, Inc. v. Long Cty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  Further, all factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in plaintiff's favor. *Id.* (citing *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citations omitted)); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998) (citations omitted).

While a plaintiff need not provide "detailed factual allegations," the allegations must consist of more than "a formulaic recitation of the elements of a cause of action." *Alcon Lab'ys.,* 2019 WL 2245584, at *2 (citing *Bell v. Twombly*, 550 U.S. 544, 555 (2007)).  Factual allegations must be enough to raise a right to relief above the speculative level. *Id.* Conclusory allegations, unwarranted factual deductions, and legal conclusions masquerading as facts may result in dismissal. *United States ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 792-93 (11th Cir. 2014) (citation omitted).

Moreover, courts conduct a "two-pronged approach" when considering a motion to dismiss under Rule 12(b)(6). *Alcon Lab'ys.,* 2019 WL 2245584, at *2 (citation omitted). First, a "court should first ask whether the pleading properly asserts 'well-pleaded factual allegations,' or instead merely asserts legal conclusions that are not entitled to the assumption of truth." *Id.* (citations omitted). Second, if the complaint contains factual allegations that are well pled, then the court should assume their veracity, and move to the next step and ask whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.* Thus, where the pleading asserts non-conclusory, factual allegations that, if true, would push the claim "across the line from conceivable to plausible," the motion to dismiss should be denied. *Id.* (quoting *Twombly*, 550 U.S. at 570).

### B. FUFTA Claims in the Amended Supplemental Complaint

In relevant part, the claims in these proceedings supplementary as alleged in the Amended Supplemental Complaint are premised on Florida Statute § 56.29 (governing proceedings supplementary), § 726.105(1)(a)-(b) (Florida's Uniform Fraudulent Transfers Act ("FUFTA") as to present and future creditors), and § 726.106 (FUFTA regarding fraudulent transfers to present creditors). Am. Suppl. Complaint at 2.

FUFTA was promulgated to prevent an insolvent debtor from transferring assets out of the reach of its creditors when the debtor's intent is to hinder, delay, or defraud any of its creditors. *Gulf Coast Produce, Inc. v. Am. Growers, Inc.*, No. 07-CV-80633, 2008 WL 660100, at *5 (S.D. Fla. Mar. 7, 2008). FUFTA provides that any transfer made, or obligation incurred by a debtor is fraudulent as to a creditor if the debtor made the transfer or incurred the obligation to hinder or defraud the creditor or without receiving "reasonably equivalent value in exchange for the transfer or obligation." *Id.* (citing Fla. Stat. §§ 726.105, 726.106).

6

Further, a creditor victimized by a fraudulent transfer has remedies against both the debtor and third-party transferees. *Capitol Recs., LLC v. Mellerski*, No. 22-CV-80380, 2022 WL 9510984, at *4 (S.D. Fla. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 9435976 (S.D. Fla. Oct. 14, 2022). For example, the creditor can: (i) avoid the transfer, Fla. Stat. § 726.108(1)(a); (ii) enjoin further disposition of the debtor or transferee's property, Fla. Stat. § 726.108(c)(1); and (iii) (if a judgment creditor) levy the asset transferred or its proceeds, Fla. Stat. § 726.108(2). Where the fraudulent transfer is voided, the creditor can obtain a money judgment for the value of the transferred assets, which judgment can be against the "first transferee of the asset or the person for whose benefit the transfer was made; or [a]ny subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee." Fla. Stat. § 726.109(2)(a), (b); *see also Capitol Recs.,* 2022 WL 9510984, at *4.

The Amended Supplemental Complaint alleges 18 counts regarding the transfer of nine Properties. Hr'g Tr. 35:18-19; *Onemata Corp. v. Rahman*, No. 20-CV-62002, 2024 WL 4068653, at *4 (S.D. Fla. Aug. 28, 2024), *report and recommendation adopted*, 2024 WL 4056794 (S.D. Fla. Sept. 5, 2024) ("*Onemata I*") (referencing the initial Supplemental Complaint as alleging transfers of nine properties, all of which (except for the Haydn Drive Property) occurred after the underlying litigation was filed i.e., October 2020). According to Onemata, these transfers were done with actual intent to hinder and defraud Onemata's efforts to collect on the Judgment. *See, e.g.*, Am. Suppl. Compl. ¶¶ 36, 37, 38, 41. The Judgment Debtors purportedly transferred the Properties to the Nevada Entities and placed liens on them through HomeLien, an entity the Judgment Debtors allegedly formed in the West Indies, 19 days after the Final Judgment was entered. *Id.* ¶¶ 37, 64-65, 83-85, 101-02, 117, 119, 135, 138, 145.

### III.   DISCUSSION

**A.  The Court has Personal Jurisdiction Over the Moving Parties**

The Moving Parties argue that the Court lacks personal jurisdiction over the Moving Parties and in rem jurisdiction over the Properties and Membership Interests.  *See* (ECF Nos. 746 at 2, 14-18; 748 at 1, 15-19; 865 at 1, 12-16).  The undersigned, however, has already determined that the allegations set forth in the original Supplemental Complaint (ECF No. 626)—which have been realleged in the Amended Supplemental Complaint (ECF No. 720)—sufficiently allege alter ego personal jurisdiction over the Moving Parties.  *Onemata I,* 2024 WL 4068653, at *9 ("Here, the Supplemental Complaint contains sufficient allegations (which must be taken as true at this pleading stage of the litigation) to support alter ego jurisdiction . . . .  Accordingly, the Supplemental Complaint sufficiently alleges alter ego personal jurisdiction and denial on that basis is not warranted.").  There were no objections to the undersigned's determination in *Onemata I.* (ECF No. 718 at 1).

Now, like the original Supplemental Complaint, the Amended Supplemental Complaint, alleges that the Moving Parties are alter egos of the Judgment Debtors, formed by the Judgment Debtors for the sole purpose of hindering, delaying, and defrauding Judgment Creditor Onemata.[7] *See, e.g.*, (ECF No. 720 ¶¶ 17, 32, 44, 117, 272, 284).  For example, the Amended Supplemental Complaint contains allegations regarding: (i) the formation, ownership, and control of the Moving Parties; (ii) the timing of the transfers and assignments as they relate to the underlying litigation, the Final Judgment, and the proceedings supplementary; and (iii) the purported lack of

---

[7] Relatedly, the Court accepts (without determining) Onemata and the Nevada Entities' position that the Amended Supplemental Complaint (filed on 9/18/2024) relates back to the initial Supplemental Complaint (filed on 1/18/2024).  *See* (ECF No. 847 at 1 n.2); Hr'g Tr. 74:21-24, 77:15-17.

consideration for any of the transfers or assignments. *See generally* (ECF No. 720). Indeed, during the hearing on the Motions to Dismiss, the Moving Parties conceded that this Court has already determined that it has personal jurisdiction over the Moving Parties pursuant to the alter-ego theory of long arm jurisdiction and the Moving Parties' reiteration of this challenge is merely to preserve the record. Hr'g Tr. 52:8-53:1.

Accordingly, consistent with the Court's prior ruling, the Amended Supplemental Complaint sufficiently alleges alter ego personal jurisdiction over the Moving Parties and dismissal on this basis should be denied.[8] *Onemata I*, 2024 WL 4068653, at *8-9.

### B.  A Choice of Law Analysis is Premature

The Amended Supplemental Complaint asserts claims to set aside fraudulent transfers pursuant to Florida Statutes § 56.29 (governing proceedings supplementary), § 726.105(1)(a), (b) (FUFTA as to present and future creditors), and § 726.106 (FUFTA regarding fraudulent transfers to present creditors). Am. Suppl. Complaint at 2. Although the Moving Parties agree that as the forum state, Florida's choice of law framework applies for purposes of the underlying analysis, they disagree on whether Florida or Nevada (or the Cook Islands or Nevis)[9] law applies to the underlying fraudulent transfer claims for purposes of determining the limitations period. *Compare* (ECF Nos. 746 at 4-7; 748 at 4-8; 865 at 2-5, 777) (the Moving Parties' briefs)*, with* (ECF Nos. 761 at 4-10; 762 at 2-3; 866 at 9-10) (Onemata's Responses); *see also* Hr'g Tr. 42:12.

---

[8] The undersigned is also unpersuaded by the Judgment Debtors' summary argument that the claims against them cannot stand if the Court lacks personal jurisdiction on the transferee third parties. *See* (ECF No. 748 at 20) (referencing *SE Prop. Holdings, LLC v. Welch*, 65 F.4th 1335 (11th Cir. 2023)). *SE Property Holdings,* which focused on whether FUFTA generally permitted a money judgment against a transferor, is factually and procedurally inapplicable to the instant proceedings.

[9] The Moving Parties argue that, except for the Living Trust (which was formed in Florida), the applicable law is determined by where the entity was formed and/or resides, i.e., Nevada, the Cook Islands, or Nevis West Indies. *See* (ECF No. 748 at 3, 4).

According to the Moving Parties, the Nevada Entities are governed by Nevada law (with a two-year statute of limitations period) or the law of the Cook Islands or Nevis for the foreign entities in those jurisdictions, as opposed to Florida law (with a four-year limitations period). *See* (ECF Nos. 746 at 1-2, 4-7; 748 at 1, 4-8; 865 at 2-5). The Moving Parties insist that the Court must now analyze choice of law for fraudulent transfer claims as set forth in *In re Palm Beach Financial Partners, L.P.*, No. 09-36379-BKC-PGH, 2014 WL 12498025, at *1 (Bankr. S.D. Fla. Dec. 10, 2014) (the "*Palm Beach II*"), a bankruptcy case involving fraudulent transfers. *See* (ECF Nos. 746 at 1-2, 4-7; 748 at 1, 4-8; 865 at 2-5). In response, Onemata argues that a choice of law analysis is premature at this stage of the litigation, echoing the undersigned's prior conclusion when reviewing the initial Supplemental Complaint. *See* (ECF Nos. 714 at 10 n.7, 761 at 4); *see also Onemata I*, 2024 WL 4068653, at *9. Nevertheless, the parties highly contest this issue and have filed Supplemental briefs, as directed by the Court. (ECF Nos. 847, 848, 849); *see also* (ECF Nos. 746 at 4-7; 748 at 4-8; 865 at 2-5) (the Moving Parties' briefs); (ECF Nos. 761 at 4-10; 762 at 2-3; 866 at 9-10) (Onemata's briefs).

Upon a review of the record and the relevant case law, the undersigned finds that conducting a choice of law analysis at this stage of the proceedings is premature. Indeed, although the parties rely on *Palm Beach II* (addressing competing motions for summary judgment), the docket in that case reveals an earlier 2013 decision on defendant's motion to dismiss, which is more analogous to the posture of the instant case. *See In re Palm Beach Fin. Partners, L.P.*, No. 09-36379-BKC-PGH, 2013 WL 12478838, at *10 (Bankr. S.D. Fla. July 30, 2013) (the "*Palm Beach I*"). More specifically, in *Palm Beach I*, the bankruptcy court concluded that although a choice of law analysis would likely be necessary, it was premature to conduct such an analysis at the motion to dismiss stage. *Id.; see also Pharma Supply, Inc. v. Stein*, No. 14-CV-80374,

2015 WL 11422321, at *13 (S.D. Fla. Apr. 27, 2015) ("Given the undeveloped state of the record[,] the Court finds that it would be premature to engage in a choice-of-law analysis to determine whether [a different state] bears a sufficient relationship to the conduct at issue to support the application of that state's laws."); *Steinberg ex rel. Lancer Mgmt. Grp. LLC v. Alpha Fifth Grp.*, No. 04-CV-60899, 2010 WL 1332844, at *2 (S.D. Fla. Mar. 30, 2010) (noting that although the pleadings leave open the possibility that the laws of another jurisdiction apply for the recovery of fraudulent transfers, at the motion to dismiss stage, it was premature to undertake a choice of law analysis); *Steinberg v. A Analyst Ltd.*, No. 04-CV-60898, 2009 WL 806780, at *11 (S.D. Fla. Mar. 26, 2009) (finding that at the motion to dismiss stage, the court had insufficient information to determine which of several jurisdictions better satisfied the "significant relationship test" for a conflict of law analysis). Indeed, in applying Florida's choice of law rules, the court in *Palm Beach I* noted that "[w]hen the choice of law analysis involves a fact-intensive inquiry, as the 'significant relationship' test does, it is generally inappropriate for a court to make a choice of law determination at the motion to dismiss stage." *Palm Beach I*, 2013 WL 12478838, at *13 (citation omitted). It was only upon a subsequent motion for summary judgment that the court in *Palm Beach II* conducted the choice of law analysis that the parties in the instant case so aggressively contest. *Palm Beach II*, 2014 WL 12498025, at *5-12. Accordingly, like *Palm Beach I*, at this dismissal stage, the Court need not conduct a choice of law analysis and the Moving Parties' request on this issue should be denied as premature.[10]

---

[10] Relatedly, the parties agree that Florida's choice of law framework applies for purposes of determining which jurisdiction's law ultimately applies to the alleged fraudulent transfers. Hr'g Tr. 42:11-12 ("There is no dispute as to that. Florida's choice of law framework applies."). The Court, therefore, accepts (without deciding) that Florida's choice of law framework should apply in a future choice of law analysis. *Cf. Palm Beach I*, 2013 WL 12478838, at *10-13 (discussing three choice of law approaches (i.e., diversity jurisdiction, uniform common law, and hybrid), in concluding that Florida's choice of law rules applied).

The undersigned's conclusion is further supported by the factual disputes in the present case. On the one hand, the Amended Supplemental Complaint alleges that the various transfers were made on February 25, 2022, March 11, 2022, or March 15, 2022, all dates within two years of the original Supplemental Complaint (filed on January 18, 2024). Am. Suppl. Comp. ¶¶ 54, 72, 92, 108, 153, 170, 187, 204, 233, 251, 265, and 276. According to the Moving Parties, however, the relevant dates are not the execution dates on the Notices of Transfer, but earlier transfer dates (based on deeds), which fall beyond Nevada's two-year statute of limitations as to the Nevada Entities. *See* (ECF No. 746 at 8); *see also* Hr'g Tr. 39:15-19 (Moving Parties' argument that Onemata was "using the date of the . . . [N]otices of [T]ransfers, which get filed in Nevada[,] . . . not the dates of the transfer, which are based on the dates of the deeds."). In response, Onemata argues that the alleged transfer dates in the Amended Supplemental Complaint are "the dates of the actual transfer on the warranty deeds" and not the dates on the Notices of Transfer. Hr'g Tr. 58:20-22. In reply, the Moving Parties attach the Notices of Transfer to argue that the Court may consider these documents (outside the four corners of the Amended Supplemental Complaint) as incorporated by reference pursuant to *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). *See* (ECF No. 777 at 5-6); *see also* (ECF Nos. 777-1 to 777-3) (Notices of Transfer and Assignment bearing different dates for execution (2/25/2022), recording (3/01/2022), and transfer dates reflected in the body of the documents). *Johnson*, however, is inapplicable. Rather, *Johnson* confirms that "when resolving a motion to dismiss[,] a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity

is not challenged." *Johnson*, 107 F.4th at 1300.[11]  On the current record, the nature, import, and

authenticity of the Notices of Transfer remains undetermined.  Accordingly, at this dismissal stage,

where the Court must accept the allegations in the Amended Supplemental Complaint as true, the

Court will not consider the Notices of Transfer as dispositive of the Moving Parties' request to

dismiss based on the statute of limitations.[12]

### C.  For Pleading Purposes, the Alleged Transfers are Not Time-Barred or Limited by Statute

*1.  Time Limitations*

As to choice of law, the Moving Parties argue that many of the alleged transfers are barred

by Nevada's statute of limitations or other statutory limitations on creditor remedies against the

Nevada LLCs.  *See* (ECF Nos. 746 at 2, 7-8; 748 at 1, 8-9; 847 at 2-3; 865 at 1, 5-7).  In response,

Onemata emphasizes that under either Florida's 4-year statute of limitations or Nevada's 2-year

limitation period, "as alleged in the Amended [Supplemental] Complaint, all membership interests

that were transferred into the various trusts were made . . . two (2) years prior to the date the

original Supplemental Complaint was filed on January 18, 2024."  (ECF No. 761 at 7); *see also*

(ECF No. 849 at 3).

---

[11] The undersigned is also unpersuaded by the Moving Parties' reliance on *Terrill v. Electrolux Home Products, Inc.*, 753 F. Supp. 2d 1272, 1280 (S.D. Ga. 2010).  *See* (ECF No. 777 at 3-4).  *In Terrill*, the factual issues were undisputed.  *Terrill*, 753 F. Supp. 2d at 1280 n.2.  This case is far different and much more like *Palm Beach I* in that the parties highly contested the relevant choice of law analysis.

[12] Moreover, contrary to the Moving Parties' argument, *see* (ECF No. 746 at 7-8), Onemata is not required to attach documents to support the alleged transfer dates in its Amended Supplemental Complaint.  *See, e.g.*, *Yencarelli v. USAA Cas. Ins. Co.*, No. 17-CV-2029-T-36AEP, 2017 WL 6559999, at *2 (M.D. Fla. Dec. 22, 2017) (holding that a party is not required, under the Federal Rules of Civil Procedure, to attach to the complaint documents referenced in the pleading); *U.S. ex rel. Chabot v. MLU Servs., Inc.*, 544 F. Supp. 2d 1326, 1329 (M.D. Fla. 2008) ("[N]othing in the federal Rules of Civil Procedure requires Plaintiff to attach any document to the complaint." (citation omitted)).

"[A] Rule 12(b)(6) dismissal based on a statute of limitations is appropriate only where it is 'apparent from the face of the complaint' that the claim is time-barred." *United States v. Henco Holding Corp.*, 985 F.3d 1290, 1296 (11th Cir. 2021). Here, contrary to the Moving Parties' arguments, the allegations are based on Florida law, not Nevada law. Pursuant to Florida law, the Amended Supplemental Complaint alleges that most transfers into the various trusts were made on February 25, 2022, March 11, 2022, or March 15, 2022, which are dates less than two years prior to the filing of the original Supplemental Complaint (ECF No. 626) (filed on January 18, 2024).[13] Am. Supp. Compl. ¶¶ 54, 72, 92, 108, 153, 170, 187, 204, 233, 251, 265, and 276. Accepting these allegations as true, dismissing the claims against the Moving Parties based on expiration of the limitations period is inappropriate at this pleading stage. Rather, as with the Court's prior ruling on the initial Supplemental Complaint, where the litigants dispute which jurisdiction's statute of limitations applies, such arguments are better addressed on the merits. *Onemata I*, 2024 WL 4068653, at *9.

---

[13] With respect to the Haydn Property, the Amended Supplemental Complaint alleges that the Judgment Debtors transferred the property to the Living Trust on December 23, 2019. Am. Suppl. Compl. ¶ 121. Although, on its face, this date is one month beyond Florida's 4-year statute of limitations from the filing of the initial Supplemental Complaint (i.e., 1/18/2024), the parties dispute whether Onemata would benefit from the one-year savings clause of § 726.110(1) (providing that an action may be brought within one year after the obligation was or could reasonably have been discovered). *Compare* (ECF No. 750 at 3)*, with* (ECF No. 763 at 3). Here, the Amended Supplemental Complaint is silent as to when Onemata discovered that the Haydn Property had been transferred to the Living Trust. In its Reply in support of dismissal, the Living Trust attaches a Quitclaim Deed purportedly recorded on December 30, 2023, regarding the transfer of the Haydn Property from the Judgment Debtors to the Living Trust. *See* (ECF No. 779-1). Because this document is raised for the first time in the Living Trust's Reply, the Court need not consider it. *See Frenkel v. Acunto*, No. 11-CV-62422, 2014 WL 4680738, at *6 n.11 (S.D. Fla. Sept. 19, 2014) (noting that judges in this District have repeatedly declined to consider new arguments raised in a reply memorandum). Thus, the current record is insufficient for dismissal of the claims against the Living Trust based on a limitations period.

*2. Statutory Limitations on Interests of Limited Liabilities Companies*

In their joint Motion, CSB and HomeLien additionally argue that the claims against the Nevada LLCs seek inappropriate remedies.  (ECF No. 865 at 4-7).  More specifically, CSB and HomeLien rely on *Ramos v. Mississippi Real Estate Dispositions, LLC*, 314 So. 3d 643, 647 (3rd DCA 2021) for the proposition that "the sole and exclusive remedy by which a judgment creditor . . . may satisfy a judgment from the judgment debtor's interest in a limited liability company or rights to distribution from the limited liability company" is a charging order pursuant to Fla. Stat. § 605.0503.[14]  *Ramos*, 314 So. 3d at 647.  In response, Onemata argues that the statute is inapplicable because Onemata "does not seek to apply . . . membership interests towards satisfaction of its Judgment."  *See* (ECF No. 866 at 11).  Based on a review of the allegations in the Amended Supplemental Complaint and *Ramos*, the undersigned agrees.

Here, with respect to CSB and HomeLien, Onemata alleges that: (i) HomeLien assigned the Mortgages to CSB; (ii) with no consideration for the assignments; (iii) which assignments were done by the Judgment Debtors with actual intent to hinder and defraud Onemata from collecting on its judgment.  Am. Suppl. Compl. ¶¶ 37, 38, 66, 85, 102, 119, 138, 145, 163, 180, 198, 213, 220, 226, 244, 261, 273, 285.  Further, Onemata's requested remedies include: (i) avoidance of the transfers to the extent necessary to satisfy Onemata's Final Judgment; (ii) an attachment or other provisional remedy against the various Properties of the transferees in accordance with applicable law; (iii) an injunction against further disposition by the Judgment Debtors, the transferees, or both, of the various Properties at issue in the Amended Supplemental Complaint; (iv) the

---

[14] In relevant part, Florida Statute § 605.0503 provides that "[o]n application to a court of competent jurisdiction by a judgment creditor of a member or a transferee, the court may enter a charging order against the transferable interest of the member or transferee for payment of the unsatisfied amount of the judgment with interest."

appointment of a receiver to take charge of the various Properties; and (v) that the HomeLien Mortgage and Assignment to CSB be set aside.  Am. Suppl. Compl. at 13-14, 17, 20, 23, 28, 30, 33, 36, 39, 42, 44, 45-46, 48-49, 51-52, 54, 56 ("Wherefore" clauses).  Unlike *Ramos*, the Amended Supplemental Complaint does not seek a lien against the membership interests or a turnover of funds.[15]  Accordingly, on this limited record and for purposes of pleading, the undersigned does not find that the claims against the Nevada LLCs are statutorily barred.

### D. Onemata Sufficiently Alleges a Claim for Fraudulent Transfers

The Moving Parties next argue that, even under Florida law, the Amended Supplemental Complaint fails to state a claim to avoid the alleged fraudulent transfers as it does not allege: (i) insolvency or related elements; (ii) "transfer" of an "asset"; and/or (iii) standing to avoid transfers by non-Judgment Debtors.  *See* (ECF Nos. 746 at 2, 10-14; 748 at 1, 11-15; 865 at 1, 8-11).

In relevant part, Rule 8 requires "a short and plain statement of the claim" and "a demand for relief."  Fed. R. Civ. P. 8(a)(2)-(3).  Further, Rule 10(b) provides that a party "must state its claims or defenses . . . each limited as far as practicable to a statement of a single set of circumstances."  *Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996) (quotations omitted).  Rules 8 and 10 work together to require the pleader to present its claims discretely and succinctly, so that: (i) an adversary can discern the claims and frame a responsive pleading; (ii) the court can determine which facts support which claims and whether plaintiff has stated any claims

---

[15] Also unavailing is CSB and HomeLien's argument that Nevis law precludes the alleged claims regarding the membership interests.  *See* (ECF No. 865 at 6-7).  Rather, at this dismissal stage of the proceedings, where Onemata alleges that: (i) Florida law applies (*see* Am. Supp. Compl. at 2); and (ii) no consideration was paid for the transfer of the membership interests (*see id.* ¶¶ 154, 188, 234), arguments regarding Nevis laws on limited liability companies are not dispositive.

16

upon which relief can be granted; and (iii) the court can determine what evidence is relevant at

trial.  *Id.* (citation omitted); *see also Alcon Lab'ys.*, 2019 WL 2245584, at *5.

Also relevant to the instant claims is Florida Stat. § 726.105(1)(a) (governing transfers

made with actual intent to hinder, delay or defraud creditors), which provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor,
> whether the creditor's claim arose before or after the transfer was made or the
> obligation was incurred, if the debtor made the transfer or incurred the obligation
> with actual intent to hinder, delay, or defraud any creditor of debtor.

Fla. Stat. § 726.105(1)(a).  Because proof of actual intent is often unavailable through direct

evidence, courts have traditionally relied upon certain badges of fraud as circumstantial evidence

of fraudulent intent.  *In re Amelung*, No. 07-15492-BKC-PGH, 2010 WL 1417742, at *5 (Bankr.

S.D. Fla. Apr. 7, 2010) (citation and quotation omitted); *In re Goldberg*, No. 97-35293-BKC-PGH,

229 B.R. 877, 885 (Bankr. S.D. Fla. 1998) (noting nonexclusive badges of fraud that a court may

use in determining whether debtor acts with actual intent); *see also* § 726.105(2)(a)-(k)

(nonexclusive list of badges of fraud that provide circumstantial evidence of actual fraudulent

intent).  "[I]t is clear from the language of the Statute that in determining intent, consideration may

be given to factors other than those listed."  *In re Amelung*, 2010 WL 1417742, at *5.  Although a

single badge of fraud may only create a suspicious circumstance and may not constitute the level

of fraud to set aside a conveyance, when combined, several badges may afford a basis to infer

fraud.  *In re Amelung*, 2010 WL 1417742, at *5; *In re Goldberg*, 229 B.R. at 885 (same).

Here, the Amended Supplemental Complaint alleges 18 counts against 13 Defendants (two

Judgment Debtors and 11 impleaded third-parties) related to various transfers involving several

Properties, certain Membership Interests in the Nevada LLCs, and mortgage liens against the

Properties to secure certain home equity loans.  *See generally* Am. Supp. Compl.  Unlike the initial

Supplemental Complaint, however, the Amended Supplemental Complaint alleges the claims in

separate counts, each pertaining to a singular Property.  *See generally* Am. Suppl. Compl.  For example, as highlighted below, Count I alleges a fraudulent transfer with actual intent to defraud pursuant to Fla. Stat § 726.105(1)(a) and § 726.106 as it pertains to the Buckskin Property:[16]

> 49. On January 31, 2020, Arefin and Rahman purchased, by warranty deed, a home located at 10333 East Buckskin Trail, Scottsdale, Arizona 85255 (the "Buckskin Property").
>
> * * *
>
> 50. On November 16, 2020, after Onemata filed the underlying litigation, Arefin formed MaskGene and serves as its Manager. Rahman and Arefin were MaskGene's members.
>
> * * *
>
> 54. On February 25, 2022, eighteen (18) days before the original trial date in the underlying litigation, Rahman and Arefin transferred their membership interests in MaskGene to Bright Stars.
>
> 55. When the membership interests of MaskGene were transferred to Bright Stars there was no consideration paid by the Trust, as Rahman and Arefin each admitted during their Rule 69 examinations.
> * * *
>
> 61. Both of the foregoing transfers occurred at a time when Rahman and Arefin knew of the claims by Onemata and they were made with actual intent to hinder, delay, and defraud Onemata.

---

[16] The odd-numbered Counts of the Amended Supplemental Complaint allege claims pursuant to Fla. Stat § 726.105(1)(a) (governing fraud with actual intent to defraud present and future creditors) and § 726.106 (governing fraudulent transfers as to present creditors).  *See* Am. Suppl. Compl. Counts I, III, V, VII, IX, XI, XIII, XV, XVII; *see also* Hr'g Tr. 35:19-36:23.  Although § 726.106 does not contain an intent-to-defraud element, "a conveyance is per se fraudulent where the creditor's claim arose prior to the transfer, the transfer lacks valid consideration, and the debtor was insolvent prior to the transfer." *Stern v. SK Golden Inv., LLC*, No. 21-CV-20012, 2022 WL 18023312, at *7 (S.D. Fla. Sept. 26, 2022) (citation omitted).  Given the sufficiently analogous elements in the two provisions, dismissal of the odd-numbered counts is unwarranted. *See, e.g., In re 160 Royal Palm, LLC*, No. 18-19441-EPK, 2019 WL 989829, at *8 (Bankr. S.D. Fla. Feb. 26, 2019), *subsequently aff'd sub nom. In re KK-PB Fin., LLC*, No. 20-12361, 2021 WL 5605085 (11th Cir. Nov. 30, 2021) (noting that a creditor may take advantage of claims under both Fla. Stat. §§ 726.105 and 726.106).

62. In addition, these transfers were made without reasonable equivalent value by insiders of the limited liability company and the Trust, and Rahman and Arefin retained possession and control over the Buckskin Property after the transfers. These transfers were made by Rahman and Arefin knowing that they would not have sufficient assets to satisfy their debts and would be insolvent . . . .

63. Rahman and Arefin concealed these transfers by originally refusing to produce documents and ultimately produced incomplete documents regarding real estate transfers in response to Onemata's requests for production. The Defendants/Judgment Debtors concealed these transfers to hinder and defraud Onemata.

* * *

66. On June 2, 2023 HomeLien assigned the Mortgage to CSB. CSB is a Cook Islands limited liability company. There was no consideration paid by CSB for the assignment. The assignment by Defendants/Judgment Debtors was done with actual intent to hinder and defraud Onemata from collecting its judgment . . . .

Am. Supp. Compl. ¶¶ 49-50, 54-55, 61-63, 66.

Similarly, Count II (and the even-numbered counts) alleges a claim for constructive fraud pursuant to Fla. Stat. § 726.105(1)(b) pertaining to the Buckskin Property. In this regard, § 726.105(1)(b) "deal[s] with transfers made by a debtor without receiving reasonably equivalent value in exchange for the obligation while the debtor was insolvent or intended to incur or believed or should have believed that he or she would incur debts beyond his or her ability to pay as they became due." *In re Amelung*, 2010 WL 1417742, at *3 (citing *In re Goldberg*, 229 B.R. 877 at 884). Florida's constructive fraud statutes do not require proof of fraudulent intent. *In re Amelung*, 2010 WL 1417742, at *3 (citation omitted). To establish a claim of constructive fraud, a plaintiff must prove "that the debtor was insolvent at the time the transfer was made and that the debtor received less than reasonably equivalent value in exchange for the transfer." *In re Amelung*, 2010 WL 1417742, at *3 (citation omitted). In alleging a claim for constructive fraud as to the Buckskin Property, Count II alleges in relevant part:

72. On February 25, 2022, eighteen (18) days before the original trial date in the underlying litigation, Rahman and Arefin transferred their membership interests in MaskGene to Bright Stars. Bright Stars paid no consideration for its acquisition of the membership interests in MaskGene.

* * *

76. MaskGene acquired the Buckskin Property without paying any consideration to Arefin and Rahman, as each stated during their Rule 69 examinations.

77. When the membership interests of MaskGene were transferred to Bright Stars there was no consideration paid by the Trust[.]

* * *

80. Both of the foregoing transfers occurred at a time when Rahman and Arefin knew of the claims by Onemata and they were made with actual intent to hinder, delay, and defraud Onemata.

81. In addition, these transfers were made without reasonable equivalent value by insiders of the limited liability company and the Trust, and Rahman and Arefin retained possession and control over the Buckskin Property after the transfers. These transfers were made by Rahman and Arefin knowing that they would not have sufficient assets to satisfy their debts and would be insolvent.

Am. Suppl. Compl. ¶¶ 72, 76-77, 80, 81.

Referencing only one Property per count, Onemata asserts similar allegations of actual fraud (pursuant to §§ 726.205(1)(a)/726.106) and constructive fraud (pursuant to § 726.105(1)(b)) against Defendants throughout all 18 counts. Accepting these allegations as true, the undersigned concludes that Onemata sufficiently alleges claims for actual and constructive fraud against Defendants and, thus, dismissal on this ground should be denied.[17]

---

[17] The Moving Parties' additional arguments are similarly unavailing. For example, the Moving Parties' argument that Onemata fails to identify the party against whom it seeks relief, *see* (ECF No. 746 at 10), is belied by the allegations in the "Wherefore" clauses of the Amended Supplemental Complaint, demanding "judgment in [Onemata's] favor and against Defendants and Third-Party Defendants." Am. Suppl. Compl. at 13, 17, 20, 23, 25, 26, 28, 29, 33, 36, 39, 41, 43, 45, 51, 54, 56. Similarly unavailing is the Moving Parties' argument that Onemata fails to allege a "transfer" of an "asset." *See* (ECF No. 746 at 11). In relevant part, § 726.102(14) defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money,

**D.  For Pleading Purposes, Chae and the Nevada Trusts are Proper Parties**

The Moving Parties argue that Chae and the Nevada Trusts are not real parties in interest because a trust is not an independent legal entity from its trustees.  *See* (ECF Nos. 746 at 2, 18; 748 at 19-20).  According to the Moving Parties, "by the terms of the trusts agreements for the Nevada Trusts, [Chae] has no authority to sue on behalf of the Nevada Trusts" and has a limited administrative role distributing money, when applicable.  *See* (ECF No. 746 at 18); *see also* Hr'g Tr. 54:12-16, 23 ("It's simply an administrative role.").

As an initial matter, factual arguments regarding Chae's role in connection with the Nevada Trusts are beyond the four corners of the Amended Supplemental Complaint and are not grounds for dismissal.  Moreover, the Amended Supplemental Complaint alleges that Chae is one of the purported trustees of the Bright Stars Irrevocable Trust, the Paradise Valley Irrevocable Trust, and the Sunshine Irrevocable Trust.  Am. Suppl. Compl. ¶¶ 6, 8, 12, 57, 75, 95, 109, 156, 172, 190, 253, 268, 278.  Although a trust is not an independent legal entity, it is the trustee who is the real party in interest and entitled to bring suit.  *Thomas & Kathleen Garland Fam. Tr. v. Melton*, No. 77182-COA 2020 WL 1531769, at *1 (Nev. Ct. App. 2020).  Accordingly, accepting the allegations in the Amended Supplemental Complaint as true, the undersigned recommends that the Court deny dismissal of Chae and the Nevada Trusts at this stage of the proceedings.

---

release, lease, and creation of a lien or other encumbrance."  Further, § 726.102 (2) defines "asset" as "property of a debtor," excluding "property" to the extent that: (a) it is encumbered by a valid lien; (b) it is generally exempt under nonbankruptcy law; or (c) an interest in property is held in tenancy by the entireties.  Here, accepting the allegations in the Amended Supplemental Complaint as true, Onemata alleges that the liens encumbering the Properties/Transfers are fraudulent and invalid.  *See, e.g.*, Am. Suppl. Compl. ¶¶ 32, 34, 36, 38, 41, 61 66, 82, 98, 101.

### E.  The Claims Against CSB and HomeLien are Not Barred

CSB and HomeLien argue that, as foreign financial institutions, they cannot be liable as transferees under the FUFTA.  *See* (ECF No. 865 at 16-17); *see also* (ECF No. 872).  CSB and HomeLien's reliance on *Freeman v. First Union National Bank*, 865 So. 2d 1272 (Fla. 2004), however, is misplaced.  In *Freeman*, the Florida Supreme Court concluded that although FUFTA does not create a distinct cause of action for aiding-abetting claims against non-transferees, it is intended to "codify an existing but imprecise system whereby transfers that were intended to defraud creditors could be set aside."  *Freeman*, 865 So. 2d at 1276.  Thus, *Freeman* does not preclude the instant claims against CSB and HomeLien, where Onemata seeks to set aside fraudulent transfers by the Judgment Debtors and their alter egos.  Accordingly, the Court should deny this as a basis for dismissal.

### F.  For Pleading Purposes, the Court Need Not Determine Whether FUFTA Sets Aside Mortgages on Properties Located Outside of Florida

CSB and HomeLien summarily argue that this Court "lacks authority to affect title to or encumbrances upon real property located outside of its territorial border."  *See* (ECF No. 865 at 17).  First, arguments raised in such perfunctory manner may be deemed waived.  *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) ("We will not address this perfunctory and underdeveloped argument.").  Moreover, CSB and HomeLien's reliance on *Polkowski v. Polkowski*, 854 So. 2d 286, 286 (Fla. 4th DCA 2003) is unpersuasive.  The case is factually distinguishable and inapplicable to the current posture of the case where Onemata's allegations involve fraudulent transfers and alter ego jurisdiction.  Accordingly, the Court should deny this as a basis for dismissal.

### G.  CSB and HomeLien Have Been Properly Served Pursuant to Court Order

For the second time, CSB and HomeLien challenge Onemata's efforts to serve them with the operative Complaint in the Cook Islands and Nevis, respectively.  *See* (ECF Nos. 865 at 19-20, 872 at 1-5).  Relevant to this issue, this Court previously permitted Onemata to "serve HomeLien and CSB [with the then-operative Supplemental Complaint] through personal service and registered mail at their registered offices in Nevis, West Indies."  (ECF No. 597) (the "First Order Permitting Alternative Service").  In compliance with the First Order Permitting Alternative Service, Onemata attempted service on HomeLien and CSB in Nevis and the Cook Islands, respectively.  *See generally* (ECF No. 756).  Following attempted service, HomeLien and CSB moved to quash service, challenging service as improper pursuant to the Federal Rules of Civil Procedure and the law governing service on foreign entities.  *See generally* (ECF No. 747) (the "Motion to Quash").  At the hearing on the Motions, the Court heard argument regarding the Motion to Quash.  *See* (ECF Nos. 831, 855).

In granting the Motion to Quash after the hearing, the Court found that "the record reflect[ed] uncertainty regarding the individuals who accepted service, their purported representations to the process servers, and whether service complie[d] with the Federal Rules and international law." (ECF No. 851 at 3).  Upon the representations of CSB and HomeLien (through counsel) to the Court identifying the individuals to be served, the Court ordered Onemata to: (i) serve HomeLien's Registered Agent Leta Manners of Morning Star Holdings Limited, with the operative Amended Supplemental Complaint and summons; and (ii) serve CSB's Registered Agent Ora Fiduciary in the Cook Islands with the operative Amended Supplemental Complaint and summons (the "Second Order Directing Service").  *Id.* at 4.

In compliance with the Second Order Directing Service, Onemata filed Notices of Service of Process of Amended Supplemental Complaint indicting that it had served CSB and HomeLien. *See* (ECF Nos. 856, 857).   On this record, the undersigned finds that the procedure sufficiently complies with Federal Rule of Civil Procedure 4(f)(3), which permits service as the Court orders unless prohibited by international agreement.   *But cf. Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 921-24 (11th Cir. 2003) (concluding that although a court may direct alternative means of service, Austrian law prohibited all means of service without defendant's consent, so dismissal for insufficient service of process was proper).   Accordingly, this ground is not a basis for dismissal.[18]

### H. Determining Whether the Haydn Property is (i) the Judgment Debtors' Homestead; and/or (ii) an Asset Owned as Tenants by the Entirety, is Premature

The Living Trust separately argues that the claims against the Haydn Property must be dismissed because, at the time of the Transfer, the property was an exempt homestead of the Judgment Debtors, which they held as tenants by the entirety.   *See* (ECF No. 750 at 3-5).   But these arguments go to the merits of the claims (as they are factually and legally disputed) and are better addressed as the case proceeds.   Accordingly, the Living Trust's challenges arguing

---

[18] Relatedly, CSB and HomeLien's Reply does not alter the Court's decision on this issue.  *See* (ECF No. 872 at 1-5).   Although CSB and HomeLien summarily argued improper service of process in their initial motion (without reference to statutory or legal authority), their Reply expands on the challenge by reference to laws of the different jurisdictions.   *Compare* (ECF No. 865 at 19-20)*, with* (ECF No. 872 at 2-4); *see also* (ECF No. 866 at 19-20).   However, arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.   *Riley v. Tesla, Inc.*, 603 F. Supp. 3d 1259, 1289-90 (S.D. Fla. 2022) (citation omitted), *on reconsideration*, No. 20-CV-60517, 2022 WL 2341165 (S.D. Fla. June 29, 2022), *and aff'd*, No. 22-12515, 2025 WL 881387 (11th Cir. Mar. 21, 2025); *Frenkel*, 2014 WL 4680738, at *6 n.11 (noting that judges in this District have repeatedly declined to consider new arguments raised in a reply memorandum); *U.S. Steel*, 495 F.3d at 1287 n.13 ("We will not address this perfunctory and underdeveloped argument.").

homestead exemption and tenancy by the entirety are not grounds for dismissal of the claims against the Living Trust.[19]

In sum, none of the grounds raised by the Moving Parties warrant dismissal of the Amended Supplemental Complaint and that request should be denied.  The Court should also deny the Moving Parties request for a more definite statement.

## IV.    RECOMMENDATION

For the reasons stated above, the undersigned respectfully **RECOMMENDS** that:

(i)    the Nevada Entities' Motions to Dismiss Amended Supplemental Complaint or, in the Alternative for a More Definite Statement (ECF No. 746) be **DENIED;**

(ii)    the Judgment Debtors' Motion to Dismiss the Amended Supplemental Complaint (ECF Nos. 748, 749) be **DENIED**;

(iii)    the Living Trust's Motion to Dismiss Amended Supplemental Complaint with Prejudice and Joinder to the Motion to Dismiss Arguments filed by the Nevada Entities (ECF No. 750) be **DENIED**;

---

[19] Indeed, in connection with the Living Trust's motion to quash a writ of execution on the Haydn Property, the Court has previously held an evidentiary hearing relating to the Haydn Property. *See* (ECF No. 617).  After the hearing, the Court concluded that:

> The evidence at the hearing established that, although the Boca Property was initially purchased by the Judgment Debtors, title to the [Haydn] Property was subsequently transferred to The Rahman/Arefin Living Trust . . . . [I]n the interest of judicial economy and to avoid possible inconsistent results, the dispute [as to the factual and legal defenses] regarding the Boca Property is best determined in the proceedings supplementary instituted against the Living Trust[.]  As part of the proceedings supplementary, the Living Trust will have a full opportunity to protect its interests in the [Haydn] Property and raise any available defenses.  *CastleRock Sec., Inc.*, No. 10-CV-61582, 2011 WL 1674963, at *2 (S.D. Fla. May 3, 2011).

(ECF No. 616 at 4).  The Court's prior conclusion remains applicable to this stage of the proceedings.

     (iv)    CSB and HomeLien's Motion to Dismiss Amended Supplemental Complaint for Lack of Jurisdiction, Failure to State a Claim and for Lack of Proper Service of Process (ECF No. 864) be **DENIED AS MOOT** based on the amended motion filed at ECF No. 865; and

     (v)    CSB and HomeLien's Motion to Dismiss Amended Supplemental Complaint for Lack of Jurisdiction, Failure to State a Claim and for Lack of Proper Service of Process (ECF No. 865) be **DENIED**.

     Within **14 days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. *See* Mag. J. R. 4(b) (any party may object to a Magistrate Judge's recommendation regarding dispositive motions within 14-days or within such other time as may be allowed by the Court). Further, within **seven days**, any party may respond to a parties' objections. *Id.* Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2024); *see Thomas v. Arn*, 474 U.S. 140 (1985).

     Lastly, if the parties do not intend to file objections, they shall file a Notice of Non-Objection within **seven days** of this R&R.

     **DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida on August 13, 2025.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge William P. Dimitrouleas
    All Counsel of Record