**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:20-cv-62002-DIMITROULEAS/Strauss**

ONEMATA CORPORATION,

      Plaintiff,

v.

ASHFAQ RAHMAN, *et al.*,

      Defendants,

_____/

**DEFENDANTS' MOTION TO DETERMINE**
**EXISTENCE OF ANCILLARY JURISDICTION**

Defendants[1] submit this Motion to Determine Existence of Ancillary Jurisdiction pursuant to this Court's Orders. [ECF Nos. 982 and 984]. For the reasons set forth below, ancillary jurisdiction does not exist over the Second Amended Supplemental Complaint. [ECF No. 973].

**PRELIMINARY STATEMENT**

The underlying action in this case was a breach of contract dispute over the sale of a technology company. [ECF No. 973 ¶ 19]. After obtaining a $7 million judgment against the individual Judgment Debtors, Ashfaq Rahman and Sabira Arefin, Onemata ultimately filed a Second Amended Supplemental Complaint asserting eighteen counts of fraudulent transfer under

---

[1] Defendants are: MaskGene, LLC, Peaceheaven, LLC, Lakemont Property, LLC, and BashaBari, LLC (the "Nevada LLCs"); Sunshine Irrevocable Trust, Paradise Valley Irrevocable Trust, and Bright Stars Irrevocable Trust (the "Nevada Trusts"); Ran Chae, as distribution trustee of the Nevada Trusts and Ashfaq Rahman and Sabira Arefin, as trustees of the Nevada Trusts (the "Nevada Trustees," and together with the Nevada LLCs and Nevada Trusts, collectively the "Nevada Parties"); HomeLien Investment LLC (Nevis) ("HomeLien") and CSB Holdings, 329 LLC (Cook Islands) ("CSB," and together with HomeLien, the "Foreign Parties"); The Rahman/Arefin Living Trust (the "Rahman Arefin Trust"); Ashfaq Rahman and Sabira Arefin, as trustees of the Rahman Arefin Trust (the "Rahman Arefin Trustees," and with the Rahman Arefin Trust, the "Rahman Arefin Trust Parties," and together with the Nevada Parties and Foreign Parties, collectively, the "Third Party Defendants"); and Ahsfaq Rahman and Sabira Arefin (the "Judgment Debtors").

Florida's Uniform Fraudulent Transfer Act ("FUFTA") against twenty-one new Third-Party Defendants. [ECF No. 973 at ¶ ¶ 4 - 14]. The supplemental complaint seeks to litigate new claims, based on new facts, new legal theories, against new parties. Binding Supreme Court and Eleventh Circuit precedent makes clear that ancillary jurisdiction cannot stretch that far. The types of claims at issue require an independent civil action that requires its own jurisdictional basis. The pertinent case law compels the conclusion that ancillary jurisdiction is lacking.

*First*, proceedings supplementary under Fla. Stat. § 56.29(6) that involve new parties and new theories of liability are independent civil actions, not ancillary proceedings. *Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1130–31 (11th Cir. 2013).

*Second*, while (at least in its prior briefing) Plaintiff has hitched its wagon almost exclusively to the Eleventh Circuit's decision in *Nat'l Mar. Services, Inc. v. Straub*, 776 F.3d 783, 785 (11th Cir. 2015) ("*Straub II*"), that case involved fundamentally different facts. This becomes particularly clear when reviewing the district court's decision. *Nat'l Mar. Services, Inc. v. Straub*, 979 F. Supp. 2d 1322 (S.D. Fla. 2013) (Altonaga, J.) ("*Straub I*"). As Chief Judge Altonaga's decision (which was affirmed) makes clear, the ancillary case involved just two FUFTA counts seeking to avoid a single wire transfer of proceeds from a boat sale to the sole owner of the judgment debtor, who was already a party to the underlying litigation. *Straub I*, 979 F. Supp. 2d at 1329. Moreover, plaintiff's proceedings supplementary claims were limited to recovering a $99,660.05 judgment for unpaid custodial services on a boat, from a percentage of the proceeds from the sale of the same boat involved in the underlying litigation. *Id.* This case, by contrast, involves eighteen counts targeting twenty-one new defendants across nine properties in three states, under allegations entirely unrelated to the business sale dispute giving rise to the judgment.

*Third*, the Supreme Court's decision in *Peacock v. Thomas*, 516 U.S. 349, 357 (1996), forecloses ancillary jurisdiction over proceedings that seek to impose an existing judgment on new

parties, even where an insider's own conduct demonstrated an intent to evade the judgment, *see Thomas v. Peacock*, 39 F.3d 493, 497–98 (4th Cir. 1994), *rev'd*, 516 U.S. 349 (1996). Onemata's claims to set aside HomeLien's third-party mortgages and assignments to CSB, do not use ancillary jurisdiction to collect a judgment by recovering assets of the judgment debtors. Rather, they seek to hold new parties liable for the Final Judgment by extinguishing third-party security interests against proprieties entirely unrelated to underlying business sale.

*Fourth*, while not binding, the Fourth Circuit's decision in *Messer v. Garrison Investment Group, LP*, issued less than two months ago, made clear that *Peacock* forecloses efforts to hold new entities liable via alter ego or veil piercing theories after the original judgment debtor became insolvent. 177 F.4th 507, 518 (4th Cir. 2026).

## FACTUAL BACKGROUND

### A. The Underlying Litigation

On October 2, 2020, Onemata filed suit against Rahman and Arefin alleging breach of contract and related claims in connection with the sale of their technology company. [ECF No. 973 ¶ 19]. On September 14, 2022, this Court entered a Final Judgment against Rahman and Arefin, jointly and severally, for $5 million, plus $2 million against Rahman individually for tortious interference with contractual relations, which was later affirmed by the Eleventh Circuit. [ECF No. 973 ¶ 25, 28]. None of the Third-Party Defendants were parties to the underlying litigation, and the claims, facts, and legal theories of the underlying case had nothing to do with the matters now alleged against the Third-Party Defendants.

### B. The Second Amended Supplemental Complaint

The Second Amended Supplemental Complaint asserts eighteen counts of fraudulent transfer under Fla. Stat. §§ 726.105(1)(a), 726.105(1)(b), and 726.106 against the Nevada Parties and other Third-Party Defendants. [ECF No. 973 at 2]. The complaint targets transfers of nine real properties

located in Arizona, Florida, and Washington owned by the Nevada LLCs (whose membership interests are held by the Nevada Trusts), and encumbered by mortgages in favor of HomeLien and assigned to CSB. None of the Third-Party Defendants were parties to the underlying breach of contract litigation. These are new claims, against new parties, based on new facts.

## <u>LEGAL STANDARD</u>

Ancillary jurisdiction exists in two narrow circumstances: "'(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Peacock*, 516 U.S. at 354 (citations omitted). While the Supreme Court has approved the exercise of ancillary jurisdiction in supplementary proceedings involving third parties, "to assist in the protection and enforcement of federal judgments[,]" that recognition "has not, however, extended beyond attempts to execute, or to guarantee eventual executability of, a federal judgment." *Id.* at 356–57.

Critically, ancillary jurisdiction does not extend to proceedings that seek "to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Peacock*, 516 U.S. at 357 (citing *H.C. Cook Co. v. Beecher,* 217 U.S. 497 (1910). Nor does it reach proceedings that assert entirely new and original claims or "where 'the relief [sought is] of a different kind or on a different principle' than that of the prior decree." *Id.* at 358 (citations omitted). Indeed, less than a year ago, the Eleventh Circuit confirmed that ancillary jurisdiction does not extend to "supplementary proceedings 'founded ... upon entirely new theories of liability.'" *Casa Express Corp as Tr. of Casa Express Tr. v. Bolivarian Republic of Venezuela*, 158 F.4th 1176, 1184 (11th Cir. 2025) (citing *Peacock*, 516 U.S. at 358).

4

**LEGAL ARGUMENT**

**A.  The Second Amended Supplemental Complaint Is an Independent Civil Action.**

In *Jackson-Platts*, the Eleventh Circuit held that proceedings supplementary under Fla. Stat. § 56.29(6) are independent civil actions when they involve new parties, new theories of liability, and a different factual matrix than the underlying case. 727 F.3d at 1131. The court explained that "actions are not ancillary and are instead independent civil actions when they are 'in effect suits involving a new party litigating the existence of a new liability.'" *Id.* at 1134. Specifically, in *Jackson-Platts* the court identified three factors that establish the independent nature of a supplementary proceeding: (1) the proceeding involves new parties; (2) the proceeding seeks to impose new liability based on new legal theories; and (3) the factual allegations are wholly distinct from the underlying case. *Id.* at 1134–35. Each factor is present here.

The underlying action here involved breach of contract and tortious interference claims by Onemata, as plaintiff, against Rahman and Arefin, individually, concerning the sale of LocalBlox, Inc. — a technology company. [ECF No. 973 at ¶¶ 19, 23]. The Second Amended Supplemental Complaint, by contrast, asserts eighteen counts under FUFTA, which seeks to impose liability on twenty-one new Third-Party Defendants who were never sued, served, or summoned in the underlying action [ECF No. 973 at ¶¶ 4-14], based on factors unrelated to the LocalBlox sale.

The supplemental complaint concerns the transfer of nine real properties in Arizona, Florida, and Washington to the Rahman Arefin Trust or the Nevada LLCs (whose membership interests are held by the Nevada Trusts), and the encumbrance of the real properties through the HomeLien mortgages assigned to CSB. [ECF No. 973, Counts I – XVIII]. These transactions are unrelated to the sale of LocalBlox. *Jackson-Platts*, 727 F.3d at 1136–37.

**B.  The Facts of This Case Are Fundamentally Distinguishable from *Straub*.**

Onemata relies on *Straub II* for its ancillary jurisdiction theory. [ECF No. 973 ¶ 16]. However, the trial court record in that case underscores how far this case departs from the narrow circumstances that justified ancillary jurisdiction there.

In *Straub*, the underlying judgment was for $99,660.05 arising from unpaid custodial services on a single boat. *Straub I*, 979 F. Supp. 2d at 1324–25. As Chief Judge Altonaga noted, the judgment debtor, Burrell Shipping, was a single-purpose LLC that had no bank account and never engaged in any business other than activities associated with the vessel. *Id.* at 1326. Straub, who was the sole owner and president of Burrell and a party to the underlying litigation (though not a judgment debtor), described the transfer as a classic short sale scenario: Burrell sold the boat and directly wire-transferred $2,249,000 in proceeds to Straub. *Id.* at 1325. The transfer was commercially necessary: the buyer required title free and clear of all liens, and the closing could not have occurred without Burrell Industries releasing its preferred ship's mortgage. *Id.* at 1326.

Through the supplementary proceeding, the plaintiff sought to recover only the $99,660.05 judgment amount, which was less than 5% of the transferred proceeds. Unlike in this case, the plaintiff was not seeking to use the supplementary proceeding to recover all property allegedly transferred. *See id.* at 1325. Indeed, Straub stipulated that the transfer consisted of substantially all of Burrell's assets. *Id.* at 1326. Only two of five FUFTA counts were adjudicated, since the trial court found them dispositive. *Id.* at 1327. The trial court found ancillary jurisdiction on a narrow basis: the creditor was simply seeking assets of the judgment debtor, Burrell, that are found in the hands of a third party, Straub, who was a named party in the underlying litigation. *Id.* at 1326. This case is distinguishable in every material respect.

*First*, where *Straub II* involved a single, commercially necessitated transfer to one third party, this case alleges dozens of transactions across nine properties in three states, involving four

6

Nevada LLCs, three Nevada Trusts, two foreign entities, and numerous trustees. [ECF No. 973]. And while the debtor in *Straub II* stipulated to the basic facts involving the sale of a single marine vessel and the use of its sale proceeds to repay a note and discharge a preferred ship mortgage (which marine vessel was related to the underlying judgment National Maritime sought to enforce), this case will require extensive fact-finding across multiple entities and jurisdictions in connection with eighteen counts alleging numerous fraudulent transfers of nine real properties and four LLC membership interests, unrelated to the Final Judgment in favor of Onemata in connection with the sale of LocalBlox.

*Second*, in *Straub II*, the third party was the judgment debtor's sole owner who directly received the proceeds, stipulated to most if not all of the facts at issue, and was a named party in the underlying litigation. *Straub II*, 776 F.3d at 785. Here, the necessary independent factual and legal determinations to impose liability against the Third-Party Defendants goes far beyond anything at issue in *Straub II*.

*Third*, the Eleventh Circuit's holding in *Straub II* confirms the narrowness of ancillary jurisdiction in that case: Straub's liability was limited instead to the proceeds that Burrell Shipping fraudulently transferred to him. *Straub II*, 776 F.3d at 787. If the proceeds fell short of the judgment, National Maritime had no recourse against Straub for the excess; and if the proceeds were more than the judgment amount, Straub was entitled to the excess proceeds. *Id.* Here, Onemata seeks not only avoidance of the transfers, but also attachment, injunctions against further disposition, appointment of a receiver, avoidance of the HomeLien mortgages and assignments to CSB, and an award of attorney's fees and costs against the Third-Party Defendants. [ECF No. 973 at 13, 17, 20, 23, 28, 30, 33, 36, 39, 42, 44, 46, 49, 51, 54 and 56].

*Fourth*, in *Straub II* the Eleventh Circuit distinguished its earlier decision *Jackson-Platts*,

where the plaintiff sought to impose liability for the entire judgment on new defendants who had conspired to strip the original defendants of all of their assets. *Straub II*, 776 F.3d at 788. This case more closely resembles *Jackson-Platts*: Onemata alleges Rahman and Arefin stripped themselves of all assets through transfers to the Nevada Parties, and seek to set aside the third-party mortgages and assignments against nine real properties,[2] which is tantamount to imposing liability for the underlying judgment on the Foreign Parties. [ECF No. 973, Prayer for Relief in each count].

*Fifth*, the Eleventh Circuit recently reinforced these principles in *Casa Express* where it denied ancillary jurisdiction where the claims bore no factual or legal relationship to the underlying suit. 158 F.4th at 1187. The court emphasized that ancillary jurisdiction does not reach efforts to execute a judgment against properties held by third parties based on facts and law completely unrelated to the underlying lawsuit. *Id.* That is precisely what Onemata seeks here.

### C. Onemata's Claims Seek to Impose New Liability on Third Parties, Not Merely to Enforce the Existing Judgment.

In *Peacock* the Supreme Court drew a clear line: ancillary jurisdiction extends to proceedings that enforce an existing judgment; it does not extend to proceedings that seek to make new parties liable for that judgment. *Peacock*, 516 U.S. at 357. The claims against the Foreign Parties and other Third-Party Defendants fall on the wrong side of that line. Onemata's supplemental complaint asserts that the Nevada Parties are alter egos of, and under the control of, Rahman and Arefin. [ECF No. 973 ¶ 18]. This alter ego theory is the same species of veil-piercing argument that the Supreme Court rejected in *Peacock*, where the plaintiff sought to pierce the corporate veil of his employer to reach the assets of a third party insider. *Peacock*, 516 U.S. at 358.

---

[2] Copies of the mortgages and assignments which are at issue in the Second Amended Supplemental Complaint are not attached thereto; but can be found as exhibits to an addendum [ECF No. 913] Onemata filed with respect to its prior complaint.

The *Peacock* court held that this was a new action based on theories of relief unrelated to the underlying case. *Id.* at 359. The same is true here. The FUFTA claims against the Third-Party Defendants have no connection to the underlying controversy involving the sale of LocalBlox.

Onemata's own jurisdictional theory confirms the proceeding's independent character. The complaint invokes this Court's jurisdiction over the third parties only because they are alleged to be "alter egos of, and under the control of," the Judgment Debtors. [ECF No. 973 ¶ 18]. Resolving that contested allegation would require the Court to adjudicate a new question of liability, and ancillary jurisdiction reaches only enforcement of an existing judgment against those already liable — not the determination of a new party's liability in the first instance. *Peacock*, 516 U.S. at 357.

The complaint's treatment of HomeLien and CSB concretely illustrates this point. Every count of the complaint requests that the HomeLien Mortgage and the Assignment to CSB be set aside. [ECF No. 973, Prayer for Relief in each count]. Setting aside mortgage liens held by third-party entities does not recover transferred assets of the Judgment Debtors — it extinguishes the secured interests of separate lienholders with independent claims to the encumbered properties – which is a de facto imposition of new liability against new parties. Whatever the merits of Onemata's fraudulent transfer allegations, this relief would destroy the security interests of entities not liable for the underlying breach of contract judgment. This is precisely the imposition of new liability on new parties that *Peacock* prohibits.

Florida's fraudulent-transfer statute confirms the point: a recoverable "asset" does not include "property to the extent it is encumbered by a valid lien." Fla. Stat. § 726.102(2)(a). The Court therefore could not treat the encumbered properties as recoverable assets of the Judgment Debtors without first adjudicating the validity and priority of the mortgage liens held by HomeLien and assigned to CSB — a dispute over the property rights of non-parties that formed no part of the

underlying action. Further, the decisions Onemata has relied on to date approving ancillary jurisdiction over fraudulent-transfer proceedings reach only disgorgement of the debtor's own transferred assets, not the extinguishment of a third-party's independent security interest. *See Casa Express*, 158 F.4th at 1187; *Peacock*, 516 U.S. at 357. Moreover, as long as the Federal Rules adequately protect a judgment creditor's ability to execute on a judgment, ancillary jurisdiction is not justified over a new lawsuit to impose liability for a judgment on a third party. *Peacock*, 516 U.S. at 359. If diversity jurisdiction does not exist, the absence of an independent basis precludes using ancillary jurisdiction as a substitute. *Peacock*, 516 U.S. at 350–51.

Recent appellate authority confirms this analysis. In *Messer*, the Fourth Circuit denied ancillary jurisdiction where a judgment creditor sought to hold over a dozen new entities liable via alter ego and veil-piercing theories after the original judgment debtor became insolvent. 177 F.4th at 518. The court held that *Peacock* plainly forecloses such efforts because "the only entity 'already liable for that judgment' is BCI." *Id.* at 518–19. The same reasoning applies here. Onemata seeks to impose the existing judgment on twenty-one new entities through alter ego and reverse veil piercing theories, by, among other things, stripping the third-party mortgages now held by CSB. This is precisely what *Peacock* foreclosed, as is Onemata's request for fees and costs against the Third-Party Defendants, none of whom are liable for the underlying Final Judgment.

## CONCLUSION

For the foregoing reasons, ancillary jurisdiction does not exist over the Second Amended Supplemental Complaint, which, in substance, is a new and independent action, involving an entirely new factual matrix with new parties, new claims and new theories of liability unrelated to the claims concerning the sale of LocalBlox. The Court should thus enter an Order determining that ancillary jurisdiction **does not** exist over the Second Amended Supplemental Complaint.

Jointly Submitted: July 15, 2026

s/ *Alexandra D. Blye*
Alexandra D. Blye (FBN 71499)
ablye@carltonfields.com
Carlton Fields, P.A.
525 Okeechobee Blvd., Ste. 1200
West Palm Beach, Florida 33401
Telephone: (561) 659-7070

Aaron S. Weiss (FBN 48813)
aweiss@carltonfields.com
Carlton Fields, P.A.
700 N.W. 1st Avenue, Suite 1200
Miami, Florida 33136
Telephone: (305) 530-0050

Donald R. Kirk (FBN 105767)
dkirk@carltonfields.com
Carlton Fields, P.A.
4221 W. Boy Scout Blvd., Ste. 1000
Tampa, Florida 33607
Telephone: (813) 223-7000

*Counsel for the Nevada Parties*

s/ *Harry Winderman*
Harry Winderman (FBN 209562)
harry4334@hotmail.com
One Boca Place, Suite 205E
2255 West Glades Road
Boca Raton, Florida 33431
Telephone:  (561) 707-0000

*Counsel for the Judgment Debtors
and Rahman Arefin Trust Parties*

s/ *Roger C. Decker*
Roger C. Decker (pro hac vice)
rcd@udallshaumway.com
Udall Shumway & Lyons, PLC
1138 North Alma School Road, Ste. 101
Mesa, Arizona 85201
Telephone:  (480) 461-5343

*Counsel for the Foreign Parties*

11